REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED

ORIGINAL

1   Stephanie P. Skaff (State Bar No. 183119)
       sskaff@fbm.com
2   Alex Reese (State Bar No. 280530)
       areese@fbm.com
3   Farella Braun + Martel LLP
       235 Montgomery Street, 17th Floor
4   San Francisco, CA  94104
       Telephone:  (415) 954-4400
5   Facsimile:  (415) 954-4480

6   Attorneys for Plaintiffs
       BLADEROOM GROUP LIMITED AND BRIPCO
7   (UK) LIMITED

*Filed*

MAR 23 2015

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF COURT
SAN JOSE CALIFORNIA

ADR

E-filing

8

9                   UNITED STATES DISTRICT COURT

10                  NORTHERN DISTRICT OF CALIFORNIA

11                        SAN JOSE DIVISION

12   BLADEROOM GROUP LIMITED, et al.,     Case No.    CV 15 01370

13              Plaintiffs,                HRL

14        vs.                             **COMPLAINT FOR**

15   FACEBOOK, INC.                       **(1) BREACH OF CONTRACT;**

16              Defendant.                **(2) BREACH OF COVENANT OF GOOD
                                           FAITH & FAIR DEALING;**

17                                        **(3) MISAPPROPRIATION OF TRADE
                                           SECRETS;**

18

19                                        **(4) UNJUST ENRICHMENT; and**

20                                        **(5) UNFAIR BUSINESS
                                           PRACTICES/UNFAIR COMPETITION**

21

22

23

24

25

26

27

28

1  Plaintiffs BladeRoom Group Limited ("BRG") and Bripco (UK) Limited ("Bripco (UK)")
2  (collectively "Plaintiffs") allege as follows:

3  **NATURE OF ACTION**

4  1.  In January 2014, Defendant Facebook, Inc. ("Facebook") announced to the world
5  that it had developed a revolutionary new method of constructing large, mission critical data
6  centers, which are the buildings that house the vast arrays of computer servers that form the
7  backbone of the internet and the high-technology economy. Facebook claimed that it developed
8  an innovative, pre-fabricated and modular construction approach and, extolling its benefits,
9  encouraged the entire data center industry to shift from traditional construction practices to this
10  new method. What Facebook did not disclose, however, was that this methodology and the
11  detailed know-how supporting its use had in fact been stolen by Facebook from BRG.

12  2.  BRG spent years developing and refining the pre-fabricated, modular design and
13  the transportation and construction techniques that Facebook blithely passed off to the world as
14  its own in 2014. During the roughly two and a half years before Facebook's announcement of its
15  supposedly new approach,

18  This
19  action seeks redress for Facebook's breach of                    ; its breach of the
20  covenant of good faith and fair dealing; its misappropriation of trade secrets; its unjust
21  enrichment at BRG's expense; and its unfair business practices or unfair competition.

22  **PARTIES**

23  3.  Plaintiff BRG is a company organized under the laws of England with a registered
24  office at Stella Way, Bishop's Cleeve, Cheltenham, Gloucestershire GL52 7DQ. Since the late
25  2000s, BRG has been in the business of developing and perfecting a method for manufacturing
26  and installing pre-fabricated data centers. These data centers, known as "BladeRooms," are
27  constructed using BRG's unique methodology and innovative pre-fabrication construction,
28  shipping, and installation techniques, some of which are publicly known but many of which BRG

- 2 -

1  keeps as confidential trade secrets. The confidential know-how, design, supply chain, fabrication

2  and construction techniques, and all other aspects of modular data center construction developed

3  by BRG are referred to throughout this Complaint as the "BRG Methodology."

4      4.    Plaintiff Bripco (UK) is a company organized under the laws of England with a

5  registered office at Stella Way, Bishop's Cleeve, Cheltenham, Gloucestershire GL52 7DQ.

6  Bripco (UK) is the legal owner, and BRG is the licensee, of all right, title and interest in all trade

7  secrets, know-how, registered and unregistered designs, and confidential information created or

8  developed by BRG, including the BRG Methodology.

9      5.    On information and belief, Defendant Facebook is a company organized under the

10  laws of Delaware with a principal place of business at 1601 Willow Road, Menlo Park, California

11  94025.

12  **JURISDICTION AND VENUE**

13      6.    The Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§

14  1332 because there is a complete diversity of citizenship between Plaintiffs and Defendant and

15  the amount in controversy exceeds \$75,000.

16      7.    This Court has personal jurisdiction over Defendant Facebook because Facebook

17  consented to this Court's jurisdiction for purposes of adjudicating any action

18

19

20      8.    This Court also has personal jurisdiction over Defendant Facebook because

21  Plaintiffs' causes of action against Facebook arise out of or relate to Facebook's purposeful

22  contacts with California, and the exercise of personal jurisdiction over Facebook in this particular

23  case would comport with principles of fair play and substantial justice.

24      9.    This Court also has personal jurisdiction over Defendant Facebook because it has

25  engaged in systematic and continuous contacts with this State and this County by, *inter alia*,

26  regularly conducting and soliciting business in this State and this County, and deriving substantial

27  revenue from products and/or services provided to persons in this State and this County.

28

REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED

1    10.    Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)–(c) because a

2    substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in this district

3    and Facebook resides in this judicial district and is subject to this Court's personal jurisdiction.

4    11.    Venue is also proper in this district because by entering into

5

6    were to be resolved by the federal or state courts located in Santa Clara

7    County.

8    **INTRADISTRICT ASSIGNMENT**

9    12.    This action is an Intellectual Property Action subject to district-wide assignment.

10

11

12

13

14    **FACTUAL ALLEGATIONS**

15    *BRG, Bripco (UK), and the BRG Methodology*

16    13.    Over the course of 25 years, the founders and senior leadership of BRG developed

17    deep expertise in the pre-fabricated, modular construction of buildings that have specific air-

18    handling requirements. They acquired this experience by designing and supplying mission-

19    critical modular buildings with complex mechanical and electrical components, including

20    industrial kitchens and hospital facilities such as operating theaters and clean rooms, to major

21    institutions around the world. Their approach to these projects was to always maximize

22    efficiency and precision by pre-fabricating in a factory as many elements of each building as

23    possible, then transporting them to site. In 2008, BRG's directors came to realize that the fast-

24    growing, multibillion dollar per year data center industry was an area where pre-fabrication and

25    modular construction techniques could provide significant benefits. They decided to develop a

26    pre-fabricated data center product that could take full advantage of their experience and expertise.

27    14.    Data centers are extremely complex structures. The backbone of the internet and

28    high-technology economy, they are where companies securely house their computer servers and

REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED

1    maintain the appropriate climate for them. Precise construction standards and temperature and

2    humidity controls in these buildings are essential because of the heat that rows upon rows

3    containing racks upon racks of servers generate while operating. This enormous amount of heat

4    can damage the servers if it is not efficiently and effectively removed.

5        15.    Before BRG developed its innovative approach, it analyzed the market and found

6    that companies that were then providing large, enterprise-level data centers used a standard "stick

7    built" approach to construction. In other words, the data centers were built traditionally by a

8    large team that included architects, consultants, general contractors, specialist sub-contractors,

9    mechanical and structural engineers, cost managers, on-site tradesmen, and more.

10       16.    Using its existing expertise in constructing mission critical modular facilities,

11   BRG set out to develop a better, faster, and more cost-effective way to build, deliver, and install

12   large, mission-critical data centers. BRG devoted substantial resources to refining its methods

13   and designs. The resulting innovations, know-how and technological developments are

14   collectively embodied in the BRG Methodology and a data center product called the

15   "BladeRoom."

16       17.    The BRG Methodology offers many benefits over traditional methods of

17   construction. Using the BRG Methodology, BRG can construct large, enterprise-level data

18   centers



26       18.    BRG installed its first BladeRooms in 2009, and the company has grown rapidly

27   since that time. Due to the innovation and benefits offered by the BRG Methodology, BRG has

28   achieved significant success, and today there are

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA 94104
(415) 954-4400

1 ██████████, which are used by national governments and some of the world's most

2 prestigious and well-known companies. BRG's innovations have been recognized with industry

3 awards, including the Green Enterprise IT award from the Uptime Institute, a well-known

4 standard-setting organization within the data center industry.

5     19.    Some aspects of the BRG Methodology are the subject of granted patents and

6 pending patent applications, while others are kept as trade secrets or confidential and proprietary

7 information. Plaintiffs developed their intellectual property over several years at great effort and

8 expense. Bripco (UK) owns the trade secrets, know-how, trademarks, design rights, and

9 confidential proprietary information, while BRG is its licensee.

10     20.    Bripco (UK) and BRG protect Bripco (UK)'s trade secrets and confidential and

11 proprietary information by limiting the content of any public disclosure and ensuring that private

12 disclosure to potential clients, suppliers, and others is covered by non-disclosure agreements.

13 Computer systems containing the trade secrets are password-protected. Facilities where the trade

14 secrets are stored are physically secured. Visitors are prevented from accessing the trade secrets

15 unless under a non-disclosure agreement. Employee access to the trade secrets is limited to those

16 employees with a need to know. Employees must sign agreements requiring them to keep

17 confidential trade secrets and proprietary information they learn in BRG's employ and requiring

18 the return of any trade secrets and proprietary information materials at the termination of

19 employment.

20 ████████████████████████████████

21     21.    In late October 2011, BRG was confident in its growing global reputation, and it

22 contacted Facebook to promote BladeRooms and the BRG Methodology.



23

24

25

26

27

28

Parella Braun + Martel LLP
225 Montgomery Street, 17th Floor
San Francisco, CA 94104
(415) 954-4400

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28



1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20     38.

21

22

23

24

25                          BRG never imagined that Facebook would end up

26  stealing the BRG Methodology and partnering with Emerson to construct its data centers using

27  BRG's trade secrets and confidential information.

28

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA 94104
(415) 954-4400

- 11 -

COMPLAINT

REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED

COMPLAINT

REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED

1

2

3

4

5

6 *Facebook Partners with Emerson to Build the Second Phase of Its Data Center Campus in*

7 *Luleå*

8     43.

9

10 Instead, on information and belief, Facebook, together with Emerson, simply stole the BRG

11 Methodology and passed it off as its own. In May 2014, Facebook announced that it had awarded

12 Emerson a contract to construct a pre-fabricated, modular data center for the second phase of its

13 Luleå, Sweden campus. On information and belief, the design and construction process for the

14 Luleå phase two data center that Emerson has constructed for Facebook incorporates Bripco (UK)

15 trade secrets and other confidential information about the BRG Methodology.

16     44. Publicly available information about the construction of the data hall of phase two

17 of the Luleå data center campus shows that Facebook is using concepts and techniques embodied

18 in the BRG Methodology that BRG developed

19 . For example, photos of the construction at phase two of the

20 Luleå site show that Facebook used

21

22

23

24

25 *Facebook Discloses Confidential Information About the BRG Methodology on OpenCompute*

26     *The January 2014 OpenCompute Presentation*

27     45. Facebook's misdeeds might never have come to light had it decided that simply

28 stealing BRG's intellectual property was enough. Instead, Facebook went further when it decided

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA 94104
(415) 954-4400

COMPLAINT

REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED

1    to encourage and induce others to use BRG's intellectual property as well by revealing BRG's

2    confidential information through an initiative created by Facebook called the "OpenCompute

3    Project" ("OpenCompute"). According to the initiative's website, available at

4    http://www.opencompute.org/about, the goal of OpenCompute is to give the public "full access to

5    the[] specifications" used by Facebook in its data centers in order to "spark a collaborative

6    dialogue" about how to improve its approach to data centers.

7        46.    In January 2014, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

8    ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Mr. Magarelli made a public presentation at an OpenCompute

9    forum regarding Facebook's brand new "rapid deployment data center" or "RDDC method." A

10    video of Mr. Magarelli's presentation was posted to YouTube at

11    http://www.youtube.com/watch?v=yu8jin33G64. Mr. Magarelli's presentation begins around the

12    21:49 mark.

13        47.    In his presentation of the RDDC, Mr. Magarelli explains that Facebook was

14    looking for ways to use construction methods that would allow it to deliver twice the amount of

15    data space in about half the normal time. Mr. Magarelli explains that many of the concepts

16    underlying the RDDC were developed with "vendors." He notes that "lean construction

17    approaches are often used in hospital buildings." On information and belief, BRG is the only

18    supplier of modular data centers whose predecessors also had experience delivering modular

19    hospital buildings.

20        48.    One of the concepts that Mr. Magarelli claimed Facebook developed with vendors

21    was a ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

22    ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

23    ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

24    ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

25    ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

26        49.    Another one of the concepts that Mr. Magarelli claimed was developed with a

27    vendor was ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

28

- 14 -

50.

. But he does not mention BRG or BladeRooms.

*The March 2014 OpenCompute Blog Post*

51.     Facebook continued to misuse and misappropriate BRG's confidential information and Bripco (UK)'s trade secrets. In March 2014, Mr. Magarelli also authored and published an OpenCompute blog post about Facebook's "new rapid deployment data center," or "RDDC." The blog post may be accessed at http://www.opencompute.org/blog/faster-leaner-smarter-better-data-centers.

52.     In his blog post, Mr. Magarelli claims that the RDDC concept began with what he terms as a "hack": "In October 2012, our data center strategic engineering and development team and several experts in lean construction came together to hack on a design for a data center that would look less like a construction project and more like a manufactured product."

53.     The blog post goes on to describe



54.     Of the

- 15 -

COMPLAINT

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA 94104
(415) 954-4400

REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED

1

2

3    55.    Some of the hoped-for benefits of the RDDC that Mr. Magarelli cites in his blog

4    post include

5

6

7

8

9

10

11                                                      Mr. Magarelli concludes his blog post with

12   news that Facebook planned to use the RDDC designs in the construction of their second data

13   center in Luleå.  The blog post emphasizes that Facebook's RDDC is a "new approach to data

14   center design."

15   56.

16

17

18                                                      Again, Mr. Magarelli does not mention BRG

19   or BladeRooms in his presentation or make any attempt to attribute or credit BRG for any of the

20   elements of the innovative new approach he falsely claimed Facebook itself had developed.

21   57.    Mr. Magarelli's January presentation and March blog post do not disclose

22   Facebook's own concepts, but rather BRG's confidential and trade secret information

23

24

25

26   58.    After Mr. Magarelli's OpenCompute presentation and blog post, media outlets

27   picked up the story about Facebook's RDDC, including the BRG confidential information, and

28   broadcast it around the world.

REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED

1

## FIRST CAUSE OF ACTION

2

### (Breach of Contract)

3    59.    Plaintiffs incorporate by reference as though set forth herein each of the preceding

4    allegations of Paragraphs 1 through 58 of this Complaint.

5

6

7

8

9    62.

10

11

12

13

14

15



16    63.    As a direct and proximate result of Facebook's breaches of

17    BRG has suffered damages, and Facebook has been unjustly enriched, in an amount

18    to be determined at trial.

19    64.    Facebook's breaches have caused and continue to cause BRG irreparable harm that

20    cannot be fully redressed through damages alone. An injunction as set forth herein is necessary to

21    provide BRG with complete relief.

22

23

## SECOND CAUSE OF ACTION

24

### (Breach of Covenant of Good Faith and Fair Dealing)

25    65.    Plaintiffs incorporate by reference as though set forth herein each of the preceding

26    allegations of Paragraphs 1 through 58 of this Complaint.

27

28

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA  94104
(415) 954-4400

- 17 -

REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED

1

2

3      68.     Facebook unfairly interfered with BRG's right to receive benefits under

4

5

6

7

8

9

10

11

12     69.     As a direct and proximate result of Facebook's breaches

13     , BRG has suffered damages, and Facebook has been unjustly enriched, in an amount

14     to be determined at trial.

15     70.     Facebook's breaches have caused and continue to cause BRG irreparable harm that

16     cannot be fully redressed through damages alone. An injunction as set forth herein is necessary to

17     provide BRG with complete relief.

18                              **THIRD CAUSE OF ACTION**

19                          **(Misappropriation of Trade Secrets)**

20     71.     Plaintiffs incorporate by reference as though set forth herein each of the preceding

21     allegations of Paragraphs 1 through 58 of this Complaint.

22     72.     Plaintiff Bripco (UK) is the owner of trade secrets as defined by California's

23     Uniform Trade Secrets Act, Civil Code sections 3426–3426.11.

24     73.     Plaintiff Bripco (UK)'s trade secrets include but are not limited to information

25     regarding

26

27

28

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA 94104
(415) 954-4400

- 18 -

COMPLAINT

74.     Bripco (UK)'s trade secrets derive independent actual and potential economic value from not being generally known or available to the public or other persons who can obtain economic value from their disclosure or use.

75.     Bripco (UK)'s trade secrets have significant value, resulting from significant investment of time and resources.

76.     Bripco (UK) and BRG have made, and continue to make, efforts that are reasonable under the circumstances to maintain the secrecy of its trade secrets.

77.     The Bripco (UK) trade secrets described above were trade secrets at the time that they were ███████████████████████.

78.     Facebook improperly used Bripco (UK)'s trade secrets without Bripco (UK)'s consent and at the time of such use, knew, or had reason to know that its knowledge of Bripco (UK)'s trade secrets ████████████████████████. ████████████████████████ Facebook improperly used Bripco (UK)'s trade secrets, for example, in its development of its RDDC, which it deployed and plans to deploy on its own or with the assistance of third parties.

79.     Facebook improperly disclosed Bripco (UK)'s trade secrets without Bripco (UK)'s consent and at the time of such disclosure, knew or had reason to know that its knowledge of Bripco (UK)'s trade secrets was ████████████████████████ For example, on information and belief, Facebook disclosed Bripco (UK)'s trade secrets to Emerson and employed

- 19 -

1  Bripco (UK)'s trade secrets in its construction of the second phase of its Luleå data center

2  campus.

3

4

5      80.    As a natural and proximate result of Facebook's misappropriation, Bripco (UK)

6  has suffered injury and harm and Facebook has been unjustly enriched, in amounts according to

7  proof.

8      81.    Facebook's trade secret misappropriation has caused and continues to cause

9  Bripco UK irreparable harm that cannot be fully redressed through damages alone. An injunction

10  as set forth herein is necessary to provide Bripco (UK) with complete relief.

11      82.    In misappropriating Bripco (UK)'s trade secrets, Facebook acted willfully and

12  maliciously. Bripco UK is thus entitled to punitive and exemplary damages against Facebook

13  pursuant to section 3426.3(c) of the Civil Code.

14                          **FOURTH CAUSE OF ACTION**

15                              **(Unjust Enrichment)**

16      83.    Plaintiffs incorporate by reference as though set forth herein each of the preceding

17  allegations of Paragraphs 1 through 58 of this Complaint.

18      84.

19

20

21

22

23

24                                          While some of this information was

25  trade secret material, and some of it not, both the trade secret and non-trade secret information

26  would have been difficult and expensive for Facebook to develop, learn, or compile on its own.

27      85.

28

REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED

1     [REDACTED] its RDDC concept, which it presented to the

2     world as its own, resulting in an enhancement of Facebook's reputation as an innovator in data

3     center design.  On information and belief, Facebook also used the information to prepare the

4     design it is using for the second phase of its data center campus at Luleå.

5          86.     Facebook's benefit came at BRG's expense. [REDACTED]

6     [REDACTED] , BRG's reputation as an

7     innovator in data center design was not enhanced whereas Facebook's was.  On information and

8     belief, Facebook's public disclosures and endorsement of BRG's methods and practices without

9     acknowledging BRG's rights over them has also inspired, encouraged, and given confidence to

10    competitors to use the BRG Methodology in competition with BRG.  Additionally, it would have

11    taken Facebook much longer and cost Facebook much more money to develop the design for its

12    Luleå and other data center campuses had it not misused BRG's methods and approach for its

13    own benefit.

14         87.     Facebook has never compensated BRG for the benefit that it received from BRG.

15         88.     In equity and good conscience, Facebook ought not be allowed to retain the

16    windfall that BRG's information allowed it to realize at BRG's expense.

17         89.     BRG is accordingly entitled to equitable relief, including restitution of amounts

18    sufficient to disgorge Facebook of all profits, cost savings, and reputational enhancement it

19    realized and losses averted as the result of [REDACTED]

20

21

22

23                          **FIFTH CAUSE OF ACTION**

24                  **(Unfair Business Practices/Unfair Competition,**

25                  **Bus. and Prof. Code § 17200, *et seq.*)**

26         90.     Plaintiffs incorporate by reference as though set forth herein each of the preceding

27    allegations of Paragraphs 1 through 58 of this Complaint.

28

1    91.    Facebook's acts described above constitute unfair business practices and unfair

2  competition as defined by California Business & Professions Code § 17200, *et seq.*

3    92.    In particular, at least the following acts by Facebook were unlawful, unfair, or

4  fraudulent business acts: Facebook's use of Bripco (UK)'s trade secrets to develop and direct its

5  RDDC approach, which it deployed and plans to deploy on its own or with the assistance of third

6  parties

7

8

9  ; its disclosure of BRG's confidential information to the world through its OpenCompute

10  presentation and blog post; and its fraudulent effort to pass off the BladeRoom innovations as its

11  own, rather than as Plaintiffs'.

12    93.    As a direct and proximate result of Facebook's wrongful conduct, Plaintiffs have

13  been injured in fact. Such harm will continue unless Facebook's acts are enjoined by the Court.

14  Plaintiffs have no adequate remedy at law for Facebook's continued acts of unfair business

15  practices and unfair competition.

16                                **PRAYER FOR RELIEF**

17    WHEREFORE, Plaintiffs pray for judgment against Facebook as follows:

18    1.    Damages from Facebook according to proof;

19    2.    Disgorgement from Facebook of unjust enrichment according to proof;

20    3.    For preliminary and permanent injunctive relief to enjoin Facebook and its agents,

21  servants, and employees, and all persons acting under, in concert with, or for it, from using or

22  disclosing any of Bripco UK's trade secrets, confidential know-how, and proprietary information

23  regarding BladeRooms, in any way;

24    4.    For preliminary and permanent injunctive relief requiring Facebook and its agents,

25  servants, and employees, and all persons acting under, in concert with, or for it, to return

26                                                                                    ;

27    5.    For punitive and exemplary damages as may be provided by law;

28    6.    For Plaintiffs' attorneys' fees and costs as may be provided by law;

- 22 -

REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED

1    7.    For prejudgment and post-judgment interest;

2    8.    For such other relief as the Court may deem just and proper.

3

4    Date:  March 20, 2015                    FARELLA BRAUN + MARTEL LLP

5

6                                            By: _____
                                                 Stephanie P. Skaff
7                                                Alex Reese

8                                            Attorneys for Plaintiff
                                             BLADEROOM GROUP LIMITED AND
9                                            BRIPCO (UK) LIMITED

10

11

12

13                              **JURY DEMAND**

14    Plaintiffs demand a jury trial on all claims and issues that are so triable.

15    Date:  March 20, 2015                    FARELLA BRAUN + MARTEL LLP

16

17                                            By: _____
                                                 Stephanie P. Skaff
18                                               Alex Reese

19                                           Attorneys for Plaintiff
                                             BLADEROOM GROUP LIMITED AND
20                                           BRIPCO (UK) LIMITED

21

22

23

24

25    30692\4795137.8

26

27

28

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA 94104
(415) 954-4400

- 23 -

COMPLAINT