**COOLEY LLP**
MICHAEL G. RHODES (116127) (rhodesmg@cooley.com)
MATTHEW D. CAPLAN (260388) (mcaplan@cooley.com)
KRISTINE A. FORDERER (278745) (kforderer@cooley.com)
101 California Street, 5th Floor
San Francisco, CA  94111-5800
Telephone:     (415) 693-2000
Facsimile:     (415) 693-2222

**COOLEY LLP**
HEIDI L. KEEFE (178960) (hkeefe@cooley.com)
MARK R. WEINSTEIN (193043) (mweinstein@cooley.com)
ELIZABETH L. STAMESHKIN (260865)
(lstameshkin@cooley.com)
3175 Hanover Street
Palo Alto, CA  94304-1130
Telephone:     (650) 843-5000
Facsimile:     (650) 849-7400

Attorneys for Defendant
FACEBOOK, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| BLADEROOM GROUP LIMITED, et al., | Case No.  15-cv-01370 EJD |
| Plaintiffs, | **FACEBOOK, INC.'S NOTICE OF MOTION, AND MOTION TO DISMISS PLAINTIFFS' COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF** |
| v. | |
| FACEBOOK, INC., | Date:          September 3, 2015 |
| Defendant. | Time:          9:00 a.m. |
| | Courtroom:  4 (5th Floor) |
| | Judge:         Hon. Edward J. Davila |
| | Trial Date:  Not yet set |
| | Complaint filed: March 23, 2015 |

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

**FACEBOOK'S MOTION TO DISMISS
PLAINTIFFS' COMPLAINT
CASE NO. 15-CV-01370 EJD**

# TABLE OF CONTENTS

**Page**

NOTICE OF MOTION AND MOTION TO DISMISS ................................................................ 1

STATEMENT OF RELIEF SOUGHT ............................................................................................ 1

STATEMENT OF ISSUES TO BE DECIDED ............................................................................... 1

MEMORANDUM OF POINTS AND AUTHORITIES ................................................................... 2

I.     INTRODUCTION ................................................................................................................... 2

II.    BACKGROUND ..................................................................................................................... 3

    A.    The data center industry and BRG .......................................................................... 3

    B.    Facebook's modular data center .............................................................................. 4

    C.    BRG approaches Facebook with its BladeRoom solution ...................................... 5

    D.    BRG's trade secret allegations ............................................................................... 6

    E.    ██████████████████████████████████ .......... 7

III.   LEGAL STANDARD .............................................................................................................. 7

IV.   ARGUMENT ........................................................................................................................... 8

    A.    BRG's misappropriation of trade secrets claim fails because BRG does not
          sufficiently identify any trade secrets ..................................................................... 8

         1.    Plaintiffs do not describe their purported trade secrets with
             reasonable particularity ............................................................................. 9

         2.    ██████████████████████████████████ .......... 11

         3.    Many aspects of the BRG Methodology are publicly known or
             obvious and, therefore, not subject to trade secret protection ................. 12

             a.    ████████████████  is not a trade secret ................... 13

             b.    ███████████████████████  are not trade
                  secrets ............................................................................................ 15

             c.    The purported "benefits" of Facebook's RDDC are not
                  BRG's trade secrets ....................................................................... 15

    B.    BRG's complaint fails to state a claim for breach of contract ............................. 16

         1.    BRG fails to allege that the purportedly ██████████████
          ██████████ ...................................................................................... 16

         2.    ████████████████████████████ ............................... 17

         3.    BRG alleges no appreciable damage resulting from the alleged
             breach ....................................................................................................... 19

    C.    BRG cannot state a claim for breach of the covenant of good faith and fair
          dealing ................................................................................................................... 19

    D.    Plaintiffs' UCL and unjust enrichment claims are preempted by CUTSA ........... 21

    E.    BRG fails to state a claim under the UCL .............................................................. 22

         1.    BRG Lacks standing under the UCL ......................................................... 22

**TABLE OF CONTENTS**
**(continued)**

Page

2.     BRG fails to allege any "unfair" conduct .................................................. 22

3.     BRG fails to allege any "fraudulent" conduct.......................................... 23

4.     BRG has not sufficiently pled any "unlawful" conduct........................... 24

F.     BRG fails to state a claim for unjust enrichment ............................................. 24

V.     CONCLUSION ........................................................................................................... 25

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

# TABLE OF AUTHORITIES

**Page**

**Cases**

*Agency Solutions.Com, LLC v. TriZetto Grp., Inc.*,
   819 F. Supp. 2d 1001 (E.D. Cal. 2011) ..............................................................10, 14

*Allen v. Hylands, Inc.*,
   No. 12-cv-1150 DMG, 2012 WL 1656750 (C.D. Cal. May 2, 2012) ......................24

*Am. Paper & Packaging Prods., Inc. v. Kirgan*,
   183 Cal. App. 3d 1318 (1986) ................................................................................14

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ............................................................................................8, 19

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ............................................................................................8, 22

*Careau & Co. v. Sec. Pac. Bus. Credit, Inc.*,
   222 Cal. App. 3d 1371 (1990) ...........................................................................19, 20

*Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*,
   20 Cal. 4th 163 (1999) ...........................................................................................24

*Cole Asia Bus. Ctr., Inc. v. Manning*,
   No. CV 12-00956 DDP, 2013 WL 3070913 (C.D. Cal. June 18, 2013) .................11

*In re ConocoPhillips Co. Serv. Station Rent Contract Litig.*,
   No. 09-CV-2040-RMW, 2011 U.S. Dist. LEXIS 40471
   (N.D. Cal. Apr. 13, 2011) .......................................................................................23

*Cytodyn, Inc. v. Amerimmune Pharms., Inc.*,
   160 Cal. App. 4th 288 (2008) ...................................................................................8

*Digital Envoy, Inc. v. Google, Inc.*,
   370 F. Supp. 2d 1025 (N.D. Cal. 2005) ..................................................................21

*Diodes, Inc. v. Franzen*,
   260 Cal. App. 2d 244 (1968) ..................................................................................10

*Dollar Tree Stores Inc. v Toyama Partners LLC*,
   875 F. Supp. 2d 1058 (N.D. Cal. 2012) ..................................................................23

*Durell v. Sharp Healthcare*,
   183 Cal. App. 4th 1350 (2010) ...............................................................................24

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

*Farhang v. Indian Inst. of Tech., Kharagpur,*
No. C-08-02658 RMW, 2010 WL 2228936 (N.D. Cal. June 1, 2010) ....................................11

*Fraley v. Facebook, Inc.,*
830 F. Supp. 2d 785 (N.D. Cal. 2011) ...................................................24

*Freeman & Mills, Inc. v. Belcher Oil Co.,*
11 Cal. 4th 85 (1995) ...................................................20

*Gautier v. Gen. Tel. Co.,*
234 Cal. App. 2d 302 (1965)...................................................16

*Guz v. Bechtel Nat'l Inc.,*
24 Cal. 4th 317 (2000) ...................................................19

*Harris v. Wachovia Mortg., FSB,*
85 Cal. App. 4th 1018, 1023 (2010) ...................................................20

*Hill v. Roll Int'l Corp.,*
195 Cal. App. 4th 1295 (2011)...................................................24

*HiRel Connectors, Inc. v. United States,*
No. CV01-11069 DSF VBKX, 2006 WL 3618011 (C.D. Cal. Jan. 25, 2006) .........................11

*Imax Corp. v. Cinema Tech., Inc.,*
152 F.3d 1161 (9th Cir. 1998)...................................................9

*Kasky v. Nike, Inc.,*
27 Cal. 4th 939 (2002) ...................................................23

*Klein v. Chevron U.S.A., Inc.,*
202 Cal. App. 4th 1342 (2012)...................................................24

*Knievel v. ESPN,*
393 F.3d 1068 (9th Cir. 2005)...................................................8

*Kwikset Corp. v. Super. Ct.,*
51 Cal. 4th 310 (2011) ...................................................21, 22

*Levine v. Blue Shield of Cal.,*
189 Cal. App. 4th 1117 (2010)...................................................24

*Logtale, Ltd. v. IKOR, Inc.,*
No. C 11-5452 CW, 2012 WL 6044876 (N.D. Cal. Dec. 5, 2012)...........................9

*MAI Sys. Corp. v. Peak Computer, Inc.*,
  991 F.2d 511 (9th Cir.1993)................................................................................9

*Manufacturers Life Ins. Co. v. Super. Ct.*,
  10 Cal. 4th 257 (1995) ....................................................................................24

*Mattel, Inc. v. MGA Entm't, Inc.*,
  782 F. Supp. 2d 911 (C.D. Cal. 2011).............................................................21

*Melchior v. New Line Prods., Inc.*,
  106 Cal. App. 4th 779 (2003)..........................................................................24

*Morgan v. AT&T Wireless Servs., Inc.*,
  177 Cal. App. 4th 1235 (2009).........................................................................23

*NetApp, Inc. v. Nimble Storage, Inc.*,
  41 F. Supp. 3d 816, 839 (N.D. Cal. 2014) ......................................................21

*Okun v. Morton*,
  203 Cal. App. 3d 805 (1988)...........................................................................20

*Pension Trust Fund v. Federal Ins. Co.*,
  307 F.3d 944 (9th Cir. 2002)...........................................................................19

*In re Providian Credit Card Cases*,
  96 Cal. App. 4th 292 (2002).....................................................................13, 16

*Ruiz v. Gap, Inc.*,
  622 F. Supp. 2d 908 (N.D. Cal. 2009) .............................................................19

*Self Directed Placement Corp. v. Control Data Corp.*,
  908 F.2d 462 (9th Cir. 1990)...........................................................................14

*Silvaco Data Sys. v. Intel Corp.*,
  184 Cal. App. 4th 210 (2010)....................................................................13, 16

*SkinMedica, Inc. v. Histogen Inc.*,
  869 F. Supp. 2d 1176 (S.D. Cal. 2012) ...........................................................11

*Stutz Motor Car of Am., Inc. v. Reebok Int'l, Ltd.*,
  909 F. Supp. 1353 (C.D. Cal. 1995) ..........................................................11, 13

*SunPower Corp. v. SolarCity Corp.*,
  No. 12-CV-00694-LHK, 2012 WL 6160472 (N.D. Cal. Dec. 11, 2012) .................21

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

*Swinerton Builders v. Am. Home Assur. Co.*,
  No. C-12-6047 EMC, 2013 WL 1122022 (N.D. Cal. Mar. 15, 2013) ......................................19

*Synopsys, Inc. v. ATopTech, Inc.*,
  No. C 13-CV-02965 SC, 2013 WL 5770542 (N.D. Cal. Oct. 24, 2013) ...............10, 11, 13, 16

*Third Story Music, Inc. v. Waits*,
  41 Cal. App. 4th 798 (1995)..................................................................................................20

*In re Tobacco II Cases*,
  46 Cal. 4th 298 (2009) .........................................................................................................23

*Top Agent Network, Inc. v. Zillow, Inc.*,
  No. 14-cv-04769 RS, (N.D. Cal. Apr. 13, 2015) ........................................................... *passim*

*U.S. Med. Instruments, Inc. v. CFS N. Am., Inc.*,
  No. 13-CV-349-BEN (DHB), 2013 WL 6055387 (S.D. Cal. Nov. 13, 2013).........................18

*Vicuña v. Alexia Foods, Inc.*,
  No. 11-cv-6119, 2012 U.S. Dist. LEXIS 59408 (N.D. Cal. Apr. 27, 2012) ...........................24

*Von Saher v. Norton Simon Museum of Art at Pasadena*,
  592 F.3d 954 (9th Cir. 2009)...................................................................................................8

*Walker v. University Books, Inc.*,
  602 F.2d 859 (9th Cir. 1979)............................................................................................13, 16

*Wolf v. Walt Disney Pictures & Tel.*,
  162 Cal. App. 4th 1107 (2008)...............................................................................................20

**Statutes**

Cal. Bus. & Prof. Code
  § 17204...................................................................................................................................22

Cal. Civ. Code
  § 3426.1(d)..................................................................................................................8, 11, 12

California's Unfair Competition Law, California Business and Professions Code §
  17200, *et seq.* .....................................................................................................................1, 21

California Uniform Trade Secrets Act, California Civil Code
  § 3426, *et seq.* .........................................................................................................................1

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

# TABLE OF AUTHORITIES
## (continued)

**Page**

**Other Authorities**

Federal Rule of Civil Procedure
    Rule 8(a) ................................................................................................2, 7, 8, 9, 17, 18
    Rule 12(b) .........................................................................................................1, 3, 8

Merriam-Webster's Collegiate Dictionary 209 (11th Ed. 2012) ......................................................15

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on September 3, 2015 at 9:00 a.m., or as soon thereafter as this motion may be heard in Courtroom 4, 5th Floor of the above-entitled court, located at 280 South First Street, San Jose, California, defendant Facebook, Inc. ("Facebook") will and hereby does move to dismiss plaintiffs BladeRoom Group Ltd. and Bripco (UK) Limited's (hereafter collectively "BRG" or "Plaintiffs") Complaint filed on March 23, 2015 (Docket Entry No. 3) ("Complaint") under Federal Rule of Civil Procedure 12(b)(6). This motion is based on this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, the concurrently filed Request for Judicial Notice ("RJN"), the pleadings and evidence on file in this matter, oral argument of counsel, and such other materials and argument as may be presented in connection with the hearing on the motion.

## STATEMENT OF RELIEF SOUGHT

Facebook respectfully seeks dismissal of the Complaint with prejudice for failure to state a claim.

## STATEMENT OF ISSUES TO BE DECIDED

1.      Whether BRG's complaint states a claim for misappropriation of trade secrets under the California Uniform Trade Secrets Act, California Civil Code section 3426, *et seq.* ("CUTSA").

2.      Whether BRG's complaint states a claim for breach of contract.

3.      Whether BRG's complaint states a claim for breach of the implied covenant of good faith and fair dealing.

4.      Whether BRG's complaint states a claim under California's Unfair Competition Law, California Business and Professions Code sections 17200, *et seq.* ("UCL").

5.      Whether BRG's complaint states a claim for unjust enrichment.

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1.

FACEBOOK'S MOTION TO DISMISS
PLAINTIFFS' COMPLAINT
CASE NO. 15-CV-01370 EJD

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

BRG brings five claims against Facebook, all variations of its core claim that Facebook misappropriated BRG's alleged trade secrets and ███████████ related to the design and construction of data centers. However, BRG's Complaint fails to state a claim on which relief can be granted and, accordingly, must be dismissed.

First—and dispositive of all five claims— BRG fails to identify a single piece of ████████████████ much less any trade secret, that Facebook improperly used or disclosed. Instead, BRG alleges that the entirety of its "BRG Methodology"—never defined more precisely than "know-how, design, supply chain, fabrication, and construction techniques, and all the other aspects of modular data center construction developed by BRG"—is confidential and subject to trade secret protection. (Complaint ¶ 3.) These allegations fail to comply with even the basic pleading requirements articulated in Fed. R. Civ. P. 8(a) and *Twombly/Iqbal*.

Second, by its own admission, ████████████████████████████████████████ ████████████████████████████████████████████████ ████████████████████████████████

Third, BRG's Complaint admits that some elements of its purportedly innovative data-center design are publicly known but fails ever to distinguish *which* elements are public and which are purportedly confidential. BRG's allegations are thus insufficient to put Facebook on notice of its claim.

All of BRG's remaining claims suffer from additional fatal defects: BRG has not adequately alleged a breach ███████████████████████████████ or contract-based damages; BRG cannot state a claim for breach of the implied covenant where the parties' relationship is governed by contract; BRG's unjust enrichment and UCL claims are preempted by CUTSA; BRG lacks standing under the UCL; and BRG's unjust enrichment claim is not an independent cause of action.

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

2.

FACEBOOK'S MOTION TO DISMISS
PLAINTIFFS' COMPLAINT
CASE NO. 15-CV-01370 EJD

1    Accordingly, Facebook respectfully asks the Court to dismiss the Complaint in its entirety

2 with prejudice. If the Court chooses to give BRG an attempt to cure the deficiencies of the

3 complaint, it should order BRG to identify its alleged trade secrets with particularity.

4    **II.    BACKGROUND[1]**

5    As the provider of free Internet-based services that connect over 1.4 billion people around

6 the world, Facebook stores large amounts of data in multiple data centers containing thousands of

7 servers globally. Facebook has its own team of in-house designers and engineers who lead the

8 design and construction of numerous innovative and cost-effective data centers tailored to

9 Facebook's specific needs.

10    BRG is in the business of constructing standardized, pre-made data center solutions for its

11 clients. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

12 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ BRG has now brought a lawsuit based on vague

13 allegations and publicly-known design concepts that are not protectable as trade secrets or

14 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

15    **A.    The data center industry and BRG**

16    As BRG alleges, data centers are buildings specially engineered to securely house servers.

17 (Complaint ¶ 14.) These buildings have particular design requirements calculated, at least in part,

18 to prevent the servers from overheating. (*Id.*) Data center construction can be "modular" or

19 "stick built." Traditional, or "stick built," data centers are constructed like ordinary buildings—

20 on site, from the ground up. (*Id.* ¶ 15.) In so-called "modular" data center construction, ▮▮▮▮▮

21 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

22 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (*Id.* ¶ 17.) Dozens of

23 companies advertise that they offer "modular" and prefabricated data center solutions.[2]

24    ───────────────

25 [1] As it must for a motion under Fed. R. Civ. Proc. 12(b)(6), Facebook takes the allegations of the
   Complaint as true for purposes of this motion only.

26 [2] *See e.g.*, Declaration of Kristine Forderer in Support of Facebook's RJN ("Forderer Decl.") at
   Ex. C (IBM: "an IBM prefabricated modular data center . . . can be deployed quickly at virtually

27 any location"); *id.* at Ex. D (BASELAYER: "BASELAYER'S modular data center infrastructure
   is manufactured in a factory and tested before it is delivered to the customer."); *id.* at Ex. E

28 (Huawei: "Huawei's IDS2000 Series Modular Data Centers enables quick deployment with high

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

3.

FACEBOOK'S MOTION TO DISMISS
PLAINTIFFS' COMPLAINT
CASE NO. 15-CV-01370 EJD

1    BRG claims to have ██████████████████████████ for clients ███████ since 2009. (*Id.*

2    ¶ 18.)

3         **B.    Facebook's modular data center.**

4         Founded in 2004, Facebook operates the popular website Facebook.com and associated

5    mobile applications. People use Facebook to stay in touch with friends and family, to discover

6    what's going on in the world, and to share and express what matters to them. To that end,

7    Facebook is faced with the challenge of hosting massive amounts of data shared through its

8    platform. ████████████████████████████████████████████████████████████

9    ██████████████ (*Id.* ¶ 21.) Facebook now has several data center campuses throughout the

10   United States and the world, including a campus in Luleå, Sweden. (*Id.* ¶ 43.) Facebook shares

11   certain data-center specifications and designs with the public through the OpenCompute Project

12   to "spark a collaborative dialogue" with other innovators about how to improve data center

13   technology. (*Id.* ¶ 45.)

14        In addition to Facebook's ████████████████████████████████, Facebook's

15   specialists sought to develop a modular solution that could be deployed at the uniquely large scale

16   required for Facebook's business. (Forderer Decl. Ex. A (Facebook aims to "take[] modular and

17   lean construction principles and appl[y] them at the scale of a Facebook data center.").) In

18   October 2012, Facebook hosted a brainstorming session—termed a "hack"—with various lean

19   construction experts from other fields. (Complaint ¶ 52.) The goal of the hack was to design a

20   Facebook-sized data center that "would look less like a construction project and more like a

21   manufactured product." (*Id.*) The Rapid Deployment Data Center ("RDDC") concept arose out

22   of this collaboration. (*Id.*) In January 2014, Facebook publicly announced the plans for its

23   modular data center via the OpenCompute Project. (*Id.* ¶ 46.)

24

25

26   scalability"); *id.* at Ex. F (Datapod: "The Datapod [modular data center] is . . . mass
     manufactured, factory tested and rapidly deployed"); *id.* at Ex. G (Johnson Controls: "[D]elivered
27   for up to 30 percent less initial cost than for traditional construction, but also in half the time");
     *id.* at Ex. H (Dell: "Many companies offer modular solutions, but Dell has a track record of over
28   170 MDC solutions . . . deployed across the U.S.").



In Facebook's OpenCompute presentation and subsequent blog postings about the RDDC, Facebook architect Marco Magarelli explained that, among other features, ███████████████ ███████████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████████████ "the flat-pack assemblies made famous by Ikea." (Forderer Decl. Ex. A.) ████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████████████ █████████████ (Complaint ¶ 56.)

**C.    BRG approaches Facebook with its BladeRoom solution.**

BRG first approached Facebook to introduce its product in October 2011.  (*Id.* ¶ 21.)

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

5.

FACEBOOK'S MOTION TO DISMISS
PLAINTIFFS' COMPLAINT
CASE NO. 15-CV-01370 EJD



**D.    BRG's trade secret allegations.**

The Complaint identifies a laundry list

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

6.

FACEBOOK'S MOTION TO DISMISS
PLAINTIFFS' COMPLAINT
CASE NO. 15-CV-01370 EJD

(*Id.* ¶ 73.) BRG alleges that Facebook improperly used these purported trade secrets in developing the RDDC, and to construct a data center in Luleå, as well as by disclosing them to third parties. (*Id.* ¶¶ 78-79.) BRG also alleges that "some" of its "innovative pre-fabrication construction, shipping, and installation techniques" are publicly known or subject to public patents and patent applications, and thus necessarily not subject to trade secret protection. (*Id.* ¶¶ 3, 19.) Indeed, BRG even admits that some of its allegedly "innovative techniques" are made public in "granted patents and pending patent applications," and therefore, by definition, not eligible for trade-secret protection. (*Id.* ¶¶ 3, 19.)

Based on these allegations, BRG asserts claims for breach of contract, breach of the covenant of good faith and fair dealing, misappropriation of trade secrets, unjust enrichment, and unfair competition against Facebook. Facebook now moves to dismiss the Complaint in its entirety, with prejudice.

## III.    LEGAL STANDARD

The Federal Rules require pleadings to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." FRCP 8(a)(2). Although "Rule 8 [] does not require 'detailed factual allegations,'" it demands more than "'labels and conclusions.'"

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

7.

FACEBOOK'S MOTION TO DISMISS
PLAINTIFFS' COMPLAINT
CASE NO. 15-CV-01370 EJD

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). A "'formulaic recitation of the elements of a cause of action will not do.'" *Id.*

To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678; *see also Twombly*, 550 U.S. at 555 ("Factual allegations must be enough to raise a right to relief above the speculative level[.]"). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief,'" and a court should, therefore, grant a motion to dismiss. *Iqbal*, 556 U.S. at 679 (quoting Rule 8(a)(2)) (alteration omitted).

On a Rule 12(b)(6) motion to dismiss, the district court may consider documents referred to and relied upon in the complaint, even if those documents were not physically attached to it. *See, e.g.*, *Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005). Courts may also consider publicly available documents relevant to the plaintiff's allegations for the purpose of establishing what information exists within the public realm. *See, e.g.*, *Von Saher v. Norton Simon Museum of Art at Pasadena,* 592 F.3d 954, 960 (9th Cir. 2009).

BRG's claims fail to meet the pleading requirements under Rule 12(b), and accordingly, must be dismissed.

## IV. ARGUMENT

### A. BRG's misappropriation of trade secrets claim fails because BRG does not sufficiently identify any trade secrets.

To state a claim under CUTSA, a plaintiff must demonstrate that (1) the plaintiff owned a trade secret, (2) that the defendant improperly used or disclosed that trade secret, and (3) that the plaintiff suffered harm. *Cytodyn, Inc. v. Amerimmune Pharms., Inc.*, 160 Cal. App. 4th 288, 296 (2008). CUTSA defines a "trade secret" as: "information, including a formula, pattern, compilation, program, device, method, technique, or process . . . ." Cal. Civ. Code § 3426.1(d).

In order to qualify as a trade secret, the information must derive independent economic value from "not being generally known to the public" and must be the subject of reasonable efforts to maintain its secrecy. *Id.* Additionally, in order to maintain a trade secret misappropriation claim, a plaintiff must identify the alleged trade secret with "sufficient particularity to separate it from matters of general knowledge in the trade[.]" *Imax Corp. v. Cinema Tech., Inc.*, 152 F.3d 1161, 1164–65 (9th Cir. 1998) (internal quotations omitted).

BRG's allegations fall short of these requirements. BRG alleges that Facebook misappropriated its trade secrets by disclosing them to third-party contractors and the public, and by using them to develop Facebook's RDDC. (Complaint ¶¶ 78-79.) The Complaint, however, fails to state a claim for misappropriation for multiple independent reasons. First, BRG does not identify the purported "trade secrets" with any degree of particularity. Second, ███████████ ███████████████████████████████████████████████████████████████████ ███████████████████████. Third, BRG fails to distinguish which aspects of its BRG Methodology are trade secrets, and which are publicly known, patented, or obvious to end users.

### 1. BRG does not describe its purported trade secrets with reasonable particularity.

In order "[t]o pass muster under Rule 8, plaintiffs raising claims under CUTSA must itemize the information claimed as a trade secret with *reasonable particularity*." *Top Agent Network, Inc. v. Zillow, Inc.*, No. 14-cv-04769 RS, at *8 (N.D. Cal. Apr. 13, 2015) (dismissing trade secret claims under CUTSA) (emphasis added). On a motion to dismiss, Plaintiffs "carry the burden" of identifying protectable trade secrets and "showing that they exist." *Logtale, Ltd. v. IKOR, Inc.*, No. C 11-5452 CW, 2012 WL 6044876, at *7 (N.D. Cal. Dec. 5, 2012) (quoting *MAI Sys. Corp. v. Peak Computer, Inc.*, 991 F.2d 511, 522 (9th Cir.1993)). BRG's complaint never identifies its alleged "trade secrets" with any degree of particularity ████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1 ████████████████████████████████████████████████████████

2 ████████████████████ (*Id.*) These allegations are insufficient and warrant dismissal.

3       Courts routinely dismiss allegations similar to BRG's, where trade secret allegations are

4 "broad" and lack sufficient "detail to allow the Court to make the required '*item-by-item*

5 *determination*' of what is and is not protectable under CUTSA." *Top Agent Network, Inc. v.*

6 *Zillow, Inc.*, No. 14-cv-04769 RS, at *8 (N.D. Cal. Apr. 13, 2015) (dismissing CUTSA claims

7 where plaintiff "aver[ed] only in broad strokes [] what pieces of information shared . . .

8 constitute trade secrets") (emphasis added).  Under CUTSA, "ideas and broad conceptualizations

9 are not trade secrets." *Agency Solutions.Com, LLC v. TriZetto Grp., Inc.*, 819 F. Supp. 2d 1001,

10 1019, 1024 (E.D. Cal. 2011) (finding that plaintiff failed to identify a trade secret with

11 "specificity" where, "there [was] no description of what the information was, or of a direct

12 connection between the information provided and any specific product.").  In California, plaintiffs

13 are obligated to describe the actual "*subject matter* of [their] so-called secret process" not just

14 identify the broad topics to which their trade secrets relate.  *Diodes, Inc. v. Franzen*, 260 Cal.

15 App. 2d 244, 251-53 (1968) (dismissing trade secret claims where "the subject matter of the so-

16 called 'secret process' is not stated, except to hint that it had something to do with the

17 manufacture of diodes.") (emphasis added).

18       For example, in *Synopsys, Inc. v. ATopTech, Inc.*, the court held that the plaintiff's

19 identification of only a generic list of "proprietary input and output formats, scripts, and technical

20 product documentation" lacked the required specificity to support a trade secrets claim and was

21 an insufficient "conclusions of law disguised as factual pleadings." No. C 13-CV-02965 SC,

22 2013 WL 5770542, at *6 (N.D. Cal. Oct. 24, 2013).  Consequently, the court dismissed

23 Synopsys's trade-secret allegations as "too sweeping and vague for Defendant to be on notice of

24 what trade secrets are at issue." *Id.*  In another decision, the Northern District held that plaintiffs

25 failed to adequately identify their trade secrets with "particularity" where their allegations

26 identified as purported trade secrets nothing more than "specifics regarding the actual

27 implementation of the global railways and Indian Railways project."

28

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

10.

FACEBOOK'S MOTION TO DISMISS
PLAINTIFFS' COMPLAINT
CASE NO. 15-CV-01370 EJD

*Farhang v. Indian Inst. of Tech., Kharagpur*, No. C-08-02658 RMW, 2010 WL 2228936, at *14 (N.D. Cal. June 1, 2010) (citations omitted).

As in *Zillow*, *Synopsis*, and *Farhang*, BRG's ███████████████████████████ ███████████████████████████████████████████ is insufficient to state a claim under CUTSA. BRG does not identify, item by item, the specific "trade secrets" for the Court to evaluate under CUTSA. For that reason, BRG's Complaint fails to state a claim as a matter of law.

**2.** ████████████████████████████████████████████████

BRG's claims also fail because ████████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████ (Complaint ¶ 34.) Under CUTSA, a "trade secret" must be the "subject of efforts that are reasonable under the circumstances to maintain its secrecy." Cal. Civ. Code § 3426.1(d). "In light of this requirement of secrecy, it is clear that an unprotected disclosure of the holder's secret terminates the existence of the trade secret." *Stutz Motor Car of Am., Inc. v. Reebok Int'l, Ltd.*, 909 F. Supp. 1353, 1359 (C.D. Cal. 1995) *aff'd*, 113 F.3d 1258 (Fed. Cir. 1997).

████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████ (Complaint ¶¶ 34-35; 92.) As is well-established, "an unprotected disclosure of the holder's secret terminates the existence of the trade secret." *SkinMedica, Inc. v. Histogen Inc.*, 869 F. Supp. 2d 1176, 1194 (S.D. Cal. 2012). Thus, "[i]f an individual discloses his trade secret to others who are under no obligation to protect the confidentiality of the information, or otherwise publicly discloses his trade secret, his property right is extinguished." *HiRel Connectors, Inc. v. United States*, No. CV01-11069 DSF VBKX, 2006 WL 3618011, at *7 (C.D. Cal. Jan. 25, 2006); *see also Cole Asia Bus. Ctr., Inc. v. Manning*, No. CV 12-00956 DDP (CWx), 2013 WL 3070913, at *4 (C.D. Cal. June 18, 2013) (no trade secret protection where information was shared with plaintiff's competitor). ████████████ ████████████████████████████████████████████████████████████

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

11.

FACEBOOK'S MOTION TO DISMISS
PLAINTIFFS' COMPLAINT
CASE NO. 15-CV-01370 EJD

[REDACTED] This failure to
distinguish its trade secrets from other, non-trade secret information renders BRG entire claim
"defective." *Zillow*, No. 14-cv-04769 RS, at *9 (N.D. Cal. Apr. 13, 2015) (where plaintiff didn't
"clearly demonstrate that all of the content [defendant] misappropriated is 'information'
protectable under CUTSA . . . failure to distinguish the allegedly shared trade secrets from non-
trade secret information renders th[e] claim defective.").

      **3.    Many aspects of the BRG Methodology are publicly known or obvious and, therefore, not subject to trade secret protection.**

      Throughout the Complaint, BRG refers to its alleged trade secret information as the "BRG
Methodology" which consists of, "confidential know-how, design, supply chain, fabrication and
construction techniques, and all other aspects of modular data center construction developed by
BRG . . . ." (Complaint ¶ 3.) However, BRG also volunteers that "some" of its "innovative pre-
fabrication construction, shipping, and installation techniques" are "publicly known," while
others are kept as "confidential trade secrets." (*Id.*) Additionally, BRG alleges that "[s]ome
aspects of the BRG Methodology are the subject of granted patents and pending patent
applications . . . ." (*Id.* ¶ 19.) Information that is "publicly known" is, by definition, not a trade
secret. Cal. Civ. Code § 3426.1(d) (a "trade secret" "[d]erives independent economic value,
actual or potential, from *not being generally known* to the public…") (emphasis added). For that

1  reason, information that is subject to a public patent or a published patent application also cannot

2  constitute a protectable trade secret. *Stutz Motor Car of Am.*, 909 F. Supp. at 1359 ("It is well

3  established that disclosure of a trade secret in a patent places information comprising the secret

4  into the public domain.").

5        Relatedly, BRG's complaint does not even attempt to parse the admittedly "publicly

6  known" and patented aspects of the methodology from its alleged trade secrets. By doing so,

7  BRG's Complaint does not put Facebook on notice of "where the boundary between [the alleged]

8  secrets and general knowledge might lie." *Synopsys, Inc.*, 2013 WL 5770542, at *6. This failure

9  "renders [its misappropriation] claim defective." *Zillow*, No. 14-cv-04769 RS, at *9 (N.D. Cal.

10  Apr. 13, 2015) (dismissing complaint because the plaintiff failed "to distinguish the allegedly

11  shared trade secrets from non-trade secret information"). This is an independently sufficient reason to

12  dismiss its complaint.

13        Additionally, the subject matter of a trade secret must not be "obvious." *Walker v.*

14  *University Books, Inc.*, 602 F.2d 859, 865 (9th Cir. 1979). Aspects of a product's design or

15  implementation that are apparent to end users "cannot constitute trade secrets because they are

16  not secret." *Silvaco Data Sys. v. Intel Corp.*, 184 Cal. App. 4th 210, 221-22 (2010), *overruled on*

17  *other grounds by Kwikset Corp. v. Super. Ct.*, 51 Cal. 4th 310 (2011) (the "underlying design" of

18  a software program and distinctive characteristics of that design such as "improved performance"

19  are not trade secret because they are evident to users of the product); *see also In re Providian*

20  *Credit Card Cases*, 96 Cal. App. 4th 292, 305 (2002) (telemarketing scripts were not trade secrets

21  because they were used on customers over the telephone). In this case, the Complaint contains

22  several examples of concepts that BRG identifies as ███████████████████████████

23  (Complaint ¶ 56,) which are actually obvious or commonly known within the data center industry

24  and could never qualify for trade secret protection. ████████████████████████

25  ████████████████████████████████████████████████████████

26  ████████████████████████████████████████████████████████

27          a.    ████████████████  **is not a trade secret**

28  The Complaint describes ████████████████████████████████

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

13.

FACEBOOK'S MOTION TO DISMISS
PLAINTIFFS' COMPLAINT
CASE NO. 15-CV-01370 EJD

1  ██████████████████████████████████████████████

2  ████████████████████████████████████ cannot constitute

3  a "trade secret." BRG itself described ████████████ in a publicly available promotional

4  video from 2010: "[w]e build it completely in the factory, so its all completely installed, high

5  quality installation, fully tested and commissioned in the factory, it's then disconnected in

6  sections, it's transported to site and then it is literally plugged back together again[.]" (Forderer

7  Decl. Ex. B.)

8      Other readily available industry sources pre-dating Facebook's OpenCompute

9  presentation, publicly describe ████████████ modular construction. (*See id.* at Ex. I

10  (December 2, 2008 blog describing plans for Microsoft's Generation 4 Modular Data Center:

11  "We intend to have our components built in factories and then assemble them in one location (the

12  data center site) very quickly."); *id.* at Ex. J (March 23, 2012 press release announcing an

13  upcoming data center symposium and describing the "modular data center" from Digital Realty,

14  in which: "[e]ach component is built and pre-wired on a transportable skid and shipped to the

15  customer's site for final assembly."); *id.* at Ex. M (November 2012 article on Turtle Consulting

16  Group website title "Cannon Technologies Launches High-Spec Flat-Pack Data Centre External

17  Grade Building": "New to the commercial modular data centre industry is Cannon Technologies'

18  Incremental T4 Modular Datacentre . . . . Every panel is one-man manageable and simply slots

19  together to form a building complete with data racks in place.").)

20  ████████████ that is widely known in BRG's industry is not entitled to protection as a

21  "trade secret." *Am. Paper & Packaging Prods., Inc. v. Kirgan*, 183 Cal. App. 3d 1318, 1326

22  (1986) (information commonly known to members of an industry is not considered a trade

23  secret); *see also Agency Solutions.Com, LLC*, 819 F. Supp. 2d at 1019 ("insight, knowledge and

24  know-how acquired by an insider to a particular trade does not, in and of itself, constitute trade

25  secrets."); *see also Self Directed Placement Corp. v. Control Data Corp.*, 908 F.2d 462, 465-66

26  (9th Cir. 1990) (job search instruction techniques like critiquing thank you notes and holding

27  mock cocktail parties were not trade secrets as part of plaintiff's employment counselling

28  program because they were "matter[s] of common public knowledge"). Accordingly, in light of

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

14.

FACEBOOK'S MOTION TO DISMISS
PLAINTIFFS' COMPLAINT
CASE NO. 15-CV-01370 EJD

BRG's own public disclosures, as well as widespread industry knowledge on the topic, BRG's

trade secret claims cannot be premised ████████████████████████████████

        **b.**   ████████████████████████████████████ **are not trade secrets.**

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████ for modular

data center construction is described in dozens of public sources that pre-date Facebook's

OpenCompute presentation. (*See, e.g.*, Forderer Decl. Ex. K (August 2013 "Trend Watch" article

titled: "Making Flat Pack Shipping an Industry Standard" about use of flat pack shipping for data

centers); *id.* at Ex. L (May 2007 Data Center Dynamics article titled: "IBM puts faith in 'flat

pack' model": "[IBM] unveiled a modular data center which . . . comes in 'flat pack boxes' and

can be put up anywhere.").)

        ██████████████████ is a widely known structural component. Merriam-Webster's

Collegiate Dictionary 209 (11th Ed. 2012) (defining "chassis" as "the supporting frame of a

structure (as an automobile or television)"). ████████████████████████ for modular data

construction is neither secret nor unique. (*See, e.g.*, Forderer Decl. Ex. N (Polargy advertising its

"modular" "containment framework or chassis" for data centers: "we are bringing together the

key components of Containment, Cable pathways, Power bus-ways or pathways and, Lighting

into a single modular chassis.").)

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████

        **c.**    **The purported "benefits" of Facebook's RDDC are not BRG's trade secrets.**

        BRG also alleges that Facebook misappropriated the "hoped-for benefits" of Facebook's

RDDC, such as ████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

██████████████████████████ (Complaint ¶¶ 55-56.) These "benefits," however, are just

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

15.

FACEBOOK'S MOTION TO DISMISS
PLAINTIFFS' COMPLAINT
CASE NO. 15-CV-01370 EJD

fundamental goals of design rather than specific techniques or methods. Consequently, they cannot, as a matter of law, qualify for trade secret protection because they are obvious to any user or buyer who would plainly see ████████████████████████████████ ████████████████████. *See Walker*, 602 F.2d at 865; *In re Providian Credit Card Cases*, 96 Cal. App. 4th at 305; *Silvaco Data Sys.*, 184 Cal. App. 4th at 221-22.

\* \* \* \*

As described above, BRG has not sufficiently identified its trade secrets. Further, at least some of the concepts BRG identifies in the Complaint are not trade secrets because they are matters of public knowledge, obvious to end users, or ████████████████████████████ ██████████████. As BRG fails to distinguish the public or disclosed elements of its "BRG Methodology" from any elements that could be protectable as trade secrets, BRG's misappropriation claim cannot survive. *See Zillow* No. 14-cv-04769 RS, at \*9 (N.D. Cal. Apr. 13, 2015); *Synopsys, Inc.*, 2013 WL 5770542, at \*6.

Accordingly, BRG's CUTSA claim must be dismissed.

**B.      BRG's complaint fails to state a claim for breach of contract.**

BRG premises its breach-of-contract claim on the allegation ██████████████████ ████████████████████████████████████████████████████ (Complaint ¶ 62.) To state a claim for breach of contract, Plaintiffs must plead: "[1] the contract, [2] plaintiffs' performance (or excuse for nonperformance), [3] defendant's breach, and [4] damage to plaintiff therefrom." *Gautier v. Gen. Tel. Co.*, 234 Cal. App. 2d 302, 305 (1965). ███████████████ ████████████████████████████████████████████████████████████ ██████████████ or that BRG was actually harmed by Facebook's alleged conduct. Consequently, BRG has not stated a claim for breach of contract.

**1.      BRG fails to allege that the purportedly** ██████████ ████████████████████

████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO



1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19                                    BladeRoom's

20 failure to "plainly" allege that the very concepts

21                                      fatal to its claim for breach of contract.  Fed.

22 R. Civ. P. 8(a)(2) (requiring "a short and plain statement of the claim showing that the pleader is

23 entitled to relief.")

24          **2.**

25

26         Even assuming *arguendo* that Facebook learned

27                    "benefits" of modular construction from BRG,

28

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

17.

FACEBOOK'S MOTION TO DISMISS
PLAINTIFFS' COMPLAINT
CASE NO. 15-CV-01370 EJD



For instance, BRG described its own ▮▮▮▮▮▮▮▮▮▮ in a public promotional video in 2010. (*See* section A(3)(a), supra; Forderer Decl. Ex. B.) ▮▮▮▮▮▮ *See* section A(3)(b), *supra* (citing publicly available descriptions of both elements.) BRG does not articulate any theory as to how Facebook's own "hoped for" benefits of its RDDC, such as ▮▮▮▮▮ ▮▮▮▮▮▮ could constitute BRG's ▮▮▮▮▮ ▮▮▮▮▮ (*See, e.g.*, Forderer Decl. Ex. C (IBM's modular data centers "can be deployed quickly at virtually any location"); *id.* at Ex. O (Data Centers Delivered's modular data center allows customers to "eliminate on-site construction waste").)

To the extent BRG alleges that ▮▮▮▮▮ ▮▮▮▮▮ with any degree of specificity and has not complied with the obligation under Rule 8 to put Facebook on notice of its claims. *See U.S. Med. Instruments, Inc. v. CFS N. Am., Inc.*, No. 13-CV-349-BEN (DHB), 2013 WL 6055387, at *5 (S.D. Cal. Nov. 13, 2013) (a claim for breach of contract needs to identify the circumstances surrounding the alleged breach in order to give fair notice to the defendant under Rule 8 of the Federal Rules of Civil Procedure.)

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

FACEBOOK'S MOTION TO DISMISS
PLAINTIFFS' COMPLAINT
CASE NO. 15-CV-01370 EJD

### 3. BRG alleges no appreciable damage resulting from the alleged breach.

Finally, BRG fails to provide facts anywhere in its pleadings to support a finding that BRG has actually suffered damages ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Instead, the Complaint provides no more than a conclusory statement that "[a]s a direct and proximate result of Facebook's breaches of ▮▮▮▮▮▮▮▮▮▮▮▮, BRG has suffered damages[.]" (Complaint ¶ 63.) Under black letter California and federal law, plaintiffs must allege *actual facts* related to damages in order to survive a motion to dismiss. *See Swinerton Builders v. Am. Home Assur. Co.*, No. C-12-6047 EMC, 2013 WL 1122022, at *1 n.1 (N.D. Cal. Mar. 15, 2013) ("conclusory allegations" of damages "are insufficient to survive a motion to dismiss) (citing *Iqbal,* 556 U.S. at 678); *Ruiz v. Gap, Inc.*, 622 F. Supp. 2d 908, 917 (N.D. Cal. 2009) ("Under California law, a breach of contract claim requires a showing of appreciable and actual damage.").

### C. BRG cannot state a claim for breach of the covenant of good faith and fair dealing.

BRG's claim for breach of the covenant of good faith and fair dealing fails for several claim-specific reasons.

First, BRG alleges the same operative facts as the basis of both its breach of contract and breach of covenant claims. (Complaint ¶¶ 62, 68.) Specifically, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (*Id.*) Where, as here, the basis for BRG's covenant claim and resulting damages are the same as those underlying its breach of contract claim, the covenant claim is superfluous "as no additional claim is actually stated." *Careau & Co. v. Sec. Pac. Bus. Credit, Inc.*, 222 Cal. App. 3d 1371, 1394-95 (1990) (affirming dismissal of a breach of implied covenant claim). It must therefore be stricken as a matter of law. *Guz v. Bechtel Nat'l Inc.*, 24 Cal. 4th 317, 352 (2000).

Second, BRG has not pled, nor could it, that BRG and Facebook have a "special" or fiduciary relationship, required for an implied covenant of good faith and fair dealing claim. *Pension Trust Fund v. Federal Ins. Co.*, 307 F.3d 944, 955 (9th Cir. 2002) ("Generally, no cause

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

19.

FACEBOOK'S MOTION TO DISMISS
PLAINTIFFS' COMPLAINT
CASE NO. 15-CV-01370 EJD

1  of action for the tortious breach of the implied covenant of good faith and fair dealing can arise

2  unless the parties are in a 'special relationship' with 'fiduciary characteristics.'") (internal

3  quotations omitted).  Where, as here, "the transaction [at issue] is [a] quintessential[] ordinary

4  arms-length commercial transaction between two parties of equal bargaining strength," California

5  applies no covenant of good faith and fair dealing.  *Careau & Co.*, 222 Cal. App. 3d at 1400

6  (affirming dismissal of plaintiff' breach of the covenant of good faith and fair dealing in a

7  "commercial banking transaction" because there was no special relationship).  In fact, these

8  claims are generally only allowed in the insurance context.  *Harris v. Wachovia Mortg., FSB*, 185

9  Cal. App. 4th 1018, 1023 (2010)  (noting that "[i]n *Freeman & Mills, Inc. v. Belcher Oil Co.*

10  (1995) 11 Cal.4th 85, 44 Cal.Rptr.2d 420, 900 P.2d 669, the California Supreme Court held that

11  the tort of breach of the covenant of good faith and fair dealing applies only in the context of

12  insurance contracts.").  Accordingly, the Court should not permit BRG to proceed with its breach

13  of implied covenant claim because there is no special relationship between BRG and Facebook.

14       Finally, the implied covenant applies only in limited circumstances where a contract

15  expressly grants a party discretion over its own performance, such that a literal interpretation of

16  the contract would render it illusory and unenforceable.  *See Okun v. Morton*, 203 Cal. App. 3d

17  805, 820 (1988) ("where a contract confers on one party a discretionary power affecting the rights

18  of the other, a duty is imposed to exercise that discretion in good faith and in accordance with fair

19  dealing") (internal quotations omitted); *Third Story Music, Inc. v. Waits*, 41 Cal. App. 4th 798,

20  806-08 (1995) (collecting cases illustrating the limited circumstances in which an implied

21  covenant claim can be applied); *Wolf v. Walt Disney Pictures & Tel.*, 162 Cal. App. 4th 1107,

22  1121 (2008) (contract expressly gave defendant "unfettered discretion" to license or not license

23  movie franchise as it "saw fit").  In such cases, courts prefer to uphold the contract and therefore

24  find that the party with discretion must exercise it in good faith.  *Third Story Music*, 41 Cal. App.

25  4th at 802-06.  ███████████████████████████████████████████████████████████

26  ███████████████████████████████████████████████████  As a result, BRG's breach

27  of the implied covenant claim should be dismissed.

28

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

20.

FACEBOOK'S MOTION TO DISMISS
PLAINTIFFS' COMPLAINT
CASE NO. 15-CV-01370 EJD

**D.     Plaintiffs' UCL and unjust enrichment claims are preempted by CUTSA.**

CUTSA "provides *the exclusive civil remedy* for conduct falling within its terms." *Silvaco Data Sys.*, 184 Cal. App. 4th at 236 (emphasis added), *overruled on other grounds by Kwikset Corp. v. Super. Ct.*, 51 Cal. 4th 310 (2011).  Accordingly, BRG's UCL and unjust enrichment claims are both preempted by CUTSA.  As courts have explained, CUTSA "preempts alternative civil remedies" based on "misappropriation of confidential information, whether or not that information meets the statutory definition of a trade secret."  *Mattel, Inc. v. MGA Entm't, Inc.*, 782 F. Supp. 2d 911, 986-87 (C.D. Cal. 2011).  Claims are preempted even where a plaintiff's trade secret claim otherwise fails. *See SunPower Corp. v. SolarCity Corp.*, No. 12-CV-00694-LHK, 2012 WL 6160472, at *6 (N.D. Cal. Dec. 11, 2012) ("claims based on the misappropriation of information may be superseded notwithstanding the fact that the information ultimately fails to qualify as a trade secret.").

BRG's unjust enrichment claim is based on the same disclosures and alleged misappropriation of the same information as BRG's CUTSA claim.  BRG alleges that Facebook was unjustly enriched because Facebook used BRG's information to ' ███████████ its RDDC concept, which it presented to the world as its own." (Complaint ¶ 85.)  These are the same core allegations underlying its CUTSA claim. (*Id.* ¶¶ 78-79.)

Similarly, BRG's UCL claim is based on the same disclosures and alleged misappropriation of BRG's confidential information as BRG's CUTSA claim.  BRG's allegations recite that "Facebook's acts *described above* constitute unfair business practices and unfair competition as defined by California Business & Professions Code § 17200, *et seq.*" (Complaint ¶ 91 (emphasis added).)  The acts "described above" reference the facts underlying BRG's CUTSA claim. (*Id.* ¶¶ 78-79.)

Where, as here, UCL and unjust enrichment claims are based on the same underlying facts as a misappropriation claim, UCL and unjust enrichment claims are preempted. *Mattel, Inc.*, 782 F. Supp. 2d at 986 (dismissing UCL claims); *NetApp, Inc. v. Nimble Storage, Inc.*, 41 F. Supp. 3d 816, 839 (N.D. Cal. 2014) (same); *Digital Envoy, Inc. v. Google, Inc.*, 370 F. Supp. 2d 1025, 1035 (N.D. Cal. 2005) (dismissing unjust enrichment claims.).

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

21.

FACEBOOK'S MOTION TO DISMISS
PLAINTIFFS' COMPLAINT
CASE NO. 15-CV-01370 EJD

Accordingly, BRG's unjust enrichment and UCL claims are preempted as a matter of law and should be dismissed.

### E.    BRG fails to state a claim under the UCL.

Separate and apart from preemption by CUTSA, BRG's UCL claim fails because BRG has not alleged that it lost "money or property" as a result of Facebook's conduct, and thus lacks standing under the UCL. Moreover, BRG has not sufficiently alleged that Facebook has engaged in unfair, unlawful, or fraudulent business practices. Facebook addresses each of these deficiencies in turn below.

#### 1.    BRG Lacks standing under the UCL.

As a threshold matter, to bring a claim under the UCL, BRG must demonstrate that it "lost money or property" as a result of Facebook's alleged actions. *See* Cal. Bus. & Prof. Code § 17204; *Kwikset Corp.*, 51 Cal. 4th at 325. BRG has not alleged any such loss. Instead, BRG provides a conclusory allegation that it has been "injured-in-fact" by Facebook's disclosure and misuse of BRG's "trade secrets," but provides no factual allegations to support this allegation. (Complaint ¶ 93.) These allegations are insufficient. *See Twombly*, 550 U.S. at 555 ("labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do," and "courts are not bound to accept as true a legal conclusion couched as a factual allegation") (internal quotations omitted). In pleading its claim, BRG alleges that Facebook violated the UCL by "fraudulent[ly]" passing off BRG's innovations as its own, publicly disclosing BRG's methodology, and using BRG's methodology, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮ (Complaint ¶ 92.) But, BRG does not allege a single fact suggesting these alleged acts led to a loss of "money or property." Cal. Bus. & Prof. Code § 17204. As a result, BRG lacks standing under the UCL and cannot pursue its claim.

#### 2.    BRG fails to allege any "unfair" conduct.

BRG's UCL claim under the "unfair" prong of the UCL fails for the additional reason that BRG's UCL allegations do not implicate the interests of Facebook's competitors *or* of individual consumers. The UCL was enacted "to protect both consumers and competitors by promoting fair

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

competition in commercial markets for goods and services." *Kasky v. Nike, Inc.*, 27 Cal. 4th 939, 949 (2002). BRG does not allege (nor could it) that Facebook designs or constructs data centers other than for its own use, and thus BRG's UCL claims involve neither "competitors" nor "consumers." *Id.* Rather, BRG and Facebook's "relationship . . . is defined by ████████ ████." *In re ConocoPhillips Co. Serv. Station Rent Contract Litig.*, No. 09-CV-2040-RMW, 2011 U.S. Dist. LEXIS 40471, at *10-11 (N.D. Cal. Apr. 13, 2011) (dismissing UCL claims); (*see* Complaint ¶ 22.) In *Linear Technology Corp. v Applied Materials, Inc.*, the California Court of Appeal held that "where a UCL action is based on contracts not involving either the public in general or individual consumers who are parties to the contract, a corporate plaintiff may not rely on the UCL for the relief it seeks." 152 Cal. App. 4th 115, 135 (2007); *see also In re ConocoPhillips Co.*, 2011 U.S. Dist. LEXIS 40471, at *10-11 (where, "the case does not involve the general public or individual consumers who are parties to a contract . . . Under [*Linear Tech*], plaintiffs cannot assert an 'unfair business practice' claim under Section 17200."); *Dollar Tree Stores Inc. v Toyama Partners LLC*, 875 F. Supp. 2d 1058, 1083 (N.D. Cal. 2012) (finding that breach of lease could not support a UCL claim under *Linear Tech* where it was "based on a breach of a contract that does not implicate the public in general or individual consumers"). BRG's claims based on Facebook's alleged misconduct, which does not implicate the public or Facebook's competitors, thus cannot be "unfair business practices" under the UCL.

### 3. BRG fails to allege any "fraudulent" conduct.

BRG also claims in a cursory manner that Facebook's alleged acts constitute fraudulent business practices under the UCL. However, a "fraudulent business practice is one that is likely to deceive members of the public." *Morgan v. AT&T Wireless Servs., Inc.*, 177 Cal. App. 4th 1235, 1255 (2009). The UCL also "imposes an actual reliance requirement on plaintiffs prosecuting a private enforcement action under the UCL's fraud prong." *In re Tobacco II Cases*, 46 Cal. 4th 298, 326 (2009). BRG has not pled (nor could it) any of Facebook's alleged activity is likely to deceive any member of the public, nor has it pled that it actually relied on any such alleged deception. As such, BRG cannot maintain a claim under the fraudulent prong of the UCL.

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

23.

FACEBOOK'S MOTION TO DISMISS
PLAINTIFFS' COMPLAINT
CASE NO. 15-CV-01370 EJD

### 4. BRG has not sufficiently pled any "unlawful" conduct.

BRG's claim under the "unlawful" prong of the UCL should also be dismissed because it relies on BRG's defective "misappropriation" allegations. Under the "unlawful" prong, the UCL "'borrows' violations of other laws . . . .'" *Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*, 20 Cal. 4th 163, 180 (1999). Accordingly, if the alleged "violations of other laws" are not properly pled, the UCL "unlawful" claim also cannot proceed. *Id.* Here, because BRG's CUTSA claims are defectively pled, *see* section A, *supra*, BRG cannot meet the requirement of pleading unlawful activity under the UCL. *See id.* at 182 ("A plaintiff may [] not 'plead around' an "absolute bar to relief" simply 'by recasting the cause of action as one for unfair competition.'" (quoting *Manufacturers Life Ins. Co. v. Super. Ct.*, 10 Cal. 4th 257, 283 (1995).)

### F. BRG fails to state a claim for unjust enrichment.

Separate and apart from preemption by CUTSA (described above), BRG's unjust enrichment claim fails for two additional reasons. First, it is well established that unjust enrichment does not exist as an independent cause of action under California law. *See Vicuña v. Alexia Foods, Inc.*, No. 11-cv-6119, 2012 U.S. Dist. LEXIS 59408, at *7 (N.D. Cal. Apr. 27, 2012); *Fraley v. Facebook, Inc.*, 830 F. Supp. 2d 785, 814-15 (N.D. Cal. 2011) (collecting authorities); *Hill v. Roll Int'l Corp.*, 195 Cal. App. 4th 1295, 1307 (2011); *Durell v. Sharp Healthcare*, 183 Cal. App. 4th 1350, 1370 (2010) ("[T]here is no cause of action in California for unjust enrichment.") (citation omitted); *Levine v. Blue Shield of Cal.*, 189 Cal. App. 4th 1117, 1138 (2010) (same); *Melchior v. New Line Prods., Inc.*, 106 Cal. App. 4th 779, 793 (2003) (same). For this reason, BRG's unjust enrichment claim must be dismissed.

Second, even if an unjust enrichment claim could stand on its own, BRG's claim must still be dismissed because ████████████████████████████████████████████ ████████████████████████████ a separate claim based on unjust enrichment. (*See* Complaint ¶ 84 ( ████████████████████████████████████████████████ ).) Quasi-contract claims like unjust enrichment only lie where any ██████████████ is also alleged to be unenforceable. *See Allen v. Hylands, Inc.*, No. 12-cv-1150 DMG (MANx), 2012 WL 1656750, at *5 (C.D. Cal. May 2, 2012); *see also Klein v. Chevron U.S.A., Inc.*, 202 Cal. App. 4th 1342, 1389

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

24.

FACEBOOK'S MOTION TO DISMISS
PLAINTIFFS' COMPLAINT
CASE NO. 15-CV-01370 EJD

(2012) (plaintiffs can plead inconsistent claims in the alternative, but must still plead the "absence of an enforceable agreement.") Because BRG ███████████████████████████████████ ████████████████, its unjust-enrichment claim must be dismissed.

## V.   CONCLUSION

BRG fails to properly allege a single trade secret or piece of ███████████████████ ██████████████████████. This defect permeates BRG's entire Complaint and each of its contingent claims, which also fail for the myriad reasons described herein. In short, BRG has suffered no compensable injury and the Complaint should be dismissed with prejudice for failure to state a claim upon which relief can be granted.


Dated: June 1, 2015

COOLEY LLP
MICHAEL G. RHODES (116127)


*/s/ Michael G. Rhodes*
Michael G. Rhodes (116127)
Attorneys for Defendant
FACEBOOK, INC.

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

25.

FACEBOOK'S MOTION TO DISMISS
PLAINTIFFS' COMPLAINT
CASE NO. 15-CV-01370 EJD