United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

BLADEROOM GROUP LIMITED, et al.,

Plaintiffs,

v.

FACEBOOK, INC.,

Defendant.

Case No. 5:15-cv-01370-EJD

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS**

Re: Dkt. No. 25

Plaintiffs BladeRoom Group Limited ("BRG") and Bripco (UK) Limited ("Bripco") (collectively, "Plaintiffs") filed the instant action against Defendant Facebook, Inc. ("Facebook"), asserting a violation of California's trade secret law, as well as breach of contract and other state-law claims. Presently before the court is Facebook's Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). See Mot., Dkt. No. 25.

Federal jurisdiction arises pursuant to 28 U.S.C. § 1332. The court found this matter suitable for decision without oral argument pursuant to Civil Local Rule 7-1(b) and previously vacated the associated hearing. Having carefully considered the parties' pleadings, the court grants in part and denies in part Facebook's motion for the reasons explained below.

## I. FACTUAL AND PROCEDURAL BACKGROUND

### A. Plaintiffs and the Data Center Industry

Data centers are structures where companies securely house their computer servers and maintain the appropriate climate for them. Compl., Dkt. Nos. 1 (filed under seal), 3 (redacted) at ¶ 14. Precise construction standards, and temperature and humidity controls in these buildings are

essential because of the heat that rows-upon-rows containing racks-upon-racks of servers generate while operating. Id. A great amount of heat can damage the servers if it is not efficiently removed. Id. Traditionally, data centers were built using a standard "stick built" approach to construction, and were built by a large team that included architects, consultants, general contractors, specialist sub-contractors, mechanical and structural engineers, and others. Id. at ¶ 15.

BRG is a British company that sought to develop a better, faster, and more cost-effective way to build, deliver, and install large, mission-critical data centers. Id. at ¶ 16. Plaintiffs allege that after devoting substantial resources to refining its methods and designs, BRG created a data center product called the "BladeRoom." Id. BladeRooms are mission-critical modular buildings of which elements are pre-fabricated in a factory and then transported to the site for installation. Id. at ¶ 13. [REDACTED] BRG's know-how, design, supply chain, fabrication and construction techniques, and all other aspects of modular data center construction are confidential information known as the "BRG Methodology." Id. at ¶ 3. Plaintiffs allege that using the BRG Methodology, since 2009, BRG has built [REDACTED], which are used by national governments and prestigious companies. Id. at ¶ 18.

Plaintiffs further allege that Bripco, which is also a British company, owns the trade secrets, know-how, trademarks, design rights, and confidential proprietary information concerning the BRG Methodology, while BRG is its licensee. Id. at ¶ 19. To protect Bripco's trade secrets and confidential information, Plaintiffs participate in non-disclosure agreements with potential clients, suppliers, and others to ensure private disclosure. Id. at ¶ 20.

United States District Court
Northern District of California

**B.**

In late October 2011, Plaintiffs allege that BRG contacted Facebook to promote BladeRooms and the BRG Methodology. Id. at ¶ 21.

•

•

•

3

Case No.: 5:15-cv-01370-EJD
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS

■■■

- ■■■

■■■

C. ■■■

[Page content redacted]

5

Case No.: 5:15-cv-01370-EJD
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S
MOTION TO DISMISS

[redacted]

[redacted]

[redacted]

[redacted]

In May 2014, Facebook announced it had awarded Emerson a contract to construct a pre-fabricated, modular data center for the second phase of its Luleå campus. Id. at ¶ 43. Plaintiff

United States District Court
Northern District of California

alleges that in building the data hall, Facebook used concepts embodied in the BRG Methodology that BRG developed [REDACTED] Id. at ¶ 44.

**D. Facebook's Disclosure of BRG's Confidential Information**

Facebook created an initiative called the OpenCompute Project ("OpenCompute"), which provides the public with full access to the specifications of its data centers to discuss how to improve its approach to data centers. Id. at ¶ 45. In January 2014, Plaintiffs allege that Manager Magarelli made a public presentation at an OpenCompute forum regarding Facebook's new "rapid deployment data center" or "RDDC method." Id. at ¶ 46. In his presentation, Manager Magarelli explained that Facebook developed with vendors certain approaches that would allow Facebook to deliver twice the amount of data space in about half the normal time. Id. at ¶¶ 47-49. [REDACTED] Manager Magarelli, however, did not mention BRG or BladeRooms. Id.

In March 2014, Plaintiffs allege that Manager Magarelli authored and published a blog post on OpenCompute regarding Facebook's RDDC method, and [REDACTED] Id. at ¶¶ 51, 56. Again, [REDACTED] Id. at ¶ 56. Thereafter, media outlets broadcasted the story about Facebook's RDDC method that included BRG's confidential information. Id. at ¶ 58.

**E. Procedural History**

On March 23, 2015, Plaintiffs filed the instant action against Facebook, asserting the following claims: (1) breach of contract; (2) breach of covenant of good faith and fair dealing; (3) misappropriation of trade secrets; (4) unjust enrichment; and (5) unfair business practices/unfair competition. See Dkt. Nos. 1 (filed under seal), 3 (redacted). On June 1, 2015, Facebook filed the

instant Motion to Dismiss. See Dkt. Nos. 24-2 (filed under seal), 25 (redacted). This matter has been fully briefed. See Opp'n, Dkt. Nos. 46-4 (filed under seal); 47 (redacted); see also Reply, Dkt. Nos. 50-4 (filed under seal), 51 (redacted).

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 8(a) requires a plaintiff to plead each claim with sufficient specificity to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (internal quotations omitted). A complaint which falls short of the Rule 8(a) standard may be dismissed if it fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). "Dismissal under Rule 12(b)(6) is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." Mendiondo v. Centinela Hosp. Med. Ctr., 521 F.3d 1097, 1104 (9th Cir. 2008). Moreover, the factual allegations "must be enough to raise a right to relief above the speculative level" such that the claim "is plausible on its face." Twombly, 550 U.S. at 555, 570.

When deciding whether to grant a motion to dismiss, the court generally "may not consider any material beyond the pleadings." Hal Roach Studios, Inc. v. Richard Feiner & Co., 896 F.2d 1542, 1555 n.19 (9th Cir. 1990). However, the court may consider material submitted as part of the complaint or relied upon in the complaint, and may also consider material subject to judicial notice. See Lee v. City of Los Angeles, 250 F.3d 668, 688-89 (9th Cir. 2001).

In addition, the court must generally accept as true all "well-pleaded factual allegations." Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009). The court must also construe the alleged facts in the light most favorable to the plaintiff. Love v. United States, 915 F.2d 1242, 1245 (9th Cir. 1988). However, courts "are not bound to accept as true a legal conclusion couched as a factual allegation." Iqbal, 556 U.S. at 678.

## III. DISCUSSION

Facebook moves to dismiss each of Plaintiffs' claims. Each will be addressed in turn.

United States District Court
Northern District of California

**A. Trade Secret Misappropriation Claim**

The California Uniform Trade Secrets Act ("CUTSA"), codified under California Civil Code § 3426 et seq., "creates a statutory cause of action for the misappropriation of a trade secret." Brescia v. Angelin, 172 Cal. App. 4th 133, 143 (2009). To state a claim, the plaintiff must demonstrate: "(1) the plaintiff owned a trade secret, (2) the defendant acquired, disclosed, or used the plaintiff's trade secret through improper means, and (3) the defendant's actions damaged the plaintiff." Cytodyn, Inc. v. Amerimmune Pharms., Inc., 160 Cal. App. 4th 288, 297 (2008). Here, at issue is whether Plaintiffs sufficiently pled a trade secret, and whether the purported trade secret is subject to protection under CUTSA.

**i. Adequately Pleading a Trade Secret**

CUTSA defines "trade secret" as

> information, including a formula, pattern, compilation, program, device, method, technique, or process that:
> (1) Derives independent economic value, actual or potential, from not being generally known to the public or to other persons who can obtain economic value from its disclosure or use; and
> (2) Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

Cal. Civ. Code § 3426.1(d). To adequately plead a trade secret, it "must be described with sufficient particularity to separate it from matters of general knowledge in the trade or of special knowledge of those persons who are skilled in the trade, and to permit the defendant to ascertain at least the boundaries within which the secret lies." Altavion, Inc. v. Konica Minolta Sys. Lab., Inc., 226 Cal. App. 4th 26, 43-44 (2014) (internal quotations omitted) (quoting Imax Corp. v. Cinema Techs., Inc., 152 F.3d 1161, 1164-65 (9th Cir. 1998)). The plaintiff, however, is not required "to define every minute detail of its claimed trade secret at the outset of the litigation." Advanced Modular Sputtering, Inc. v. Super. Ct., 132 Cal. App. 4th 826, 835 (2005).

In its complaint, Plaintiffs identify the following as its purported trade secrets:

- [redacted]

[redacted]

- [redacted]
- [redacted]
- [redacted]
- [redacted]
- [redacted]
- [redacted]
- [redacted]
- [redacted]

[redacted]

Facebook argues that Plaintiffs do not identify its purported trade secrets with any degree of particularity, [redacted] Mot. at 9. [redacted] In opposition, Plaintiffs argue that its trade secret is its unique methodology for building modular, enterprise-level data centers which no other company in the market provides. Opp'n at 7. They argue its trade secret was submitted to [redacted]

[redacted] Id.; see Compl. at ¶¶ 30, 41.

The court agrees with Facebook that Plaintiffs have not adequately pled a trade secret. The allegations identifying the purported trade secret are vague and conclusory, and consist of a generic list of categories of various types of information. Given that the pleadings have been filed under seal, Plaintiffs should be able to more clearly specify the information they consider to be a trade secret. Further, Plaintiffs' contention the information is "confidential" is an insufficient reason to find that it has pled a trade secret since that contention is a legal conclusion. In their brief, Plaintiffs appear to "connect the dots," but failed to do so in the complaint. See Opp'n at 7. Since Plaintiffs' allegations do not describe the trade secret with sufficient particularity, they have failed to adequately plead a trade secret.

**ii. Aspects of the BRG Methodology are Publicly Known**

Assuming arguendo that Plaintiffs' allegations adequately plead the existence of a trade secret, the court now turns to Facebook's argument that many aspects of the BRG Methodology are publicly known, and thus not subject to trade secret protection. Mot. at 12. Specifically, Facebook argues that Plaintiffs admitted certain purported trade secrets are "publicly known," and some are going through the patent process which makes it publicly known.[1] Id. In response, Plaintiffs argue that none of its purported trade secrets were patents or publicly available documents at the time of Facebook's alleged misappropriation. Opp'n at 10.

---

[1] One of Facebook's arguments is that Plaintiffs identify [redacted] that are obvious or commonly known within the data center industry. See Mot. at 13. In support of this argument, Facebook relies on its Request for Judicial Notice, which contains exhibits purportedly showing that certain aspects of the BRG Methodology already exist. See id. at 13-15; Request for Judicial Notice, Dkt. No. 26. At this time, the court declines to take judicial notice of these exhibits because it presents a factual dispute that would require the court to compare the aspects of existing data centers to the BRG Methodology; this type of determination is improper at this stage. Further, these exhibits contain material that is outside the pleadings upon which the complaint does not rely. See Lee, 250 F.3d at 688 (noting that in a motion to dismiss, materials outside the pleadings cannot be considered); United States v. LSL Biotechnologies, 379 F.3d 672, 699-700 (9th Cir. 2004) (noting that considering evidence outside the four corners of the complaint converts a motion to dismiss into a request for summary judgment).

United States District Court
Northern District of California

In the complaint, Plaintiffs allege that the BladeRooms "are constructed using BRG's unique methodology and innovative pre-fabrication construction, shipping, and installation techniques, some of which are publicly known but many of which BRG keeps as confidential trade secrets." Compl. at ¶ 3. Plaintiffs further allege that "[s]ome aspects of the BRG Methodology are the subject of granted patents and pending patent applications, while others are kept as trade secrets or confidential and proprietary information." Id. at ¶ 19.

Given these allegations, Plaintiffs admit that certain aspects of the BRG Methodology are publicly known. Therefore, those aspects cannot be protected under CUTSA as a trade secret. See Cal. Civ. Code § 3426.1(d)(1) (providing that a "trade secret" is not "generally known to the public"); Forcier v. Microsoft Corp., 123 F. Supp. 2d 520, 528 (N.D. Cal. 2000) ("In light of this requirement of secrecy, it is clear that an unprotected disclosure of the holder's secret terminates the existence of the trade secret."). The same is true for those aspects that are part of patents and pending patent applications. See Forcier, 123 F. Supp. 2d at 528 ("It is well established that the disclosure of a trade secret in a patent places the information comprising the secret into the public domain."). However, it is unknown from the current allegations which aspects are publicly known and which are not. This reaffirms the court's earlier determination that Plaintiffs have not described their trade secret with sufficient particularity.

Given Plaintiffs' failure to adequately plead a trade secret, they have not adequately pled a claim for trade secret misappropriation under CUTSA. Therefore, Facebook's motion as to this claim is GRANTED, and the claim will be dismissed with leave to amend.

**B. Breach of Contract Claim**

Plaintiffs' breach-of-contract claim stems from the allegations that [redacted] Compl. at ¶ 62. The elements for this claim are: "(1) the contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) the resulting damages to plaintiff." Tribeca Co., LLC v. First Am. Title Ins. Co., 239 Cal. App. 4th 1088, 1109 (2015).

In dispute are whether [redacted] and whether Plaintiffs were harmed by Facebook's alleged conduct.

**i. Breach of** [redacted]

Facebook argues that [redacted] Mot. at 17-18. In response, Plaintiffs argue they sufficiently alleged Facebook's breach of the [redacted] and regardless of whether BRG's methodology is considered a "trade secret," the [redacted] obligated Facebook to keep the information private. Opp'n at 15-16.

[redacted]

In the complaint, Plaintiffs allege that [redacted] Compl. at ¶ 62. When considering all of Plaintiffs' factual allegations, including [redacted]

13

Case No.: 5:15-cv-01370-EJD
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS

United States District Court
Northern District of California

and disclosing certain aspects of the Confidential Information through OpenCompute (see id. at ¶¶ 52, 62), Plaintiffs have sufficiently pled Facebook's [REDACTED]

**ii. Damages Arising From Breach**

Facebook, next, contends that Plaintiffs have insufficiently alleged it suffered damages as a result of Facebook's alleged [REDACTED] Mot. at 19. In response, Plaintiffs argue its damages consist of: [REDACTED] an erosion of its competitive advantage in the market; damaged ability to compete in current and future enterprise-level data center construction projects; and spending of significant additional resources to counter the adverse impression held by potential customers and partners in the marketplace. Opp'n at 17-18.

Upon evaluating the complaint, Plaintiffs allege that [REDACTED] Facebook awarded the contract for constructing the second phase of the data center in Luleå to Emerson (see id. at ¶ 43); BRG decided to develop a pre-fabricated data center product because the data center industry is a fast-growing, multibillion dollar per year industry (see id. at ¶ 13); and BRG developed an innovative approach that was an alternative to the standard stick-built approach (see id. at ¶ 15). Such allegations are sufficient that damages is plausible on its face. Thus, accepting Plaintiffs' allegations as true and construing the alleged facts in the light most favorable to them, the court determines Plaintiffs have sufficiently pled damages.

Given Plaintiffs' allegations concerning breach and damages, they have adequately pled a claim for breach of contract. Therefore, Facebook's motion as to this claim is DENIED.

**C. Breach of Covenant of Good Faith and Fair Dealing Claim**

Facebook moves to dismiss Plaintiffs' claim for breach of covenant of good faith and fair dealing on the grounds that Plaintiffs have not pled a "special" or fiduciary relationship between BRG and Facebook. Mot. at 19. In opposition, Plaintiffs argue that courts in this district have repeatedly permitted breach-of-covenant claims to proceed without alleging a special or fiduciary

relationship, and there is an absence of a clear mandate from the California Supreme Court limiting such claims to parties with a special relationship. Opp'n at 20.

"Generally, every contract . . . imposes upon each party a duty of good faith and fair dealing in its performance and its enforcement." McClain v. Octagon Plaza, LLC, 159 Cal. App. 4th 784, 798 (2008) (internal quotations omitted). Under California law, however, "no cause of action for the tortious breach of the implied covenant of good faith and fair dealing can arise unless the parties are in a 'special relationship' with 'fiduciary characteristics.'" Pension Trust Fund for Operating Eng'rs v. Fed. Ins. Co., 307 F.3d 944, 955 (9th Cir. 2002) (citing Mitsui Mfrs. Bank v. Super. Ct., 212 Cal. App. 3d 726, 730 (1989)). Courts in this district have supported this proposition. See Curl v. CitiMortgage, Inc., No. 14-cv-01829-VC, 2014 WL 5321063, at *2 (N.D. Cal. Oct. 17, 2014) (dismissing breach-of-covenant claim partly because the complaint does not "identify any special relationship that would allow tort recovery"); Amedee v. Citimortgage, Inc., No. C 13-3040-CW, 2014 WL 1091152, at *4-5 (N.D. Cal. Mar. 17, 2014) (same); Jobscience, Inc. v. CVPartners, Inc., No. C 13–04519 WHA, 2014 WL 93976, at *6 (N.D. Cal. Jan. 9, 2014) (same).

Here, Plaintiffs do not allege a special relationship between BRG and Facebook such that a breach-of-covenant claim can be asserted under California law. Plaintiffs also do not point onto any allegations in the complaint that may give rise to a special relationship, nor do they provide any persuasive legal authority supporting their proposition. For this reason alone, Plaintiffs have failed to adequately plead a breach-of-covenant claim. Since this issue is dispositive of the entire claim, it is unnecessary to address Facebook's alternative arguments. Therefore, Facebook's motion as to this claim is GRANTED, and the claim will be dismissed with leave to amend.

**D. Unfair Competition Law and Unjust Enrichment Claims**

Facebook moves to dismiss Plaintiffs' UCL and unjust enrichment claims on the grounds that they are preempted by CUTSA. Mot. at 21. It argues that since the allegations for these claims are based on the same disclosures and alleged misappropriation of the same information as

United States District Court
Northern District of California

Plaintiffs' CUTSA claim, preemption applies. Id. In response, Plaintiffs argue that preemption does not apply because they rely on different facts than the CUTSA claim. Opp'n at 21.

At this moment, the court will not address whether CUTSA preempts Plaintiffs' UCL and unjust enrichment claims because, as determined above, Plaintiffs have failed to adequately plead a CUTSA claim. Therefore, at this point, CUTSA preemption does not apply. As such, the court will now turn to the parties' arguments regarding the sufficiency of the pleadings as to each claim.

**i. Unfair Competition Claim**

California law prohibits unfair competition, which includes "any unlawful, unfair or fraudulent business act." Cal. Bus. & Prof. Code § 17200. "A business act or practice may violate the UCL if it is either 'unlawful,' 'unfair,' or 'fraudulent.'" Rubio v. Capital One Bank, 613 F.3d 1195, 1203 (9th Cir. 2010). "Each of these three adjectives captures a separate and distinct theory of liability." Id. (internal quotations omitted). Moreover, a UCL claim may be pursued by "a person who has suffered injury in fact and has lost money or property as a result of the unfair competition." Cal. Bus. & Prof. Code at § 17204. "This provision requires [a plaintiff] to show that she has lost 'money or property' sufficient to constitute an 'injury in fact' under Article III of the Constitution and also requires a 'causal connection' between [the defendant's] alleged UCL violation and her injury in fact." Rubio, 613 F.3d at 1203-04 (internal citations omitted).

***a. Lost Money or Property***

Facebook begins by arguing that Plaintiffs lack standing because they do not sufficiently allege the loss of money or property. Mot. at 22. In opposition, Plaintiffs argue they suffered damages when, through Facebook's actions, [redacted] [redacted] and when Facebook publicly encouraged others in the construction industry to shift to a modular approach to data center construction. Opp'n at 23. Plaintiffs argue that BRG lost specific projects and very likely lost market share because of Facebook's acts. Id.

The court agrees with Plaintiffs that they have adequately alleged "lost money or

United States District Court
Northern District of California

property." In their complaint, Plaintiffs allege that [REDACTED] See Compl. at ¶¶ 35, 43. Plaintiffs also allege that Facebook encouraged others to use BRG's confidential information by revealing it through OpenCompute. See id. at ¶¶ 45-58. These allegations are sufficient such that the loss of money or property is plausible on its face. See Law Offices of Mathew Higbee v. Expungement Assistance Servs., 214 Cal. App. 4th 544, 548 (2013) (holding that in a UCL claim, an "identifiable trifle of injury" is sufficient to survive dismissal). Thus, construing the alleged facts in the light most favorable to Plaintiffs, they have adequately pled lost money or property.

**b. *Unlawful, Unfair, or Fraudulent Prongs***

Under the "unlawful" prong, the plaintiff must plead the defendant was conducting a business practice that is forbidden by law. See Smith v. State Farm Mut. Auto. Ins. Co., 93 Cal. App. 4th 700, 717-18 (2001). Here, Facebook argues that Plaintiffs fail to plead the unlawful prong because their CUTSA claim is defective. Mot. at 24. In response, Plaintiffs contend that [REDACTED] Opp'n at 23. However, to the extent Plaintiffs' UCL claim is based on its CUTSA claim, this prong fails because Plaintiffs have not adequately pled a CUTSA claim. Given the absence of an alleged statutory violation, Plaintiffs have not pled a UCL claim under the "unlawful" prong.

As to the "unfair" prong, "the test to determine whether a business practice is unfair differs depending on whether the plaintiff in a UCL case is a competitor of the defendant or a consumer." Drum v. San Fernando Valley Bar Ass'n, 182 Cal. App. 4th 247, 253 (2010). Here, Facebook argues that Plaintiffs' UCL claim under the "unfair" prong fails because the allegations do not implicate the interests of Facebook's competitors or of individual consumers. Mot. at 22. In response, Plaintiffs do not offer an argument other than to state that the UCL law is broad. Opp'n at 24. The court agrees with Facebook. It does not appear Plaintiffs are a competitor of Facebook since Facebook's business does not consist of building data centers, and it does not appear

United States District Court
Northern District of California

Plaintiffs are a consumer of Facebook since Plaintiffs are not making a purchase. In the absence of any argument from Plaintiffs regarding the "unfair" prong, Plaintiffs have not adequately pled an unfair business practice. Thus, Plaintiffs have failed to adequately plead a UCL claim under the "unfair" prong.

Lastly, as to the "fraudulent" prong, the plaintiff must demonstrate "actual reliance" upon the defendant's misrepresentation or omission. In re Tobacco II Cases, 426 Cal. 4th 298, 326 (2009). Facebook argues that Plaintiffs have failed to plead a fraudulent business practice because they do not allege that they relied on any alleged deception. Mot. at 23. Plaintiffs, again, do not offer an argument addressing this prong, other than to generally state that Facebook has encouraged BRG competitors to use the same approach, and has induced or knowingly allowed other companies to unlawfully use BRG's confidential information. Opp'n at 23. Since there appears to be no allegations in the complaint regarding Plaintiffs' reliance on Facebook's misrepresentation or omission, and in the absence of any argument from Plaintiffs specifically addressing the "fraudulent" prong, the pleading is deficient. As such, Plaintiffs fail to adequately plead a UCL claim under the "fraudulent" prong.

Given Plaintiffs' failure to adequately plead an unlawful, unfair, or fraudulent business practice, they have not adequately pled a UCL claim. Therefore, Facebook's motion as to this claim is GRANTED, and the claim will be dismissed with leave to amend.

**ii. Unjust Enrichment Claim**

Facebook argues that this claim does not exist as an independent cause of action under California law. Mot. at 24. While there is a "split between federal courts regarding the viability of unjust enrichment as an independent claim . . . [t]his court has recognized that a claim for unjust enrichment exists under California law when there is no contractual relationship between the parties." See In re Apple In-App Purchase Litig., 855 F. Supp. 2d 1030, 1042 (N.D. Cal. 2012). Indeed, Plaintiffs acknowledge this proposition in its brief. See Opp'n at 24. While Plaintiffs argue that [redacted] should not preclude an unjust enrichment claim because

United States District Court
Northern District of California

the unjust enrichment claim is based in part on different facts, this argument is unpersuasive. See id. at 25. In the complaint, Plaintiffs allege that the basis for unjust enrichment is that BRG provided Facebook with confidential information, and Facebook benefitted from that information. See Compl. at ¶¶ 84-89. These allegations are based

Given the contractual relationship between the parties, Plaintiffs fail to adequately plead an unjust enrichment claim. Therefore, Facebook's motion as to this claim is GRANTED, and the claim will be dismissed with leave to amend.

## IV. CONCLUSION

Based on the foregoing, Facebook's Motion to Dismiss (Dkt. No. 25) is GRANTED IN PART AND DENIED IN PART. The motion is GRANTED as to Plaintiffs' claims for trade secret misappropriation, breach of covenant of good faith and fair dealing, unfair competition, and unjust enrichment. These claims are DISMISSED WITH LEAVE TO AMEND. The motion is DENIED as to Plaintiffs' claim for breach of contract.

Any amended complaint must be filed on or before **December 30, 2015**.

**IT IS SO ORDERED.**

Dated: December 7, 2015

EDWARD J. DAVILA
United States District Judge