Stephanie P. Skaff (State Bar No. 183119)
   sskaff@fbm.com
Eugene Y. Mar (State Bar No. 227071)
   emar@fbm.com
Alex Reese (State Bar No. 280530)
   areese@fbm.com
Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA 94104
Telephone: (415) 954-4400
Facsimile: (415) 954-4480

Attorneys for Plaintiffs
BLADEROOM GROUP LIMITED AND BRIPCO
(UK) LIMITED

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

| | |
|---|---|
| BLADEROOM GROUP LIMITED AND BRIPCO (UK) LIMITED, <br><br> Plaintiffs, <br><br> vs. <br><br> FACEBOOK, INC., EMERSON ELECTRIC CO., EMERSON NETWORK POWER SOLUTIONS, INC., and LIEBERT CORPORATION, <br><br> Defendants. | Case No. 5:15-cv-01370-EJD <br><br> **SECOND AMENDED COMPLAINT FOR** <br><br> **(1) BREACH OF CONTRACT;** <br><br> **(2) MISAPPROPRIATION OF TRADE SECRETS;** <br><br> **(3) VIOLATION OF THE LANHAM ACT (15 U.S.C. § 1125); and** <br><br> **(4) UNFAIR BUSINESS PRACTICES/UNFAIR COMPETITION** |

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA 94104
(415) 954-4400

SECOND AMENDED COMPLAINT

30692\5422181.2

Plaintiffs BladeRoom Group Limited ("BRG") and Bripco (UK) Limited ("Bripco (UK)")

(collectively "Plaintiffs") allege as follows:

## NATURE OF ACTION

1.     In January 2014, Defendant Facebook, Inc. ("Facebook") announced to the world that it had developed a revolutionary new method of constructing large, mission critical data centers, which are the buildings that house the vast arrays of computer servers that form the backbone of the internet and the high-technology economy.  Facebook claimed that it developed an innovative, pre-fabricated and modular construction approach and, extolling its benefits, encouraged the entire data center industry to shift from traditional construction practices to this new method.  What Facebook did not disclose, however, was that this methodology and the detailed know-how supporting its use had in fact been stolen from BRG by Facebook, acting in collaboration with a multi-billion dollar per year global company called Emerson Electric Company ("Emerson").

2.     In May 2014, Emerson and Facebook announced that they were working together to implement the revolutionary construction method that Facebook claimed to have created. Facebook had hired Emerson to construct the second phase of a large data center project in Luleå, Sweden, using the very method that Facebook and Emerson had stolen from BRG.  Neither Facebook nor Emerson publicly disclosed that their arrangement was the product of secret meetings between the two companies that occurred ██████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

3.     Plaintiffs spent years developing and refining the services and methodology that Facebook illegally conspired with Emerson to copy and commercialize, and that Facebook blithely passed off to the world as its own in 2014.  During the roughly two and a half years before Facebook's announcement of its supposedly new approach, BRG had disclosed its methods, techniques, know-how, and other confidential information and trade secrets to Facebook in an extensive series of meetings, conversations, proposals, and presentations.  BRG had also disclosed substantial amounts of its confidential and trade secret information to Emerson in

1    separate meetings.  All of these disclosures were made ███████████████ non-disclosure

2    agreements, including a Non-Disclosure Agreement with Facebook ██████████ and

3    a Non-Disclosure Agreement with Emerson dated August 17, 2011.  This action seeks redress for

4    Facebook's and Emerson's breaches of the non-disclosure agreements; their misappropriation of

5    trade secrets; Facebook's passing off of BRG's unique data center design service as its own; and

6    their unfair business practices or unfair competition.

7                                              **PARTIES**

8            4.      Plaintiff BRG is a company organized under the laws of England with a registered

9    office at Stella Way, Bishop's Cleeve, Cheltenham, Gloucestershire GL52 7DQ.  Since the late

10   2000s, BRG has been in the business of developing and perfecting a method for manufacturing

11   and installing pre-fabricated data centers.  These data centers, known as "BladeRooms," are

12   constructed using BRG's unique methodology and innovative pre-fabrication construction,

13   shipping, and installation techniques, some of which are publicly known but many of which BRG

14   keeps as confidential trade secrets.  The confidential know-how, design, supply chain, fabrication

15   and construction techniques, and all other aspects of modular data center construction developed

16   by BRG are referred to throughout this Complaint as the "BRG Methodology."

17           5.      Plaintiff Bripco (UK) is a company organized under the laws of England with a

18   registered office at Stella Way, Bishop's Cleeve, Cheltenham, Gloucestershire GL52 7DQ.

19   Bripco (UK) is the legal owner, and BRG is the licensee, of all right, title and interest in all trade

20   secrets, know-how, registered and unregistered designs, and confidential information created or

21   developed by BRG, including the BRG Methodology.

22           6.      On information and belief, Defendant Facebook is a company organized under the

23   laws of Delaware with a principal place of business at 1601 Willow Road, Menlo Park, California

24   94025.

25           7.      On information and belief, Defendant Emerson is a company organized under the

26   laws of Missouri with a principal place of business at 8000 West Florissant Avenue, St. Louis,

27   Missouri 63136.

28

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA  94104
(415) 954-4400

- 3 -

30692\5422181.2

SECOND AMENDED COMPLAINT

8.      On information and belief, Defendant Emerson Network Power Solutions, Inc. ("Emerson Network Power") is a company organized under the laws of Delaware with a principal place of business at 1050 Dearborn Drive, Columbus, Ohio 43085. Emerson Network Power is a wholly owned subsidiary of Emerson Electric Company.

9.      On information and belief, Defendant Liebert Corporation ("Liebert") is a company organized under the laws of Ohio with a principal place of business at 1050 Dearborn Drive, Columbus, Ohio 43085. Liebert is a wholly owned subsidiary of EECO, Inc., which is a wholly owned subsidiary of Emerson.

10.     Defendants Emerson, Emerson Network Power, and Liebert are collectively referred to as the "Emerson Defendants" throughout this complaint.

## JURISDICTION AND VENUE

11.     The Court has subject matter jurisdiction over this action under 28 U.S.C. § 1332 because there is a complete diversity of citizenship between Plaintiffs and Defendants and the amount in controversy exceeds $75,000.

12.     This Court also has subject matter jurisdiction over this action under 28 U.S.C. §§ 1331 and 1367 because Plaintiffs allege a federal law claim over which this Court has original jurisdiction, and all other claims are so related to the claim within such original jurisdiction that they form part of the same case or controversy within Article III of the United States Constitution.

13.     This Court also has subject matter jurisdiction over Plaintiffs' claims against the Emerson Defendants under 28 U.S.C. § 1367 to the extent such claims involve the joinder of additional parties.

14.     This Court has personal jurisdiction over Defendant Facebook because Facebook non-disclosure agreement it entered with BRG.

15.     This Court also has personal jurisdiction over Defendant Facebook because Plaintiffs' causes of action against Facebook arise out of or relate to Facebook's purposeful

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA 94104
(415) 954-4400

30692\5422181.2

SECOND AMENDED COMPLAINT

1  contacts with California, and the exercise of personal jurisdiction over Facebook in this particular

2  case would comport with principles of fair play and substantial justice.

3      16.    This Court also has personal jurisdiction over Defendant Facebook because it has

4  engaged in systematic and continuous contacts with this State and this County by, *inter alia*,

5  regularly conducting and soliciting business in this State and this County, and deriving substantial

6  revenue from products and/or services provided to persons in this State and this County.

7      17.    This Court has general personal jurisdiction over the Emerson Defendants because

8  they have engaged in systematic and continuous contacts with this State and this County by, *inter*

9  *alia*, regularly conducting and soliciting business in this State and this County, and deriving

10  substantial revenue from products and/or services provided to persons in this State and this

11  County.  In particular, Emerson Network Power maintains a division of its business that focuses

12  on large-scale data center solutions with an office in California, and Liebert also maintains an

13  office focused on data center solutions in California.  On information and belief, the Emerson

14  Defendants have numerous employees based in California.

15      18.    This Court also has specific personal jurisdiction over the Emerson Defendants

16  because Plaintiffs' causes of action against them arise out of or relate to their purposeful contacts

17  with California, including their business dealings with Facebook in California, and the exercise of

18  personal jurisdiction over the Emerson Defendants in this particular case would comport with

19  principles of fair play and substantial justice.  Employees of both Emerson Network Power and

20  Liebert who are based in California committed actions, described below, that form part of the

21  basis for Plaintiffs' claims.

22      19.    Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)–(c) because a

23  substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in this district,

24  Defendant Facebook resides in this judicial district, and all Defendants are subject to this Court's

25  personal jurisdiction.

26      20.    Venue is also proper in this district because by entering into the non-disclosure

27  agreement with BRG, Facebook agreed ████████████████████████████████████

28

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA  94104
(415) 954-4400

- 5 -

30692\5422181.2

SECOND AMENDED COMPLAINT

1   ██████████████████████ were to be resolved by the federal or state courts located in Santa Clara

2   County.

3                          **INTRADISTRICT ASSIGNMENT**

4          21.    This action is an Intellectual Property Action subject to district-wide assignment.

5   Facebook and BRG's non-disclosure agreement, the breach of which is at issue in this case, states

6   that ████████████████████████████████████████████████████████████████████

7   ████████████████████████████████████████████████████████████████████████

8   ████████████████████████████████████████████████████████████████████████

9                           **FACTUAL ALLEGATIONS**

10  *BRG, Bripco (UK), and the BRG Methodology*

11         22.    Over the course of 25 years, the founders and senior leadership of BRG developed

12  deep expertise in the pre-fabricated, modular construction of buildings that have specific air-

13  handling requirements.  They acquired this experience by designing and supplying mission-

14  critical modular buildings with complex mechanical and electrical components, including

15  industrial kitchens and hospital facilities such as operating theaters and clean rooms, to major

16  institutions around the world.  Their approach to these projects was to always maximize

17  efficiency and precision by pre-fabricating in a factory as many elements of each building as

18  possible, then transporting them to site.  In 2008, BRG's directors came to realize that the fast-

19  growing, multibillion dollar per year data center industry was an area where pre-fabrication and

20  modular construction techniques could provide significant benefits.  They decided to develop a

21  pre-fabricated data center product that could take full advantage of their experience and expertise.

22         23.    Data centers are extremely complex structures.  The backbone of the internet and

23  high-technology economy, they are where companies securely house their computer servers and

24  maintain the appropriate climate for them.  Precise construction standards and temperature and

25  humidity controls in these buildings are essential because of the heat that rows upon rows

26  containing racks upon racks of servers generate while operating.  This enormous amount of heat

27  can damage the servers if it is not efficiently and effectively removed.

28

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA  94104
(415) 954-4400

- 6 -

30692\5422181.2

SECOND AMENDED COMPLAINT

24.     Before BRG developed its innovative approach, it analyzed the market and found that companies that were then providing large, enterprise-level data centers used a standard "stick built" approach to construction.  In other words, the data centers were built traditionally by a large team that included architects and consultants who would develop the design for the data centers, general contractors to supervise construction, specialist sub-contractors, mechanical and structural engineers, cost managers, on-site tradesmen, and more.

25.     Using its existing expertise in constructing mission critical modular facilities, BRG set out to develop a better, faster, and more cost-effective way to build, deliver, and install large, mission-critical data centers.  BRG devoted substantial resources to refining its methods and designs.  The resulting innovations, designs, know-how and technological developments are collectively embodied in the BRG Methodology and a data center product called the "BladeRoom."

26.     The BRG Methodology offers many benefits over traditional methods of construction.  Using the BRG Methodology, BRG can construct large, enterprise-level data centers

27.     BRG installed its first data centers in 2009, and the company has grown rapidly since that time.  Due to the innovation and benefits offered by the BRG Methodology, BRG has achieved significant success, and today there are over 40 BladeRooms built by BRG operating on four continents, which are used by national governments and some of the world's most prestigious and well-known companies.  BRG's innovations have been recognized with industry

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA  94104
(415) 954-4400

- 7 -

30692\5422181.2

SECOND AMENDED COMPLAINT

1  awards, including the Green Enterprise IT award from the Uptime Institute, a well-known

2  standard-setting organization within the data center industry.

3       28.     The BRG Methodology involves information, compilations, techniques, designs,

4  know-how, methods, and processes that are trade secrets.  The specific trade secrets included

5  within the BRG Methodology that Plaintiffs allege Facebook and the Emerson Defendants

6  misappropriated are explained in detail in the October 30, 2015 Disclosure of Plaintiffs' Trade

7  Secrets Under California Code of Civil Procedure § 2019.210, attached as Exhibit B.  A

8  declaration supporting the disclosure by Paul Rogers, BRG's Chief Executive Officer, is attached

9  as Exhibit C.  Plaintiffs served Exhibits B and C on Facebook on October 30, 2015.  In a

10  telephone conference between both parties' counsel on November 5, Facebook's counsel

11  represented that Facebook would not contest the sufficiency of the disclosure of trade secrets and

12  that discovery was open.  Plaintiffs and Facebook have engaged in discovery since that time.

13  Plaintiffs also served a third party subpoena on the Emerson Defendants, and they have begun

14  producing documents in response to the subpoena.

15       29.     Some aspects of the BRG Methodology are the subject of granted patents and

16  pending patent applications, while others are kept as trade secrets or confidential and proprietary

17  information.  However, the trade secrets identified in Exhibit B were not publicly known in the

18  data center construction industry at the time BRG disclosed them to Facebook and the Emerson

19  Defendants.  (*See* Ex. C ¶¶ 2–7.)

20       30.     Plaintiffs developed their intellectual property over several years at great effort and

21  expense.  Bripco (UK) owns the trade secrets, know-how, trademarks, design rights, and

22  confidential proprietary information, while BRG is its licensee.  The license between Bripco (UK)

23  and BRG obligates BRG to maintain the confidentiality of Bripco (UK)'s trade secrets, know-

24  how, and other confidential information relating to the BRG Methodology.

25       31.     Bripco (UK) and BRG protect Bripco (UK)'s trade secrets and confidential and

26  proprietary information—including the trade secrets identified in Exhibit B—by limiting the

27  content of any public disclosure and ensuring that private disclosure to potential clients, suppliers,

28  and others is covered by non-disclosure agreements.  Computer systems containing the trade

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA  94104
(415) 954-4400

- 8 -

30692\5422181.2

SECOND AMENDED COMPLAINT

1  secrets are password-protected.  Facilities where the trade secrets are stored are physically

2  secured.  Visitors are prevented from accessing the trade secrets unless under a non-disclosure

3  agreement.  Employee access to the trade secrets is limited to those employees with a need to

4  know.  Employees must sign agreements requiring them to keep confidential trade secrets and

5  proprietary information they learn in BRG's employ and requiring the return of any trade secrets

6  and proprietary information materials at the termination of employment.

7       32.  Bripco (UK) has commercialized its trade secrets relating to the BRG

8  Methodology through several licensing relationships.  In addition to its license to BRG, Bripco

9  (UK) has licensed its trade secrets to a distributor in Australia and New Zealand and to a licensee

10  and a manufacturer in the United States.

11       33.  As the owner of the trade secrets relating to the BRG Methodology, Bripco (UK)

12  has authorized BRG to participate as co-plaintiff in this lawsuit for the purposes of pursuing any

13  claims for damages that BRG has suffered as a licensee of the trade secrets, including claims for

14  damages for the misappropriation of the trade secrets by Facebook and the Emerson Defendants

15  as described in this complaint.

16  *The Emerson Non-Disclosure Agreement*

17       34.  In August 2011, Emerson and BRG entered into ███████████████

18  ███████████████████████████

19       35.  Before holding any substantive discussions with Emerson, Bladeroom Holdings

20  Limited, the company that owns BRG, executed a non-disclosure agreement with Emerson on

21  August 17, 2011 (the "Emerson Non-Disclosure Agreement").  The Emerson Non-Disclosure

22  Agreement is attached as Exhibit D.

23       36.  Paragraph 13 of the Emerson Non-Disclosure Agreement provides that ████

24  ████████████████████████████████████████

25  ███████████████████ include Plaintiff Bripco (UK) and Plaintiff BRG, a

26  subsidiary of BladeRoom Holdings Limited.

27  *The Facebook-BRG Non-Disclosure Agreement*

28

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA  94104
(415) 954-4400

30692\5422181.2

SECOND AMENDED COMPLAINT

37.     In late October 2011, BRG was confident in its growing global reputation, and it contacted Facebook to promote BladeRooms and the BRG Methodology.  Facebook, at least initially, was reluctant to engage with BRG and was dismissive of the idea that a pre-fabricated, modular data center could meet Facebook's needs.  Facebook expressed satisfaction and confidence that it had already found the right approach, which was a traditional stick-built approach, and it directed BRG to view what it had published around six months earlier when it had publicly announced the completion of its first company-owned data center in Prineville, Oregon.  But BRG had much to offer Facebook, and soon Facebook agreed to further discussions with BRG to learn more about the BRG Methodology.

38.     ███████████████     Facebook and BRG entered into a "Facebook, Inc. Mutual Non-Disclosure Agreement" (the "Facebook Non-Disclosure Agreement"), which is attached as Exhibit A and incorporated into this Complaint.

39.     In paragraph 1 of the Facebook Non-Disclosure Agreement, Facebook and BRG agreed that ███████████████████████,

███████████████████████████████████
███████████████████████████████████
███████████████████████████████████

40.     In paragraph 2 of the Facebook Non-Disclosure Agreement, Facebook and BRG agreed that: ██████████████████████████
███████████████████████████████████

41.     In paragraph 3 of the Facebook Non-Disclosure Agreement, Facebook and BRG agreed that

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA  94104
(415) 954-4400

30692\5422181.2

1

2

3

4

5

6

7

8   42.     In paragraph 4 of the Facebook Non-Disclosure Agreement, Facebook and BRG

9   agreed, *inter alia*, that:

10

11

12

13   43.     In paragraph 9 of the Facebook Non-Disclosure Agreement, Facebook and BRG

14   agreed that:

15

16

17

18   44.     In paragraph 12 of the Facebook Non-Disclosure Agreement, Facebook and BRG

19   agreed, *inter alia*, that

20

21   45.     In paragraph 13 of the Facebook Non-Disclosure Agreement, Facebook and BRG

22   agreed, *inter alia*, that

23

24

25   46.     Paragraph 13 of the Facebook Non-Disclosure Agreement provides that

26

27

28

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA 94104
(415) 954-4400

30692\5422181.2

SECOND AMENDED COMPLAINT

***BRG's Confidential Disclosures of the BRG Methodology to the Emerson Defendants and to Facebook and Its Partners***

47.    Shortly after executing the Emerson Non-Disclosure Agreement, BRG hosted several Emerson executives for a presentation regarding BRG's business and the BRG Methodology at BRG's factory in England on September 13, 2011.  BRG ████████████████████████████████████████████████████████████████████████ ██████████████████████████████████████████████████████████████  BRG also disclosed to Emerson how suitable the BRG Methodology was for the production of very large data centers for mega-scale clients.

48.    Emerson showed some initial interest, but in October 2011 it informed BRG's corporate advisers that at that time it ████████████████████████████████ ███████████████████

49.    Discussions with Facebook, on the other hand, proceeded rapidly.  ████████ ███████████  the Facebook Non-Disclosure Agreement, Facebook urgently requested a written proposal to supply BladeRooms for a Facebook data center in North Carolina.  BRG responded with a detailed proposal on November 25, 2011, which it marked "COMMERCIAL IN CONFIDENCE."  The proposal included details about the BRG Methodology, including Bripco (UK) trade secrets.  For example, the proposal included ██████████████████████

50.    Feedback from Facebook on this proposal was positive, and Facebook quickly began asking to learn even more details about the BRG Methodology.  On March 15, 2012, BRG met with Jay Park (Facebook's Director of Data Center Design and Construction) and Marco

- 12 -

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA  94104
(415) 954-4400

30692\5422181.2

1    Magarelli (Facebook's Senior Design Engineering Manager) in Facebook's offices in Palo Alto,

2    California to discuss Facebook's interest in using BladeRooms at its various data center sites,

3    including in the forthcoming second phase of its data center campus in Luleå, Sweden.

4         51.    Eight days later, on March 23, 2012, Jay Park and Tom Furlong (Facebook's Vice

5    President of Site Operations) traveled to England to meet with BRG in person.  During their visit,

6    BRG provided Mr. Park and Mr. Furlong with more written materials about BladeRooms and the

7    BRG Methodology.  These materials were also marked "COMMERCIAL IN CONFIDENCE,"

8    and they included further confidential information and trade secrets, including:

9

10

11                              So that Facebook's senior personnel could see for themselves what the BRG

12   Methodology was already delivering in practice to BRG's clients around the world and to

13   illustrate to them that the BRG Methodology could successfully provide the kind of enterprise-

14   level data centers that Facebook required, BRG also took Mr. Park and Mr. Furlong on a tour of

15   an operating BladeRoom to prove the technology.  This tour of a large-scale, fully operational

16   data center campus employing multiple BladeRoom data halls included a confidential discussion

17   with BRG's client operating the BladeRoom, demonstrating to Facebook that the BRG

18   Methodology was successful in practice, commercially viable, and suitable to the needs of large,

19   multinational clients.

20        52.    Visibly impressed with the operational BladeRoom and the innovative BRG

21   Methodology, Facebook continued to request yet more detailed confidential information from

22   BRG.  In particular, at the conclusion of the March 23 visit, Mr. Park suggested that the next step

23   should be for a team of Facebook design and engineering staff to travel to BRG in England for an

24   in-depth workshop with BRG's technical teams to enable Facebook to learn more and for both

25   parties to collaboratively determine the technical details of how the BRG Methodology and

26   BladeRooms could be used to meet Facebook's data center needs.

27        53.    Through discovery, Plaintiffs have learned that                    Mr. Park met

28   with an Emerson Network Power executive based in Southern California,

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA  94104
(415) 954-4400

30692\5422181.2

April 26, Emerson, who had been silent for the previous six months, contacted Plaintiffs' corporate advisers on ████████████████ and, during the following weeks, sought to re-open discussions with Plaintiffs. Plaintiffs agreed to do so and Emerson told Plaintiffs that there would be a different group of people ████████████████ than the Emerson representatives who had visited BRG in September, 2011.

54. On May 17, 2012, following up on Emerson's April 26, 2012, email to Plaintiffs' corporate advisers, an Emerson Network Power Vice President named David Gerhart spoke with BRG's CEO, Paul Rogers, and discussed ████████████████ and a further meeting at BRG's facilities in England. Mr. Gerhart was not among the group of Emerson executives that had visited Plaintiffs in September 2011. On May 18, 2012, Mr. Gerhart proposed that several Emerson Network Power representatives, including Mr. Gerhart, would visit BRG's facilities during the week of June 18, 2012.

55. Meanwhile, Facebook and BRG exchanged communications to arrange for the in-depth workshop that Mr. Park had proposed and Facebook took yet more steps to learn further details about the BRG Methodology.

56. On May 29 and May 30, 2012, at Facebook's invitation, BRG attended a two-day meeting at the Facebook data center campus in Prineville. BRG had been told that the purpose of the meeting was for BRG to survey and physically see the functionality of a Facebook data center and meet Facebook's lead architect and engineers. Facebook was also working on what it referred to as a "modular" design for a new expansion of its Prineville data center campus, and it wished to learn whether BRG's designs and technology could meet its needs for that installation. However, at the meeting, BRG's personnel were surprised to find present not only Facebook's in-house architect and engineers but also a team of third party architects and general contractors that had helped build Facebook's previous data center at Prineville using stick-build designs and techniques. These included representatives from architectural and construction firms SP Arch, AlfaTech, and DPR-Fortis.

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA 94104
(415) 954-4400

30692\5422181.2

57.     Facebook asked BRG to present and discuss BladeRooms and the BRG Methodology with these Facebook contractors at the Prineville meeting, which BRG did, again disclosing trade secrets and additional confidential information ████████ Facebook Non-Disclosure Agreement.  Facebook told the BRG representatives at this meeting that BRG would be asked to submit a proposal for delivery of an expansion to Facebook's Prineville data center campus using BladeRooms.  Because these third party architects and general contractors were Facebook's ████████ any disclosures to them were ████████ Facebook Non-Disclosure Agreement.

58.     From discovery, it is now apparent that Facebook concealed material and important information from BRG and its representatives, including the fact that before the Prineville meeting took place, Facebook had already agreed with its construction contractor ████ ████████████████████████████████████████ in direct competition with BRG's bid.  Unbeknown to BRG, Facebook had previously supplied BRG's confidential information, which included BRG's pricing information and other trade secrets, ████████ Around the time of the Prineville meeting, Facebook's Tom Furlong privately instructed ████████████████ ████████████████████████████████████ ████████████████████████████████████

59.     After inducing BRG to disclose confidential information and trade secrets to DPR-Fortis, SPArch, and AlfaTech, Facebook knowingly accepted a bid for the project from DPR-Fortis that relied on the confidential information BRG had disclosed ████ Facebook Non-Disclosure Agreement during the May 2012 meeting and in other BRG materials provided to Facebook.

60.     BRG was not aware at the time that, as a result of Facebook's actions, DPR-Fortis would misuse BRG's confidential information in preparing a bid for the Prineville data center.  BRG continued to collaborate with Facebook and prepare for the in-depth workshop that Mr. Park had proposed.  The intensive workshop began on June 19, 2012, with BRG hosting a team from Facebook that included Mr. Magarelli and two other Facebook employees involved in Facebook's

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA  94104
(415) 954-4400

30692\5422181.2

1    data center design and engineering efforts, Tin Tse (Facebook's Senior Mechanical Engineer and

2    the design lead for modular data center research and development) and Paul Hsu (Facebook's

3    Director of Data Center Strategic Engineering).

4         61.      By the end of the intensive workshop on June 21, 2012, the Facebook team had

5    toured a large-scale, fully operational data center campus employing multiple BladeRoom data

6    halls and been provided with full access to BRG's operations, including a detailed walkthrough of

7    an operational BladeRoom; a tour of the BRG assembly facility, including inspection of the

8    assembly process; review of BladeRoom manuals; and an intensive meeting that included a line-

9    by-line comparison of the components and systems employed in BladeRooms versus those in

10   Facebook's data centers. They also received additional documentation from BRG, again marked

11   "COMMERCIAL IN CONFIDENCE," that included Bripco (UK) trade secrets and confidential

12   information, including:

13

14

15                                                          Together,

16   these materials, discussions, and demonstrations disclosed almost every aspect of the BRG

17   Methodology.

18        62.      The BRG and Facebook engineering teams collaborated in great technical detail

19   throughout the workshop at BRG's facilities. Near the end of these meetings, Mr. Magarelli told

20   BRG's representatives: "The only thing more impressive than your product is your business." He

21   said that he could see Facebook using BRG's technology on a large scale.

22        63.      During the workshop, the BRG and Facebook engineering teams playfully

23   referenced Ikea's approach of flat-packing and home assembly of furniture to summarize the

24   BRG Methodology and how it greatly simplified the very complex task of constructing

25   warehouse-sized data centers. After the end of the workshop had concluded, the BRG team

26   emailed Mr. Magarelli and the Facebook team and included an image of an Ikea Allen key as a

27   light-hearted memento of the visit.

28

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA 94104
(415) 954-4400

30692\5422181.2

SECOND AMENDED COMPLAINT

64. Literally at the same time that Facebook's representatives were visiting BRG for the workshop from June 19–21, 2012, representatives from Emerson Network Power and Fred Rebarber, a Liebert executive based in Menlo Park, California, made their visit to BRG in England. The team from Emerson Network Power, which included Mr. Gerhart, met with BRG in England and were provided with a tour of a large-scale, fully operational data center campus employing multiple BladeRoom data halls so they could see for themselves what the BRG Methodology was already delivering in practice to BRG's clients around the world. The team from Emerson Network Power and Liebert also received trade secrets and confidential information about the BRG Methodology, including know-how, techniques, and concepts to implement the Methodology. During this visit, Plaintiffs disclosed to Emerson Network Power and Liebert each trade secret identified in Exhibit B to this complaint, with the exception of the specific documents provided to Facebook identified in Exhibit B (Trade Secrets 22–25). Although Plaintiffs did not disclose those specific documents to Emerson Network Power or Liebert, they did disclose the trade secret information relating to █████████████████████ ████████████████████ appearing in the documents identified in Trade Secrets 22–24. All these disclosures were protected by the Emerson Non-Disclosure Agreement.

65. At the time, BRG thought it was merely a coincidence that the two companies were visiting BRG simultaneously, and because the respective discussions with both Facebook and Emerson were confidential, BRG took pains to ensure that the two companies' representatives did not cross paths with one another during their visit to BRG's facilities. BRG believed its efforts to keep the two companies apart were successful until a conversation between Mr. Gerhart and Mr. Rogers about ██████████████████████████████████ would be well-suited to target "hyperscale" data center clients, during which Mr. Gerhart volunteered that he had just discovered that some people he knew from Facebook were also visiting BRG at this time. Mr. Gerhart told Mr. Rogers that he might try to catch up with these people before flying out of London and if he did, and that if BRG was mentioned by Facebook, he would let Mr. Rogers know. BRG now knows that, despite Mr. Gerhart's apparently casual remarks, Facebook and Emerson in fact were secretly conspiring to meet together in London on the

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA 94104
(415) 954-4400

30692\5422181.2

1  evening of June 21, 2012, and in the ████████████ to discuss Plaintiffs' technology and to

2  unlawfully use Plaintiffs' trade secrets and confidential information.

3      66.    Emerson is one of the world's largest data center providers and a competitor to

4  BRG. At the time it visited BRG in June 2012, Emerson and its affiliated companies sold data

5  centers that were built out of pre-constructed volumetric boxes. Under this approach, multiple

6  finished boxes are shipped to the construction site and located together to form the finished data

7  center. BRG had used a volumetric box approach in 2009 and 2010 but found that it would not

8  be an effective method for constructing warehouse-sized data centers. BRG invented the BRG

9  Methodology to provide an innovative solution for modular construction of warehouse-sized data

10  centers that was different than any other approach available on the market.

11      67.    Both during and after the visit, Emerson Network Power expressed excitement

12  about the promise of the BRG Methodology and indicated that it wished to continue discussing

13  possibly ████████████████ Communications on this subject continued until late

14  August 2012 after which Emerson's interest disappeared and Plaintiffs heard nothing further from

15  Emerson. BRG never imagined that Facebook would, in collusion with the Emerson Defendants,

16  end up stealing the BRG Methodology and partnering with the Emerson Defendants to construct

17  its data centers using BRG's trade secrets and confidential information.

18      68.    Without disclosing it to Plaintiffs, the teams from Facebook and the Emerson

19  Defendants left their separate meetings with Plaintiffs and immediately traveled to a pre-arranged,

20  clandestine meeting together in London on the evening of June 21, 2012. At this meeting, the

21  Emerson Defendants and Facebook discussed the BRG Methodology and compared notes on

22  what each had learned from Plaintiffs' confidential disclosures to them. The following day, Mr.

23  Gerhart emailed Mr. Rogers referencing a discussion he had with Facebook the previous night in

24  which Facebook had mentioned BRG in a "very casual introductory dialogue." What is now

25  apparent from discovery, and what Facebook and the Emerson Defendants intentionally

26  concealed from BRG at the time, is that the June 21 meeting was arranged ████████████

27  ████████████████████████████████████████

28  ████████████████████████████████████████

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA  94104
(415) 954-4400

30692\5422181.2

69.     Facebook continued to indicate that it was interested in partnering with BRG to meet its future data center needs, and it continued to request more proposals and more information from BRG.  In July 2012, in response to Facebook's requests, BRG submitted two more lengthy and detailed proposals for the delivery of BladeRooms at Facebook's sites in Prineville and Luleå.  Each proposal, like the written presentation materials about BladeRooms that BRG had previously provided to Facebook, were marked "COMMERCIAL IN CONFIDENCE," and included Bripco (UK) trade secrets and confidential information about the BRG Methodology, including:

70.     In addition to the communications described above, BRG disclosed to Facebook Bripco (UK) trade secrets and confidential information, including but not limited to

### Facebook Partners with the Emerson Defendants To Steal the BRG Methodology

71.     Despite visiting BRG twice, soliciting numerous proposals, and conducting many meetings and calls with BRG, Facebook never placed an order for BladeRooms with BRG. Instead, Facebook, together with the Emerson Defendants, simply stole the BRG Methodology and passed it off as its own.

72.     Through discovery in this action, Plaintiffs have learned that on June 21, 2012, at the same time that both Facebook and the Emerson Defendants were visiting Plaintiffs' facilities in England, they were also                                    Knowing that they would soon be meeting with Facebook, a potential BRG customer,

- 19 -

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA  94104
(415) 954-4400

30692\5422181.2

SECOND AMENDED COMPLAINT

1    the Emerson Defendants on June 22 and 26 nonetheless requested copies of the presentations that

2    Plaintiffs had shown them during their visit to Plaintiffs' facilities, all of which were marked

3    "Confidential."

4         73.    The same Facebook team that had visited Plaintiffs' facilities—Marco Magarelli,

5    Tin Tse, and Paul Hsu—plus

6

7

8         74.    Facebook's documents produced in discovery show that the explicit purpose of

9    that

10                                   As Facebook's Mr. Tse wrote on                      in an internal

11   Facebook email that Plaintiffs have received through discovery, the purpose of this

12

13                                                    In the following weeks, Mr. Tse reported

14   internally that he continued to "

15                          "

16        75.    Facebook and the Emerson Defendants continued conspiring on a plan to steal

17   Plaintiffs' technology several weeks later during an

18

19

20

21

22        76.    The Emerson Defendants' internal notes from this meeting, which Plaintiffs have

23   obtained through discovery, show that

24                            The notes further show that the Defendants

25                                                             The Defendants also

26   discussed

27                       And the Defendants crafted a statement of their

28                  hat reads:

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA 94104
(415) 954-4400

30692\5422181.2

77.   The participants at the ████████████████████ included the same people who had visited BRG's facilities in England.  In particular, ████████████ ████████████ from Facebook all participated in the ████████████ as did ████████ from Emerson Network Power.

78.   A few months after this meeting, on January 16, 2013, Emerson Network Power publicly announced that it was launching a new business division, the "Hyperscale Solutions Team," that would focus on "serving the needs of massive data centers."  The announcement notes that the market trend toward larger data centers required "customized, highly scalable, and often modular infrastructures," which Emerson Network Power's new team would deliver "through consulting, custom solutions, and implementation."  The Emerson Defendants used BRG's trade secrets and confidential information to help launch this new business and to provide modular data center services to Facebook and, eventually, to other companies as well.

***Facebook Discloses Confidential Information About the BRG Methodology on OpenCompute***

79.   Although Facebook conspired with the Emerson Defendants to misappropriate, use and unlawfully benefit from BRG's trade secrets and confidential information, discovery has confirmed that that was not the full extent of Facebook's wrongful and damaging conduct.  Facebook was not content with stealing the BRG Methodology and encouraging the Emerson Defendants to develop a new line of business offering BRG's approach to Facebook and the public.  Instead, Facebook wanted to drive down its costs for using BRG's technology even further by inducing as many vendors as possible to begin offering data centers using the BRG Methodology.

80.   Plaintiffs have learned through discovery in this action that, to further unjustly benefit from its misappropriation of BRG's trade secrets and confidential information, ████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████  Notably, the same

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA  94104
(415) 954-4400

30692\5422181.2

1  Facebook employees who had visited BRG's facilities just weeks before also participated ██████

2  ███████████████████████████

3      81.    Facebook never informed Plaintiffs about these ████████

4  ███████████████████████████  Outwardly, Facebook

5  continued to demonstrate interest in using BRG's technology for data center projects through

6  2012 and 2013, even while it simultaneously developed a directly competing approach based on

7  BRG's confidential and trade secret information.  For example, in July 2013, Facebook asked

8  BRG to submit an unsolicited proposal for a modular data center, and in October 2013, Facebook

9  asked BRG to submit a proposal involving the BRG Methodology for another data center project

10  in Altoona, Iowa.  At around the same time, Facebook engaged the Emerson Defendants and the

11  architectural firm SP Arch to develop a modular design and construction approach for the

12  Altoona data center using designs and methods that BRG had shared with Facebook.  At

13  Facebook's request, SP Arch produced at least one design for a data center that incorporated

14  confidential and trade secret designs and information that BRG provided to Facebook.

15      82.    The communications and meetings between Facebook and the Emerson

16  Defendants discussed above show that, at least as early as August 15, 2012, both Facebook and

17  the Emerson Defendants were aware that the other planned to misappropriate Plaintiffs' trade

18  secrets and confidential information and use them to compete unfairly with Plaintiffs.  The

19  communications and meetings discussed above show that Facebook and the Emerson Defendants

20  reached an agreement whereby both of them would collaborate to copy and steal Plaintiffs' data

21  center technology and provide it to others, thereby committing wrongful acts of misappropriation

22  and unfair competition.

23      *The January 2014 OpenCompute Presentation*

24      83.    Facebook's and the Emerson Defendants' misdeeds might never have come to

25  light had they decided that simply stealing BRG's intellectual property was enough.  Instead,

26  Facebook went further when it decided to encourage and induce others to use BRG's intellectual

27  property as well by revealing BRG's confidential information through an initiative created by

28  Facebook called the "OpenCompute Project" ("OpenCompute").

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA  94104
(415) 954-4400

30692\5422181.2

84.     According to the initiative's website, available at

http://www.opencompute.org/about, the goal of OpenCompute is to give the public "full access to

the[] specifications" used by Facebook in its data centers in order to "spark a collaborative

dialogue" about how to improve its approach to data centers.  Thus, market participants and

consumers in the data center industry understand that designs, specifications, methods, and other

information shared through the OpenCompute project have been donated to the public as "open

source" material and may be used by others free of charge.

85.     Facebook claims to share its data center designs and information openly with the

public through OpenCompute in order to induce as many companies as possible to adopt its

specifications and to encourage as many suppliers as possible to provide goods and services in

compliance with its data center designs.  By promoting widespread adoption of its specifications

for data center technology, Facebook seeks a great commercial benefit—reduction in costs and

the eventual commoditization of products needed to build data centers as a result of suppliers

vying against each other for Facebook's business.  Facebook claims that this approach has saved

it billions of dollars.  For example, during a January 28, 2014 Q&A session at an OpenCompute

conference, Facebook's CEO, Mark Zuckerberg, was asked why the company decided to make all

OpenCompute designs "open source."  As part of his response, Mr. Zuckerberg stated: "In the last

three years alone, Facebook has saved more than a billion dollars in building out our

infrastructure using OpenCompute designs."  A video of this conversation is available at

https://www.youtube.com/watch?v=imwHX_dlpIw&feature=youtu.be.  Mr. Zuckerberg's

comment begins at about the 3:42 mark.

86.     Similarly, a member of Facebook's engineering department posted online that,

through OpenCompute, Facebook had "open-sourced every major physical component of our data

center stack," which had "saved us $2 billion in infrastructure costs over the last three years."

The blog post is available here: https://code.facebook.com/posts/1538145769783718/open-

compute-project-u-s-summit-2015-facebook-news-recap/.

87.     On January 28, 2014, approximately 18 months after attending the in-depth

workshop at BRG's facilities in England, Mr. Magarelli made a public presentation at the same

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA  94104
(415) 954-4400

30692\5422181.2

1    OpenCompute forum in San Jose, California where Mr. Zuckerberg made his comments about the

2    cost savings achieved through OpenCompute. Mr. Magarelli's presentation focused on

3    Facebook's brand new "rapid deployment data center" or "RDDC method." A video of Mr.

4    Magarelli's presentation was posted to YouTube at

5    http://www.youtube.com/watch?v=yu8jin33G64. Mr. Magarelli's presentation begins around the

6    21:49 mark.

7        88.     In his presentation of the RDDC, Mr. Magarelli explains that Facebook was

8    looking for ways to use construction methods that would allow it to deliver twice the amount of

9    data space in about half the normal time. Mr. Magarelli explains that many of the concepts

10    underlying the RDDC were developed with "vendors."

11        89.     The RDDC method that Mr. Magarelli describes is the BRG Methodology that

12    Facebook stole and re-marketed with a different name.

13        90.     For example, in his presentation, Mr. Magarelli states that Facebook considered

14    ▮▮▮▮▮▮▮▮▮▮ but they ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Instead, the RDDC method

15    calls for building ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

16    ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

17    ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

18        91.     Mr. Magarelli's presentation shows that Facebook's RDDC copied BRG's

19    ▮▮▮▮▮▮▮▮▮ too, even using the exact same language to describe this structure. ▮▮▮

20    ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

21    ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

22    ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

23    ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

24    ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

25        92.     Mr. Magarelli's presentation also shows an animation of ▮▮▮▮▮

26    ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

27    ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

28    ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA 94104
(415) 954-4400

30692\5422181.2

SECOND AMENDED COMPLAINT

93.     Mr. Magarelli states:

94.     Mr. Magarelli further states that the RDDC method provides

95.

In his presentation, Mr. Magarelli compares this to the "Ikea model" for shipping products, an apparent reference to the discussions between Facebook and BRG during the June 2012 workshop.

96.     RDDC, as presented by Mr. Magarelli, is copied from the BRG Methodology.

But Mr. Magarelli does not mention BRG or BladeRooms in his presentation.

97.     Facebook's actions have caused direct competitive harm to BRG.  Facebook, on its own and in collaboration with Emerson, stole the BRG Methodology, called it by another name (RDDC), then passed off the BRG Methodology as its own.  At the OpenCompute presentation, Facebook portrayed RDDC as its own method for the modular construction of warehouse-sized data centers.  Facebook took the BRG Methodology, disclosed it to the public as RDDC, and encouraged the data center industry to take the BRG Methodology and further develop it to build the data centers of the future.  By claiming that RDDC is its own methodology, Facebook has positioned itself as an innovator of data center construction in direct competition with BRG.

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA  94104
(415) 954-4400

98.     Facebook also encouraged and induced the Emerson Defendants to assist it in developing RDDC and to offer it to the public in direct competition with BRG.  In its 2014 Annual Report to shareholders, Emerson states that it "collaborated with Facebook to create the new 'rapid deployment data center' (RDDC)."   Emerson boasts that this "new-to-the world data center approach . . . combines the best of factory-built components with lean construction techniques, resulting in a data center that is more efficient, uses less material and deploys faster." In the same annual report, Emerson projects "near-term improvement in the data center business."

99.     Whereas before Facebook's acts, BRG was the only company in the world offering its unique Methodology, Emerson now seeks to expand its practice, publicly offering to construct warehouse-sized data centers using the RDDC method.  For example, in or around June 2015, the Emerson Defendants proposed a modular data center design and solution to ██████████████ ████████████████████████   The Emerson Defendants' proposal relied on Plaintiffs' trade secrets and confidential information, including trade secrets and confidential information relating to air handling and cooling systems.

### *The March 2014 OpenCompute Blog Post*

100.     Facebook continued to misuse and misappropriate BRG's confidential information and Bripco (UK)'s trade secrets.  On March 7, 2014, Mr. Magarelli also authored and published an OpenCompute blog post about or RDDC that provides further details showing it is a copy of the BRG Methodology.  The blog post may be accessed at http://www.opencompute.org/blog/faster-leaner-smarter-better-data-centers.

101.     In his blog post, Mr. Magarelli reveals that the RDDC concept was developed at the October 2012 "hack": "In October 2012, our data center strategic engineering and development team and several experts in lean construction came together to hack on a design for a data center that would look less like a construction project and more like a manufactured product."  The blog post further confirms that RDDC, as described by Mr. Magarelli in his presentation and blog post, is nothing more than the BRG Methodology re-packaged and offered by Facebook.

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA  94104
(415) 954-4400

30692\5422181.2

102.    Through his blog post and presentation, Mr. Magarelli falsely claims that it was Facebook's "engineering and development teams" that performed the architectural and engineering design services necessary to create the RDDC method.  The truth is that it was BRG—not Facebook—that provided the innovative architectural, engineering and design services Facebook falsely claimed were performed by its internal teams.  RDDC is merely a copy of the BRG Methodology, which BRG spent years developing, designing, and refining.

103.    For example, the blog describes details of

104.    Mr. Magarelli's blog post also describes RDDC's use of

105.

106.    Some of the hoped-for benefits of RDDC that Mr. Magarelli cites in his blog post include

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA  94104
(415) 954-4400

30692\5422181.2

These are all benefits that BRG taught Facebook that could be achieved using the BRG Methodology. Mr. Magarelli concludes his blog post with news that Facebook planned to use the RDDC designs in the construction of their second data center in Luleå. The blog post emphasizes that Facebook's RDDC is a "new approach to data center design."

107.     Three days after Mr. Magarelli published his blog post about RDDC,

108.

Again, Mr. Magarelli does not mention BRG or BladeRooms in his blog post or make any attempt to attribute or credit BRG for the innovative new approach he falsely claimed was Facebook's.

109.     Mr. Magarelli's January presentation and March blog post do not disclose Facebook's own methodology, but rather the BRG Methodology, including BRG's confidential and trade secret information

the Facebook Non-Disclosure Agreement.

On information and belief, dozens of companies that are consumers in the market for data center design sent representatives to the OpenCompute forum where Mr. Magarelli made his announcement in January 2014. Mr. Magarelli's presentation and his blog post were also widely covered in the data center industry media, where

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA 94104
(415) 954-4400

30692\5422181.2

1  BRG's competitors in data center design and construction and additional consumers in the data

2  center design market learned of his statements about RDDC.

3      110.    On information and belief, at the time he made the statements concerning RDDC

4  in his OpenCompute presentation and blog post, Mr. Magarelli knew that RDDC was a copy of

5  the BRG Methodology and that it incorporated confidential and trade secret information that

6  Facebook had obtained from BRG.  Mr. Magarelli was present at the workshop with BRG in June

7  2012, and he personally learned BRG confidential and trade secret information in the form of

8  presentations, written materials, and factory and site visits, among other things.

9      111.    On information and belief, Mr. Magarelli was acting within the scope of his

10  employment and was acting as a Facebook agent and representative at all times mentioned in this

11  Complaint.

12  ***Facebook and Emerson Use the Information and Trade Secrets They Misappropriated from***

13  ***BRG To Construct Facebook's New Data Center in Luleå, Sweden***

14      112.    By conspiring with the Emerson Defendants to adopt the BRG Methodology and

15  revealing the BRG Methodology to the entire data center industry through the OpenCompute

16  project, Facebook put itself into in a prime position to demand lower prices from any company

17  that wanted its data center business.  It had created one direct competitor to BRG—the Emerson

18  Defendants—and it had provided enough information to inspire countless more competitors, all

19  using the BRG Methodology and all vying for Facebook's business.

20      113.    In May 2014, Facebook announced that it had selected Emerson Network Power to

21  construct a pre-fabricated, modular data center for the second phase of its Luleå, Sweden campus.

22  On information and belief, the design and construction process for the Luleå phase two data

23  center that Emerson Network Power has constructed for Facebook incorporates Bripco (UK)

24  trade secrets and other confidential information about the BRG Methodology.

25      114.    Publicly available information about the construction of the data hall of phase two

26  of the Luleå data center campus shows that Facebook and Emerson are using components of the

27  BRG Methodology and concepts and techniques that BRG developed ███████████████

28  their respective non-disclosure agreements.  For example, photos of the construction at phase two

- 29 -

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA  94104
(415) 954-4400

30692\5422181.2

SECOND AMENDED COMPLAINT

of the Luleå site show that Facebook used the modular construction techniques disclosed by BRG for this data center instead of the traditional, stick-built approach that Facebook has used for all its previous data centers (including the first phase of the Luleå campus). ████████████████

115. Through discovery in this action, Plaintiffs have learned that Facebook's May 2014 announcement that it had selected Emerson Network Power to construct the expansion of the Luleå data center campus had been put into place long before. For example, on ████ Facebook and Liebert ████ rely on the same technology that BRG had demonstrated to Facebook and the Emerson Defendants just months before they executed their ████

116. Discovery in this action has also shown that Facebook asked Emerson ████ BRG showed Facebook in detail how its ████ obtained a greater degree of control than Facebook's preexisting technology, in part through using ████

### FIRST CAUSE OF ACTION

### (Breach of Contract Against Facebook)

117. Plaintiffs incorporate by reference as though set forth herein each of the preceding allegations of each paragraph in this Complaint.

118. ████ Facebook and BRG entered into the Facebook Non-Disclosure Agreement, ████

119. ████ the Facebook Non-Disclosure Agreement ████

- 30 -

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA 94104
(415) 954-4400

30692\5422181.2

SECOND AMENDED COMPLAINT

120.     the Facebook Non-Disclosure Agreement

121.     In the alternative, to the extent that Facebook did not breach any term of the Facebook Non-Disclosure Agreement, it breached the covenant of good faith and fair dealing by unfairly interfering with Plaintiffs' right to receive the benefit of the contract. The parties contemplated that one of the benefits of the Facebook Non-Disclosure Agreement

122.     As a direct and proximate result of Facebook's breaches of the Facebook Non-Disclosure Agreement (or, alternatively, of the covenant of good faith and fair dealing), Plaintiffs have suffered damages, and Facebook has been unjustly enriched, in an amount to be determined at trial.

123.     Facebook's breaches have caused and continue to cause Plaintiffs irreparable harm that cannot be fully redressed through damages alone. An injunction as set forth herein is necessary to provide Plaintiffs with complete relief.

## SECOND CAUSE OF ACTION

**(Misappropriation of Trade Secrets & Conspiracy to Misappropriate Trade Secrets Against Facebook and the Emerson Defendants)**

124.     Plaintiffs incorporate by reference as though set forth herein each of the preceding allegations of each paragraph in this Complaint.

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA 94104
(415) 954-4400

30692\5422181.2

125.     Plaintiff Bripco (UK) is the owner of trade secrets as defined by California's Uniform Trade Secrets Act, Civil Code sections 3426–3426.11.  BRG is a licensee of the trade secrets.  As the owner of the trade secrets, Bripco (UK) has authorized BRG to participate as co-plaintiff in this lawsuit for the purposes of pursuing any claims for damages that BRG has suffered as a licensee of the trade secrets, including claims for damages for the misappropriation of the trade secrets by Facebook and the Emerson Defendants as described in this complaint.

126.     Plaintiff Bripco (UK)'s trade secrets include but are not limited to information regarding

The specific trade secrets that, at this time, Plaintiffs believe Facebook and the Emerson Defendants have misappropriated are identified in Exhibit B, and supporting facts concerning the secrecy of the trade secrets at the time of disclosure are provided in Exhibit C.

127.     Bripco (UK)'s trade secrets derive independent actual and potential economic value from not being generally known or available to the public or other persons who can obtain economic value from their disclosure or use.

128.     Bripco (UK)'s trade secrets have significant value, resulting from significant investment of time and resources.

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA  94104
(415) 954-4400

30692\5422181.2

129.    Bripco (UK) and BRG have made, and continue to make, efforts that are reasonable under the circumstances to maintain the secrecy of its trade secrets.

130.    The Bripco (UK) trade secrets identified in Exhibit B were trade secrets at the time that they were ███████████████ he Facebook Non-Disclosure Agreement.

131.    The Bripco (UK) trade secrets identified in Exhibit B were trade secrets at the time that they were disclosed to the Emerson Defendants under the Emerson Non-Disclosure Agreement.

132.    Facebook improperly used Bripco (UK)'s trade secrets without Bripco (UK)'s consent and at the time of such use, knew, or had reason to know that its knowledge of Bripco (UK)'s trade secrets ██████████████ the Facebook Non-Disclosure Agreement, █████████████████████████████████ Facebook improperly used Bripco (UK)'s trade secrets, for example, in its development of its RDDC, which it deployed and plans to deploy on its own or with the assistance of third parties.

133.    The Emerson Defendants improperly used Bripco (UK)'s trade secrets without Bripco (UK)'s consent and at the time of such use, knew, or had reason to know that its knowledge of Bripco (UK)'s trade secrets was acquired under the Emerson Non-Disclosure Agreement, which created a legal obligation on the Emerson Defendants to limit their exposure of Bripco (UK)'s trade secret information to others strictly for the purposes of considering whether █████████████████████████████ However, the Emerson Defendants improperly used Bripco (UK)'s trade secrets, for example, in their ███████████████████████████ their development of a modular data center solution that it proposed to Facebook after the ███████████ and in their proposal for and construction of the second phase of Facebook's data center campus in Luleå, Sweden.  The Emerson Defendants continue to misuse Bripco (UK)'s trade secrets in proposing to build modular data centers for other customers using designs and methods they learned from Plaintiffs under the protection of the Emerson Non-Disclosure Agreement.

134.    Facebook improperly disclosed Bripco (UK)'s trade secrets without Bripco (UK)'s consent and at the time of such disclosure, knew or had reason to know that its knowledge of

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA  94104
(415) 954-4400

30692\5422181.2

1   Bripco (UK)'s trade secrets was ███████████ the Facebook Non-Disclosure Agreement,

2   █████████████████████████████████████████████████ For example,

3   on information and belief, Facebook disclosed Bripco (UK)'s trade secrets to Emerson and

4   employed Bripco (UK)'s trade secrets in its construction of the second phase of its Luleå data

5   center campus.  Facebook also disclosed Bripco (UK)'s trade secrets to its architecture consultant,

6   SP Arch, and asked SP Arch to incorporate elements of Bripco (UK)'s trade secrets into a design

7   for a Facebook data center.  Facebook also improperly disclosed Bripco (UK)'s trade secrets

8   when it disclosed to various potential contractors its design for the second phase of Facebook's

9   Luleå data center campus.

10          135.    The Emerson Defendants improperly disclosed Bripco (UK)'s trade secrets

11  without Bripco (UK)'s consent and at the time of such disclosure, knew or had reason to know

12  that its knowledge of Bripco (UK)'s trade secrets was acquired under the Emerson Non-

13  Disclosure Agreement, which created a legal obligation on the Emerson Defendants to keep the

14  trade secret information secret.  For example, on information and belief, the Emerson Defendants

15  have disclosed Bripco (UK)'s trade secrets to Facebook, to their sub-contractors and partners that

16  participated in the design and construction of the second phase of Facebook's Luleå data center

17  campus, and to potential clients.

18          136.    Facebook and the Emerson Defendants are each jointly and severally liable for

19  their misappropriation of Bripco (UK)'s trade secrets because some of their acts of

20  misappropriation are the product of a conspiracy.  Discovery in this case demonstrates that at the

21  ████████████████████ and perhaps before, Facebook and the Emerson Defendants conspired

22  to misappropriate Bripco (UK)'s trade secrets.  The modular data center methods and designs that

23  Facebook and the Emerson Defendants jointly developed in connection with ████████████

24  ██████████████████constitute acts of trade secret misappropriation that have damaged

25  Plaintiffs.

26          137.    As a natural and proximate result of Facebook's and the Emerson Defendants'

27  misappropriation and conspiracy to misappropriate, Plaintiffs have suffered injury and harm.  For

28  example, as a direct consequence of Defendants' actions, the Emerson Defendants are now

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA  94104
(415) 954-4400

30692\5422181.2

offering to construct warehouse-sized data centers using BRG's methodology in direct competition with BRG, whereas before, BRG was the only company in the world offering its methodology. In addition, BRG's reputation and business have been harmed by Defendants' misappropriation and subsequent sharing of BRG's information to BRG's competitors, including any potential loss of customers due to Defendants' actions. Defendants' actions also harmed BRG's reputation as an innovative company offering a brand new, unique methodology for constructing warehouse-sized data centers. By publicly disclosing Bripco (UK)'s trade secrets, Facebook has also damaged the market for Bripco (UK)'s licensing of its trade secrets to others.

138. Defendants have been unjustly enriched, in amounts according to proof. Defendants benefitted from the information BRG provided it in multiple ways. Defendants used the information and the confidence in Plaintiffs' concepts that they had gained from their visits to BRG's facilities to inspire, direct, and develop the designs for phase two of Facebook's data center campus in Luleå, Sweden. Facebook also copied the BRG Methodology, presented it as its own, and claimed to have performed the architectural and engineering services that led to the designs and methodology, resulting in an enhancement of Facebook's reputation as an innovator in data center design.

139. The Emerson Defendants have benefitted as being perceived as innovators in the modular data center industry. The Emerson Defendants have also benefitted by being able to offer the BRG Methodology to their potential clients, including █████████.

140. The Defendants' benefit came at BRG's expense. Because Defendants claimed to have collaborated in performing the services that led to the designs and methodology that Defendants call RDDC, BRG's reputation as an innovator in data center design was not enhanced whereas the Defendants' reputations were. On information and belief, Facebook's public disclosures and endorsement of BRG's methods and practices without acknowledging BRG's rights over them has also inspired, encouraged, and given confidence to other competitors to use the BRG Methodology in competition with BRG. Additionally, it would have taken Defendants much longer and cost Defendants much more money to develop the design for Facebook's Luleå

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA 94104
(415) 954-4400

30692\5422181.2

and other data center campuses had it not misused Plaintiffs' methods and trade secrets for their own benefit.

141.    Defendants have never compensated Plaintiffs for the benefit that they have received from Plaintiffs.

142.    Defendants' trade secret misappropriation has caused and continues to cause Plaintiffs irreparable harm that cannot be fully redressed through damages alone.  An injunction as set forth herein is necessary to provide Plaintiffs with complete relief.

143.    In misappropriating Bripco (UK)'s trade secrets, Defendants acted willfully and maliciously.  Defendants arranged secret meetings between each other at the same time they were visiting Plaintiffs' facilities in England in June 2012 for the purpose of discussing and copying Plaintiffs' technology.                                                                      Plaintiffs are thus entitled to punitive and exemplary damages against Defendants pursuant to section 3426.3(c) of the Civil Code.

## THIRD CAUSE OF ACTION

### (Violation of the Lanham Act, 15 U.S.C. § 1125 Against Facebook)

144.    Plaintiffs incorporate by reference as though set forth herein each of the preceding allegations of each paragraph in this Complaint.

145.    Facebook's acts described above violate the Lanham Act, 15 U.S.C. § 1125(a)(1)(A).

146.    Facebook falsely claimed that it and its contractors performed the architectural, engineering, and design services that led to RDDC.  In reality, RDDC is the BRG Methodology, falsely re-labeled and presented to the public by Facebook.  Facebook obtained the BRG Methodology from BRG, renamed it RDDC, falsely passed off this method as its own, and claimed the credit for having performed the services behind the BRG Methodology.

147.    Facebook's acts are likely to cause confusion as to who truly performed the services that led to RDDC.  Consumers in the data center industry viewing Mr. Magarelli's

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA  94104
(415) 954-4400

presentation or blog post would probably assume that RDDC is associated with Facebook and its in-house team of architects and engineers.

148.    Facebook's acts have harmed Plaintiffs.  By portraying itself as an innovator of data center design and providing RDDC to the OpenCompute community and the public in general, Facebook competes with BRG as a data center design provider and innovator.  With its business partners, BRG provides to its data center customers a complete service from design to manufacturing and assembly of the data center.  Facebook has irreparably damaged Plaintiffs' licensing markets by providing through the OpenCompute forum the core components of BRG's Methodology to data center customers and data center providers.  BRG has also suffered loss of goodwill and loss of reputation because potential customers are unlikely to view the BRG Methodology as innovative or proprietary to BRG.

## FOURTH CAUSE OF ACTION

**(Violation & Conspiracy to Violate the Unfair Business Practices/Unfair Competition Law, Bus. and Prof. Code § 17200, *et seq.*, Against Facebook and the Emerson Defendants)**

149.    Plaintiffs incorporate by reference as though set forth herein each of the preceding allegations of each paragraph in this Complaint.

150.    Defendants' acts described above constitute unfair business practices and unfair competition as defined by California Business & Professions Code § 17200, *et seq.*

151.    At least the following acts by Facebook were unlawful business acts: Facebook's use of Bripco (UK)'s trade secrets to develop and direct its RDDC approach, which it deployed and plans to deploy on its own or with the assistance of third parties; its inducement of BRG to disclose Bripco (UK) trade secrets to BRG's competitors, such as SP Arch, AlfaTech, and DPR-Fortis; its discussion of Bripco (UK) trade secrets with Emerson without authorization; its disclosure of Bripco (UK) trade secrets to other contractors; its disclosure of BRG's confidential information to the world through its OpenCompute presentation and blog post; and its efforts to claim credit for the architectural and engineering services that led to the BRG Methodology, which Facebook calls RDDC.

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA  94104
(415) 954-4400

30692\5422181.2

152.     At least the following acts by the Emerson Defendants were unlawful business acts: the Emerson Defendants' use of Bripco (UK)'s trade secrets to design and develop a modular data center solution for Facebook; their disclosure of Bripco (UK) trade secrets to contractors and potential clients; their discussion of Bripco (UK) trade secrets with Facebook without authorization; and their use of Bripco (UK) trade secrets in the design and construction of the second phase of Facebook's data center campus in Luleå, Sweden.

153.     In addition, at least the following acts by Facebook were unfair business acts: By portraying itself as an innovator of data center design and providing the plans for RDDC to the OpenCompute community and the public in general, Facebook competes with BRG as a data center design provider and innovator.  With its business partners, BRG provides to its data center customers a complete service from design to manufacturing and assembly of the data center. Facebook irreparably damaged Plaintiffs' licensing markets by providing through the OpenCompute forum a copy of the BRG Methodology to data center customers and data center providers.  By claiming credit for performing the services that led to the BRG Methodology and encouraging potential BRG competitors to adopt it, Facebook has irreparably damaged fair competition in the market for data center design.  In addition, Facebook induced the Emerson Defendants to become BRG's direct competitor in the modular data center construction market by partnering with the Emerson Defendants to implement the RDDC approach and by allowing the Emerson Defendants to offer this approach to other customers.

154.     In addition, at least the following acts by the Emerson Defendants were unfair business acts: the Emerson Defendants compete with BRG in the markets for data center design and construction.  The Emerson Defendants have irreparably damaged fair competition in these markets by claiming to have collaborated in developing RDDC, a copy of the BRG Methodology, by offering that methodology and related designs to potential data center customers, and by building data centers using the BRG methodology and Bripco (UK)'s trade secret information.

155.     In addition, Facebook's misappropriation of Bripco (UK)'s trade secrets and its violations of the Lanham Act were unlawful acts.

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA  94104
(415) 954-4400

30692\5422181.2

156.     Facebook and the Emerson Defendants are each jointly liable for their acts of unfair competition because some of their acts are the product of a conspiracy.  At the ███████ and perhaps before, Facebook and the Emerson Defendants conspired to misappropriate Bripco (UK)'s trade secrets.  They also conspired for the Emerson Defendants to use Plaintiffs' trade secret and confidential information in developing modular data center construction methods and designs that the Emerson Defendants could offer to other potential customers in direct competition with Plaintiffs.  The modular data center methods and designs that Facebook and the Emerson Defendants jointly developed in connection with ███████ constitute acts of unfair competition that have damaged Plaintiffs.

157.     As a direct and proximate result of Defendants' wrongful conduct, Plaintiffs have been injured in fact.  For example, as a direct consequence of Defendants' actions, the Emerson Defendants are now offering to construct warehouse-sized data centers using a method in direct competition with BRG, whereas before, BRG was the only company in the world offering its methodology.  The Defendants' actions have undermined BRG's ability to fairly compete in both the market for data center design and the market for modular construction of warehouse-sized data centers.  Such harm will continue unless the Defendants' acts are enjoined by the Court.  Plaintiffs have no adequate remedy at law for the Defendants' continued acts of unfair business practices and unfair competition.

## FIFTH CAUSE OF ACTION

### (Breach of Contract Against the Emerson Defendants)

158.     Plaintiffs incorporate by reference as though set forth herein each of the preceding allegations of each paragraph in this Complaint.

159.     On August 17, 2011, BladeRoom Holdings Limited and Emerson entered into the Emerson Non-Disclosure Agreement, which is a binding contract supported by offer, acceptance and mutual consideration.  Plaintiffs Bripco (UK) and BRG have the full power and authority to enforce the terms of that agreement.

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA  94104
(415) 954-4400

30692\5422181.2

160.     BladeRoom Holdings Limited and Plaintiffs have fully performed their obligations under the Emerson Non-Disclosure Agreement to the extent those obligations were not excused by the Emerson Defendants' breaches thereof.

161.     Emerson is liable for any breaches of the Emerson Non-Disclosure Agreement committed by Emerson Network Power, Liebert, or any other companies affiliated with Emerson.

162.     The Emerson Defendants breached the Emerson Non-Disclosure Agreement in numerous ways, including at least by: discussing Plaintiffs' trade secret and confidential information with Facebook on June 21, 2012; meeting with Facebook on █████████████████████████████████████████████████████████ developing data center designs and methods for Facebook's use that were based on or incorporated Plaintiffs' trade secrets and confidential information, including at least the designs and methods used in the second phase of Facebook's Luleå, Sweden data center campus; offering to other clients data centers design and construction services that are based on and incorporate Plaintiffs' trade secrets and confidential information; building data centers using the BRG Methodology and Bripco (UK)'s trade secrets; and failing to hold Plaintiffs' Confidential Information in strict confidence and take reasonable precautions to protect such Confidential Information.

163.     In the alternative, to the extent that the Emerson Defendants did not breach any term of the Emerson Non-Disclosure Agreement, they breached the covenant of good faith and fair dealing by unfairly interfering with Plaintiffs' right to receive the benefit of the contract.  The parties contemplated that one of the benefits of the Emerson Non-Disclosure Agreement was that Plaintiffs' Confidential Information would be kept in strict confidence, that it would not be disseminated to Plaintiffs' potential customers (including Facebook), and that Plaintiffs' Confidential Information would not be used for any purpose besides evaluating whether to do business with Plaintiffs.

164.     As a direct and proximate result of Emerson's breaches of the Emerson Non-Disclosure Agreement (or, alternatively, of the covenant of good faith and fair dealing), Plaintiffs

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA  94104
(415) 954-4400

30692\5422181.2

have suffered damages, and the Emerson Defendants have been unjustly enriched, in an amount

to be determined at trial.

165.     The Emerson Defendants' breaches have caused and continue to cause Plaintiffs

irreparable harm that cannot be fully redressed through damages alone.  An injunction as set forth

herein is necessary to provide Plaintiffs with complete relief.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for judgment against Facebook and Emerson as follows:

1.     Damages from Defendants according to proof;

2.     Disgorgement from Defendants of unjust enrichment according to proof;

3.     For preliminary and permanent injunctive relief to enjoin Defendants and their

agents, servants, and employees, and all persons acting under, in concert with, or for it, from

using or disclosing any of Bripco UK's trade secrets, confidential know-how, and proprietary

information regarding BladeRooms, in any way;

4.     For preliminary and permanent injunctive relief requiring Defendants and their

agents, servants, and employees, and all persons acting under, in concert with, or for it, to return

all trade secrets and confidential and proprietary information acquired from Plaintiffs;

5.     For punitive and exemplary damages as may be provided by law;

6.     For Plaintiffs' attorneys' fees and costs as may be provided by law and in

accordance with the █████████████████████

7.     For prejudgment and post-judgment interest;

8.     For profits, damages and costs (including treble damages), and attorneys' fees

under 15 U.S.C. § 1117(a);

9.     That Defendants are jointly and severally liable for damages caused by their

conspiracy to misappropriate Plaintiffs' trade secrets and for their acts of unfair competition;

10.     For such other relief as the Court may deem just and proper.

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA  94104
(415) 954-4400

30692\5422181.2

1    April 21, 2016                                    FARELLA BRAUN + MARTEL LLP

2

3                                                      By: /s/ Stephanie P. Skaff
                                                           Stephanie P. Skaff

4
                                                      Attorneys for Plaintiff
5                                                     BLADEROOM GROUP LIMITED AND
                                                      BRIPCO (UK) LIMITED
6

7
                                               **JURY DEMAND**
8
             Plaintiffs demand a jury trial on all claims and issues that are so triable.
9

10   April 21, 2016                                    FARELLA BRAUN + MARTEL LLP

11

12                                                     By: /s/ Stephanie P. Skaff
                                                           Stephanie P. Skaff

13
                                                      Attorneys for Plaintiff
14                                                    BLADEROOM GROUP LIMITED AND
                                                      BRIPCO (UK) LIMITED

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA  94104
(415) 954-4400

30692\5422181.2

SECOND AMENDED COMPLAINT