1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**COOLEY LLP**
MICHAEL G. RHODES (116127) (rhodesmg@cooley.com)
MATTHEW D. CAPLAN (260388) (mcaplan@cooley.com)
KRISTINE A. FORDERER (278745) (kforderer@cooley.com)
101 California Street, 5th Floor
San Francisco, CA 94111-5800
Telephone:    (415) 693-2000
Facsimile:    (415) 693-2222

**COOLEY LLP**
HEIDI L. KEEFE (178960) (hkeefe@cooley.com)
MARK R. WEINSTEIN (193043) (mweinstein@cooley.com)
ELIZABETH L. STAMESHKIN (260865) (lstameshkin@cooley.com)
3175 Hanover Street
Palo Alto, CA 94304-1130
Telephone:    (650) 843-5000;
Facsimile:    (650) 849-7400

**COOLEY LLP**
ROBERT T. CAHILL (38562) (rcahill@cooley.com)
11951 Freedom Drive
Reston, VA 20190-5656
Telephone:    (703) 456-8000
Facsimile:    (703) 456-8100

Attorneys for Defendant FACEBOOK, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| BLADEROOM GROUP LIMITED, et al., | Case No. 15-cv-01370 EJD |
| Plaintiffs, | **FACEBOOK, INC.'S NOTICE OF MOTION, AND MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES** |
| v. | |
| FACEBOOK, INC., | |
| Defendant. | Date:        October 6, 2016 |
| | Time:        9:00 a.m. |
| | Courtroom:  4 (5th Floor) |
| | Judge:       Hon. Edward J. Davila |
| | Trial Date:  Not yet set |
| | Complaint filed: March 23, 2015 |
| | First Am. Complaint: December 29, 2015 |
| | Second Am. Complaint: April 21, 2016 |

**Redacted Version of Document Sought To Be Sealed**

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

**FACEBOOK'S MOTION TO DISMISS
PLAINTIFFS' SAC
CASE NO. 15-CV-01370 EJD**

# TABLE OF CONTENTS

PAGE

NOTICE OF MOTION AND MOTION TO DISMISS ................................................................ 1

STATEMENT OF RELIEF SOUGHT ...................................................................................... 1

STATEMENT OF ISSUES TO BE DECIDED ......................................................................... 1

MEMORANDUM OF POINTS AND AUTHORITIES ............................................................. 2

I.    INTRODUCTION ........................................................................................................... 2

II.   BACKGROUND ............................................................................................................. 3

    A.    Facebook's modular RDDC. .............................................................................. 3

    B.    BRG's attempts to sell its BladeRoom solution to Facebook. ........................... 4

    C.    Procedural history. ............................................................................................. 5

III.  LEGAL STANDARD ...................................................................................................... 6

IV.   ARGUMENT ................................................................................................................... 7

    A.    Neither Plaintiff can maintain a claim for misappropriation under CUTSA. .............. 7

        1.    Plaintiff BRG does not "own" the alleged trade secrets at issue and thus cannot bring a misappropriation claim under CUTSA. ........................... 7

        2.    Plaintiff Bripco (UK) has not alleged that it was damaged by Facebook's supposed misappropriation of its alleged trade secrets. ............... 8

    B.    Plaintiffs cannot state a claim as to trade secrets BRG admittedly disclosed to third parties without a non-disclosure agreement. ..................................... 10

        1.    Trade secrets must be subject to reasonable efforts to maintain secrecy ....... 10

        2.    The allegations in the SAC show that Plaintiffs did not make reasonable efforts to maintain the secrecy of the information BRG disclosed to SP Arch, Alfa Tech, and DPR Fortis in May 2012 ..................... 11

    C.    At a minimum, Plaintiffs' CUTSA claim should be limited to the alleged trade secrets Plaintiffs claim Facebook actually misappropriated. ...................................... 13

    D.    Plaintiffs fail to state a claim under the Lanham Act. ................................................. 15

        1.    Under *Dastar* Facebook is the undisputed "origin" of the RDDC. ............... 15

        2.    Plaintiffs have not alleged "commercial use." ............................................... 18

    E.    Plaintiffs' claims under the UCL must be dismissed. .................................................. 20

        1.    Plaintiffs' claim under the UCL's "unfair" prong independently fails because Plaintiffs' claims involve neither competitors nor consumers. ........ 20

        2.    Plaintiffs' claims under the UCL's "unlawful" prong fail because BRG has not properly alleged a predicate violation. ............................................... 21

        3.    Plaintiffs' UCL claims are preempted by CUTSA. ....................................... 22

    F.    Plaintiff Bripco (UK) is not a party to the Facebook-BRG NDA and thus cannot state a claim for breach of contract. ................................................................. 24

V.    CONCLUSION .............................................................................................................. 24

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

i.

FACEBOOK'S MOTION TO DISMISS
PLAINTIFFS' SAC
CASE NO. 15-CV-01370 EJD

**TABLE OF AUTHORITIES**

**PAGE(S)**

**Cases**

*AccuImage Diagnostics Corp. v. Terarecon, Inc.*,
260 F. Supp. 2d 941 (N.D. Cal. 2003) ...............................................................22

*AngioScore, Inc. v. TriReme Med., LLC*,
70 F. Supp. 3d 951, 962 (N.D. Cal. 2014) .........................................................21

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ...............................................................................6, 12

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ...........................................................................................6

*Beneficial Corp. v. Beneficial Capital Corp.*,
529 F. Supp. 445 (S.D.N.Y.1982) ......................................................................19

*Bosley Med. Inst., Inc. v. Kremer*,
403 F.3d 672 (9th Cir. 2005) .....................................................................18, 19

*Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*,
20 Cal. 4th 163 (1999) ...............................................................................21, 22

*In re ConocoPhillips Co. Serv. Station Rent Contract Litig.*,
No. 09-CV-2040-RMW, 2011 U.S. Dist. LEXIS 40471 (N.D. Cal. Apr. 13,
2011) .............................................................................................................20

*Craigslist Inc. v. 3Taps Inc.*,
942 F. Supp. 2d 962 (N.D. Cal. 2013) ...............................................................16

*Cytodyn, Inc. v. Amerimmune Pharm., Inc.*,
160 Cal. App. 4th 288 ............................................................................................7

*Dastar Corp. v. Twentieth Century Fox Film Corp.*,
539 U.S. 23 (2003) ...............................................................15, 16, 17, 18

*Deckers Outdoor Corp. v. J.C. Penney Co.*,
45 F. Supp. 3d 1181, 1185 (C.D. Cal. 2014) ...................................................16

*Dollar Tree Stores Inc. v Toyama Partners LLC*,
875 F. Supp. 2d 1058 (N.D. Cal. 2012) .............................................................20

*Drum v. San Fernando Valley Bar Ass'n*,
182 Cal. App. 4th 247 (2010) ............................................................................20

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

i.

**FACEBOOK'S MOTION TO DISMISS
PLAINTIFFS' SAC
CASE NO. 15-CV-01370 EJD**

*Farmers Ins. Exch. v. Steele Ins. Agency, Inc.*,
    No. 2:13–CV–00784–MCE–DAD, 2013 WL 3872950 (E.D. Cal. July 25,
    2013) ..................................................................................................................23

*Fortinet Inc. v. FireEye Inc.*,
    No. 5:13-CV-02496-EJD, 2014 WL 4955087 (N.D. Cal. Sept. 30, 2014) ......................7, 8, 13

*Freecycle Network, Inc. v. Oey*,
    505 F.3d 898 (9th Cir. 2007)...............................................................................15

*Hancock Park Homeowners Ass'n Est. 1948 v. Hancock Park Home Owners
Ass'n*,
    No. CV 06-4584 SVW, 2006 WL 4532986 (C.D. Cal. Sept. 20, 2006) ..........................18, 19

*Harbour v. Farquhar*,
    245 F. App'x 582 (9th Cir. 2007) .........................................................................16

*Jones v. Aetna Cas. & Sur. Co.*,
    26 Cal. App. 4th 1717 (1994) ..............................................................................24

*K.C. Multimedia, Inc. v. Bank of Am. Tech. & Operations, Inc.*,
    171 Cal. App. 4th 939 (2009) .........................................................................22, 24

*Kasky v. Nike, Inc.*,
    27 Cal. 4th 939 (2002) .....................................................................................20

*KEMA, Inc. v. Koperwhats*,
    658 F. Supp. 2d 1022 (N.D. Cal. 2009) ..................................................................10

*Kwikset Corp. v. Super. Ct.*,
    51 Cal. 4th 310 (2011) .....................................................................................22

*Lewis v. Activision Blizzard, Inc.*,
    C 12–1096 CW, 2012 WL 5199505 (N.D. Cal. Oct. 22, 2012)..................................22

*Linear Technology Corp. v Applied Materials, Inc.*,
    152 Cal. App. 4th 115 (2007) ..............................................................................20

*Luxul Tech. Inc. v. Nectarlux, LLC*,
    *78 F. Supp. 3d 1156, 1170 (N.D. Cal. 2015)* ....................................................15, 16

*Manufacturers Life Ins. Co. v. Super. Ct.*,
    10 Cal. 4th 257 (1995) .....................................................................................22

*Mattel, Inc. v. MGA Entm't Inc.*,
    782 F. Supp. 2d 911 (C.D. Cal. 2011) ...................................................................22

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

ii.

FACEBOOK'S MOTION TO DISMISS
PLAINTIFFS' SAC
CASE NO. 15-CV-01370 EJD

*Mintel Learning Tech., Inc. v. Ambow Educ. Holding Ltd.*,
  No. 5:11-cv-01504-EJD, 2012 WL 762126 (N.D. Cal. Mar. 8, 2012) (Davila,
  J.) ........................................................................................................................7, 8, 9

*NetApp, Inc. v. Nimble Storage, Inc.*,
  41 F. Supp. 3d 816, 839 (N.D. Cal. 2014) ....................................................................22

*Nextdoor.Com, Inc. v. Abhyanker*,
  No. C-12-5667 EMC, 2013 WL 3802526 (N.D. Cal. July 19, 2013) ...................................8, 13

*NovelPoster v. Javitch Canfield Grp.*,
  No. 13-CV-05186-WHO, 2014 WL 5687344 (N.D. Cal. Nov. 4, 2014)...................................24

*Press Rentals, Inc. v. Genesis Fluid Solutions, Ltd.*,
  No. 5:11-CV-02579-EJD, 2014 WL 31251 (N.D. Cal. Jan. 3, 2014)........................................24

*San Jose Options, Inc. v. Yeh*,
  No. CV 14-00500-KAW, 2014 WL 1868738 (N.D. Cal. May 7, 2014)...................................16

*Sargent Fletcher, Inc. v. Able Corp.*,
  110 Cal. App. 4th 1658 (2003) ..........................................................................................8

*Silvaco Data Sys. v. Intel Corp.*,
  184 Cal. App. 4th 210 (2010) ..........................................................................................22

*SkinMedica, Inc. v. Histogen Inc.*,
  869 F. Supp. 2d 1176 (S.D. Cal. 2012) ............................................................................10

*Synopsys, Inc. v. ATopTech, Inc.*,
  No. C 13-CV-02965 SC, 2013 WL 5770542 (N.D. Cal. Oct. 24, 2013) .....................22, 23, 24

*Tao of Sys. Integration, Inc. v. Analytical Servs. & Materials, Inc.*,
  299 F. Supp. 2d 565 (E.D. Va. 2004)................................................................................17

*Utah Lighthouse Ministry v. Found. for Apologetic Info. & Research*,
  527 F.3d 1045 (10th Cir. 2008).......................................................................................18

*Williams v. Cavalli*,
  No. CV 14006659-AB, 2015 WL 1247065 (C.D. Cal. Feb. 12, 2015) ...................................17

*Top Agent Network, Inc. v. Zillow, Inc.*, No. 14-cv-04769 RS (N.D. Cal. Apr. 13,
  2015) ...........................................................................................................................11, 13

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

iii.

FACEBOOK'S MOTION TO DISMISS
PLAINTIFFS' SAC
CASE NO. 15-CV-01370 EJD

**Statutes**

15 U.S.C.
§ 1125(a) ..................................................................................................16
§ 1125(a)(1) .............................................................................................18
§ 1125(a)(1)(A) ....................................................................................1, 18

Cal. Civ. Code
§ 3426.1 ...................................................................................................10
§ 3426.1(d)(2) .....................................................................................10, 13

California Business and Professions Code § 17200 ..............................................1, 20

California Unfair Competition Law ("UCL") ................................................... *passim*

California Uniform Trade Secrets Act ("CUTSA") .......................................... *passim*

Lanham Act ................................................................................................ *passim*

**Other Authorities**

5 McCarthy on Trademarks and Unfair Competition § 27:78 (4th ed. 2013) ................15

Federal Rules of Civil Procedure
8 .................................................................................................................6
8(a)(2) .....................................................................................................6, 7
12(b) ..........................................................................................................7
12(b)(6) ....................................................................................... *passim*

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

iv.

FACEBOOK'S MOTION TO DISMISS
PLAINTIFFS' SAC
CASE NO. 15-CV-01370 EJD

## NOTICE OF MOTION AND MOTION TO DISMISS

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on October 6, 2016 at 9:00 a.m., or as soon thereafter as this motion may be heard in Courtroom 4, 5th Floor of the above-entitled court, located at 280 South First Street, San Jose, California, pursuant to Federal Rules of Civil Procedure 12(b)(6) defendant Facebook, Inc. ("Facebook") will and hereby does move to dismiss the second, third, and fourth causes of action in Plaintiffs BladeRoom Group Ltd. ("BRG") and Bripco (UK) Limited's ("Bripco (UK)") (collectively "Plaintiffs") Second Amended Complaint filed on April 21, 2016 (Docket Entry No. 107) ("SAC"). Additionally, Facebook moves to dismiss Plaintiffs' first cause of action for breach of contract with respect to Plaintiff Bripco (UK). This motion is based on this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, the pleadings and evidence on file in this matter, oral argument of counsel, and such other materials and argument as may be presented in connection with the hearing on the motion.

## STATEMENT OF RELIEF SOUGHT

Facebook respectfully seeks dismissal with prejudice of Plaintiffs' second, third, and fourth causes of action as to both Plaintiffs, and Plaintiffs' first cause of action with respect to Plaintiff Bripco (UK).

## STATEMENT OF ISSUES TO BE DECIDED

1. Whether Plaintiffs state a claim for misappropriation of trade secrets under the California Uniform Trade Secrets Act, California Civil Code section 3426, *et seq.* ("CUTSA").

2. Whether Plaintiffs state a claim under California's Unfair Competition Law, California Business and Professions Code sections 17200, *et seq.* ("UCL").

3. Whether Plaintiffs state a claim under the Lanham Act, 15 U.S.C. § 1125(a)(1)(A).

4. Whether Plaintiff Bripco (UK) states a claim for breach of contract.

///

///

///

///

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1.

FACEBOOK'S MOTION TO DISMISS
PLAINTIFFS' SAC
CASE NO. 15-CV-01370 EJD

## I. INTRODUCTION

Plaintiffs have now filed a third iteration of their pleading, and—even with the benefit of substantial discovery—still largely fail to state any legally cognizable claim against Facebook. Although the SAC adds three new defendants and new factual allegations, Plaintiffs' claims fail as a matter of law for essentially the same reasons that nearly all of Plaintiffs' claims were dismissed by the Court in ruling on Facebook's motion to dismiss the original complaint, and for the reasons identified in Facebook's motion to dismiss the First Amended Complaint ("FAC").

First, neither Plaintiff can independently state a claim under CUTSA. BRG lacks standing to bring the claim as a mere licensee of the alleged trade secrets at issue and Bripco (UK), the undisputed owner of the trade secrets, fails to allege facts suggesting that it suffered damages or harm as a result of the alleged misappropriation. But even if either Plaintiff could state a *prima facie* claim, CUTSA requires parties to make "reasonable efforts" to maintain secrecy of alleged trade secrets and Plaintiffs' own allegations in the SAC state that BRG voluntarily disclosed the alleged trade secrets to three of its "competitors," not covered by any non-disclosure agreement. Moreover, Plaintiffs fail to make a connection between these alleged trade secrets and the material they claim Facebook misappropriated in connection with Facebook's Rapid Deployment Data Center ("RDDC"), nor do they distinguish their claimed trade secrets from public information well known in the relevant architectural and construction industries.

Similarly, Plaintiffs' UCL claim should be dismissed with prejudice, not only because it is preempted by Plaintiffs' CUTSA claim, but also because—though they have now had two chances to amend—Plaintiffs still fail to address the deficiencies identified by the Court in its previous order dismissing Plaintiffs' UCL claim. Additionally, Plaintiffs' newly-added claim for false designation of origin under the Lanham Act cannot proceed because Plaintiffs do not allege that they are the "origin" of the actual goods and services at issue—namely, the design for Facebook's Rapid Deployment Data Center. Finally, Bripco (UK)'s breach of contract claim should be dismissed because Bripco (UK) is not a party to the contract at issue.

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

2.

FACEBOOK'S MOTION TO DISMISS
PLAINTIFFS' SAC
CASE NO. 15-CV-01370 EJD

Accordingly, Facebook respectfully requests that the Court dismiss *with prejudice* Plaintiffs' second, third, and fourth causes of action for misappropriation of trade secrets, violation of the Lanham Act, and violation of the UCL, as well as Bripco (UK)'s breach of contract claim as to Facebook for the reasons described below.

## II. BACKGROUND[1]

### A. Facebook's modular RDDC.

As the provider of free Internet-based services that connect over 1.4 billion people around the world, Facebook stores large amounts of data in multiple data centers containing thousands of servers globally. Data centers are specialized buildings engineered to securely house servers, which have particular climate requirements in order to run without overheating. (SAC ¶ 23.) Facebook has its own team of in-house designers and engineers who lead the design and construction of data centers tailored to Facebook's specific needs. As BRG alleges, Facebook built its first company-owned data center in Prineville, Oregon in 2011. (*Id.* ¶ 37.) Facebook now has several data center campuses throughout the United States and the world, including a campus in Luleå, Sweden. (*Id.* ¶ 113.) Facebook shares certain data center specifications and designs with the public through an initiative called the Open Compute Project in order to "spark a collaborative dialogue" with other innovators about how to improve data center technology. (*Id.* ¶¶ 84-85.)

In October 2012, Facebook hosted a brainstorming session—termed a "hack"—with various lean construction experts from related fields, aimed at developing a modular, site-agnostic, solution that could be deployed quickly, but at the uniquely large scale required for Facebook's business. (*Id.* ¶ 101.) The goal of the hack was to design a Facebook-sized data center that "would look less like a construction project and more like a manufactured product." (*Id.*) The RDDC concept arose out of this collaboration. (*Id.*) In January 2014, Facebook publicly announced its plans for the RDDC via the Open Compute Project. (*Id.* ¶ 87.)

Facebook's Open Compute presentation and a subsequent blog post about the RDDC

---

[1] As it must under Fed. R. Civ. Proc. 12(b)(6), Facebook takes the allegations of the SAC as true for purposes of this motion only.

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

FACEBOOK'S MOTION TO DISMISS
PLAINTIFFS' SAC
CASE NO. 15-CV-01370 EJD

describe certain features of the RDDC model.  For instance, Facebook architect Marco Magarelli explained that, among other features, ██████████████████████████████████████████ ████████████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████ (*Id.* ¶ 103.)  The ████████████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████ Magarelli also explained that Facebook's RDDC would use ████████████████████████████████████████████ (*Id.* ¶ 105.)  Facebook's use of ███████████████ was inspired by "the Ikea model." (*Id.* ¶ 95.)

In May 2014, Facebook announced that it had partnered with Defendant Emerson Network Power ("Emerson") (collectively with Defendants Emerson Electric Company and Liebert Corporation the "Emerson Defendants") to construct the second phase of Facebook's data center in Luleå, Sweden according to the RDDC design.  (*Id.* ¶ 113.)

**B.      BRG's attempts to sell its BladeRoom solution to Facebook.**

BRG is in the business of constructing standardized, modular, data centers called "BladeRooms" for clients according to its so-called "BRG Methodology."  (*Id.* ¶ 4.)  According to Plaintiffs, the BRG Methodology allows BRG to: "construct large, enterprise-level data centers ████████████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████ (*Id.* ¶ 26.) Plaintiffs allege the BRG Methodology, including all trade secrets and other confidential information included therein, is owned by Plaintiff Bripco (UK) and licensed by BRG.  (*Id.* ¶ 30.)

Plaintiffs' allegations state that BRG entered into a non-disclosure agreement with Emerson Electric Company on August 17, 2011 in connection with talks about ███████████ ████████████████████████████████████████████████ (*Id.* ¶ 34-35.)  Talks between the parties ███████████████ allegedly ended in October 2011.  (*Id.* ¶ 48.)  In late October 2011, BRG first approached Facebook to introduce its product.  (*Id.* ¶ 37.)  Soon after, Facebook and BRG, but not Bripco (UK), entered into a non-disclosure agreement (the

"Facebook-BRG NDA"). (*Id.* ¶ 38; Ex. A.) After signing the Facebook-BRG NDA, Plaintiffs allege that Facebook and BRG engaged in several face-to-face meetings at both BRG's and Facebook's facilities to discuss Facebook's alleged interest in BRG's products. (*Id.* ¶¶ 50-51, 56, 60.) One such meeting took place on May 29-30, 2012 in Prineville, Oregon where Plaintiffs allege that they presented the BRG Methodology, "disclosing confidential information and trade secrets" to "third party architects and general contractors"—"BRG's competitors"—also present at the meeting. (*Id.* ¶¶ 57; 151.) Plaintiffs do not allege that any of the third parties present had a non-disclosure agreement in place with Plaintiffs at the time, rather, Plaintiffs allege that ███ ████████████████ the Facebook-BRG NDA. (*Id.* ¶ 57.) Plaintiffs allege that, following this meeting, DPR-Fortis (one of the entities present at the Prineville meeting) submitted a competing bid for a Facebook data center project, relying on "the confidential information that BRG had disclosed" at the meeting. (*Id.* at ¶¶ 58-59.) In addition to its bid for the Prineville project, Plaintiffs allege that BRG provided other documents labeled "Commercial in Confidence" to Facebook related to planned data centers in various locations including for the Luleå phase two data center that was ultimately awarded to Emerson, as described above. (*Id.* at ¶¶ 49, 51, 61, 69.)

Although Plaintiffs allege ████████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████ (SAC Ex. B at 21.) Facebook ultimately decided not to purchase a BladeRoom solution. BRG and Bripco (UK) subsequently brought this lawsuit alleging that Facebook, in collaboration with the Emerson Defendants, took the BRG Methodology and passed it off as the RDDC concept, despite the fact that Plaintiffs expressly ████████████████████████████████████████████████ ███

///

///

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

**C.      Procedural history.**

Plaintiffs filed their original complaint on March 23, 2015 asserting claims against Facebook for breach of contract, breach of the implied covenant of good faith and fair dealing, trade secret misappropriation, unfair competition, and unjust enrichment. (Dkt. No. 3.) On June 1, 2015, Facebook moved to dismiss the original complaint in its entirety. (Dkt. No. 25.) On December 7, 2015 the Court dismissed all of Plaintiffs' claims, except for the breach of contract claim, with leave to amend. (Dkt No. 60, the "Order".) Plaintiffs filed their FAC on December 29, 2015 alleging causes of action for breach of contract, misappropriation of trade secrets, unfair competition, and false designation of origin under the Lanham Act against Facebook. (Dkt. No. 62.) Facebook moved to dismiss the FAC on January 15, 2016. On April 18, 2016, before the Court ruled on the merits of Facebook's motion to dismiss the FAC, Plaintiffs were granted leave to file the SAC adding factual allegations to the claims against Facebook and additionally joining the Emerson Defendants. (Dkt. No. 107.) Plaintiffs recite the same causes of action against Facebook in the SAC as they pled against Facebook in the FAC. Facebook was given leave to file a motion to dismiss the SAC. (Dkt. No. 105.) Facebook moves to dismiss Plaintiffs' claims for misappropriation of trade secrets, unfair competition, and false designation, as well as Bripco (UK)'s claim for breach of contract.

**III.    LEGAL STANDARD**

The Federal Rules require pleadings to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Although "Rule 8 [] does not require 'detailed factual allegations,'" it demands more than "'labels and conclusions . . . .'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). A "'formulaic recitation of the elements of a cause of action will not do.'" *Id.*

To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678; *see also Twombly*, 550 U.S. at 555 ("Factual allegations must be enough to raise a right to relief above the

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

6.

FACEBOOK'S MOTION TO DISMISS
PLAINTIFFS' SAC
CASE NO. 15-CV-01370 EJD

speculative level[.]").   "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief,'" and a court should, therefore, grant a motion to dismiss.  *Iqbal*, 556 U.S. at 679 (quoting Rule 8(a)(2)).   Plaintiffs' second, third, and fourth causes of action, as well as Bripco (UK)'s claim for breach of contract fail to meet the requirements to survive a challenge under Rule 12(b), and, accordingly, must be dismissed.

## IV.   ARGUMENT

### A.   Neither Plaintiff can maintain a claim for misappropriation under CUTSA.

To state a claim for trade secret misappropriation, a plaintiff must plead three elements: "(1) the plaintiff owned a trade secret; (2) the defendant misappropriated the trade secret; and (3) the defendant's actions damaged the plaintiff."   *Fortinet Inc. v. FireEye Inc*., No. 5:13-CV-02496-EJD, 2014 WL 4955087, at *7 (N.D. Cal. Sept. 30, 2014) (citing *Mintel Learning Tech., Inc. v. Ambow Educ. Holding Ltd.*, No. 5:11-cv-01504-EJD, 2012 WL 762126, at *2 (N.D. Cal. Mar. 8, 2012) (Davila, J.)).   Each plaintiff must plead each of these three elements.   *Id.*   Here, however, each Plaintiff has not—and cannot—allege each of these three elements *on its own*. Because neither Plaintiff BRG nor Plaintiff Bripco (UK) can independently maintain a misappropriation claim against Facebook based on the allegations in the SAC, the Court should dismiss the claim as to both Plaintiffs.

### 1.   Plaintiff BRG does not "own" the alleged trade secrets at issue and thus cannot bring a misappropriation claim under CUTSA.

The SAC clearly alleges that Bripco (UK), and not BRG, is the "legal owner" of "*all* right, title and interest in all trade secrets, know-how, registered and unregistered designs, and confidential information created or developed by BRG, including the BRG Methodology." (SAC ¶ 5 (emphasis added); *see also id.* at ¶ 30 ("Plaintiff Bripco (UK) is the owner of [the alleged] trade secrets"); ¶¶ 126-8, 132 ("Bripco (UK)'s trade secrets").)   The SAC also clearly alleges that BRG is Bripco (UK)'s "licensee."   (*Id.* at ¶ 30 ("Bripco (UK) owns the trade secrets, know-how, trademarks, design rights, and confidential proprietary information, while BRG is its licensee.").)

The party bringing a misappropriation claim, however, must be the owner, not merely a

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

licensee, of the alleged trade secrets. *See Cytodyn, Inc. v. Amerimmune Pharm., Inc*., 160 Cal. App. 4th 288, 297 ("a prima facie claim for misappropriation of trade secrets 'requires the plaintiff to demonstrate [that] the plaintiff *owned* a trade secret'") (emphasis added) (quoting *Sargent Fletcher, Inc. v. Able Corp*., 110 Cal. App. 4th 1658, 1665 (2003)); *Nextdoor.Com, Inc. v. Abhyanker*, No. C-12-5667 EMC, 2013 WL 3802526, at *8 (N.D. Cal. July 19, 2013) ("In order to bring a viable claim for misappropriation of trade secrets, [plaintiff] must own the trade secrets in question.").

Here, because BRG is a licensee, and not the owner of the trade secrets in question, BRG cannot state a claim under CUTSA. In fact, Plaintiffs admit that BRG does not own any right or interest in the purported trade secrets—Bripco (UK) is the owner of, "*all* right, title and interest in all trade secrets . . . ." (SAC ¶ 5 (emphasis added).) There are no allegations in the SAC to suggest that BRG received any sort of ownership interest as part of the alleged license from Bripco (UK). Instead, for the first time in the SAC, Plaintiffs attempt to plead around BRG's lack of ownership by alleging that, while Bripco (UK) is the "owner of the trade secrets," "Bripco (UK) has authorized BRG to participate" in the lawsuit for purposes of pursuing damages claims specific to BRG. (*Id.* at ¶ 33.) However, this addition does not relieve each Plaintiff's duty to plead the *prima facie* elements of a claim under CUTSA, including ownership. Plaintiffs' new allegation only confirms that BRG cannot maintain a claim under CUTSA because Bripco (UK)—and not BRG—is the "owner" of the trade secrets at issue. (*Id.*) Because Plaintiffs admit that BRG is not the owner of the trade secrets at issue, and BRG's claim cannot be cured through amendment, BRG's misappropriation claim must be dismissed with prejudice.

**2.      Plaintiff Bripco (UK) has not alleged that it was damaged by Facebook's supposed misappropriation of its alleged trade secrets.**

As described above, Plaintiffs allege that Bripco (UK) is the owner of all alleged trade secrets at issue. In addition to pleading ownership of the alleged trade secrets, to state a claim for misappropriation, a plaintiff must also allege that, "the defendant's actions damaged the plaintiff." *Fortinet Inc.*, 2014 WL 4955087, at *7; *Mintel Learning Tech.*, 2012 WL 762126, at

*3 ("To state a claim under the California Uniform Trade Secrets Act, a plaintiff must also plead that it suffered damages caused by the alleged misappropriation.").

Although Plaintiffs' misappropriation claim describes how Plaintiff BRG was purportedly damaged by the alleged misappropriation, the SAC contains no factual allegations as to how Plaintiff Bripco (UK)—the only plaintiff eligible to bring a trade secrets claim based on Plaintiffs' allegations—was damaged. Indeed, the facts alleged by Plaintiffs in support of their misappropriation claim rely entirely on BRG's alleged harm. (*See* SAC ¶ 137 ("Emerson is now offering to construct warehouse-sized data centers using BRG's ***methodology in direct competition with BRG***, . . . ***BRG's reputation and business have been harmed*** by Facebook's misappropriation and subsequent sharing of BRG's information to BRG's competitors, . . . Facebook's actions also ***harmed BRG's reputation*** as an innovative company offering a brand new, unique methodology for constructing warehouse-sized data centers.") (emphasis added); *see also* ¶ 140 ("Facebook's benefit came at ***BRG's expense***") (emphasis added); ¶ 151 (describing Facebook's alleged **"**inducement of BRG to disclose Bripco (UK) trade secrets to ***BRG's competitors***.") (emphasis added).

For the first time in the SAC, Plaintiffs include an allegation that in addition to the harm allegedly suffered by BRG, "Facebook has also damaged the market for Bripco (UK)'s licensing of its trade secrets to others." But this conclusory statement does not satisfy the "damages" element of a *prima facie* trade secrets claim under CUTSA. Although Plaintiffs are not required to plead every detail of their damages to prevail on a Rule 12(b)(6) motion, Plaintiffs must provide at least some "concrete details" such that their theory of liability is "plausible and not merely speculative." *Mintel Learning Tech.*, 2012 WL 762126, at *3 (finding damages allegations sufficient where plaintiff articulated specific "lost profits" theory of damages under CUTSA). In contrast to *Mintel*, Bripco (UK) here pleads no "concrete details" as to any purported injury to Bripco (UK) (as opposed to BRG) that could transform the claim from "speculative" to "plausible" such as *how* or even *that* Bripco (UK) has other licensees or was actually harmed by the alleged "damage" to the licensing market. *Mintel Learning Tech.*, 2012 WL 762126, at *3

Plaintiffs are not entitled to combine factual circumstances unique to each Plaintiff entity in order to piece together an actionable trade secrets claim. Because Plaintiffs have not alleged facts suggesting that Bripco (UK) (as opposed to BRG) suffered damages as a result of Facebook's alleged misappropriation, and because BRG is not the legal owner of any of the alleged trade secrets at issue, neither Plaintiff can state a claim under CUTSA. Accordingly, Plaintiffs' misappropriation cause of action must be dismissed.

**B.     Plaintiffs cannot state a claim as to trade secrets BRG admittedly disclosed to third parties without a non-disclosure agreement.**

Even if either Plaintiff could allege a *prima facie* claim under CUTSA (which they cannot, as described above), Plaintiffs' misappropriation claim fails because Plaintiffs admit in the SAC that BRG voluntarily disclosed Bripco (UK)'s trade secrets and confidential information to "BRG's competitors," SP Arch, Alfa Tech, and DPR Fortis, at the May 2012 meeting in Prineville, Oregon. (SAC ¶¶ 56; 151.) BRG made this disclosure without taking reasonable steps to protect the secrecy of the information disclosed, such as having the third parties sign a non-disclosure agreement. (*Id.* ¶¶ 56-7.) Under Plaintiffs' own allegations, therefore, this information disclosed is thus not eligible for protection under CUTSA. *See* Cal. Civ. Code § 3426.1.

**1.     Trade secrets must be subject to reasonable efforts to maintain secrecy.**

To be eligible for protection under CUTSA, a "trade secret" must be "subject [to] efforts that are reasonable under the circumstances to maintain its secrecy." Cal. Civ. Code § 3426.1(d)(2). Thus, if "an individual discloses his trade secret to others who are under no obligation to protect the confidentiality of the information . . . his property right is extinguished." *KEMA, Inc. v. Koperwhats*, 658 F. Supp. 2d 1022, 1030 (N.D. Cal. 2009) (granting motion to dismiss as to CUTSA claim) (quotations and citation omitted). Any "unprotected disclosure of the holder's secret terminates the existence of the trade secret" under CUTSA. *SkinMedica, Inc. v. Histogen Inc.*, 869 F. Supp. 2d 1176, 1194 (S.D. Cal. 2012). Accordingly, BRG's unprotected disclosure of alleged trade secrets to third parties is fatal to Plaintiffs' misappropriation claim as to any trade secrets that were disclosed.   To the extent there are alleged trade secrets that BRG

did *not* disclose to the third parties at the meeting in Prineville, Plaintiffs make no effort to identify what was disclosed or to distinguish disclosed information from anything not discussed at the meeting. This failure to distinguish the trade secrets from other, non-trade secret information renders Plaintiffs' entire CUTSA claim "defective." *Top Agent Network, Inc. v. Zillow, Inc.*, No. 14-cv-04769 RS, at \*9 (N.D. Cal. Apr. 13, 2015) (granting motion to dismiss where plaintiff didn't "clearly demonstrate that all of the content [defendant] misappropriated is 'information' protectable under CUTSA . . . failure to distinguish the allegedly shared trade secrets from non-trade secret information renders th[e] claim defective.").

> **2.** **The allegations in the SAC show that Plaintiffs did not make reasonable efforts to maintain the secrecy of the information BRG disclosed to SP Arch, Alfa Tech, and DPR Fortis in May 2012.**

Plaintiffs allege that on May 29-30, 2012 "representatives from BRG" attended a meeting at Facebook's data center campus in Prineville, Oregon and "present[ed] and discuss[ed] BladeRooms and the BRG Methodology . . . disclosing trade secrets and confidential information" to Facebook and "a team of third party architects and general contractors[.]" (SAC ¶ 56-57.) Plaintiffs allege that the third-party individuals present consisted of "representatives from architectural and construction firms SP Arch, Alfa Tech, and DPR-Fortis." (*Id.* ¶ 56.) Although they claim that these entities are "BRG's *competitors*" Plaintiffs do not allege that any of the third parties were subject to a non-disclosure agreement with Plaintiffs at the time BRG voluntarily disclosed its trade secrets. (*Id.* ¶ 151 (emphasis added).) Rather, Plaintiffs rely on their own conclusion that BRG's disclosure of trade secrets to these third parties ███████ ████████████████████████████████████ (SAC ¶ 57.) ████████████ ████████████████████████████████████████████████████████ ██████████████████████████████████████████ (SAC ¶ 57.) Instead, Plaintiffs summarily conclude that: "[b]ecause these third party architects and general contractors were Facebook's ██████████ any disclosures to them were ██████████ Facebook Non-Disclosure Agreement." (SAC ¶ 57.)

████████████████████████████████████████████████████
████████████████████████        ████████████████████████

Cooley LLP
Attorneys At Law
San Francisco



Additionally, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮,
Plaintiffs provide no factual basis for the bare legal conclusion that representatives from SP Arch, Alfa Tech, and DPR Fortis were Facebook's ▮▮▮▮▮▮▮▮▮▮" subject to that clause. (SAC ¶ 57); *Iqbal*, 556 U.S. at 678 (on a motion to dismiss "legal conclusions can provide the complaint's framework, [but] they must be supported by factual allegations"—"mere conclusions[] are not entitled to the assumption of truth"). Plaintiffs instead state that the individuals present were "from" outside "architectural and construction firms SP Arch, Alfa Tech, and DPR-Fortis." (SAC ¶ 56.) Plaintiffs go on to repeatedly identify these representatives as "BRG's competitors" and "third parti[es]" and state that BRG was "surprised to find" them at the Prineville meeting in contrast to "Facebook's in-house architects and engineers" whom they presumably expected. (*Id.* ¶¶ 56, 151; *see also id.* ¶ 57 (identifying representatives as "third party" architects and "general contractors.").)

Moreover, in Plaintiffs' breach of contract claim against Facebook, Plaintiffs allege that Facebook *breached* the NDA by ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (*Id.* ¶ 120; *see also id.* at ¶ 58 ("Facebook had previously supplied BRG's confidential

---

[2] ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

information, which included BRG's pricing information and other trade secrets, to ███████.".)

Plaintiffs cannot claim that Alfa Tech was Facebook's ███████ such that BRG's disclosures to Alfa Tech were ███████ Facebook-BRG NDA, but at the same time allege that Facebook breached the Facebook-BRG NDA by sharing information ███████. This is especially true in light of the fact that the ████████████████████████████████

████████████████████████

Because Plaintiffs have not alleged any facts (as opposed to conclusory allegations) demonstrating that BRG's disclosure of its trade secrets to SP Arch, Alfa Tech, and DPR-Fortis ███████ the Facebook-BRG NDA—and in fact, make allegations that support the contrary conclusion—Plaintiffs cannot state a claim under CUTSA with respect to the alleged trade secrets that BRG disclosed at the May 2012 meeting. Cal. Civ. Code § 3426.1(d)(2). As the SAC does not distinguish the information that was disclosed from any protectable trade secrets Plaintiffs' entire claim is "defective." *Zillow*, No. 14-cv-04769 RS, at *9 (N.D. Cal. Apr. 13, 2015). Plaintiffs' CUTSA claim cannot be cured by amendment and should be dismissed with prejudice.

### C. At a minimum, Plaintiffs' CUTSA claim should be limited to the alleged trade secrets Plaintiffs claim Facebook actually misappropriated.

In addition to the arguments presented above, all or most of Plaintiffs' misappropriation claim should be dismissed for the independent reason that Plaintiffs have not articulated what trade secrets they allegedly provided to Facebook were actually allegedly misappropriated. Plaintiffs are not entitled to sue Facebook for every conceivable trade secret they purportedly provided to Facebook. *See Fortinet Inc.*, 2014 WL 4955087, at *7 (to state a claim under CUTSA, a plaintiff must allege: "(1) the plaintiff owned a trade secret; (2) the defendant misappropriated *the* trade secret; and (3) the defendant's actions damaged the plaintiff.") (emphasis added). In order to state a claim for each alleged trade secret, Plaintiffs must plead facts alleging actual misappropriation of the supposed secret. *Id*; *see also Nextdoor.Com, Inc. v. Abhyanker*, No. C-12-5667 EMC, 2013 WL 3802526, at *6 (N.D. Cal. July 19, 2013) (to survive a motion to dismiss, a plaintiff must provide "detail regarding . . . how *each secret* was allegedly

misappropriated" and directing claimant "to provide additional detail regarding the trade secrets he alleges Counter–Defendants misappropriated, and how each secret was allegedly misappropriated[.]") (emphasis added).

In the SAC, Plaintiffs allege that Facebook misappropriated Plaintiffs' trade secrets in the design of the RDDC, disclosed Plaintiffs' trade secrets to the general public, and used Plaintiffs' trade secrets in the construction of the second phase of Facebook's Luleå data center. (SAC ¶¶ 132,134.) ██████████████████████████████████████ But the aspects of the BRG Methodology that Plaintiffs allege are actually components of Facebook's data center design make up only a small fraction of ██████████████ ████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ████████████████████████ (*Id.* ¶¶ 90-93; *see also id.* ¶¶ 95-96.)

Plaintiffs, however, do not allege *anywhere* in the SAC that Facebook misappropriated the following:

- ███████████████████████████
- ██████████████████████████████████
- ████████████████████████████████████████████
████████████████████████████████████████████
████████████████
- ████████████████████████████████████████████
███████████████████████████████████████
- ████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████
- ████████████████████████████████████████████
██████████
- ████████████████████████████████████████████

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

FACEBOOK'S MOTION TO DISMISS
PLAINTIFFS' SAC
CASE NO. 15-CV-01370 EJD

(*Id.* at Ex. B.)

At a minimum, Plaintiffs' claim should be limited to the trade secrets they allege that Facebook actually misappropriated. Thus, Plaintiffs' CUTSA claim should be dismissed, at least, as to

### D. Plaintiffs fail to state a claim under the Lanham Act.

#### 1. Under *Dastar* Facebook is the undisputed "origin" of the RDDC.

Plaintiffs' Lanham Act claim for false designation of origin is barred by the well-established meaning of the term "origin" as interpreted by the Supreme Court in *Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23, 37 (2003). To state a claim for false designation of origin under the Lanham Act, a plaintiff must allege that the defendant "(1) used in commerce (2) any word, false designation of origin, false or misleading description, or representation of fact, which (3) is likely to cause confusion or mistake, or to deceive, as to sponsorship, affiliation, or the origin of the goods or services in question." *Luxul Tech. Inc. v. Nectarlux, LLC*, 78 F. Supp. 3d 1156, 1170 (N.D. Cal. 2015) (citing *Freecycle Network, Inc. v. Oey*, 505 F.3d 898, 902–04 (9th Cir. 2007). Here, Plaintiffs attempt to state a claim for "[r]everse passing off" which occurs when "a defendant 'misrepresents someone else's goods or services as his [or her] own.'" *Luxul Tech.*, 78 F. Supp. 3d at 1170 (quoting *Dastar*, 539 U.S. at 27 n.1).

In *Dastar*, the Supreme Court considered a reverse passing off claim and held that the term "origin" in the Lanham Act, "refers to the producer of the tangible goods that are offered for sale, and *not to the author of any idea, concept, or communication embodied in those goods*." 539 U.S. at 37 (emphasis added); *see also* 5 McCarthy on Trademarks and Unfair

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

Competition § 27:78 (4th ed. 2013) (under *Dastar* "'Origin' means the factory that manufactures an auto engine, not the inventor of the patented components in that engine" *i.e.* "'origin means" "the physical embodiment of the tangible product" *not* the "creation of the communicative content of the goods."). In other words, "15 U.S.C. § 1125(a) is not the appropriate vehicle to police allegations of unattributed plagiarism." *Craigslist Inc. v. 3Taps Inc.*, 942 F. Supp. 2d 962, 979 (N.D. Cal. 2013) (citing *Dastar*, 539 U.S. at 37–38.)

Courts in the Ninth Circuit have adopted *Dastar*'s reasoning in a variety of contexts. *See, e.g.*, *Luxul Tech.*, 78 F. Supp. 3d at 1170-71 ("Defendants argue that [p]laintiff must show that [d]efendants physically removed the "Luxul" trademark from the LED tube lamps and then sold the altered products. . . . Defendants are correct that *in this circuit, a reverse passing off claim requires the alteration of a product and a subsequent sale*.") (emphasis added); *Deckers Outdoor Corp. v. J.C. Penney Co.*, 45 F. Supp. 3d 1181, 1185 (C.D. Cal. 2014) (applying *Dastar* and finding no passing off claim where, "Deckers does not allege that JC Penney has sold Deckers's Bailey Button Boots as JC Penney's own products. Rather, Deckers confusingly contends that JC Penney has appropriated Deckers's Bailey Button Boot trade dress on to JC Penney's own boots[.]").

Recently, in *San Jose Options, Inc. v. Yeh*, No. CV 14-00500-KAW, 2014 WL 1868738, at *5 (N.D. Cal. May 7, 2014) a court rejected a reverse passing off claim under the Lanham Act involving allegations that the defendant had taken the plaintiff's "proprietary stock option trading techniques—hook, line, and sinker—and repackaged them as his own" in connection with defendant's own advertising and promoting its products. The court found that this claim was precluded by *Dastar* because, although the plaintiff alleged that the defendant had used plaintiff's proprietary "'DV Ratio' and related stock option adjustment trading strategies . . . [the] origin of goods within the meaning of § 43(a) *does not extend to the origin of the ideas contained within those goods*." *Id.* (emphasis added). The court clarified that in order to state a Lanham Act claim, the plaintiff would need to allege that, "[d]efendant took [p]laintiff's tangible goods, such as Plaintiff's proprietary education materials, and *not just only the content contained in those materials*, which [d]efendant then held out as his own." *Id.* (emphasis added); *see also Harbour v.*

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

FACEBOOK'S MOTION TO DISMISS
PLAINTIFFS' SAC
CASE NO. 15-CV-01370 EJD

*Farquhar*, 245 F. App'x 582, 582-83 (9th Cir. 2007) (*Dastar* precluded Lanham Act claim against defendant who licensed plaintiff's music without authorization because musical compositions are ideas, concepts or communications embodied within the goods rather than the goods themselves); *Williams v. Cavalli*, No. CV 14006659-AB (JEMx), 2015 WL 1247065, at *4 (C.D. Cal. Feb. 12, 2015) ("after *Dastar*, a plaintiff cannot succeed in bringing a Lanham Act claim for reverse passing off solely by alleging that a defendant appropriated the plaintiff's . . . content without accreditation."); *Tao of Sys. Integration, Inc. v. Analytical Servs. & Materials, Inc.*, 299 F. Supp. 2d 565, 571-72 (E.D. Va. 2004) (plaintiff "appears to claim that [defendant], in producing its own ETS Proposal, incorporated ideas or concepts that belonged to [plaintiff]. This, however, is precisely the type of allegation which the Supreme Court rejected as the basis for a reverse-passing-off claim in *Dastar*.").

Here, Plaintiffs do not allege that Facebook held out Plaintiffs' tangible goods, such as Plaintiffs' various alleged proposal documents, or an actual BladeRoom, as Facebook's own. Instead, Plaintiffs allege that Facebook re-packaged Plaintiffs' *idea*—the BRG Methodology which consists of Plaintiffs', "innovations, designs, know-how and technological developments" (SAC ¶ 25)—into the design for Facebook's own RDDC. (*See id.* ¶ 146 ("Facebook obtained the BRG Methodology from BRG, renamed it RDDC, and falsely passed off this method as its own."); *id.* ¶ 96 ("RDDC, as presented by Mr. Magarelli, is copied from the BRG Methodology.").) These types of claims, however, fall squarely within the ambit of an "idea" or "concept" which the Supreme Court in *Dastar* rejected as a basis for a reverse passing off claim. As Plaintiffs' own allegations make clear, there is no question that the actual RDDC design itself originates from Facebook, and not Plaintiffs. Therefore, Plaintiffs cannot state a claim for reverse passing off under the Lanham Act. This is true in spite of Plaintiffs' allegations that the *concepts and ideas* behind Facebook's RDDC design are properly attributed to Plaintiffs.

In the SAC, Plaintiffs attempt to avoid preclusion under *Dastar* by adding new allegations that Facebook "falsely claimed that it and its contractors performed the architectural, engineering, and design *services* that led to the RDDC." (*Id.* ¶ 146.) But, as discussed below, Facebook does not perform or claim to perform data center "services," nor do Plaintiffs allege that Facebook

provides such "services."  Moreover, Plaintiffs' theory repeated throughout the SAC is not that Facebook falsely passed off Plaintiffs' "services" as its own but that Facebook passed off the *BRG Methodology* as its own by copying it and re-labeling it "RDDC."  (*See e.g.*, *Id.* ¶ 89 ("The RDDC method that Mr. Magarelli describes is the BRG Methodology that Facebook stole and re-marketed with a different name."); ¶ 97 ("Facebook . . . stole the BRG Methodology, called it by another name (RDDC), then passed off the BRG Methodology as its own."); *id.* ("Facebook took the BRG Methodology, [and] disclosed it to the public as RDDC"); *id.* (Facebook "claim[ed] that RDDC is its own methodology[.]").)  Plaintiffs cannot salvage their Lanham Act claim by attempting to re-cast it as a claim involving infringement of "services" when the plain allegations of the SAC repeatedly state that Facebook's alleged "passing off" has to do with the BRG Methodology and Facebook's RDDC design only.

Plaintiffs' claim under Lanham Act, section 1125(a)(1)(A) should therefore be dismissed under *Dastar*.

### 2. Plaintiffs have not alleged "commercial use."

Further, to state a claim under the Lanham Act, a plaintiff must allege that the infringement or unfair competition occurred "in connection with any goods or services . . . ."  15 U.S.C. § 1125(a)(1).  This is commonly described as the "commercial use" requirement.[3]  *Utah Lighthouse Ministry v. Found. for Apologetic Info. & Research*, 527 F.3d 1045, 1051-54 (10th Cir. 2008) (citing *Kremer*, 403 F.3d at 676); *see also Hancock Park Homeowners Ass'n*, 2006 WL 4532986, at *3-5 (the commercial use requirement applies to both trademark infringement and unfair competition claims under the Lanham Act).  The Ninth Circuit has held that, with respect to commercial use, although "the Lanham Act does not require any actual *sale* of goods and services" it does require that "[the defendant] offers *competing* services to the public."  *Kremer*, 403 F.3d at 679 (emphasis in original).  This is because the Lanham Act was "intended

---

[3]  The "commercial use" requirement is not to be confused with the "use in commerce" requirement, which is a jurisdictional prerequisite and not addressed here.  *Hancock Park Homeowners Ass'n Est. 1948 v. Hancock Park Home Owners Ass'n*, No. CV 06-4584 SVW, 2006 WL 4532986, at *3-5 (C.D. Cal. Sept. 20, 2006) (quoting *Bosley Med. Inst., Inc. v. Kremer*, 403 F.3d 672, 677 (9th Cir. 2005).)

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

FACEBOOK'S MOTION TO DISMISS
PLAINTIFFS' SAC
CASE NO. 15-CV-01370 EJD

to protect consumers from purchasing the products of an infringer under the mistaken assumption that they are buying a product produced or sponsored by [the trademark holder]." *Kremer*, 403 F.3d at 679 (internal quotations omitted) (quoting *Beneficial Corp. v. Beneficial Capital Corp.*, 529 F. Supp. 445, 450 (S.D.N.Y.1982)). To that end, Lanham Act claims are "limit[ed]" to "cases where a defendant is trying to profit from a plaintiffs' trademark . . . ." *Kremer*, 403 F.3d. at 679 (emphasis added).

Plaintiffs here do not allege, nor could they, that Facebook offers "*competing* services to the public." *Kremer*, 403 F.3d at 679 (emphasis in original). Similarly, Plaintiffs do not allege, nor could they, that Facebook is using the RDDC concept in, "a commercial transaction" with an intent to "confuse potential customers." *Hancock Park Homeowners Ass'n*, 2006 WL 4532986, at *4 (dismissing Lanham Act claim). Facebook does not design or construct data centers for third parties at all—it therefore does not have "customers" to confuse. *See Kremer*, 403 F.3d at 679-80 (dismissing Lanham Act claim where defendant did not sell a competing product: "Kremer's use of the Bosley Medical mark simply cannot mislead consumers into buying a competing product—no customer will mistakenly purchase a hair replacement service from Kremer under the belief that the service is being offered by Bosley. Neither is Kremer capitalizing on the good will Bosley has created in its mark.").

Plaintiffs' allegation that Facebook shares some designs publicly in order to create a competitive market of suppliers for Facebook's own benefit does not amount to a "commercial use" for purposes of unfair competition under the Lanham Act. (SAC ¶ 85.) As described above, the relevant inquiry is not whether there is any conceivable financial benefit to Facebook in engaging in the contested practice. Instead, the inquiry is whether Facebook is Plaintiffs' "competitor" and whether the practice is connected with a "commercial transaction" that has the potential to confuse "potential customers." *Hancock Park Homeowners Ass'n*, 2006 WL 4532986, at *4. Given these factors, Plaintiffs do not, and could not by amendment, allege commercial use. Thus, in accordance with prevailing Ninth Circuit authority, Plaintiffs' Lanham Act claim should be dismissed with prejudice.

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

19.

FACEBOOK'S MOTION TO DISMISS
PLAINTIFFS' SAC
CASE NO. 15-CV-01370 EJD

**E.     Plaintiffs' claims under the UCL must be dismissed.**

**1.     Plaintiffs' claim under the UCL's "unfair" prong independently fails because Plaintiffs' claims involve neither competitors nor consumers.**

In ruling on Facebook's motion to dismiss Plaintiffs' original complaint, the Court dismissed Plaintiffs' claim under the UCL's unfair prong because Plaintiffs did not allege (nor could they) that they are "competitor[s]" with or that they are "consumer[s] of" Facebook.  (Order at 17:19-18:3 (dismissing UCL unfair prong claims where "[i]t does not appear Plaintiffs are a competitor of Facebook, since Facebook's business does not consist of building data centers, and it does not appear Plaintiffs are a consumer of Facebook since Plaintiffs are not making a purchase.").)

Plaintiffs' UCL claim under the "unfair" prong in the SAC should be dismissed again because they have still—after two amendments—failed to cure this defect.  The UCL was enacted "to protect both consumers and competitors by promoting fair competition in commercial markets for goods and services."  *Kasky v. Nike, Inc.*, 27 Cal. 4th 939, 949 (2002); *Drum v. San Fernando Valley Bar Ass'n*, 182 Cal. App. 4th 247, 253 (2010) ("the test to determine whether a business practice is unfair differs depending on whether the plaintiff in a UCL case is a competitor of the defendant or a consumer.").

Here, BRG and Facebook's "relationship . . . is defined by their contractual arrangement" and not by BRG or Bripco (UK)'s status as a competitor or consumer of Facebook. *In re ConocoPhillips Co. Serv. Station Rent Contract Litig.*, No. 09-CV-2040-RMW, 2011 U.S. Dist. LEXIS 40471, at *10-11 (N.D. Cal. Apr. 13, 2011) (dismissing UCL claims).  In *Linear Technology Corp. v Applied Materials, Inc.*, the California Court of Appeal held that "where a UCL action is based on contracts not involving either the public in general or individual consumers who are parties to the contract, a corporate plaintiff may not rely on the UCL for the relief it seeks." 152 Cal. App. 4th 115, 135 (2007); *see also In re ConocoPhillips Co.*, 2011 U.S. Dist. LEXIS 40471, at *10-11 (where, "the case does not involve the general public or individual consumers who are parties to a contract. . . . Under [*Linear Tech*], plaintiffs cannot assert an 'unfair business practice' claim under Section 17200."); *Dollar Tree Stores Inc. v Toyama*

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

20.

FACEBOOK'S MOTION TO DISMISS
PLAINTIFFS' SAC
CASE NO. 15-CV-01370 EJD

*Partners LLC*, 875 F. Supp. 2d 1058, 1083 (N.D. Cal. 2012) (finding that breach of lease could not support a UCL claim under *Linear Tech* where it was "based on a breach of a contract that does not implicate the public in general or individual consumers").

In an attempt to shoehorn their breach of contract claim into the purview of the UCL, Plaintiffs allege that, "[b]y portraying itself as an innovator of data center design and providing the plans for RDDC to the OpenCompute community and the public in general, Facebook competes with BRG as a data center design provider and innovator." (SAC ¶ 153; *id.* ¶ 148 (same allegation re Plaintiffs' Lanham Act claim).) But, as was the case in Plaintiffs' original complaint and FAC, Plaintiffs do not allege (nor could they) that Facebook sells data center designs to third parties or that Plaintiffs somehow compete for clients with Facebook—Facebook does not have data-center construction clients. Facebook is thus, necessarily, not Plaintiffs' "competitor" within the scope of the UCL which protects against "[l]oss of business *to* a competitor as a result of unfair competition . . . ." *See AngioScore, Inc. v. TriReme Med., LLC*, 70 F. Supp. 3d 951, 962 (N.D. Cal. 2014) (original purpose of the UCL "was to protect against wrongful conduct in commercial enterprises which resulted in *business loss to another.*") (emphasis added) (citations omitted). Facebook's decision to publicly present aspects of its data center design does not transform Facebook into BRG's "competitor" for purposes of the UCL. *See id.* As Plaintiffs have now had two chances to plead an "unfair" claim under the UCL, and there is no way for Plaintiffs to cure the deficiencies in their allegations, the Court should dismiss Plaintiffs' UCL "unfair" claim, with prejudice.

> **2. Plaintiffs' claims under the UCL's "unlawful" prong fail because BRG has not properly alleged a predicate violation.**

Plaintiffs' claim under the "unlawful" prong of the UCL should also be dismissed because it relies on BRG's defective allegations under CUTSA and the Lanham Act. (SAC ¶ 155.) Under the "unlawful" prong, the UCL "'borrows' violations of other laws . . . .'" *Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*, 20 Cal. 4th 163, 180 (1999) (citation omitted). Accordingly, if the alleged "violations of other laws" are not properly pled, the UCL "unlawful" claim also cannot proceed. *Id.* Here, because BRG's CUTSA and Lanham Act claims are

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

FACEBOOK'S MOTION TO DISMISS
PLAINTIFFS' SAC
CASE NO. 15-CV-01370 EJD

defectively pled, *see* sections A-D, supra, BRG cannot meet the requirement of pleading unlawful

activity under the UCL. *See id*. at 182 ("A plaintiff may [] not 'plead around' an "absolute bar to

relief' simply 'by recasting the cause of action as one for unfair competition.'" (quoting

*Manufacturers Life Ins. Co. v. Super. Ct*., 10 Cal. 4th 257, 283 (1995))).

### 3. Plaintiffs' UCL claims are preempted by CUTSA.

In the Court's Order on Facebook's previous motion to dismiss, the Court dismissed

Plaintiffs' UCL claims finding it unnecessary to determine whether they were preempted by

CUTSA. Here, Plaintiffs' UCL claims are again preempted by CUTSA, and are also

independantly deficient.

CUTSA "occupies the [misappropriation] field in California." *K.C. Multimedia, Inc. v.

Bank of Am. Tech. & Operations, Inc.,* 171 Cal. App. 4th 939, 954 (2009) (quoting *AccuImage

Diagnostics Corp. v. Terarecon, Inc.,* 260 F. Supp. 2d 941, 954 (N.D. Cal. 2003)); *Silvaco Data

Sys. v. Intel Corp.*, 184 Cal. App. 4th 210, 236 (2010), *overruled on other grounds by Kwikset

Corp. v. Super. Ct.*, 51 Cal. 4th 310 (2011) ("CUTSA provides *the exclusive civil remedy* for

conduct falling within its terms.") (emphasis added). CUTSA preemption applies to common law

claims as well as UCL claims based on the same underlying facts as a misappropriation claim.

*Mattel, Inc. v. MGA Entm't Inc.*, 782 F. Supp. 2d 911, 986 (C.D. Cal. 2011) (dismissing UCL

claims); *NetApp, Inc. v. Nimble Storage, Inc.*, 41 F. Supp. 3d 816, 839 (N.D. Cal. 2014) (same).

Further, preemption applies *even if the misappropriation claim itself fails* or is plead in the

alternative. *See Mattel, Inc.*, 782 F. Supp. 2d at 985-87 (CUTSA "preempts alternative civil

remedies" based on "misappropriation of confidential information, whether or not that

information meets the statutory definition of a trade secret."); *Synopsys, Inc. v. ATopTech, Inc.*,

No. C 13-CV-02965 SC, 2013 WL 5770542, at *7 (N.D. Cal. Oct. 24, 2013) (CUTSA

preemption applies to claims based on material not protectable under trade secret law); *see also

Lewis v. Activision Blizzard, Inc.*, C 12–1096 CW, 2012 WL 5199505, at *4 (N.D. Cal. Oct. 22,

2012) (preempted claims are not saved from preemption just because they are pled in the

alternative).

To determine whether a particular claim is pre-empted, courts focus "on whether other

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

22.

FACEBOOK'S MOTION TO DISMISS
PLAINTIFFS' SAC
CASE NO. 15-CV-01370 EJD

claims are not more than a restatement of the same operative facts supporting trade secret misappropriation." *Synopsys, Inc.*, 2013 WL 5770542, at *7-8 (citing *Farmers Ins. Exch. v. Steele Ins. Agency, Inc.,* No. 2:13–CV–00784–MCE–DAD, 2013 WL 3872950, at *7 (E.D. Cal. July 25, 2013)). To that end, "[i]f there is no material distinction between the wrongdoing alleged in a [C]UTSA claim and that alleged in a different claim, the [C]UTSA claim preempts the other claim." *Id.*

Here, there is no material distinction between the facts underlying Plaintiffs' misappropriation claim and the facts underlying Plaintiffs' UCL claim. In fact, Plaintiffs incorporate their misappropriation allegations directly into their UCL claim. (*See* SAC ¶ 150 ("Defendants' acts described above constitute unfair business practices and unfair competition as defined by California Business & Professions Code § 17200, *et seq.*").) Plaintiffs also expressly rely on Facebook's alleged misappropriation of their alleged trade secrets and confidential information to describe the alleged acts underlying their UCL claim:

> Facebook's **use of Bripco (UK)'s trade secrets** to develop and direct its RDDC approach, which it deployed and plans to deploy on its own or with the assistance of third parties; **its inducement of BRG to disclose Bripco (UK) trade secrets to BRG's competitors**, such as SP Arch, AlfaTech, and Fortis; **its discussion of Bripco (UK) trade secrets with Emerson** without authorization; its **disclosure of Bripco (UK) trade secrets to other contractors**; its **disclosure of BRG's confidential information to the world** through its OpenCompute presentation and blog post; and its efforts to pass off the BRG Methodology as its own, rather than as Plaintiffs'.

(*Id.* ¶ 151 (emphasis added); *see also id.* ¶ 153 (describing Plaintiffs' "unfair" theory that by "encouraging potential BRG competitors to adopt [the BRG Methodology], Facebook has irreparably damaged fair competition in the market for data center design."); *compare id.* ¶ 137 (alleging that with respect to Facebook's misappropriation of trade secrets: "BRG's reputation and business have been harmed by Facebook's misappropriation and subsequent sharing of BRG's information to BRG's competitors"); *id.* ¶ 140 (Facebook "has also inspired, encouraged, and given confidence to competitors (including Emerson) to use the BRG Methodology in competition with BRG.").)

Where, as here, a claim is based on the "same nucleus of facts as the misappropriation of

trade secrets claim" that claim is preempted, even if it "seeks something more than trade secret relief." *K.C. Multimedia*, 171 Cal. App. 4th at 958 (citation omitted). Here, there are no factual allegations in the SAC specific to Plaintiffs' UCL claim that are not shared with Plaintiffs' misappropriation claim. (*See* SAC ¶¶ 149-50.) The two causes of action are thus unquestionably based on the same "nucleus" of facts and Plaintiffs' UCL claim should be dismissed at the pleading stage. *See Synopsys, Inc.*, 2013 WL 5770542, at \*7 (CUTSA preemption is "entirely appropriate for resolution on a Rule 12(b)(6) motion.").

### F. Plaintiff Bripco (UK) is not a party to the Facebook-BRG NDA and thus cannot state a claim for breach of contract.

In California one "who is not a party to the contract has no standing to enforce it." *Press Rentals, Inc. v. Genesis Fluid Solutions, Ltd.*, No. 5:11-CV-02579-EJD, 2014 WL 31251, at \*5 (N.D. Cal. Jan. 3, 2014) (quoting *Jones v. Aetna Cas. & Sur. Co.*, 26 Cal. App. 4th 1717, 1722 (1994)); *see also NovelPoster v. Javitch Canfield Grp.*, No. 13-CV-05186-WHO, 2014 WL 5687344, at \*5 (N.D. Cal. Nov. 4, 2014) ("the general rule among federal courts applying California law is that one who is not a party to a contract does not have standing to sue for breach of that contract.").

Plaintiffs' breach of contract claim should thus be dismissed with prejudice as to Plaintiff Bripco (UK), who has no standing to sue for breach of contract.

## V. CONCLUSION

Plaintiffs have now had three opportunities to plead viable theories of liability, and have largely failed to do so. As such, the Court should dismiss Plaintiffs' second, third, and fourth causes of action, as well as Bripco (UK)'s claim for breach of contract as to Facebook, with

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

24.

FACEBOOK'S MOTION TO DISMISS
PLAINTIFFS' SAC
CASE NO. 15-CV-01370 EJD

prejudice for failure to state a claim upon which relief can be granted.

Dated: May 9, 2016                              COOLEY LLP
                                                MICHAEL G. RHODES (116127)


                                                 */s/ Michael G. Rhodes*
                                                Michael G. Rhodes (116127)
                                                Attorneys for Defendant
                                                FACEBOOK, INC.

131069230

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

FACEBOOK'S MOTION TO DISMISS
PLAINTIFFS' SAC
CASE NO. 15-CV-01370 EJD