United States District Court
Northern District of California

1
2
3
4
5
6
7

8

UNITED STATES DISTRICT COURT

9

NORTHERN DISTRICT OF CALIFORNIA

10

SAN JOSE DIVISION

11

12    BLADEROOM GROUP LIMITED, et al.,          Case No. 5:15-cv-01370-EJD (HRL)

13                  Plaintiffs,

14          v.                                  **ORDER RE DISCOVERY DISPUTE
                                                JOINT REPORT NO. 1**
15    FACEBOOK, INC., et al.,                    Re: Dkt. No. 124

16                  Defendants.

17          Plaintiffs sue for alleged misuse of claimed trade secrets concerning designs and

18    methodology for building data centers.  Discovery Dispute Joint Report (DDJR) No. 1 presents a

19    dispute as between plaintiffs, on the one hand, and defendant Facebook, Inc. (Facebook) on the

20    other.  At issue:  whether Facebook's retained testifying expert, KC Mares, may access and use

21    material that plaintiffs designated "Confidential" or "Highly Confidential-Attorney's Eyes Only"

22    under the stipulated protective order.[1]  (Dkt. 54).  The matter is deemed suitable for determination

23    without oral argument.  Civ. L.R. 7-1(b).  Upon consideration of the parties' respective

24    arguments,[2] this court rules as follows:

25

26    [1] Plaintiffs point out that they have agreed that Facebook's seven other retained experts may
      access their confidential information.  Facebook says that those seven others are employees of a
27    litigation analytics firm who will not testify.

28    [2] This court has not found it necessary to consider plaintiffs' supplemental exhibits from a press
      release and from a website.  Defendant's request for leave to file a supplemental response to those

United States District Court
Northern District of California

1  In his curriculum vitae, Mares describes himself as the "[e]xecutive leader of global data

2  center strategy, development, design, procurement and operations." (Dkt. 124-1 at 6). He further

3  states that he has "led the design and construction of $5-10 billion of data centers and [has]

4  negotiated and managed data center and network services with nearly every major provider."

5  (Id.). Mares has a consulting business, MegaWatt Consulting, Inc., in which he advises clients on

6  data center design, operation, site selection, development, and energy efficiency. (Id.). Among

7  the services and experience offered to clients is: "Led the development of various software,

8  renewable energy and technology products and a reviewer of many new technologies used within

9  the data center space . . .." and "Lead design teams for many complex data center projects,

10  creating innovations and PUEs of less than 1.1." (Id.).[3]

11  Plaintiffs previously considered allowing Mares to access their claimed confidential

12  information, provided that he signed a declaration agreeing to refrain from certain activities.

13  Among other things, plaintiffs' proposed declaration required Mares to agree to the following

14  statements:

- "I have not designed data centers and have no current plans to design data centers"; and

- "I will not . . . provide designs for data centers during the pendency of the Litigation and for one year following the termination of the Litigation."

- "I will not . . . .consult on the design or build of an air handling system during the pendency of the Litigation and for one year following the termination of the Litigation."

22  (Dkt. 124, DDJR 1 at 7; Dkt. 125-2 at 3). Mares had no problem with other aspects of plaintiffs'

23  proposed declaration (see Dkt. 125-1); and, Facebook contends that any concerns about plaintiffs'

24  confidential information are sufficiently addressed by portions of the declaration that Mares

25  offered to sign, including that for the duration of this litigation (and for one year after its

27  exhibits is denied.

28  [3] Although not explained in the present DDJR, this court's understanding is that "PUE" essentially is a measure of how efficiently a data center uses energy.

1    termination), he would recuse himself from decisions involving subcontractor selection/evaluation

2    if plaintiffs were among the bidders; would not provide engineering or architectural services; and

3    would not design or build an air handling system.  (Dkt. 125-1 at 3).  Defendant argues that this

4    proffered declaration, coupled with the terms of the stipulated protective order, are sufficient to

5    address plaintiffs' concerns.  In plaintiffs' view, defendant's proffer is insufficient without the

6    additional assurances re data center design.  The deal-breaker was that Mares could not sign off on

7    the above-quoted representations.  Facebook says that is because Mares is asked to consult on data

8    center design from time to time.

9         Without their desired declaration, plaintiffs oppose Mares' access to their confidential

10   information, arguing that his ongoing consulting work in data center design presents an

11   unacceptable risk of inadvertent misuse.  They fear that Mares, once having had access to their

12   confidential information, will not be able to compartmentalize their claimed trade secrets from

13   other information he obtains and uses in the course of his work.  Facebook contends that plaintiffs'

14   concerns are unfounded.

15        To resolve this dispute, the court balances Facebook's interest in selecting the experts most

16   beneficial to its case with plaintiffs' interest in protecting their claimed trade secrets from

17   disclosure to competitors.  Symantec Crop. v. Acronis Corp., No. 11-5310 EMC (JSC), 2012 WL

18   3582974 at *3 (N.D. Cal., Aug. 20, 2012).  As the parties opposing disclosure, plaintiffs bear the

19   burden of demonstrating that the risk of harm that disclosure to Mares would entail (under any

20   proposed safeguards) outweighs Facebook's need for Mares' access to such materials.

21        The primary point of contention is whether Mares is a competitor of plaintiffs.  Under the

22   stipulated protective order, an expert cannot be "a past or current employee of a Party or of a

23   Party's competitor" or "anticipated to become an employee of a Party or of a Party's competitor."

24   (Dkt. 54 ¶ 2.7).  Facebook contends that Mares is not a "competitor" in any sense of the word

25   because, unlike plaintiffs, Mares does not himself design or build data centers.  Rather, he advises

26   clients about them; and, simply consulting on aspects of data center design, says Facebook, does

27   not make Mares a competitor.  Here, defendant cites Rheumatology Diagnostics Lab., Inc. v.

28   Aetna, Inc., No. 12-cv-05847-WHO, 2015 WL 1744330 at *11 (N.D. Cal., Apr. 15, 2015) in

United States District Court
Northern District of California

3

United States District Court
Northern District of California

1    which the court concluded that an expert was not defendant's competitor where his services were

2    similar, but "not the same thing" as defendant's (i.e., he helped physicians install and operate

3    clinical laboratories, whereas defendant provided physicians with clinical laboratory services).

4          Mares is not a "competitor" of plaintiffs in any traditional or conventional sense.  Even so,

5    this court finds that there is a potential risk of inadvertent disclosure of plaintiffs' confidential

6    information because the record suggests that a purpose of Mares' consultancy is to advise, inform,

7    and guide decisions re data center design.  See, e.g., Isis Pharmaceuticals, Inc. v. Santaris Pharma

8    A/S Corp., No. 11cv2214-GPC (KSC), 2013 WL 3367575 at *6 (S.D. Cal., July 5, 2013) (finding

9    a risk of inadvertent disclosure where the essence of the proposed expert's consulting practice was

10   "to impact, shape, and inform decisions" re the subject technology).

11         Further, plaintiffs point out that Mares actively consults in the very field at issue.  Courts

12   have concluded that a "proposed expert's ongoing work in the field created a substantial risk of

13   misuse such that he should only be allowed access to the confidential information if he possessed

14   'unique expertise.'  GPNE Corp. v. Apple, Inc., No. 5:12-cv-02885-LHK (PSG), 2014 WL

15   1027948 at *1-2 (N.D. Cal., Mar. 13, 2014) (denying access to confidential materials by an expert

16   who actively consulted with plaintiff's competitors and where there was no showing that he had

17   unique qualifications that would make him better suited than any other expert); Symantec Corp.,

18   2012 WL 3582974 at *2-3 (denying access to confidential materials where the expert offered

19   consulting and analysis in the very field at issue and there was no showing that the expert had

20   unique knowledge that could not be found in another expert).  Cf. Advanced Semiconductor

21   Materials Am. Inc. v. Applied Materials Inc., No. 95-20169, 1996 WL 908654, at *3 (N.D. Cal.

22   Oct. 28, 1996) (allowing access to confidential materials by an expert who had not consulted on

23   the technology at issue for four years).

24         This court wonders whether anyone Facebook might want to use would be able to sign off

25   on the representations plaintiffs desire, namely that the proposed expert has not designed data

26   centers *and* has no plans to do so.  Nevertheless, the court concludes that, on balance, the risk of

27   inadvertent disclosure is not outweighed by prejudice to Facebook.  Here, as in GPNE and

28   Symantec Corp., defendant has not identified any unique qualifications or knowledge Mares has

4

1  that make him better suited to serve than any other expert.  Cf. Isis Pharmaceuticals, Inc., 2013

2  WL 3367575 at *7-8 (allowing disclosure of confidential information to a proposed expert where

3  the field in question was highly specialized and the pool of available experts was small).

4       Based on the foregoing, plaintiffs' request for an order precluding Mares' access to their

5  confidential information is granted.

6       SO ORDERED.

7  Dated:   February 28, 2017

8

9  _____

10  HOWARD R. LLOYD
    United States Magistrate Judge

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court
Northern District of California

United States District Court
Northern District of California

1

5:15-cv-01370-EJD Notice has been electronically mailed to:

2

Anthony David Giles       anthony@anthonygiles.com

3

Elizabeth Lee Stameshkin       lstameshkin@cooley.com

4

Erik Christopher Olson       eolson@fbm.com, calendar@fbm.com, shunt@fbm.com

5

Eugene Y. Mar       emar@fbm.com, calendar@fbm.com, mclaros@fbm.com

6

Heidi Lyn Keefe       hkeefe@cooley.com, jmcintosh@cooley.com

7

James Alexander Reese       areese@fbm.com

8

9

Jeffrey M. Fisher       jfisher@fbm.com, calendar@fbm.com, renterig@fbm.com,
wpemail@fbm.com

10

Julia Frederika Kropp       jkropp@fbm.com, bwestburg@fbm.com, calendar@fbm.com

11

12

Kristine Anne Forderer       kforderer@cooley.com, rcahill@cooley.com, swarren@cooley.com

13

Mark Frederick Lambert       mlambert@cooley.com, lalmanza@cooley.com

14

Mark R. Weinstein       mweinstein@cooley.com, patricia.russell@cooley.com

15

Matthew David Caplan       mcaplan@cooley.com, smartinez@cooley.com

16

17

Melinda Mae Morton       mindy.morton@procopio.com, calendaring@procopio.com,
gail.poulos@procopio.com

18

Michael Graham Rhodes       rhodesmg@cooley.com, lopezre@cooley.com, moyespe@cooley.com

19

20

Robert H. Sloss       robert.sloss@procopio.com, calendaring@procopio.com,
gail.poulos@procopio.com

21

Robert Thomas Cahill , Jr       rcahill@cooley.com

22

Stephanie Powers Skaff       sskaff@fbm.com, bwestburg@fbm.com, calendar@fbm.com

23

24

25

26

27

28

6