UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

BLADEROOM GROUP LIMITED, et al.,

Plaintiffs,

v.

FACEBOOK, INC., et al.,

Defendants.

Case No. 5:15-cv-01370-EJD (HRL)

**ORDER RE DISCOVERY DISPUTE JOINT REPORT NO. 12**

Re: Dkt. No. 263

## INTRODUCTION

In Discovery Dispute Joint Report ("DDJR") #12 the defendants, Facebook and the three Emerson entities, ask the court to require plaintiffs to provide further supplementation to their responses to interrogatories propounded to them asking for particulars about each of the trade secrets they claim were misappropriated by defendants.

## BACKGROUND

According to the Second Amended Complaint (redacted version, Dkt# 107), the plaintiffs spent many years developing and refining a new way to design and build large data centers. Large data centers are complex structures that house vast arrays of computer servers. Previously, data centers had been "stick built" (in the manner of any conventional "bricks and mortar" building) or constructed by joining together prebuilt volumetric boxes. In contrast, plaintiffs' new way was a

prefabricated and modular construction approach.                    REDACTED

Plaintiffs say they relied on a unique combination of information, compilations, techniques, designs, know how, methods, and processes, which were integrated into carefully developed approaches to assembly, integration, parts acquisition, quality control, transportation, and installation to result in what they named the BRG Methodology ("methodology").  This methodology produced a new kind of large data center they called "BladeRoom."

Plaintiffs allege that the defendants, in the guise of potential buyers of a BladeRoom, soaked up all they could of the methodology through many in-depth briefings with plaintiffs' technical personnel as well as examination of documentation and tours and demonstrations of BladeRoom features and installations.  Then, say plaintiffs, defendants appropriated the methodology for themselves, even claiming to the world that they had originated it.  Plaintiffs sue for misappropriation of trade secrets (and other claims).

Plaintiffs described their claimed 25 trade secrets in a sealed filing captioned "Disclosure of Plaintiffs' Trade Secrets Under California Code of Civil Procedure sec. 2019.210." ("Disclosures") (Dkt. 107, Ex. B).                    REDACTED

REDACTED                                        Each secret, according to plaintiffs, was not publicly known in the data center construction industry when disclosed to Facebook and the Emerson entities.  Defendants did not move to challenge the sufficiency of the Disclosures.

Defendants did, however, submit interrogatories to plaintiffs asking, in effect, to describe their Disclosures with greater particularity.  Plaintiffs responded, but defendants were not satisfied and wanted more.  That impasse resulted in DDJR #8, where defendants asked the court to order responses that offered more exactitude than allusions to "know how," "methods," and "design attributes" and to really spell out what the trade secret is rather than what it "does."  This court agreed and ordered plaintiffs to supplement their responses with respect to their Disclosures.

## DISCUSSION

Plaintiffs did supplement, but defendants are still not satisfied, and now the court has DDJR #12.  Borrowing from the court's order on DDJR #8, defendants complain that plaintiffs still describe the secrets in terms of functionality, and do not disclose their "content."  They lament

2

that they still do not know just what "it" is that they have supposedly misappropriated.

In their supplemental interrogatory responses (DDJR 12, Exs. A and B), plaintiffs provided

REDACTED

It would be fair to say that they took pains in the supplemental submissions to "illustrate" the secrets and to flesh them out.  But, it would also be fair to say that, for the most part, they did not state the "content" of the secrets, at least not in the way that defendants and, previously, this court thought it should be done.

Now, however, the court has a new appreciation of what plaintiffs are trying to claim as their alleged secrets.  The opinion in <u>Altavion, Inc. v. Konica Minolta Systems Laboratory</u>, 226 Cal.App.4th 26 (2014) is instructive.  It explains that *possible* trade secrets fall into a continuum, from something as high level as a general idea, down to mid-level concepts for developing and implementing the general idea, and finally ending at the granular information such as source code and algorithms that would consummate what had started as a general idea.  The take-away is that someone could be guilty of misappropriation of trade secrets even if they did not (in the example just given) get hold of the source code and algorithms.  Even an "idea," if not known to the public, protected from disclosure, having economic value, etc., *might* be adjudged a trade secret.

REDACTED

REDACTED

**1**

## CONCLUSION

The plaintiffs have done enough supplementation to pass muster for present purposes. This is not an implicit recognition by this court of the merit of any of the claimed secrets.  All the court concludes is that plaintiffs have sufficiently articulated what they say their secrets are, and the court understands that the level of particularity described for each is the level of particularity that the plaintiffs have staked out to go forward on.

Defendants' request for an order requiring further supplemental answers to their "trade secret" interrogatories is denied.

SO ORDERED.

Dated:   May 22, 2017

_____
HOWARD R. LLOYD
United States Magistrate Judge

---

[1] It is correct that plaintiffs do not spell out, datum by datum, what that know how is, perhaps because they would say it was not feasible and/or necessary.  This court offers no opinion on whether it is either feasible or necessary.  This is how plaintiffs chose to define certain of their claimed secrets, and it remains for another day to find out how well they have succeeded.