United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

|  |  |
|---|---|
| BLADEROOM GROUP LIMITED, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>FACEBOOK, INC., et al.,<br><br>Defendants. | Case No. 5:15-cv-01370-EJD<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**<br><br>Re: Dkt. No. 370 |

## I. INTRODUCTION

Plaintiffs BladeRoom Group Limited and Bripco (UK) Limited (collectively, "BladeRoom") assert claims for trade secret misappropriation, breach of contract, and violation of the Unfair Competition Law ("UCL"), California Business and Professions Code § 17200 et seq., against Defendant Facebook, Inc. ("Facebook") and Defendants Emerson Electric Co., Emerson Network Power Solutions, Inc. and Liebert Corporation (collectively, "Emerson"). Presently before the court is Emerson's Motion for Summary Judgment. Dkt. No. 370. Plaintiffs oppose the motion.

Federal jurisdiction arises pursuant to 28 U.S.C. §§ 1331 and 1332. The outcome of this motion largely tracks that of Facebook's companion summary judgment motion, which the court has addressed in a separate order filed this same date. Emerson's Motion for Summary Judgment will be granted in part and denied in part for the reasons that follow.

## II. LEGAL STANDARD

A motion for summary judgment or partial summary judgment should be granted if "there

Case No.: 5:15-cv-01370-EJD
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
1

is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); Addisu v. Fred Meyer, Inc., 198 F.3d 1130, 1134 (9th Cir. 2000).

The moving party bears the initial burden of informing the court of the basis for the motion and identifying the portions of the pleadings, depositions, answers to interrogatories, admissions, or affidavits that demonstrate the absence of a triable issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). If the issue is one on which the nonmoving party must bear the burden of proof at trial, the moving party need only point out an absence of evidence supporting the claim; it does not need to disprove its opponent's claim. Id. at 325.

If the moving party meets the initial burden, the burden then shifts to the non-moving party to go beyond the pleadings and designate specific materials in the record to show that there is a genuinely disputed fact. Fed. R. Civ. P. 56(c); Celotex Corp., 477 U.S. at 324. A "genuine issue" for trial exists if the non-moving party presents evidence from which a reasonable jury, viewing the evidence in the light most favorable to that party, could resolve the material issue in his or her favor. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-49 (1986).

The court must draw all reasonable inferences in favor of the party against whom summary judgment is sought. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). However, the mere suggestion that facts are in controversy, as well as conclusory or speculative testimony in affidavits and moving papers, is not sufficient to defeat summary judgment. Id. ("When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts."); Thornhill Publ'g Co. v. GTE Corp., 594 F.2d 730, 738 (9th Cir. 1979). Instead, the non-moving party must come forward with admissible evidence to satisfy the burden. Fed. R. Civ. P. 56(c).

"If the nonmoving party fails to produce enough evidence to create a genuine issue of material fact, the moving party wins the motion for summary judgment." Nissan Fire & Marine Ins. Co. v. Fritz Cos., Inc., 210 F.3d 1099, 1103 (9th Cir. 2000). "But if the nonmoving party produces enough evidence to create a genuine issue of material fact, the nonmoving party defeats

Case No.: 5:15-cv-01370-EJD
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

2

the motion." Id.

## III. DISCUSSION

### A. Misappropriation of Trade Secrets

Like Facebook, Emerson challenges BladeRoom's trade secret misappropriation claim in two primary ways. First, Emerson argues that BladeRoom has not established that its asserted combination trade secrets qualify for legal protection. Second, Emerson argues the evidence does not show that Emerson used any of BladeRoom's trade secrets. Neither argument prevails.

#### i. Element 1: Identification of Trade Secrets

The general authority governing a claim for trade secret misappropriation claim under the California Uniform Trade Secrets Act ("CUTSA") is detailed in the order on Facebook's summary judgment motion and is not repeated here. However, some concepts are worth restating because they apply with equal force to this motion.

On the subject of disclosure, CUTSA requires the trade secret plaintiff to "'describe the subject matter of the trade secret with sufficient particularity to separate it from matters of general knowledge in the trade or of special knowledge of those persons . . . skilled in the trade.'" Imax Corp. v. Cinema Techs., Inc., 152 F.3d 1161, 1164-65 (9th Cir. 1998) (quoting Universal Analytics v. MacNeal-Schwendler Corp., 707 F. Supp. 1170, 1177 (C.D. Cal. 1989)) ("Imax"). The plaintiff need not "define every minute detail of its claimed trade secret at the outset of the litigation," but "must make some showing that is reasonable, i.e., fair, proper, just and rational[,] under all of the circumstances." Advanced Modular Sputtering, Inc. v. Super. Ct., 132 Cal. App. 4th 826, 835-36 (2005). "The degree of 'particularity' that is 'reasonable' will differ, depending on the alleged trade secrets at issue in each case." Id. at 836.

As to subject matter, "[n]ovelty, in the patent law sense, is not required for a trade secret." Kewanee Oil Co. v. Bicron Corp., 416 U.S. 470, 476 (1974). Instead, "secrecy, in the context of trade secrets, thus implies at least minimal novelty." Id.

Emerson's argument regarding the combination trade secrets - which seems to internally

Case No.: 5:15-cv-01370-EJD
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

3

shift between a challenge to the sufficiency of their disclosure in this litigation and to the novelty of their subject matter - fails under these guidelines. To begin, the significance of the purported inability of BladeRoom's witnesses to identify at deposition how the combination trade secrets constitute a unique, unified process is difficult to understand. To the extent Emerson cites these instances as evidence the combination trade secrets were not fully and adequately disclosed during discovery under Imax, the court disagrees for reasons fully explained in the order addressing Facebook's summary judgment motion. Furthermore, it is not clear why Emerson requested that BladeRoom's witnesses identify a unique, unified process for any of the combination trade secrets in any event. Emerson was already in possession of BladeRoom's disclosures when it took the depositions, and it is no mystery that BladeRoom's individual trade secrets, of which the combination trade secrets are comprised, each claim certain construction aspects of a distinct methodology for building a modular data center.

To the extent the deposition testimony is cited in support of a novelty challenge to the combination trade secrets, it is misplaced. The court has explained, also in the order on Facebook's motion, why the general notion of novelty applicable in patent infringement cases does not translate into claims for trade secret misappropriation. Trade secrets do not derive value from their novelty, and such a requirement is conspicuously absent from CUTSA's definition of what constitutes a trade secret. Cal. Civ. Code § 3426.1(d). Rather, the value of a trade secret arises from its secrecy and the ability to control whether, how and to whom it is disclosed. See DVD Copy Control Assn., Inc. v. Bunner, 31 Cal. 4th 864, 880-81 (2003). Accordingly, any definition of novelty beyond the measures taken to keep the combination trade secrets confidential is not mandated by CUTSA.

Indeed, the cases cited by Emerson do not impose any general requirement that trade secrets be novel. Instead, those cases support the notion emphasized here: that confidentiality is key. Emerson relies on Computer Care v. Service Systems Enterprises, Inc., 982 F.2d 1063 (7th Cir. 1992), a case in which the Seventh Circuit held that the plaintiff's vehicle maintenance

Case No.: 5:15-cv-01370-EJD
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

4

reminder system did not qualify for trade secret protection under Illinois law, either in individual parts or in combination, because it was not shown to be any different from other systems available in the market. The main problem for the plaintiff, as the Seventh Circuit made clear in several places of the opinion, was not a lack of novelty but a lack of secrecy. To that end, the term "novel" is used in Computer Care to emphasize the obviousness - and thereby lack of secrecy - of the plaintiff's claimed technology and the commonality between the trade secrets and the practices of others in the same industry.[1]

Emerson also cites Computer Care to support this statement: "[c]ombination trade secrets can include information in the public domain, but the combination itself must be a unified process that is unique and novel." Computer Care, however, does not appear to recognize novelty as a requirement for trade secrets composed of publicly-known elements; Emerson seems to have added that requirement out of interpretive license. But even if a novelty requirement was implied in Computer Care, its addition to the rule simply would not win the day at this stage. Whether or not the individual components of BladeRoom's combination trade secrets were publicly disclosed is a disputed material fact that cannot be resolved on summary judgment. Unless a jury finds in Emerson's favor on the issue of public disclosure, any rule requiring that combination trade secrets be unique when composed of publicly-disclosed elements does not apply.

Secrecy was similarly fundamental to the district court's decision in Big Vision Private Ltd. v. E.I. DuPont Nemours & Co., 1 F. Supp. 3d 224 (S.D.N.Y. 2014), though that case is distinguishable. In Big Vision, the court determined the plaintiff altogether failed to explain how its claimed combination trade secret was either confidential or unique. In the passage duplicated in Emerson's motion, the district court emphasized that the plaintiff failed to show the uniqueness of its combination trade secret because it had failed to sufficiently describe the publicly-disclosed

---

[1] "Novel" is used in connection with two main points in the Computer Care opinion, first to point out that "Computer Care's use of adjustable service cycles is not a *novel* idea developed by Computer Care, but simply a response to its customers' requests," and second to emphasize that "the idea of saving money by not continuing to send letters to customers who have failed to respond in the past is hardly *novel*." 982 F.2d at 1073-74.

Case No.: 5:15-cv-01370-EJD
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
5

components. Those circumstances do not present here, despite persistent attempts to question the sufficiency of BladeRoom's disclosures after they were determined adequate by a magistrate judge.

In sum, Emerson is not entitled to summary judgment on the trade secret misappropriation claim due to insufficient disclosure of the combination trade secrets. Nor is it entitled to summary judgment for lack of novelty.

### ii. Element 2: Acquisition, Disclosure, or Use of Trade Secrets

As the court explained in connection with Facebook's motion, three types of conduct can constitute trade secret misappropriation under CUTSA: improper acquisition, improper disclosure and improper use. Cal. Civ. Code § 3426.1(b); Silvaco Data Sys. v. Intel Corp., 184 Cal. App. 4th 210, 222 (2010) ("Under CUTSA, misappropriation of a trade secret may be achieved through three types of conduct: '[a]cquisition,' '[d]isclosure,' or '[u]se.'"). Each type can be proven by circumstantial evidence. See UniRAM Tech., Inc. v. Taiwan Semiconductor Mfg. Co., 617 F. Supp. 2d 938, 944 (N.D. Cal. 2007).

#### a. Acquisition

A reasonable jury could find that Emerson improperly acquired BladeRoom's trade secrets through misrepresentation. In addition to the evidence recited in the order on Facebook's motion, Emerson's Jack Pouchet testified ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Mar Decl., at Ex. 100, 119:13-17, 124:16-125:17, 142:22-143:25, 152:7-12. Though Emerson invites the court to parse and weigh Pouchet's testimony and find it insufficient to prove that Emerson was in fact ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮, the invitation must be declined. See Anderson, 477 U.S. at 255, 106 S.Ct. 2505 ("Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, whether he is ruling on a motion for summary judgment or for a directed verdict."). It is enough that the statements provide an evidentiary basis for the jury to infer Emerson's intentions. The

Case No.: 5:15-cv-01370-EJD
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
6

bounds of Pouchet's knowledge and his reasons for making the statements can be explored at trial.

Furthermore, a reasonable jury could infer from the presentation dated December 7, 2011, that Emerson was motivated to obtain knowledge related to alternative cooling methods because Emerson ███████████████████████████████████ ███ Mar Decl., at Ex. 89. And a reasonable jury could infer that Emerson received a significant amount of in-depth, technical information about the Armature technology after its meeting with BladeRoom in the United Kingdom in June, 2012. Id. at Exs. 26, 94, 102.

### b. Disclosure

Emerson's non-disclosure agreement with BladeRoom governs how the parties must treat confidential information in much the same way as the agreement between BladeRoom and Facebook. Fisher Decl., at Ex. 1. In pertinent part, Emerson's agreement permits the use of confidential information only for the purpose of evaluating a possible acquisition of BladeRoom, and requires Emerson to "treat and safeguard" BladeRoom's confidential information as its own. Id. The agreement precludes the disclosure of confidential information without written consent, except that Emerson may disclose information to particular categories of insiders who need to know the information to evaluate an acquisition. Id. The agreement also precludes the disclosure of any information relating to existence or content of any negotiations. Id.

The court reiterates that a violation of CUTSA may occur when trade secrets are disclosed in violation of a contractual duty to maintain confidentiality. See Cal. Civ. Code § 3426.1(b)(2)(B)(ii); see also Restatement (Third) of Unfair Competition § 41 cmt. b (1995); see also Convolve, Inc. v. Compaq Comput. Corp., 527 Fed. App'x 910, 925 (Fed. Cir. 2013) (observing that under CUTSA, circumstances giving rise to a duty to maintain the secrecy of trade secrets are dictated by the terms of a non-disclosure agreement). And here, the record provides sufficient evidentiary support for a reasonable jury to find that Emerson violated CUTSA by improperly disclosing BladeRoom's confidential information subsequent to the meeting in the United Kingdom in June, 2012. Indeed, the same evidence that renders this form of

Case No.: 5:15-cv-01370-EJD
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

7

misappropriation genuinely disputed as to Facebook makes it an equally genuine dispute as to Emerson, since BladeRoom's agreements with both companies limited their respective use of trade secrets solely to internal business evaluations. A reasonable jury could infer from the record that Emerson at least discussed BladeRoom's confidential information with Facebook.

Emerson's contrary position based on alleged public disclosures by BladeRoom is ineffective for this motion because it is not supported by undisputed evidence. As revealed by the deposition testimony of Nick Vaney and Defendants' joint expert, Phil Isaak, whether or not BladeRoom's information lost trade secret protection because it was publicly disclosed in patent applications, on its website, or in other presentations is a materially disputed fact that cannot be resolved by the court on summary judgment. Moreover, it appears that a portion of the evidence Emerson relies on to show loss of confidentiality involves public disclosures made subsequent to the time period at issue in this case, and may be irrelevant for that reason.

### c. Use

The court has explained in connection with Facebook's summary judgment motion why the type of infringement analysis traditionally utilized in patent cases is unsuited to analyzing whether trade secrets have been misappropriated through use. Infringement of a patent occurs only when every claim limitation recited in the patent or their equivalents are present in the accused device. Uniloc USA, Inc. v. Microsoft Corp., 632 F.3d 1292, 1301 (Fed. Cir. 2011). In contrast, proof that trade secrets have been "used" can come in various forms, direct incorporation being just one possible form. PMC, Inc. v. Kadisha, 78 Cal. App. 4th 1368, 1383 (2000) (holding that misappropriation can occur by "[e]mploying the confidential information in manufacturing, production, research or development, marketing goods that embody the trade secret, or soliciting customers through the use of trade secret information"). Consequently, "an actor is liable for using the trade secret with independently created improvements or modifications if the result is substantially derived from the trade secret." Restatement (Third) of Unfair Competition § 40 cmt. c (1995).

Like Facebook, Emerson asserts it did not use any of BladeRoom's trade secrets because certain aspects of the trade secrets do not manifest in LLA2. And like Facebook, Emerson cannot prevail on summary judgment with this argument. The lack of a direct correlation between the "claims" of a trade secret and the elements of LLA2 does not prevent the possibility that a reasonable jury could find that Emerson substantially derived its technology for modular data centers from that of BladeRoom. Accordingly, Emerson's motion will be denied as to trade secret misappropriation through use.

**B.  Breach of Contract**

Emerson argues BladeRoom cannot prove that it breached the non-disclosure agreement, relying primarily on its arguments against the claim for trade secret misappropriation. But as has been explained above and in conjunction with Facebook's summary judgment motion, the evidence when construed in BladeRoom's favor could support a finding of breach. Emerson's motion will therefore be denied as to the breach of contract claim.

**C.  UCL**

The UCL broadly prohibits business practices that are unlawful, unfair, or fraudulent (Cal. Bus. & Prof. Code § 17200; Kwikset v. Super. Ct., 51 Cal. 4th 310, 320 (2011)), and BladeRoom's UCL claim arises only under the UCL's unlawful and unfair "prongs." Emerson argues it is entitled to summary judgment, no matter the prong, because it is preempted by CUTSA. The court agrees in part.

"'[G]eneral and comprehensive legislation, where course of conduct, parties, things affected, limitations and exceptions are minutely described, indicates a legislative intent that the statute should totally supersede and replace the common law dealing with the subject matter.'" I.E. Assocs. v. Safeco Title Ins. Co., 39 Cal. 3d 281, 285 (1985). In California, CUTSA is a body of general and comprehensive legislation that preempts both common law trade secret misappropriation claims and alternative civil remedies based on trade secret misappropriation. K.C. Multimedia, Inc. v. Bank of America Tech. & Operations, Inc., 171 Cal. App. 4th 939, 954

Case No.: 5:15-cv-01370-EJD
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

9

(2009). Its eleven provisions set forth "the definition of 'misappropriation' and 'trade secret,' injunctive relief for actual or threatened misappropriation, damages, attorney fees, methods for preserving the secrecy of trade secrets, the limitations period, the effect of the title on other statutes or remedies, statutory construction, severability, the application of title to acts occurring prior to the statutory date, and the application of official proceedings privilege to disclosure of trade secret information." Id.

A claim is preempted by CUTSA if it is based on the "same nucleus of facts" as the misappropriation of trade secrets claim for relief. Id. (quoting Digital Envoy, Inc. v. Google, Inc., 370 F. Supp. 2d 1025, 1035 (N.D. Cal. 2005)). But CUTSA does not preempt claims deriving from "(1) contractual remedies, whether or not based upon misappropriation of a trade secret, (2) other civil remedies that are not based upon misappropriation of a trade secret, or (3) criminal remedies, whether or not based upon misappropriation of a trade secret." Cal. Civ.Code § 3426.7(b). Thus, "preemption is not triggered where the facts in an independent claim are similar to, but distinct from, those underlying the misappropriation claim." Gabriel Techs. Corp. v. Qualcomm Inc., No. 08cv1992-MMA(POR), 2009 WL 3326631, at * (S.D. Cal. Sept. 3, 2009).

Here, the two prongs of BladeRoom's UCL claim against Emerson must be analyzed separately because, while similar, there is an important difference. Echoing the definition of "misappropriation" provided in Civil Code § 3426.1(b), BladeRoom alleges in the operative Second Amended Complaint that Emerson violated the unlawful prong of the UCL by wrongfully disclosing and using its confidential information. Dkt. No. 106, at ¶ 152. That said, the claim is indistinguishable from BladeRoom's trade secret misappropriation claims because it must be proven with the same "nucleus of facts." It is preempted by CUTSA for that reason.

Allegations of trade secret misappropriation also provide a factual context for the claim under the unfair prong, but BladeRoom goes further than merely citing conduct falling within the statutory definition of trade secret misappropriation. It alleges that because of the misappropriation, Emerson can unfairly compete with BladeRoom in the market for modular data

center design and construction. Id. at ¶ 154. BladeRoom also alleges that Emerson falsely claims to have collaborated in creating its own competing design and method. Id. The gravamen of this claim is therefore rooted in what Emerson has done and can do as a result of the unlawful disclosure and use of BladeRoom's confidential information, and not on the same conduct underlying the misappropriation claim. The court therefore finds the claim under the UCL's unfair prong is not preempted.

In short, Emerson is entitled to summary judgment only on the unlawful prong of the UCL claim but nothing else.

## IV. ORDER

Based on the foregoing, Emerson's Motion for Summary Judgment (Dkt. No. 370) is GRANTED IN PART and DENIED IN PART.

The motion is granted as to the BladeRoom's UCL claim against Emerson under the unlawful prong. The motion is denied in all other aspects.

**IT IS SO ORDERED.**

Dated: January 2, 2018

EDWARD J. DAVILA
United States District Judge

Case No.: 5:15-cv-01370-EJD
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

11