UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

BLADEROOM GROUP LIMITED, et al.,

Plaintiffs,

v.

FACEBOOK, INC., et al.,

Defendants.

Case No. 5:15-cv-01370-EJD

**ORDER RE: MOTIONS TO EXLCUDE EXPERT TESTIMONY**

Re: Dkt. Nos. 521, 524, 527, 530

Presently before the court are motions to exclude expert testimony. Dkt. Nos. 521, 524, 527, 530.

## I. LEGAL STANDARD

Federal Rule of Evidence 702 provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert has reliably applied the principles and methods to the facts of the case.

In Daubert v. Merrell Dow Pharmaceuticals, Inc., the Supreme Court explained that the application of Rule 702 requires a "flexible" inquiry concerned with "scientific validity" as well as "evidentiary relevance and reliability." 509 U.S. at 594-95. The Ninth Circuit terms this inquiry a "reliability" and "fit" test. Murray v. S. Route Mar. SA, 870 F.3d 915, 922 (9th Cir. 2017). Expert testimony is admissible, therefore, "only if it is both relevant and reliable." Kumho Tire Co., Ltd. v. Carmichael, 526 U.S. 137, 141 (1999)

When faced with a challenge to an expert under Daubert, the trial judge acts as a gatekeeper by "examining the full picture of the experts' methodology and preventing shoddy expert testimony and junk science from reaching the jury." Murray, 870 F.3d at 923. Expert testimony is inadmissible as irrelevant without "a valid . . . connection to the pertinent inquiry." Daubert, 509 U.S. at 592. Moreover, expert testimony is inadmissible as unreliable unless its "factual basis, data, principles, methods, or their application" have "'a reliable basis in the knowledge and experience of [the relevant] discipline.'" Kumho Tire Co., Ltd., 526 U.S. at 149 (quoting Daubert, 509 U.S. at 592).

## II. DISCUSSION

### A. Emerson's Experts

BladeRoom challenges opinions from four of Emerson's experts: (1) Phil Isaak, a data center industry expert; (2) Makarand Hastak, a construction expert; (3) William Acorn, a cooling systems expert; and (4) Brian Napper, a damages expert. As to Isaak, Hastak and Acorn, BladeRoom seeks an order prohibiting them from offering opinions that Trade Secrets 1, 2, 4, 5, and 6, or Combination Trade Secrets 4, 5, 8, and 9, are "readily ascertainable." As to Napper, BladeRoom seeks to preclude opinions apportioning and reducing the extent of unjust enrichment damages against Emerson.

#### i. Isaak, Hastak, and Acorn

Trade secrets obtain economic value, and therefore legal protection, because they are unknown to others. See Altavion, Inc. v. Konica Minolta Sys. Lab. Inc., 226 Cal. App. 4th 26, 62 (2005) (citing DVD Copy Contol Ass'n v. Bunner, 116 Cal. App. 4th 241, 251 (2004)). It therefore follows that "[i]nformation . . . generally known or readily ascertainable through proper means by others to whom it has potential economic value" cannot be misappropriated as a trade secret. Restatement (Third) of Unfair Competition § 39 cmt. f (1995); accord Syngenta Crop Protection, Inc. v. Helliker, 138 Cal. App. 4th 1135, 1172 (2006) ("Information that is readily ascertainable by a business competitor derives no independent value from not being generally known."). Thus, "the assertion that a matter is readily ascertainable by proper means remains

Case No.: 5:15-cv-01370-EJD
ORDER RE: MOTIONS TO EXLCUDE EXPERT TESTIMONY
2

available as a defense to a claim of misappropriation." Abba Rubber Co. v. Seaquist, 235 Cal. App. 3d 1, 21 n.9 (1991).

BladeRoom's argument to exclude certain opinions of Isaak, Hastak and Acorn centers on the legal definition of the phrase "readily ascertainable." In general, information is "readily ascertainable" if it can be acquired through some publicly-available source, such as a patent or other published materials, or from an examination of a product on public sale or display. Restatement (Third) of Unfair Competition § 39 cmt. f (1995); see also DVD Copy Control Ass'n, Inc. v. Bunner, 31 Cal. 4th 864, 899 (2003) (Moreno, J. concurring). At the same time, "the accessibility of information . . . is evaluated in light of the difficulty and cost of acquiring the information by proper means." Restatement (Third) of Unfair Competition § 43 cmt. (1995). If acquisition would be "difficult, costly, or time-consuming, the trade secret owner retains protection" against misappropriation. Restatement (Third) of Unfair Competition § 39 cmt. f (1995).

Here, Isaak, Hastak and Acorn have each opined that several of BladeRoom's trade secrets and combination trade secrets are "readily ascertainable" because they can be discovered from publicly-available sources. To do so, however, each opinion must rely in part on the "readily ascertainable" opinions of other experts to complete the analysis. For example, Hastak states in his report that two of the three elements of BladeRoom's Trade Secret 1 are "readily ascertainable" because they can be found in the prior art. For the third element, Hastak notes it is beyond his area of expertise and is addressed by another expert, Acorn, who concludes in his own report that ████████████████████████████████████████████████████████ ████████████████████████████

BladeRoom argues this sort of arrangement is impermissible because it is inconsistent with the legal understanding of what can be "readily ascertainable." Its position boils down to this proposition: ████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████ In other

Case No.: 5:15-cv-01370-EJD
ORDER RE: MOTIONS TO EXLCUDE EXPERT TESTIMONY
3

words, BladeRoom contends that information cannot be sufficiently available in the public domain

This argument is unpersuasive. Framed under <u>Daubert</u>, the opinions of Emerson's experts are not rendered unreliable or of no assistance to the jury merely because they rely on ▮▮▮. <u>See</u> Fed. R. Evid. 703 ("An expert may base an opinion on facts or data in the case that the expert has been made aware of or personally observed."); <u>see also</u> <u>Scott v. Ross</u>, 140 F.3d 1275, 1286 (9th Cir. 1998) (holding that an expert's "citations to his extensive studies and to his collaboration with other academics as the basis for his opinions suffice to merit admission of his testimony"). It is not unusual for an expert to rely on ▮▮▮, particularly when, as here, the foundational expert opinions can be tested through cross-examination.

Furthermore, BladeRoom has not shown that any of Emerson's experts misapplied or misapprehended the legal definition of "readily ascertainable." As described above, information is "reasonably ascertainable" if it can be learned through proper means by a competitor in the industry, or by "the principal person who can obtain economic benefit" from the information. <u>DVD Copy Control Ass'n, Inc.</u>, 31 Cal. 4th at 899 (Moreno, J. concurring). ▮▮▮ Emerson's experts are reflective of this reality, and BladeRoom is free to challenge the weight of their opinions by showing the cost or complexity of such an endeavor would be prohibitive. But in short, the opinions are not contrary to law.

BladeRoom's motion to exclude portions of the opinions of Isaak, Hastak, and Acorn is denied.

### ii. Napper

The prevailing plaintiff in an action for the misappropriation of trade secrets may recover for the "actual loss caused by misappropriation," and may also recover "for the unjust enrichment

Case No.: 5:15-cv-01370-EJD
ORDER RE: MOTIONS TO EXLCUDE EXPERT TESTIMONY
4

caused by misappropriation that is not taken into account in computing damages for actual loss." Cal. Civ. Code § 3426.3(a). "A defendant's unjust enrichment is typically measured by the defendant's profits flowing from the *misappropriation*," not from those profits a defendant would have otherwise earned. Ajaxo Inc. v. E*Trade Fin. Corp., 187 Cal. App. 4th 1295, 1305 (2010) (emphasis added); see also Restatement (Third) of Unfair Competition § 45 cmt. f (1995) ("The traditional form of restitutionary relief in an action for the appropriation of a trade secret is an accounting of the defendant's profits on sales attributable to the use of the trade secret."). Consequently, "[w]here the plaintiff's loss does not correlate directly with the misappropriator's benefit," the calculation of unjust enrichment damages "becomes more complex," and "[t]here is no standard formula to measure it." Ajaxio Inc., 187 Cal. App. 4th at 1305. "The royalty that the plaintiff and defendant would have agreed to for the use of the trade secret made by the defendant may be one measure of the approximate portion of the defendant's profits attributable to the use." Restatement (Third) of Unfair Competition § 45 cmt. f (1995).

As a matter of proof, "[t]he plaintiff has the burden of establishing the defendant's sales," whereas "the defendant has the burden of establishing any portion of the sales not attributable to the trade secret and any expenses to be deducted in determining net profits." Id.

In conjunction with Emerson's burden to apportion its profits, Napper calculated unjust enrichment damages in three ways, two of which are at issue here. The first method is ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

Case No.: 5:15-cv-01370-EJD
ORDER RE: MOTIONS TO EXLCUDE EXPERT TESTIMONY
5

1 ███████████████████████████████████████

2 ████████████

3      Napper's second method was based on █████████████████████████

4 █████████████████████████████████████████████████████████████

5 █████████████████████████████████████████████████████████

6      BladeRoom argues Napper's methods are improper because both lack factual support, and
7 because the first is also contrary to the law of unjust enrichment.  Not so.  ████████████
8 █████████████████████████████████████ the method is consistent with the law of unjust
9 enrichment damages in a trade secret misappropriation case where no direct correlation can be
10 made between the defendant's benefit and the plaintiff's loss.  There is no standard measure to
11 apply (Ajaxio Inc., 187 Cal. App. 4th at 1305), but one recognized possibility entails determining
12 the royalty the plaintiff and the defendant would have agreed to for use of the trade secret.
13 Restatement (Third) of Unfair Competition § 45 cmt. f (1995).  That is the method Napper
14 employed by using ██████████████████████████████████████████████
15 ████████████  While BladeRoom believes Napper's relied on █████████████████████
16 █████████████████████████████████████████████ its position does not change
17 the fact that Napper's opinion is supported by factual information produced in this action showing
18 █████████████████████████████████████ This situation is therefore not one where the
19 opinion is connected to existing data "only by the *ipse dixit* of the expert," or where "there is
20 simply too great an analytical gap between the data and the opinion proffered."  Gen. Elec. Co. v.
21 Joiner, 522 U.S. 136, 146 (1997).  The data Napper relied upon came from BladeRoom, and how
22 Napper's opinion should be weighed in light of his reliance on that data can be explored through
23 cross-examination.  See Daubert, 509 U.S. at 596 ("Vigorous cross-examination, presentation of
24 contrary evidence, and careful instruction on the burden of proof are the traditional and
25 appropriate means of attacking shaky but admissible evidence."); see also Smith v. Ford Motor
26 Co., 636 F.2d 874 (10th Cir. 1980), cert. denied, 450 U.S. 918 (1981) (holding that Rules 703 and
27 705 "place the full burden of exploration of the facts and assumptions underlying the testimony of

an expert witness squarely on the shoulders of opposing counsel's cross-examination").

BladeRoom's argument against Napper's second method is no more persuasive. Relying on Isaak's deposition testimony, BladeRoom concludes that Isaak essentially admitted to ███████████████████████████████████ But as Emerson points out, and as a review of the expert reports confirms, Issak provided the opinion ███████████████ ███████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████ To the extent Isaak's deposition reveals something different than that process, BladeRoom can confront him with the inconsistency during cross-examination. But the possibility that an expert may be impeached is not a reason to exclude an opinion under <u>Daubert</u>. See <u>Alaska Rent-A-Car, Inc. v. Avis Budget Grp., Inc.</u>, 738 F.3d 960, 696 (9th Cir. 2013) (holding that "the judge is supposed to screen the jury from unreliable nonsense opinions, but not exclude opinions merely because they are impeachable").

### B. Facebook's Experts

Facebook has disclosed (1) Alfonso Ortega as its cooling systems expert, (2) Chris Goodier as its expert in modular construction, (3) Isaak as its data center expert, and (4) Carol Ludington as its damages expert. BladeRoom presents three arguments against their opinions: the opinions of Ortega and Goodier were "ghost written" by Keystone Strategy, LLC; the "readily ascertainable" opinions of Ortega, Gooider, and Isaak are unsupported; and there is no evidence to support Ludington's ███████ opinion.

#### i. "Ghost Written" Opinions

Plaintiffs argue that opinions from Ortega and Goodier violate Federal Rule of Civil Procedure 26(a)(2)(B)'s requirement that an expert's written report be "prepared and signed by the witness." According to Plaintiffs, the opinions were "ghost written" by Keystone.

The advisory committee described this portion of Rule 26 as follows:

> Rule 26(a)(2)(B) does not preclude counsel from providing assistance to experts in preparing the reports, and indeed, with experts such as automobile mechanics, this assistance may be

Case No.: 5:15-cv-01370-EJD
ORDER RE: MOTIONS TO EXLCUDE EXPERT TESTIMONY
7

> needed. Nevertheless, the report, which is intended to set forth the substance of the direct examination, should be written in a manner that reflects the testimony to be given by the witness and it must be signed by the witness.

Fed. R. Civ. P. 26 advisory committee's note (1993).

Based on this comment, Rule 26(a)(2)(B) contemplates outside involvement in the preparation of an expert report. Indeed, Federal Rule of Evidence 703 explicitly permits an expert to rely on facts or data provided by others. But at the same time, "the expert must also substantially participate in the preparation of his report." Accentra Inc. v. Staples, Inc., No. CV 07-5862 ABC (RZx), 2010 WL 11459205, at *4 (C.D. Cal. Oct. 7, 2010) (quoting Manning v. Crockett, No. 95 C 3117, 1999 WL 342715, at *3 (N.D. Ill. May 18, 1999)). To that end, "an expert cannot simply 'perus[e] the work product' of someone else and sign the bottom of the report because doing so creates 'very little, if any, evidentiary value' in the expert's testimony." Id. (quoting Weitz Co. v. Lloyd's of London, No. 4:04-CV-90353-TJS, 2007 WL 7131908, at *3 (S.D. Iowa Sept. 28, 2007)).

Having reviewed the reports, the court is unable to classify them as truly "ghost written;" that is, there is no basis to conclude that Ortega and Goodier did not "substantially participate" in the preparation of their reports merely because ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Instead, what occurred here falls within the scope of outside involvement that is tolerated under the rules. See Dura Auto. Sys. of Indiana, Inc. v. CTS Corp., 285 F.3d 609, 612 (7th Cir. 2002) ("An expert witness is permitted to use assistants in formulating his expert opinion, and normally they need not themselves testify.") Instead of seeking exclusion of the reports as "ghost written" by others, BladeRoom could have solicited discovery from the Keystone employees who assisted Facebook's experts in accordance with this court's order permitting a deposition by written questions. See Dura Auto. Sys., 285 F.3d at 613 (observing the "opposing party can depose [an expert's assistants] in order to make sure they performed their tasks competently"). It seems BladeRoom did not do so.

The opinions of Ortega and Goodier will not be excluded as "ghost written."

Case No.: 5:15-cv-01370-EJD
ORDER RE: MOTIONS TO EXLCUDE EXPERT TESTIMONY
8

### ii. Unsupported "Readily Ascertainable" Opinions

BladeRoom's next argument is another challenge to "readily ascertainable" opinions. BladeRoom raises a variation on "ghost writing" by claiming that Ortega, Goodier and Isaak do not know enough "facts or data" to support their opinions because ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ More specifically, BladeRoom argues that because they each ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.

It is true that "an expert must back up his [or her] opinion with specific facts." <u>United States v. Various Slot Machines on Guam</u>, 658 F.2d 697, 700 (9th Cir. 1981). But here, BladeRoom conflates the difference between an opinion that lacks valid factual support, which is excludable, and an opinion that is supported with facts but of which the expert may have limited knowledge. The latter is not excludable because the issue it presents is one of weight and credibility, not admissibility. See <u>Alaska Rent-A-Car, Inc.</u>, 738 F.3d at 696.

Because the "readily ascertainable" opinions of Facebook's experts are supported with facts, BladeRoom's argument fails.

### iii. Ludington

In her report on damages, Ludington ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.

---

[1] "BRG" is the acronym for BladeRoom Group Limited.

Ludington's ███ cannot be accepted as a reliable way to measure BladeRoom's lost profits in this action. Rather strikingly, Ludington cites no facts showing that ███ ███ ███ In fact, the record evidence is to the contrary: ███ ███ As such, Ludington's assumption that ███ ███ is entirely speculative and "pose[s] a great danger of misleading a jury." McGlinchy v. Shell Chem. Co., 845 F.2d 802, 807 (9th Cir. 1988).

Accordingly, the court finds that Ludington's ███ will not assist the jury because it is too speculative to serve as a reliable method of assessing BladeRoom's lost profits. See Daubert, 509 U.S. at 592-93. It will be excluded on that basis.

### C. BladeRoom's Experts

BladeRoom intends to rely on the opinions of (1) Gerry Branningan, a cooling systems expert; (2) John Quale, an architectural design expert; (3) Michael Wagner, a damages expert; and (4) Mike Andrea, a data center industry expert. Facebook and Emerson argue the opinions of these experts should be excluded on various grounds.

#### i. Quale, Brannigan and Andrea

"An expert witness's '[t]estimony is admissible under Rule 702 if [1] the subject matter at issue is beyond the common knowledge of the average layman, [2] the witness has sufficient expertise, and [3] the state of the pertinent art or scientific knowledge permits the assertion of a reasonable opinion.'" United States v. Morales, 108 F.3d 1031, 1038 (9th Cir. 1997) (quoting United States v. Winters, 729 F.2d 602, 605 (9th Cir. 1984)). Expert opinion may be excluded if its subject matter is not outside "the expected knowledge of the average juror." United States v. Cazares, 788 F.3d 956, 977 (9th Cir. 2015).

Additionally, "an expert witness cannot give an opinion as to her legal conclusion, i.e., an

opinion on an ultimate issue of law." Mukhtar v. Cal. State Univ., Hayward, 299 F.3d 1053, 1066 n. 10 (9th Cir. 2002).

### a. Brannigan

Emerson identifies opinions from Brannigan's expert reports which are problematic under these standards. Brannigan is a building services consulting engineer who is ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ With that expertise, he is qualified to review ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ And from that comparison, he can validly opine whether or not ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ But Brannigan's opinion that ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ is an unsupported factual conclusion outside of his expertise. Brannigan is not an expert in the structure of businesses and did not ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ His factual contention on use is excluded.

Brannigan's report contains additional opinions that are inconsistent with Rule 702, including that ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ A jury is capable of examining the evidence and reaching its own decision on each of these facts because they are not beyond the common knowledge of a layperson. These opinions are asle excluded.

One challenged opinion is not problematic. Brannigan opines on ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ His statement that ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ is a

weight issue, not one affecting admissibility.

### b. Quale

Several of Quale's opinions fail to withstand scrutiny under Rule 702. Quale is not qualified to ███████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████ And like Brannigan, Quale did not ██████████████████████████████████████████████████ ███████████████████████████████████████████████████████████████████ Nor does a jury require expert testimony to determine if Emerson ████████████████ ████████████████████████████████████████████████████████████ ██████████████████████████████████ These opinions are excluded.

### c. Andrea

Andrea's report also contains an inadmissible statement. As a data center industry expert, Andrea can opine on ███████████████████████████████████████████████████████ █████████████████████████████ Andrea is not qualified, however, to offer an opinion on ██ ████████████████████████████████████████████████████████████████████████ ██████████████████████████ That opinion will be excluded.

As to Andrea's opinion concerning ███████████████████████████████, the court cannot determine on the present record whether Andrea is qualified to testify on that subject. BladeRoom must therefore establish Andrea's qualification before he provides an opinion about ████████████████████ and the court may afford defendants an opportunity to take the witnesses on voir dire.

Emerson also challenges Andrea's analysis of ████████████████████████████ ██████████████████████████████████████████████████████████████████ For its part, Facebook takes issue with Andrea's decision to ████████████████████████ ██████████████████████ These are weight and credibility arguments that do not require exclusion.

Case No.: 5:15-cv-01370-EJD
ORDER RE: MOTIONS TO EXLCUDE EXPERT TESTIMONY
12

### ii. Wagner

#### a. Failure to Apportion and Causation

Facebook and Emerson argue that Wagner's testimony must be excluded in its entirety because he failed to apportion his damages calculation ███████████████████████████████████████████████████████████████ Emerson additionally argues that Wagner failed to establish a causative link between any alleged wrongdoing and his estimation of damages. These contentions expose potential weaknesses and limitations to Wagner's opinion. But at this point, complete exclusion of Wagner's testimony is unwarranted under Daubert.

As a preface to his calculation of damages, Wagner includes in his report the following statements at paragraphs 148 and 149:



As to breach of contract, Wagner explains at paragraph 156 the following:



Case No.: 5:15-cv-01370-EJD
ORDER RE: MOTIONS TO EXLCUDE EXPERT TESTIMONY
13

It is true that under CUTSA, damages claimed for actual loss or unjust enrichment must be caused by the misappropriation alleged. Cal. Civ. Code § 3426.3. This portion of CUTSA does not require, however, that an expert assign damages amongst the trade secrets for his or her opinion to be admissible. Nor must an expert provide separate estimations of misappropriation and breach of contract damages for an opinion to assist the jury. Wagner's opinion that the misappropriation and breach claims ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ is consistent with the applicable law. See Ajaxo Inc. v. E*Trade Grp., Inc., 135 Cal. App. 4th 21, 55-57 (2006); see also Sargon Enters., Inc. v. Univ. of S. Cal., 55 Cal. 4th 747, 773-74 (2012).

Nor must a damages expert establish causation before his or her opinion becomes admissible. "[I]t is perfectly permissible for an expert to assume liability (of which causation is an element) and simply focus on the issue of damages." Robroy Indus.-Texas, LLC v. Thomas & Betts Corp., No. 2:15-CV-512-WCB, 2017 WL 1319553, at *4 (E.D. Tex. Apr. 10, 2017).

Thus, Wagner's opinion is not excludable based on arguments of lack of apportionment or failure to establish causation. But this determination comes with a cautionary statement. In his report, Wagner relies on a chain of assumptions to connect his damages opinion to the alleged misconduct. Another district court warned a similarly-situated plaintiff that "if it fails to prove at trial any of the hypotheses upon which [the damages expert] relies, including use, his expert testimony will be stricken as irrelevant." 02 Micro Intern. Ltd. v. Monolithic Power Sys., Inc., 399 F. Supp. 2d 1064, 1076 (N.D. Cal. 2005). The court provides the same warning to BladeRoom here.[2]

### b. Cost-Savings Opinion

#### 1. Facebook

Facebook challenges the portion of Wagner's unjust enrichment opinion ▓▓▓▓▓▓▓

---

[2] Facebook additionally argues that Wagner failed to apportion between non-secret material and the value of Facebook's existing data center technology. The court is not persuaded that Wagner's opinion should be excluded on either basis. See Restatement (Third) of Unfair Competition § 45 cmts. b, f (1995) (explaining that the "plaintiff is generally entitled to recover any proven pecuniary loss attributable to the appropriation of the trade secret," and that the defendant must prove sales not attributable to trade secrets).

Case No.: 5:15-cv-01370-EJD
ORDER RE: MOTIONS TO EXLCUDE EXPERT TESTIMONY
14

1   ████████████████ on many grounds, but only one needs discussion.  According to Facebook,

2   this opinion must be excluded as unhelpful because Wagner ████████████████████████

3   ████████████████████████████████.  The court agrees.

4   BladeRoom's characterization of Wagner's method as ████████████████████████

5   ████████████████████████████████████████████████████████████████████████████

6   ████████████████████████████████.  Wagner did nothing more than ████████████

7   ████████████████████████████████████████████████████████████████

8   After doing so, ████████████████████████████████████████████████████████████

9   ████████████  The jury is capable of undertaking this same comparison and calculation without

10  Wagner's assistance.  Wagner's costs-savings opinion as to Facebook is just an expert's

11  commentary on the credibility or the weight of the evidence, and will be excluded for that reason.

### 2. Emerson

13  Emerson argues that Wagner's opinion regarding ████████████████████████████

14  ████████████████████████████████████████████████████████████████████████

15  ████████████████████████████████████████████████████.  As Emerson puts it,

16  ████████████████████████████████████████████████████████████████████████

17  ████████████████████████████████████████  BladeRoom points out,

18  however, that the testimony Emerson relies on is anything but conclusive, since it appears █

19  ████████████████████████████████████████████████████████

20  ████████████████████████████████████████████████████

21  Emerson's argument is therefore rejected.

### 3. Time-Savings Opinion

23  Facebook argues that Wagner's calculation of its time savings is inadmissible for reasons

24  similar to the cost-savings opinion.  Neither reason requires exclusion of this opinion.  In his

25  report, Wagner explains ████████████████████████████████████████████

26  ████████████████████████████████████████████████████████

27  ████████████████████████████████████  To the extent Facebook believes other data is a more

Case No.: 5:15-cv-01370-EJD
ORDER RE: MOTIONS TO EXLCUDE EXPERT TESTIMONY

reliable metric, it may address that data with Wagner during cross-examination.

### c. Other Damages Opinions

Facebook and Emerson challenge several other aspects of Wagner's damages opinion, including his calculations of future lost profits and saved development expenses. The court has reviewed these arguments in conjunction with Wagner's report and finds that none render the opinion inadmissible. It may be, as the court has warned, that the chain of assumptions upon which Wagner relies is not borne out by the evidence or supported by the jury's verdict. If that happens, the admissibility of Wagner's opinions may need to be revisited through another mechanism.

### iii. Reply Reports

Facebook and Emerson move to exclude "reply" expert reports. In the rulings on motions in limine, the court clarified that testifying experts may respond to rebuttal opinions. And since the experts' written reports will not be admitted into evidence or submitted to the jury, the court understands this issue is moot.

## III. ORDER

Consistent with the foregoing:

1. BladeRoom's motion to exclude Emerson's experts (Dkt. No. 521) is DENIED;

2. BladeRoom's motion to exclude Facebook's experts (Dkt. No. 524) is GRANTED IN PART and DENIED IN PART;

3. Emerson's motion to exclude BladeRoom's experts (Dkt. No. 527) is GRANTED IN PART, DENIED IN PART, and DEFERRED IN PART as to Andrea; and

4. Facebook's motion to exclude BladeRoom's experts (Dkt. No. 530) is GRANTED IN PART and DENIED IN PART.

**IT IS SO ORDERED.**

Dated: March 30, 2018

EDWARD J. DAVILA
United States District Judge

Case No.: 5:15-cv-01370-EJD
ORDER RE: MOTIONS TO EXLCUDE EXPERT TESTIMONY
16