UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

BLADEROOM GROUP LIMITED, et al.,

Plaintiffs,

v.

EMERSON ELECTRIC CO., et al.,

Defendants.

Case No.  5:15-cv-01370-EJD

**ORDER AFTER JURY TRIAL (DAY 11)**

### I.    OBJECTIONS TO EVIDENCE

Plaintiffs objected to Emerson's use of images from the current version of Roeslein's website during the examination of Eric Wilcox.  Plaintiffs also objected to Emerson's proposed introduction of a spreadsheet during Wilcox's testimony.  Emerson did not proceed with this evidence, however.  Accordingly, the court declines to rule on these objections since, as of now, they are moot.

### II.    WAIVER OF ATTORNEY-CLIENT PRIVILEGE

Plaintiffs argue that Emerson implicitly waived the attorney-client privilege during Wilcox's testimony on April 24, 2018.

The testimony relevant to this issue is as follows:

| | |
|---|---|
| Mr. Holthouser: | What, in your experience with Emerson, is the respect component of Emerson culture with respect to intellectual property? |
| Mr. Reese: | Your Honor, lacks foundation. |
| The Court: | Is the question - I'm not sure - |
| Mr. Holthouser: | The question is based upon his experience at |

|   |   |
|---|---|
| | the time with Emerson and his culture at Emerson and how they respect other people's intellectual property. |
| The Court: | That's different than that question. Do you understand this question. |
| Mr. Wilcox: | I do. |
| The Court: | You can answer that question. |
| Mr. Holthouser: | I apologize for not being clear. Do you understand the question? |
| Mr. Wilcox: | I do. |
| Mr. Holthouser: | And can you answer that? |
| Mr. Wilcox: | I think there's a heightened awareness and a good solid legal team, which is kind of funny for an engineer to say, but there's a lot of focus on making sure that we're a very ethical company. |
| | That's something that I experienced when I was a customer of Emerson as well at my career at Dell. |
| | It was one of the things, I think, that is associated with the Emerson culture. |
| Mr. Holthouser: | So when you receive information that relates to competitors, is that something that happens quite often in your experience? |
| Mr. Wilcox: | We - there's mention of competitors. I don't know about "quite often." That's qualitative. |
| | I'm working on a project right now for a cable landing station. I know who my competitor is. The customer often talks about that and says kind of as an enticement to make sure that you're performing well and you know you're not the only person who is going to be bidding on this job. |
| | However, if something that is shared that I wouldn't want shared of my company, we certainly take action with that and share it with legal and ask for instruction, and if brought up in a meeting, we would direct it at the time that it's inappropriate to share. |

Tr., Vol. 10, at 2150:4-2151:17.

Case No.: 5:15-cv-01370-EJD
ORDER AFTER JURY TRIAL (DAY 11)

2

Plaintiffs contend this portion of Wilcox's "protect and respect" testimony "injects" into the minds of the jurors certain logic about Wilcox's conduct with respect to his exposure to Plaintiffs' confidential information: that if Wilcox did not share anything about Plaintiffs with the Emerson legal team, then Wilcox must not have been exposed to Plaintiffs' confidential information. And based on that contention, Plaintiffs argue that Wilcox's communications with counsel, or the lack of those communications, have been placed at issue and permit Plaintiffs access to documents withheld by Emerson on privilege grounds in order to confirm or deny whether the implication is true.

Issues concerning the attorney-client privilege in a diversity case like this one are governed by state law. KL Grp. v. Case, Kay & Lynch, 829 F.2d 909, 918 (9th Cir. 1987) (citing Fed. R. Evid. 501). Generally, "[t]he privilege authorizes a client to refuse to disclose, and to prevent others from disclosing, confidential communications between attorney and client." Mitchell v. Super. Ct., 37 Cal. 3d 591, 599 (1985). Its purpose "is to safeguard the confidential relationship between clients and their attorneys so as to promote full open discussion of the facts and tactics surrounding individual legal matters." Chicago Title Ins. Co. v. Super. Ct., 174 Cal App. 3d 1142, 1149 (1986).

But "[t]he privilege which protects attorney-client communications may not be used both as a sword and a shield." Chevron Corp. v. Pennzoil Co., 974 F.2d 1156, 1162 (9th Cir. 1992). Consequently, an implied waiver of the attorney-client privilege "occurs where the plaintiff has placed in issue a communication which goes to the heart of the claim in controversy." Chicago Title Ins. Co., 174 Cal. App 3d at 1149; accord Chevron Corp., 974 F.2d at 1162 ("Where a party raises a claim which in fairness requires disclosure of the protected communication, the privilege may be implicitly waived."); Rockwell Int'l Corp. v. Super. Ct., 26 Cal. App. 4th 1255, 1268 (1994) ("The *in issue* doctrine creates an implied waiver of the privilege *only* when the client tenders an issue involving the substance or content of a protected communication, *not* where the privileged communication simply represents one of several forms of indirect evidence in a particular case.").

Case No.: 5:15-cv-01370-EJD
ORDER AFTER JURY TRIAL (DAY 11)

3

United States District Court
Northern District of California

Wilcox's testimony did not place in issue a legal communication, or the absence of a legal communication, going to the "heart" of any claim. This case is about whether or not Emerson misappropriated Plaintiffs' trade secrets or improperly disclosed Plaintiffs' confidential information. Counsel's questions and Wilcox's responses made no reference to Plaintiffs. Instead, counsel asked Wilcox about general practices at Emerson - termed the "Emerson culture" by Wilcox - and his experience working there. If anything, Wilcox's testimony simply provides introductory information about Emerson and his impressions as an employee. This case is not about those peripheral issues, even if they have some relevance to Plaintiffs' claims or to Emerson's defense. See United States v. Amlani, 169 F.3d 1189, 1195 (9th Cir. 1999) (holding that privileged communications do not become discoverable simply because they are related to issues in litigation).

Moreover, the court is not persuaded that Wilcox's testimony left the jury with the impression Plaintiffs described. The questions and responses as recited above represent a very small part of a witness examination that took place over two full court days, covering several topics. Emerson did not follow-up on the general-practice testimony by asking Wilcox, for example, whether or not he ever approached the Emerson legal team with information about Plaintiffs. Under these circumstances, it is unlikely this or any jury would unduly emphasize the non-specific testimony about company practice over testimony directed at the claims asserted in this case. It would be improper, and indeed contrary to the governing law, to find an implicit waiver based on an argument composed entirely of speculation.

In sum, "fairness" does not require the disclosure of protected communications here (see Chevron Corp., 974 F.2d at 1162), and the cases cited by Plaintiffs during argument, all of which involve parties placing attorney-client communications directly at issue as part of a claim or defense, are distinguishable. They do not compel a different conclusion.

Plaintiffs' request to find a waiver of the attorney-client privilege is DENIED. Since this issue has been resolved against waiver, there is no need for Wilcox to testify further given Plaintiffs' representations at the close of proceedings on April 25, 2018. Wilcox is therefore

released as a trial witness.

**IT IS SO ORDERED.**

Dated:  April 26, 2018

_____
EDWARD J. DAVILA
United States District Judge