UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| BLADEROOM GROUP LIMITED, et al., <br> Plaintiffs, <br> v. <br> EMERSON ELECTRIC CO., et al., <br> Defendants. | Case No. 5:15-cv-01370-EJD <br><br> **ORDER RE: OBJECTIONS TO REQUESTS FOR ADMISSION 73 THOUGH 78** |

Emerson objects to Plaintiffs' proposal to read to the jury the responses to Requests for Admission 73 through 78 on that grounds they are irrelevant and prejudicial. Collectively, these RFAs sought to establish whether the data center at Lulea 2 has a software control system that regulates particular aspects of the cooling system.

The objection has partial merit.

I. **BACKGROUND**

A. **Summary Judgment and Related Rulings**

In its summary judgment motion, Facebook asserted that Plaintiffs failed to describe Trade Secret 9.2 with requisite particularity in its disclosures and discovery responses. "Trade Secret 9.2 is a subset of Trade Secret 9, which generally claims the design of software for use in an atmospheric control system." Dkt. No. 493. The court accepted Facebook's argument, ruling that two particular phrases of Trade Secret 9.2 were inadequately defined and "are so inexact that it is impossible to determine what is claimed as a trade secret." Id. On that basis, the court granted Facebook's motion "as to Trade Secret 9.2 and to any combination trade secret incorporating Trade Secret 9." Id.

Case No.: 5:15-cv-01370-EJD
ORDER RE: OBJECTIONS TO REQUESTS FOR ADMISSION 73 THOUGH 78

1

The parties subsequently disputed the impact of the summary judgment ruling, and the court issued another order clarifying the issue. Dkt. No. 512. The court explained that "Plaintiffs cannot maintain a breach of contract claim based on information underlying Trade Secret 9.2" for the same reason Plaintiffs could not pursue a misappropriation claim based on that trade secret; since Trade Secret 9.2 had not been properly disclosed, a jury could not understand whether it was used as part of a breach of the non-disclosure agreement. Id.

The court also explained, however, that the summary judgment decision "does not . . . prohibit Plaintiffs from presenting a breach of contract theory based on the extra-contractual disclosure of other elements of Trade Secret 9." Id.

### B. Paul Rogers' Trial Testimony

#### i. Direct Examination

Paul Rogers testified about a meeting between Plaintiffs and Emerson that occurred in June, 2012. He described the meeting as a "multi-day agenda" during which the participants had toured an operating BladeRoom data center. Tr., Vol. 3, at 582:8-10. Rogers also described a subsequent presentation:

> And then we went back to our head office in our board room and I prepared a presentation, a master presentation, and we had a lot of documents collected that I wanted to take and show them where we had come as a company since we dealt with some different people the previous year.

Id. at 582:11-15.

One of those collected documents was a "whole pile of . . . standard operating procedures" which Rogers described as follows:

> 407-0001. And it goes on into a whole schedule of different operating procedures.
>
> Then 400-001 is the description of how the BladeRoom functions, how it all works with all of the details, what sits behind the software.
>
> So the software is over here and what intellect has gone into making the strategies for them how to write the code.

Id. at 583:4-16.

Case No.: 5:15-cv-01370-EJD
ORDER RE: OBJECTIONS TO REQUESTS FOR ADMISSION 73 THOUGH 78

2

Rogers was then asked whether any of the documents he described were shared with Emerson during the June, 2012 meeting. The relevant questions and answers are as follows:

> Mr. Reese: And do you recall if any of the documents that I handed to you were shared with Emerson during the June 2012 meeting?
>
> Mr. Rogers: Yes, I remember exactly. Yeah. Not exactly which pages, but I ran that presentation. I ran that day, and I ran the presentation. I had Jonathan Brindley and Joshua Lee with me, and we - I handed them documents, we handed out documents, and we turned through these documents . . . .
>
> Mr. Reese: So I just want to make sure it's clear in the written record, trial exhibits 379 to 384, 387 to 388, 390 to 391, and 394 to 407, it is your testimony that all of those documents were shared with Emerson during the June 2012 meetings?
>
> Mr. Rogers: I went through all of the documents. I can't say open every page.

Id. at 585:13-586:13.

### C. Cross-Examination

Later, Rogers was questioned during cross-examination about Plaintiffs' air handling technology. Rogers testified as follows, in relevant part:

> Mr. Telscher: And we've got different zones, and if you're in different temperatures, what we learned from the public disclosure is that according to what you think is the best approach, we want to have our software guide the internal air that we're putting on these data centers to those tight lines, correct?
>
> Mr. Rogers: That's correct.
>
> Mr. Telscher: All right. Now, just to be clear, the control systems that take that, that air from the outside and then they condition it to get it in a nice shape for the servers, there are software and sensors that do that right?
>
> Mr. Rogers: Well, no. The software is the end bit of maps that ends up helping you to change physical things, to move and open and close and adjust in order to get the condition that you need.
>
> Mr. Telscher: And there's no allegations in this case that you have ever given Emerson or Facebook your software,

right?

Mr. Rogers: That's correct.

Tr., Vol. 4, at 895:2-19.

## II. LEGAL STANDARD

Under Federal Rule of Evidence 401, evidence is relevant if: "(a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action."

Under Federal Rule of Evidence 403, relevant evidence can be excluded "if its probative value is substantially outweighed by a danger of ... confusing the issues," or if it misleads the jury, causes undue delay, or wastes time.

## III. DISCUSSION

### A. RFA 78

RFA 78 requested the responding party admit that Lulea 2 has a software control system that is programmed with embodiments taken from Trade Secret 9.2. In fact, the embodiments referenced in RFA 78 are described using the same two inexact phrases the court found were incapable of sustaining a trade secret misappropriation claim in its summary judgment order. These are the same two phrases the court subsequently found incapable of sustaining a breach of contract claim in the order clarifying the impact of the summary judgment order.

Accordingly, the court finds the response to RFA 78 is irrelevant to any claim in this action, and that any possible probative value is substantially outweighed by the potential for prejudice and confusion. Emerson's objection to RFA 78 is SUSTAINED, and Plaintiffs may not read it at trial.

### B. RFAs 73 to 77

RFAs 73 through 78 do not incorporate the same problematic phrasing from Trade Secret 9.2 and cannot be excluded for the same reason as RFA 78.

Instead, these RFAs requested the responding party admit that Lulea 2 has a software control system that controls particular functions, such as the amount of outside air allowed into the

data center, the fan speed of the air handling unit, the settings for the evaporative humidifier, and the bypass damper position.

In light of Rogers' testimony during direct examination, RFAs 73 to 77 are not excludable as irrelevant under Rule 401 or more prejudicial than probative under Rule 403. As indicated above, Rogers testified that the "whole pile" of BladeRoom operating procedures was shared with Emerson, including information about "how it all works with all of the details," and "what sits behind the software." Rogers also stated he "went through all of the documents" with Emerson. Though Rogers could not recall the particular pages he went through, the issue of whether or not Rogers shared the functionalities referenced in the RFAs is an issue of fact for the jury to decide.

Rogers' statement he did not provide the actual software with Emerson is of no moment to the analysis. While that testimony may prohibit Plaintiffs from pursuing a breach of contract based on an alleged disclosure of the actual software, it does not prohibit Plaintiffs from pursuing a breach of contract based on the functionality of that software.

For these reasons, the objection to RFAs 73 to 77 is OVERRULED.

**IT IS SO ORDERED.**

Dated: April 27, 2018

EDWARD J. DAVILA
United States District Judge

Case No.: 5:15-cv-01370-EJD
ORDER RE: OBJECTIONS TO REQUESTS FOR ADMISSION 73 THOUGH 78
5