UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| BLADEROOM GROUP LIMITED, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>EMERSON ELECTRIC CO., et al.,<br><br>Defendants. | Case No. 5:15-cv-01370-EJD<br><br>**ORDER DENYING DEFENDANTS' MOTION TO STRIKE**<br><br>Re: Dkt. No. 788 |

Emerson moves to strike the damages of opinions of Plaintiffs' expert, Michael Wagner, as based on unsupported factual assumptions. Dkt. No. 788. This motion will be denied.

**I.     LEGAL STANDARD**

The assumptions underlying an expert's opinion must be supported by specific facts. See United States v. Various Slot Machs. on Guam, 658 F.2d 697, 700 (9th Cir. 1981); see also 02 Micro Intern. Ltd. v. Monolithic Power Sys., Inc., 399 F. Supp. 2d 1064, 1076-77 (N.D. Cal. 2005). Without such supporting facts, an expert's opinion is not helpful to the jury and can be excluded. See Fed. R. Evid. 702(a).

**II.    DISCUSSION**

A plaintiff must prove three elements to sustain a claim for misappropriation of trade secrets under CUTSA: "(1) the plaintiff owned a trade secret, (2) the defendant acquired, disclosed, or used the plaintiff's trade secret through improper means, and (3) the defendant's actions damaged the plaintiff." Cytodyn, Inc. v. Amerimmune Pharms., Inc., 160 Cal. App. 4th 288, 297 (2008). The standard elements a plaintiff must satisfy to prove breach of contract are "'(1) the contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's

Case No.: 5:15-cv-01370-EJD
ORDER DENYING DEFENDANTS' MOTION TO STRIKE

1

breach, and (4) damage to plaintiff therefrom.'" Wall St. Network, Ltd. v. New York Times Co., 164 Cal. App. 4th 1171, 1178 (2008) (quoting Regan Roofing Co. v. Super. Ct., 24 Cal. App. 4th 425, 434-35 (1994)).

The third element of trade secret misappropriation and the fourth element of breach of contract, both of which require evidence that the defendant's conduct caused any purported damages, are at issue. To that end, Emerson argues Plaintiffs failed to present sufficient evidence to support the causation assumptions on which Wagner's lost profits and unjust enrichment opinions rest. In essence, Emerson believes it is appropriate for the court to determine the issue of causation as a matter of law for these categories of damages because undisputed evidence shows that Plaintiffs cannot meet the applicable standard. See Kurinj v. Hanna & Morton, 55 Cal. App. 4th 853, 864 (1997) ("The issue of causation may be decided as a question of law only if, under undisputed facts, there is no room for a reasonable difference of opinion.").

Because the relevant evidence of causation is not undisputed, the court must decline Emerson's motion.

### A. Authority Governing Damages Causation

"Determining whether a defendant's misconduct was the cause in fact of a plaintiff's injury involves essentially the same inquiry in both contract and tort cases." Tribeca Cos., LLC v. First Am. Title Ins. Co., 239 Cal. App. 4th 1088, 1103 (2015).

"'The test for causation in a breach of contract . . . action is whether the breach was a substantial factor in causing the damages.'" Id. (quoting US Ecology v. California, 129 Cal. App. 4th 887, 909 (2005)). "Similarly, in tort cases, 'California has definitively adopted the substantial factor test.'" Id. (quoting Rutherford v. Owens-Illinois, Inc., 16 Cal. 4th 953, 968-69 (1997)). Under that test, "'a cause in fact is something that is a substantial factor in bringing about the injury.'" Id. (quoting Rutherford, 16 Cal.4th at 968-69).

"The term 'substantial factor' has not been judicially defined with specificity, and indeed it has been observed that it is 'neither possible nor desirable to reduce it to any lower terms.'" Rutherford, 16 Cal. 4th at 696. The California Supreme Court has suggested, however, "[u]ndue

Case No.: 5:15-cv-01370-EJD
ORDER DENYING DEFENDANTS' MOTION TO STRIKE
2

emphasis should not be placed on the term 'substantial.'" Id. But at the same time, "a force which plays only an 'infinitesimal' or 'theoretical' part in bringing about injury, damages or loss is not a substantial factor." Id.

### B. Application

#### i. Lulea 2 Proposal

Emerson argues its alleged conduct could not have cost Plaintiffs the contract to design and construct Facebook's Lulea 2 data center because undisputed evidence shows that Plaintiffs ultimately declined to offer a "full solution" proposal and took themselves out of consideration. Though Emerson recognizes that Plaintiffs submitted a proposal for Lulea 2 in July, 2012, Emerson states it "was not in response to a request for proposal and instead was part of an informal cost study Facebook's Tin Tse was conducting as part of his research and development." Emerson contends that when Facebook's Marco Magarelli actually asked Plaintiffs for a proposal that would accommodate Sweden's arctic conditions, Plaintiffs "elected to advise Facebook that [Plaintiffs] would not submit a proposal because [Plaintiffs] did not have a 'full solution' for those arctic conditions." On that basis, Emerson surmises that Plaintiffs' "August 2013 decision to not bid on Lulea 2 severed any causal link between anything Emerson did and [Plaintiffs'] non-receipt of a Lulea 2 contract."

The trial record does not support Emerson's characterization of the evidence as undisputed. As an initial matter, Trial Exhibit 1457 does not unequivocally establish that the proposal Plaintiffs submitted to Facebook in July, 2012, was something other than a "full solution" proposal for the design and construction of Lulea 2. Though Facebook's Tse internally characterized the proposal as "an extension" of a research and development project to other Facebook employees, Plaintiffs' Barnaby Smith did not characterize it that way in his initiating email. To the contrary, Smith described the document as "the proposed design to meet the full 30MW requirement for 4 No. 7 data halls, a technical specification, commercials and an outline programme for how we will deliver the requirement in a fast, scalable way." Smith also testified that he sent the email at Trial Exhibit 1457 with a "full proposal for the data center" after

Case No.: 5:15-cv-01370-EJD
ORDER DENYING DEFENDANTS' MOTION TO STRIKE
3

Facebook asked Plaintiffs to submit a proposal for Lulea 2 following the meeting in the United Kingdom in June, 2012. Tr., 1117:20-1118:8; 1193:1-13.

Nor does the admitted evidence establish that Facebook requested an additional proposal in August, 2013, or that Plaintiffs declined that request. Reviewing his email dated August 9, 2013, at Trial Exhibit 1469, Facebook's Magarelli testified he was "pretty confident" he was not asking Plaintiffs for another Lulea 2 proposal on that date, but was asking for "customization of their design to meet our requirements" for Lulea 2. Id. at 2712:19-2713:2. In addition, Plaintiffs' Smith testified that Plaintiffs did not decline a request for proposal in August, 2013, due to "artic conditions." Id. at 1235:25-1236:13. Smith stated Plaintiffs had designed around those conditions, but were waiting for further detail from Facebook on the Lulea 2 project. Id. at 1236:7-1237:17.

As such, there is evidence in the record upon which a reasonable jury could find that Plaintiffs did, in fact, submit a proposal for the design and construction of Lulea 2 to Facebook. To that extent, Wagner's lost profits and unjust enrichment opinions are not inadmissible merely because those opinions are based on the assumption that Plaintiffs submitted a proposal for Lulea 2.

### ii. Prime Contractor Role

Alternatively, Emerson argues that undisputed evidence proves "that Emerson was ready, willing and able to serve as prime contractor even if Facebook hired someone else to build the data hall" at Lulea 2, and that Plaintiffs were not able to serve as the prime contractor but were only interested in designing and constructing the data hall. Emerson contends that it would have been selected for that role since it was the only bidder for that work, and that Wagner failed to account for that fact when calculating his unjust enrichment opinion.

But again, the evidence on this issue is not undisputed. As Emerson points out, Facebook's Tse testified that Emerson was the only company being considered for "everything else" - the portion of Lulea 2 other than the data hall. Id. at 1527:22-1529:8. Tse also testified, however, that Emerson had not built any modular data centers as of June, 2012, and did not offer a

Case No.: 5:15-cv-01370-EJD
ORDER DENYING DEFENDANTS' MOTION TO STRIKE
4

1  modular product, but that a modular solution was one of the design requirements for the Lulea 2
2  data center.  Id. at 1401:6-12; 1442:8-11; 1502:7-1503:24.  Moreover, Emerson's Pouchet testified
3  that Facebook would not award the Lulea 2 project to Emerson unless it provided the design that
4  Facebook wanted.  Id. at 1707:20-1708:20.

A reasonable jury could therefore find that Emerson's alleged misappropriation was a "substantial factor" in obtaining any role in the design and construction of Lulea 2, including as prime contractor, because Facebook required a modular solution.  Wagner's unjust enrichment opinion is therefore not inadmissible for relying on this assumption without apportioning for "landing Facebook as client in the prime contractor role, without the data hall."

### III.  ORDER

Emerson's Motion to Strike (Dkt. No. 788) is DENIED.  The hearing on this motion scheduled for May 2, 2018, is VACATED.

**IT IS SO ORDERED.**

Dated:  May 1, 2018

EDWARD J. DAVILA
United States District Judge

Case No.: 5:15-cv-01370-EJD
ORDER DENYING DEFENDANTS' MOTION TO STRIKE
5