1   Stephanie P. Skaff (183119)
      sskaff@fbm.com
2   Jeffrey M. Fisher (155284)
      jfisher@fbm.com
3   Eugene Y. Mar (227071)
      emar@fbm.com
4   Erik C. Olson (260452)
      eolson@fbm.com
5   Alex Reese (280530)
      areese@fbm.com
6   Julia F. Kropp (298363)
      jkropp@fbm.com
7   FARELLA BRAUN + MARTEL LLP
    235 Montgomery Street, 17th Floor
8   San Francisco, CA  94104
    Telephone:  (415) 954-4400
9   Facsimile:  (415) 954-4480

10  Attorneys for Plaintiffs
    BLADEROOM GROUP LIMITED AND
11  BRIPCO (UK) LIMITED

    PROCOPIO, CORY, HARGREAVES
    & SAVITCH LLP
    ROBERT H. SLOSS
    (robert.sloss@procopio.com)
    MELINDA M. MORTON
    (mindy.morton@procopio.com)
    1020 Marsh Road, Suite 200
    Menlo Park, California 94025
    Telephone: (650) 645-9000
    Facsimile: (650) 687-8320

    Attorneys for Defendants
    EMERSON ELECTRIC CO., EMERSON
    NETWORK POWER SOLUTIONS, INC.
      AND LIEBERT CORPORATION

12

13                UNITED STATES DISTRICT COURT

14              NORTHERN DISTRICT OF CALIFORNIA

15                     SAN JOSE DIVISION

16

17  BLADEROOM GROUP LIMITED, et al.,       Case No.  15-cv-01370 EJD

18              Plaintiffs,                 **PARTIES' [PROPOSED] JURY
                                            INSTRUCTIONS**
19          v.
                                            Judge:  Hon. Edward J. Davila
20  FACEBOOK, INC. EMERSON ELECTRIC        Courtroom:  4, 5th Floor
    CO., EMERSON NETWORK POWER
21  SOLUTIONS, INC. and LIEBERT            Trial Date:  April 3, 2018
    CORPORATION,
22
                Defendants.
23

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

DUTY OF THE JURY (COURT READS AND PROVIDES WRITTEN INSTRUCTIONS AT END OF CASE) ................................................. 3

BURDEN OF PROOF – PREPONDERANCE OF THE EVIDENCE ................................. 4

BURDEN OF PROOF – CLEAR AND CONVINCING EVIDENCE ................................ 5

WHAT IS EVIDENCE ........................................................................................................ 6

WHAT IS NOT EVIDENCE .............................................................................................. 7

EVIDENCE FOR LIMITED PURPOSE ............................................................................ 8

DIRECT AND CIRCUMSTANTIAL EVIDENCE ........................................................... 9

RULING ON OBJECTIONS ............................................................................................ 10

CREDIBILITY OF WITNESSES .................................................................................... 11

PUBLICITY DURING TRIAL ........................................................................................ 13

TAKING NOTES ............................................................................................................. 14

OUTLINE OF TRIAL ...................................................................................................... 15

USE OF INTERROGATORIES ....................................................................................... 16

USE OF REQUESTS FOR ADMISSION ....................................................................... 17

EXPERT OPINION .......................................................................................................... 18

CHARTS AND SUMMARIES NOT RECEIVED IN EVIDENCE ................................. 19

CHARTS AND SUMMARIES RECEIVED IN EVIDENCE .......................................... 20

STIPULATIONS OF FACT ............................................................................................. 21

DEPOSITION IN LIEU OF LIVE TESTIMONY .......................................................... 22

DUTY TO DELIBERATE ................................................................................................ 23

CONDUCT OF THE JURY .............................................................................................. 24

COMMUNICATION WITH COURT .............................................................................. 26

RETURN OF VERDICT .................................................................................................. 27

CORPORATIONS AND PARTNERSHIPS – FAIR TREATMENT ............................... 28

CORPORATE LIABILITY .............................................................................................. 29

PARTY HAVING POWER TO PRODUCE BETTER EVIDENCE ................................ 30

HYPOTHETICALS .......................................................................................................... 31

BREACH OF CONTRACT—INTRODUCTION ............................................................ 33

BREACH OF CONTRACT  – INTRODUCTION ........................................................... 35

BREACH OF CONTRACT—ESSENTIAL FACTUAL ELEMENTS ............................ 38

BREACH OF CONTRACT – ESSENTIAL ELEMENTS ............................................... 40

BREACH OF CONTRACT – EXCLUSIONS TO LIABILITY ...................................... 44

BREACH OF CONTRACT —INTERPRETATION OF CONTRACT – EXCLUSIONS TO LIABILITY ................................................................................. 45

**TABLE OF CONTENTS**
(continued)

Page

BREACH OF CONTRACT– EXACT PERFORMANCE OF A CONTRACT IS NOT REQUIRED ................................................................. 47

BREACH OF CONTRACT – SUBSEQUENT CONDUCT ................................................. 50

BREACH OF CONTRACT – AFFIRMATIVE DEFENSE – MITIGATION OF DAMAGES .......................................................... 53

NO PUNITIVE DAMAGES FOR BREACH OF CONTRACT ........................................... 56

MISAPPROPRIATION OF TRADE SECRETS—INTRODUCTION ................................. 59

MISAPPROPRIATION OF TRADE SECRETS—INTRODUCTION ................................. 62

MISAPPROPRIATION OF TRADE SECRETS—ESSENTIAL FACTUAL ELEMENTS ........................................................... 65

MISAPPROPRIATION OF TRADE SECRETS – ESSENTIAL FACTUAL ELEMENTS ........................................................... 67

"TRADE SECRET" DEFINED .......................................................... 70

"TRADE SECRET" DEFINED .......................................................... 72

SECRECY REQUIREMENT ............................................................. 74

"INDEPENDENT ECONOMIC VALUE" EXPLAINED ...................................... 75

REASONABLE EFFORTS TO PROTECT SECRECY ...................................... 76

COMBINATIONS OF INFORMATION AS TRADE SECRETS ........................... 78

COMBINATION TRADE SECRETS ..................................................... 80

MISAPPROPRIATION BY USE ......................................................... 84

MISAPPROPRIATION BY ACQUISITION ............................................... 86

IMPROPER MEANS OF ACQUIRING TRADE SECRET ................................. 88

MISAPPROPRIATION BY DISCLOSURE ................................................ 90

MISAPPROPRIATION BY USE ......................................................... 92

"USE" EXPLAINED ................................................................... 95

"USE" EXPLAINED ................................................................... 97

AFFIRMATIVE DEFENSE TO MISAPPROPRIATION—INFORMATION WAS READILY ASCERTAINABLE BY PROPER MEANS ......................................... 101

AFFIRMATIVE DEFENSE – INFORMATION WAS READILY ASCERTAINABLE BY PROPER MEANS ............................................. 103

REMEDIES FOR MISAPPROPRIATION OF TRADE SECRET .................................. 106

REMEDIES FOR MISAPPROPRIATION OF TRADE SECRET .................................. 108

LIMITATIONS ON REMEDIES FOR MISAPPROPRIATION OF TRADE SECRETS ........................................................... 110

PUNITIVE DAMAGES FOR WILLFUL AND MALICIOUS MISAPPROPRIATION ......................................................... 115

1

**TABLE OF CONTENTS**
(continued)

2

**Page**

3

PUNITIVE DAMAGES FOR WILLFUL AND MALICIOUS
    MISAPPROPRIATION ...................................................................... 117

4

UNFAIR COMPETITION ................................................................... 123

5

CAUSATION: DOMINANT OR SUBSTANTIAL FACTOR ........................... 128

6

INTRODUCTION TO DAMAGES FOR MISAPPROPRIATION AND BREACH
    OF CONTRACT ............................................................................. 135

7

LOST PROFIT (ECONOMIC DAMAGE) .............................................. 138

8

UNJUST ENRICHMENT .................................................................. 140

DAMAGES—PROOF ....................................................................... 143

9

BREACH OF CONTRACT – INTRODUCTION TO CONTRACT DAMAGES ............ 146

10

LOST PROFITS (ECONOMIC DAMAGE) ............................................. 150

11

LOSS OF PROFITS – NO PROFITS EARNED ........................................ 152

12

UNJUST ENRICHMENT .................................................................. 154

APPORTIONMENT .......................................................................... 158

13

PRESENT CASH VALUE OF FUTURE DAMAGES .................................. 161

14

ARGUMENTS OF COUNSEL NOT EVIDENCE OF DAMAGES .................. 163

DAMAGES ON MULTIPLE LEGAL THEORIES ..................................... 165

15

PREJUDGMENT INTEREST .............................................................. 167

16

17

18

19

20

21

22

23

24

25

26

27

28

Pursuant to Federal Rule of Civil Procedure 51 and this Court's Standing Order for Civil Cases, the Parties jointly submit proposed case-specific jury instructions and have provided a written objection and proposed alternative instructions for any instruction where the Parties were unable to reach an agreement.  Should the Court request any further instructions not already contained in its standard preliminary and closing instructions and these proposed case-specific instructions, the Parties will meet and confer and supplement these proposed jury instructions accordingly.

The Parties reserve the right to supplement and amend these proposed jury instructions and to submit additional proposed instructions based on any rulings from this Court before or at trial, or as otherwise deemed proper by this Court.[1]

---

[1] Emerson's objections and proposed instructions are made subject to any pending motions to strike, any Rule 50 motions, and any other trial motions.

[PROPOSED] JURY INSTRUCTIONS
CASE NO. 15-CV-01370 EJD

# PROCEDURAL INSTRUCTIONS

30692\6662445.1

==Proposed by Parties==

Proposed Jury Instruction No. 1

**DUTY OF THE JURY**

**(COURT READS AND PROVIDES WRITTEN INSTRUCTIONS AT END OF CASE)**

Members of the Jury:  Now that you have heard all of the evidence and the arguments of the attorneys, it is my duty to instruct you as to the law of the case.

Each of you has received a copy of these instructions that you may take with you to the jury room to consult during your deliberations.

It is your duty to find the facts from all the evidence in the case.  To those facts you will apply the law as I give it to you.  You must follow the law as I give it to you whether you agree with it or not.  And you must not be influenced by any personal likes or dislikes, opinions, prejudices, or sympathy.  That means that you must decide the case solely on the evidence before you.  You will recall that you took an oath to do so.

Please do not read into these instructions or anything that I may say or do or have said or done that I have an opinion regarding the evidence or what your verdict should be.

[*Authority*: Manual of Model Civil Jury Instructions for the District Courts of the Ninth Circuit § 1.4 (Sept. 2017).]

==Proposed by Parties==

Proposed Jury Instruction No. 2

**BURDEN OF PROOF – PREPONDERANCE OF THE EVIDENCE**

When a party has the burden of proof on any claim or affirmative defense by a preponderance of the evidence, it means you must be persuaded by the evidence that the claim or affirmative defense is more probably true than not true.

You should base your decision on all of the evidence, regardless of which party presented it.

[*Authority*: Manual of Model Civil Jury Instructions for the District Courts of the Ninth Circuit § 1.6 (Sept. 2017).]

4.

[Proposed by Parties]

Proposed Jury Instruction No. 3

**BURDEN OF PROOF – CLEAR AND CONVINCING EVIDENCE**

When a party has the burden of proving any claim or defense by clear and convincing evidence, it means that the party must present evidence that leaves you with a firm belief or conviction that it is highly probable that the factual contentions of the claim or defense are true. This is a higher standard of proof than proof by a preponderance of the evidence, but it does not require proof beyond a reasonable doubt.

[*Authority*: Manual of Model Civil Jury Instructions for the District Courts of the Ninth Circuit § 1.7 (Sept. 2017).]

30692\6662445.1

==[Proposed by Parties]==

Proposed Jury Instruction No. 4

**WHAT IS EVIDENCE**

The evidence you are to consider in deciding what the facts are consists of:

1.      the sworn testimony of any witness;

2.      the exhibits that are admitted into evidence;

3.      any facts to which the lawyers have agreed; and

4.      any facts that I [may instruct] [have instructed] you to accept as proved.

[*Authority*: Manual of Model Civil Jury Instructions for the District Courts of the Ninth Circuit §1.9.]

6.

30692\6662445.1

==[Proposed by Parties]==

Proposed Jury Instruction No. 5

**WHAT IS NOT EVIDENCE**

In reaching your verdict, you may consider only the testimony and exhibits received into evidence. Certain things are not evidence, and you may not consider them in deciding what the facts are. I will list them for you:

1.       Arguments and statements by lawyers are not evidence. The lawyers are not witnesses. What they have said in their opening statements, closing arguments and at other times is intended to help you interpret the evidence, but it is not evidence. If the facts as you remember them differ from the way the lawyers have stated them, your memory of them controls.

2.       Questions and objections by lawyers are not evidence. Attorneys have a duty to their clients to object when they believe a question is improper under the rules of evidence. You should not be influenced by the objection or by the court's ruling on it.

3.       Testimony that is excluded or stricken, or that you have been instructed to disregard, is not evidence and must not be considered. In addition some evidence was received only for a limited purpose; when I have instructed you to consider certain evidence only for a limited purpose, you must do so and you may not consider that evidence for any other purpose.

4.       Anything you have seen or heard when the court was not in session is not evidence. You are to decide the case solely on the evidence received at the trial.

[*Authority*: Manual of Model Civil Jury Instructions for the District Courts of the Ninth Circuit §1.10.]

==[Proposed by Parties]==

Proposed Jury Instruction No. 6

## EVIDENCE FOR LIMITED PURPOSE

Some evidence may be admitted only for a limited purpose.

When I instruct you that an item of evidence has been admitted only for a limited purpose, you must consider it only for that limited purpose and not for any other purpose.

[*Authority*: Manual of Model Civil Jury Instructions for the District Courts of the Ninth Circuit §1.11.]

30692\6662445.1

==[Proposed by Parties]==

Proposed Jury Instruction No. 7

**DIRECT AND CIRCUMSTANTIAL EVIDENCE**

Evidence may be direct or circumstantial. Direct evidence is direct proof of a fact, such as testimony by a witness about what that witness personally saw or heard or did. Circumstantial evidence is proof of one or more facts from which you could find another fact.

By way of example, if you wake up in the morning and see that the sidewalk is wet, you may find from that fact that it rained during the night. However, other evidence, such as a turned on garden hose, may provide a different explanation for the presence of water on the sidewalk. Therefore, before you decide that a fact has been proved by circumstantial evidence, you must consider all the evidence in the light of reason, experience and common sense.

You should consider both kinds of evidence. The law makes no distinction between the weight to be given to either direct or circumstantial evidence. It is for you to decide how much weight to give to any evidence.

[*Authority*: Manual of Model Civil Jury Instructions for the District Courts of the Ninth Circuit §1.12.

[Proposed by Parties]

Proposed Jury Instruction No. 8

**RULING ON OBJECTIONS**

There are rules of evidence that control what can be received into evidence. When a lawyer asks a question or offers an exhibit into evidence and a lawyer on the other side thinks that it is not permitted by the rules of evidence, that lawyer may object. If I overrule the objection, the question may be answered or the exhibit received. If I sustain the objection, the question cannot be answered, and the exhibit cannot be received. Whenever I sustain an objection to a question, you must ignore the question and must not guess what the answer might have been.

Sometimes I may order that evidence be stricken from the record and that you disregard or ignore that evidence. That means when you are deciding the case, you must not consider the stricken evidence for any purpose.

[*Authority*: Manual of Model Civil Jury Instructions for the District Courts of the Ninth Circuit §1.13.]

30692\6662445.1

==[Proposed by Parties]==

Proposed Jury Instruction No. 9

**CREDIBILITY OF WITNESSES**

In deciding the facts in this case, you may have to decide which testimony to believe and which testimony not to believe. You may believe everything a witness says, or part of it, or none of it.

In considering the testimony of any witness, you may take into account:

1.    the opportunity and ability of the witness to see or hear or know the things testified to;

2.    the witness's memory;

3.    the witness's manner while testifying;

4.    the witness's interest in the outcome of the case, if any;

5.    the witness's bias or prejudice, if any;

6.    whether other evidence contradicted the witness's testimony;

7.    the reasonableness of the witness's testimony in light of all the evidence; and

8.    any other factors that bear on believability.

Sometimes a witness may say something that is not consistent with something else he or she said. Sometimes different witnesses will give different versions of what happened. People often forget things or make mistakes in what they remember. Also, two people may see the same event but remember it differently. You may consider these differences, but do not decide that testimony is untrue just because it differs from other testimony.

However, if you decide that a witness has deliberately testified untruthfully about something important, you may choose not to believe anything that witness said. On the other hand, if you think the witness testified untruthfully about some things but told the truth about others, you may accept the part you think is true and ignore the rest.

11.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

The weight of the evidence as to a fact does not necessarily depend on the number of witnesses who testify.   What is important is how believable the witnesses were, and how much weight you think their testimony deserves.

[*Authority*: Manual of Model Civil Jury Instructions for the District Courts of the Ninth Circuit § 1.14 (Sept. 2017).]

12.

30692\6662445.1

==Proposed by Parties==

Proposed Jury Instruction No. 10

**PUBLICITY DURING TRIAL**

If there is any news media account or commentary about the case or anything to do with it, you must ignore it.  You must not read, watch or listen to any news media account or commentary about the case or anything to do with it.  The case must be decided by you solely and exclusively on the evidence that will be received in the case and on my instructions as to the law that applies.  If any juror is exposed to any outside information, please notify me immediately.

[*Authority*: Manual of Model Civil Jury Instructions for the District Courts of the Ninth Circuit § 1.16 (Sept. 2017); *see also* Jury Instructions Committee of the Ninth Circuit, A Manual on Jury Trial Procedures, § 2.2 (2013).]

13.

1

==Proposed by Parties==

2

Proposed Jury Instruction No. 11

3

**TAKING NOTES**

4

5      If you wish, you may take notes to help you remember the evidence.  If you do take notes,

6   please keep them to yourself until you go to the jury room to decide the case.  Do not let notetaking

7   distract you.  When you leave, your notes should be left in the courtroom.  No one will read your

8   notes.

9      Whether or not you take notes, you should rely on your own memory of the evidence.  Notes

10  are only to assist your memory.  You should not be overly influenced by your notes or those of other

11  jurors.

12

13  [*Authority*: Manual of Model Civil Jury Instructions for the District Courts of the Ninth Circuit §
    1.18 (Sept. 2017); *see also* Jury Instructions Committee of the Ninth Circuit, A Manual on Jury Trial
14  Procedures, § 3.4 (2013); *United States v. Baker*, 10 F.3d 1374, 1403 (9th Cir. 1993).]

15

16

17

18

19

20

21

22

23

24

25

26

27

28

14.

30692\6662445.1

1

==[Proposed by Parties]==

2

Proposed Jury Instruction No. 12

3

**OUTLINE OF TRIAL**

4

5       Trials proceed in the following way: First, each side may make an opening statement. An

6   opening statement is not evidence. It is simply an outline to help you understand what that party

7   expects the evidence will show. A party is not required to make an opening statement.

8       The plaintiff will then present evidence, and counsel for the defendant may cross-examine.

9   Then the defendant may present evidence, and counsel for the plaintiff may cross-examine.

10      After the evidence has been presented, I will instruct you on the law that applies to the case

11   and the attorneys will make closing arguments.

12      After that, you will go to the jury room to deliberate on your verdict.

13

14   [*Authority*: Manual of Model Civil Jury Instructions for the District Courts of the Ninth Circuit
     §1.21.]

15

16

17

18

19

20

21

22

23

24

25

26

27

28

[PROPOSED] JURY INSTRUCTIONS
CASE NO. 15-CV-01370 EJD

30692\6662445.1

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

[Proposed by Parties]

Proposed Jury Instruction No. 13

**USE OF INTERROGATORIES**

Evidence [will now be] [was] presented to you in the form of answers of one of the parties to written interrogatories submitted by the other side. These answers were given in writing and under oath before the trial in response to questions that were submitted under established court procedures. You should consider the answers, insofar as possible, in the same way as if they were made from the witness stand.

[*Authority*: Manual of Model Civil Jury Instructions for the District Courts of the Ninth Circuit §2.11.]

1

==[Proposed by Parties]==

2

Proposed Jury Instruction No. 14

3

**USE OF REQUESTS FOR ADMISSION**

4

5        Evidence [will now be] [was] presented to you in the form of admissions to the truth of

6   certain facts. These admissions were given in writing before the trial, in response to requests that

7   were submitted under established court procedures. You must treat these facts as having been

8   proved.

9

10  [*Authority*: Manual of Model Civil Jury Instructions for the District Courts of the Ninth Circuit

11  §2.12.]

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

[PROPOSED] JURY INSTRUCTIONS
CASE NO. 15-cv-01370 EJD

30692\6662445.1

1

2                                   [Proposed by Parties]

3                              Proposed Jury Instruction No. 15

4                                     **EXPERT OPINION**

5

6          You have heard testimony from [names] who testified to opinions and the reasons for their

7   opinions.  This opinion testimony is allowed, because of the education or experience of this witness.

8          Such opinion testimony should be judged like any other testimony. You may accept it or

9   reject it, and give it as much weight as you think it deserves, considering the witness's education and

10  experience, the reasons given for the opinion, and all the other evidence in the case.

11

12  [*Authority*: Ninth Circuit Model Civil Jury Instruction § 2.13.]

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

30692\6662445.1

[Proposed by Parties]

Proposed Jury Instruction No. 16

**CHARTS AND SUMMARIES NOT RECEIVED IN EVIDENCE**

Certain charts and summaries not admitted into evidence have been shown to you in order to help explain the contents of books, records, documents, or other evidence in the case. Charts and summaries are only as good as the underlying evidence that supports them. You should, therefore, give them only such weight as you think the underlying evidence deserves.

[*Authority*: Manual of Model Civil Jury Instructions for the District Courts of the Ninth Circuit §2.14.]

30692\6662445.1

==[Proposed by Parties]==

Proposed Jury Instruction No. 17

**CHARTS AND SUMMARIES RECEIVED IN EVIDENCE**

Certain charts and summaries have been admitted into evidence to illustrate information brought out in the trial. Charts and summaries are only as good as the testimony or other admitted evidence that supports them. You should, therefore, give them only such weight as you think the underlying evidence deserves.

[*Authority*: Manual of Model Civil Jury Instructions for the District Courts of the Ninth Circuit §2.15.]

30692\6662445.1

==[Proposed by Parties]==

Proposed Jury Instruction No. 18

**STIPULATIONS OF FACT**

The parties have agreed to certain facts [to be placed in evidence as Exhibit ] [that will be read to you]. You must therefore treat these facts as having been proved.

[*Authority*: Manual of Model Civil Jury Instructions for the District Courts of the Ninth Circuit §2.2.]

21.

1

==[Proposed by Parties]==

2

Proposed Jury Instruction No. 19

3

**DEPOSITION IN LIEU OF LIVE TESTIMONY**

4

5   A deposition is the sworn testimony of a witness taken before trial. The witness is placed

6   under oath to tell the truth and lawyers for each party may ask questions. The questions and answers

7   are recorded. When a person is unavailable to testify at trial, the deposition of that person may be

8   used at the trial.

9   The deposition of [name of witness] was taken on [date]. Insofar as possible, you should

10   consider deposition testimony, presented to you in court in lieu of live testimony, in the same way as

11   if the witness had been present to testify.

12   Do not place any significance on the behavior or tone of voice of any person reading the

13   questions or answers.

14

15   [*Authority*: Manual of Model Civil Jury Instructions for the District Courts of the Ninth Circuit

16   §2.4.]

17

18

19

20

21

22

23

24

25

26

27

28

**[PROPOSED] JURY INSTRUCTIONS
CASE NO. 15-CV-01370 EJD**

30692\6662445.1

==[Proposed by Parties]==

Proposed Jury Instruction No. 20

**DUTY TO DELIBERATE**

Before you begin your deliberations, elect one member of the jury as your presiding juror. The presiding juror will preside over the deliberations and serve as the spokesperson for the jury in court.

You shall diligently strive to reach agreement with all of the other jurors if you can do so. Your verdict must be unanimous.

Each of you must decide the case for yourself, but you should do so only after you have considered all of the evidence, discussed it fully with the other jurors, and listened to their views.

It is important that you attempt to reach a unanimous verdict but, of course, only if each of you can do so after having made your own conscientious decision. Do not be unwilling to change your opinion if the discussion persuades you that you should. But do not come to a decision simply because other jurors think it is right, or change an honest belief about the weight and effect of the evidence simply to reach a verdict.

[*Authority*: Manual of Model Civil Jury Instructions for the District Courts of the Ninth Circuit §3.1.]

30692\6662445.1

[Proposed by Emerson]

Proposed Jury Instruction No. 21

## CONDUCT OF THE JURY

I will now say a few words about your conduct as jurors.

First, keep an open mind throughout the trial, and do not decide what the verdict should be until you and your fellow jurors have completed your deliberations at the end of the case.

Second, because you must decide this case based only on the evidence received in the case and on my instructions as to the law that applies, you must not be exposed to any other information about the case or to the issues it involves during the course of your jury duty. Thus, until the end of the case or unless I tell you otherwise:

Do not communicate with anyone in any way and do not let anyone else communicate with you in any way about the merits of the case or anything to do with it. This includes discussing the case in person, in writing, by phone or electronic means, via email, text messaging, or any internet chat room, blog, website or application, including but not limited to Facebook, YouTube, Twitter, Instagram, LinkedIn, Snapchat, or any other forms of social media. This applies to communicating with your fellow jurors until I give you the case for deliberation, and it applies to communicating with everyone else including your family members, your employer, the media or press, and the people involved in the trial, although you may notify your family and your employer that you have been seated as a juror in the case, and how long you expect the trial to last. But, if you are asked or approached in any way about your jury service or anything about this case, you must respond that you have been ordered not to discuss the matter and report the contact to the court.

Because you will receive all the evidence and legal instruction you properly may consider to return a verdict: do not read, watch or listen to any news or media accounts or commentary about the case or anything to do with it; do not do any research, such as consulting dictionaries, searching the Internet, or using other reference materials; and do not make any investigation or in any other way try to learn about the case on your own. Do not visit or view any place discussed in this case, and do not use Internet programs or other devices to search for or view any place discussed during the trial. Also, do not do any research about this case, the law, or the people involved—including the parties, the witnesses or the lawyers—until you have been excused as jurors. If you happen to read or hear anything touching on this case in the media, turn away and report it to me as soon as possible.

These rules protect each party's right to have this case decided only on evidence that has been presented here in court. Witnesses here in court take an oath to tell the truth, and the accuracy of their testimony is tested through the trial process. If you do any research or investigation outside the courtroom, or gain any information through improper communications, then your verdict may be

24.

influenced by inaccurate, incomplete or misleading information that has not been tested by the trial process.  Each of the parties is entitled to a fair trial by an impartial jury, and if you decide the case based on information not presented in court, you will have denied the parties a fair trial.  Remember, you have taken an oath to follow the rules, and it is very important that you follow these rules.

A juror who violates these restrictions jeopardizes the fairness of these proceedings, and a mistrial could result that would require the entire trial process to start over.  If any juror is exposed to any outside information, please notify the court immediately

[*Authority*: Manual of Model Civil Jury Instructions for the District Courts of the Ninth Circuit § 1.15 (Sept. 2017).]

25.

==[Proposed by Parties]==

Proposed Jury Instruction No. 22

**COMMUNICATION WITH COURT**

If it becomes necessary during your deliberations to communicate with me, you may send a note through the [clerk] [bailiff], signed by any one or more of you. No member of the jury should ever attempt to communicate with me except by a signed writing. I will not communicate with any member of the jury on anything concerning the case except in writing or here in open court. If you send out a question, I will consult with the lawyers before answering it, which may take some time. You may continue your deliberations while waiting for the answer to any question. Remember that you are not to tell anyone—including the court—how the jury stands, whether in terms of vote count or otherwise, until after you have reached a unanimous verdict or have been discharged.

[*Authority*: Manual of Model Civil Jury Instructions for the District Courts of the Ninth Circuit §3.3.]

==[Proposed by Parties]==

Proposed Jury Instruction No. 23

**RETURN OF VERDICT**

A verdict form has been prepared for you.  [*Explain verdict form as needed*.]  After you have reached unanimous agreement on a verdict, your foreperson should complete the verdict form according to your deliberations, sign and date it, and advise the clerk that you are ready to return to the courtroom.

[***Authority***: Manual of Model Civil Jury Instructions for the District Courts of the Ninth Circuit § 3.5 (Sept. 2017).]

27.

==[Proposed by Parties]==

Proposed Jury Instruction No. 24

**CORPORATIONS AND PARTNERSHIPS – FAIR TREATMENT**

All parties are equal before the law and a corporation is entitled to the same fair and conscientious consideration by you as any party.

[**_Authority_**: Manual of Model Civil Jury Instructions for the District Courts of the Ninth Circuit § 4.1 (Sept. 2017).]

28.

[Proposed by Parties]

Proposed Jury Instruction No. 25

**CORPORATE LIABILITY**

Under the law, a corporation is considered to be a person.  It can only act through its employees, agents, directors, or officers.  Therefore, a corporation is responsible for the acts of its employees, agents, directors, and officers performed within the scope of authority.

[*Authority*: Manual of Model Civil Jury Instructions for the District Courts of the Ninth Circuit §4.2.]

[Proposed by Parties]

Proposed Jury Instruction No. 26

**PARTY HAVING POWER TO PRODUCE BETTER EVIDENCE**

You may consider the ability of each party to provide evidence.  If a party provided weaker evidence when it could have provided stronger evidence, you may distrust the weaker evidence.

[*Authority*: Judicial Council of California Civil Jury Instructions (CACI) 203.]

30.

30692\6662445.1

==[Proposed by Emerson]==

Proposed Jury Instruction No. 27

**HYPOTHETICALS**

The law allows expert witnesses to be asked questions that are based on assumed facts. These are sometimes called "hypothetical questions."

In determining the weight to give to the expert's opinion that is based on the assumed facts, you should consider whether the assumed facts are true.

[*Authority*: Judicial Council of California, Civil Jury Instructions 220.]

1
2
3
4
5
6
7
8

# BREACH OF CONTRACT INSTRUCTIONS

9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

30692\6662445.1

[Proposed by Plaintiffs]

Proposed Jury Instruction No. 28

**BREACH OF CONTRACT—INTRODUCTION**

BladeRoom claims that it entered into a contract known as a "Confidentiality Agreement" with Emerson.

BladeRoom claims that the Confidentiality Agreement with Emerson allowed Emerson to acquire BladeRoom's confidential information for the sole purpose of evaluating whether to buy or acquire BladeRoom, and that the Emerson Confidentiality Agreement required Emerson to, among other obligations, keep BladeRoom's information confidential and not use or disclose it for the purpose of trying to obtain Facebook's business for itself.

BladeRoom claims that Emerson breached the Confidentiality Agreement by disclosing and using BladeRoom confidential information for purposes not allowed by the Confidentiality Agreement, including by discussing and using the information they acquired from BladeRoom for the purpose of developing a competing  design.

BladeRoom claims that Emerson's breach of the Confidentiality Agreement caused harm to BladeRoom for which Emerson should pay damages.

Emerson denies all of the above claims.

[*Authority*: Judicial Council of California Civil Jury Instructions (CACI) 300.]

Cooley LLP
Attorneys At Law
San Francisco

30692\6662445.1

33.

[Proposed] Jury Instructions
Case No. 15-cv-01370 EJD

**<u>Emerson's Objections</u>**

Emerson objects to the preceding instruction and instead proposes its own instruction. BladeRoom puts a gloss on the non-disclosure agreement that is inappropriate and misleadingly incomplete in that it purely reflects BladeRoom's theory of the case and does not mention, for example, the limitations on liability under the contract. Further, pursuant to the terms of the contract, it is to be interpreted under U.K. law.

30692\6662445.1

[Proposed by Emerson]

Proposed Jury Instruction No. 28

**BREACH OF CONTRACT – INTRODUCTION**

BladeRoom claims that they entered into a contract—known as a non-disclosure agreement, or "NDA"—with Emerson on August 17, 2011.  The purpose of the NDA was to prevent the disclosure of trade secrets and confidential information, both BladeRoom's and Emerson's, to any third party.  BladeRoom claims that Emerson violated the NDA by discussing trade secrets and confidential information with Facebook on June 21, 2012.  BladeRoom also claims that Emerson violated the NDA by meeting with Facebook on August 15, 2012 to discuss developing a modular data center solution based on BladeRoom's trade secrets confidential and information.  BladeRoom also claims that Emerson violated the NDA by using BladeRoom's trade secrets and confidential information for Facebook's benefit, in particular by using BladeRoom's trade secrets and confidential information in the designs and "methods used" in Emerson's construction of Facebook's Lulea, Sweden data center campus.  BladeRoom also claims that Emerson violated the NDA by including BladeRoom's trade secrets and confidential information in marketing materials and by using the trade secrets and confidential information in the development or construction of other data centers built by Emerson.  BladeRoom alleges these breaches of the NDA have caused harm to BladeRoom, for which Emerson should pay.

Emerson denies that it was in breach of the NDA or that it disclosed any of BladeRoom's alleged trade secrets and confidential information to Facebook.  Emerson maintains that it held BladeRoom's alleged trade secrets and confidential information in confidence and took reasonable steps to protect such information.  Emerson further maintains that, during its meetings with Facebook, it did not disclose the information that BladeRoom assumes was disclosed.  Additionally, Emerson maintains that none of BladeRoom's alleged trade secrets and confidential information were used by Emerson in the development and building of Facebook's Lulea, Sweden data center campus.  Emerson also maintains that none of BladeRoom's alleged trade secrets and confidential information were used in its marketing materials or the development or construction of other data

1    centers subsequently built by Emerson.  Emerson also claims that, even if any alleged trade secrets

2    and confidential information were used or disclosed (which it denies), such alleged trade secrets and

3    confidential information was not protected from disclosure under the NDA because it was already

4    known to Facebook, already known to Emerson through legitimate sources, or not actually trade

5    secrets or confidential information protected by the NDA because it was readily ascertainable or

6    publicly disclosed by BladeRoom.  Furthermore, the NDA terminated no later than August 17, 2013,

7    and after the date of termination of the NDA, Emerson had no duty with respect to any information

8    disclosed by BladeRoom.

9

10   [*Authority*:  Ninth Circuit Model Civil Jury Instruction § 300.]

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

36.

BladeRoom objects to the previous proposed jury instruction for each of the reasons below and proposes that the Court give BladeRoom's proposed jury instruction instead.

BladeRoom's Objections to Emerson's Proposed Jury Instruction No. 28:

## BREACH OF CONTRACT – INTRODUCTION

1.      Plaintiffs object to the proposed introductory instruction on breach of contract submitted by Emerson on the grounds that Emerson's instruction is not a brief introduction to the claim, as intended by CACI, but a long narrative recitation of their view of the facts and theories of the case.  The instruction fails to present a short, balanced and easy to understand overview.  It does not capture the scope of BladeRoom's allegations, instead reflecting Emerson's cherry-picked selection of facts and its own views of what issues upon which it wants the jury to focus.  Indeed, despite providing a long, narrative description of the NDA, Emerson's proposed instruction does not even mention that the purpose of the NDA was to allow Emerson to evaluate *a Transaction to acquire Bladeroom*, and that the use of any information exchanged under the NDA was *limited to that purpose*.

2.      The narrative paragraph on defenses that Emerson includes is also objectionable.  It directs the jury on facts that are disputed, is overly long, is not organized in the manner contemplated by the standard instruction, and does not identify "readily ascertainable" as an affirmative defense as to which Emerson bears the burden.  It also incorrectly instructs the jury on the law by stating that Emerson had no duty with respect to any information disclosed by Plaintiffs after the date of termination of the NDA.  All of this is unnecessary for an introduction, misleading and prejudicial.

3.      A plain, simple introduction to the breach of contract claims is all that is needed.  For all of these reasons, Plaintiffs object and request that the Court instead give Jury Instruction No. xx [ Proposed by Plaintiffs], which is a short introduction to breach of contract that follows the standard CACI 300 instruction language and is balanced and impartial as to both parties.

30692\6662445.1

[Proposed by Plaintiffs. ]

Proposed Jury Instruction No. 29

**BREACH OF CONTRACT—ESSENTIAL FACTUAL ELEMENTS**

To recover damages from Emerson for breach of contract, BladeRoom must prove all of the following:

1.      That BladeRoom and Emerson entered into a contract;

2.      That Emerson received confidential information from BladeRoom under the contract;

3.      That Emerson did something that the contract prohibited it from doing;

4.      That BladeRoom was harmed; and

5.      That Emerson's breach of contract was a substantial factor in causing BladeRoom's harm.

[*Authority*: Judicial Council of California Civil Jury Instructions (CACI) 303.]

38.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Emerson's Objections**

Emerson objects to the preceding instruction and instead proposes its own instruction. Whether Emerson received confidential information from BladeRoom is not a separate enumerated element of BladeRoom's breach of contract claim. By listing it separately, BladeRoom's instruction exaggerates its significance. The CACI represents California law, but English law governs BladeRoom's breach of contract claim.

1

[Proposed by Emerson]

2

Proposed Jury Instruction No. 29

3

**BREACH OF CONTRACT – ESSENTIAL ELEMENTS**

4

5

To recover damages from Emerson for breach of contract, BladeRoom must prove all of the

following:

6

1.       That BladeRoom and Emerson entered into a contract;

7

8

2.       That BladeRoom did all, or substantially all, of the significant things that the NDA

required it to do;

9

10

3.       That the information BladeRoom claims as trade secrets and confidential information

11

is protected information under the NDA and that Emerson was required to maintain the

confidentiality of the alleged trade secrets and confidential information;

12

13

4.       That Emerson failed to maintain the confidentiality of BladeRoom's protected trade

14

secrets and confidential information by disclosing such protected information to Facebook prior to

the termination of the contract on August 17, 2013;

15

16

5.       That Emerson failed to maintain the confidentiality of BladeRoom's protected trade

17

secrets and confidential information by utilizing such protected information in its design and

construction of the Facebook facility in Lulea, Sweden; and

18

19

6.       That Emerson failed to maintain the confidentiality of BladeRoom's protected trade

20

secrets and confidential information by utilizing such protected information in its design and

21

construction of subsequent data centers prior to the termination of the contract on August 17, 2013;

and

22

23

7.       That Emerson failed to maintain the confidentiality of BladeRoom's protected trade

24

secrets and confidential information by failing to keep such protected information in confidence and

to take reasonable steps to protect such information.

25

26

27

[*Authority*: Halsbury's Laws of England, Vol. 22 (2012), ¶¶ 231, 492; Civil Procedure Rule 7.3; *Parsons v. Bristol Development Co.*, 62 Cal.2d 861, 865 (1965) (interpretation of a contract is a question of law for the Court); *Winet v. Price*, 4 Cal. App.4th 1159, 1165-66 (1992); *Scheenstra v. Cal. Dairies, Inc.*, 213 Cal.App.4th 370, 390 (2013) (even "where uncontroverted evidence allows

28

**[PROPOSED] JURY INSTRUCTIONS
CASE NO. 15-CV-01370 EJD**

30692\6662445.1

1

for conflicting inferences to be drawn, our Supreme Court treats the interpretation of the written contract as solely a judicial function.").]

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

41.

30692\6662445.1

BladeRoom objects to the previous proposed jury instruction for each of the reasons below and proposes that the Court give BladeRoom's proposed jury instruction instead.

BladeRoom's Objections to Emerson's Proposed Jury Instruction No. 29:

## BREACH OF CONTRACT – ESSENTIAL ELEMENTS

**1.** Plaintiffs object to Emerson's version of this CACI instruction because Emerson includes optional elements from CACI that seek to have the jury make determinations that the Court has already decided as a matter of law. Emerson's proposed instruction is also improper in adding language that erroneously limits the scope of BladeRoom's breach of contract claim to reflect only Emerson's views of the claim and its defense theories in the case. Those views are not supported by any summary judgment or other ruling of the Court and do not belong in an instruction that is intended to convey the "essential elements" of a breach of contract claim.

**2.** There are also no substantive differences in English law that would require deviating from the standard jury instructions on breach of contract as to Emerson. The Non-Disclosure Agreement between BladeRoom and Emerson provides that the provisions of the contract will be "construed *in accordance* with English law." (emphasis added) California law is in accord with English law as to all of the breach of contract issues to be decided by the jury in this case. As such, the standard CACI breach of contract instructions, which are neutrally framed in plain language for a jury, should be given to the jury.

**3.** The instruction proposed by Emerson is also improper in that it requires Plaintiffs to prove that Emerson breached the NDA in multiple ways, when a single breach is sufficient to sustain a breach of contract action. Emerson's proposed instruction erroneously instructs that jury that Plaintiffs must show that "Emerson failed to maintain the confidentiality of BladeRoom protected trade secrets and confidential information" in *four different ways*: (1) disclosing such information to Facebook; (2) utilizing such information in its design and construction of the Facebook facility in Lulea, Sweden; (3) utilizing such information in its design and construction of

42.

1    subsequent data centers; *and* (4) failing to keep such information in confidence and

2    taking reasonable steps to protect such information.  Under the terms of the NDA,

3    however, *any* use of BladeRoom protected trade secrets and confidential information

4    for any purpose *other than for the purpose of evaluating the "Transaction"* described

5    in the NDA is a breach of the NDA.  Similarly, *any* disclosure of BladeRoom's

6    protected trade secrets and confidential information to anyone other than Emerson's

7    directors, officers, employees, agents or advisers with a "need to know" such

8    information to evaluate the Transaction (including any disclosure to Emerson design

9    and engineering employees who were not involved in evaluating the Transaction) is

10   also a breach of the NDA.  Defendants' proposed instruction is argumentative and

11   limits the scope of the breach of contract claim to reflect only its views of the breach

12   of contract claim and its defense theories in the case.  Those views are not supported

13   by any summary judgment or other ruling of the Court and do not belong in an

14   instruction that is intended to convey the "essential elements" of a breach of contract

15   claim.

16   **4.**     Plaintiffs request that the instruction follow the standard CACI language, unmodified.

17   For all these reasons, Plaintiffs object to this instruction and request that Jury

18   Instruction No. 29, Breach Of Contract – Essential Elements [Proposed by Plaintiffs]

19   be given instead.

1

[Proposed by Emerson]

2

Proposed Jury Instruction No. 30

3

**BREACH OF CONTRACT – EXCLUSIONS TO LIABILITY**

4

5      You are to take into account any exclusions to liability.  The Emerson NDA provides for the

6   following exclusions to liability:

7      Recipient Already in Possession: "Information which you can demonstrate by
8      written evidence was in your possession prior its being furnished to you by or on
       behalf of the Company, provided that the source of such information was not known
9      by you to be bound by or subject to a confidentiality agreement with the Company in
       respect thereof, or by fiduciary or other similar duties of confidentiality;."

10     Information Already a Matter of Public Knowledge: "Information which now is in,
11     or hereafter comes into, the public domain, otherwise than by reason of a breach of
       this agreement by you or, as if there were parties to his agreement directly, by any of
12     your Designated Persons;"

13     Recipient Developed Without Use of Confidential Information: "Information which
       is independently developed by you without reference to any Information;"

14     Information Received Unwittingly: "Information which you can demonstrate by
15     written evidence came into your possession from a source not known by you to be
       bound by or subject to a confidentiality agreement [], or by fiduciary or other similar
16     duties of confidentiality;"

17     Information Disclosed or Used After August 17, 2013: "[T]his agreement shall
       terminate on the date 2 years from the date hereof."

18

19  [*Authority*: August 17, 2011 Non-Disclosure Agreement, signed by BladeRoom and Emerson;
20  Halsbury's Laws of England, Vol. 22 (2012), ¶¶ 231, 492; Civil Procedure Rule 7.3; *Parsons v.
    Bristol Development Co.*, 62 Cal.2d 861, 865 (1965) (interpretation of a contract is a question of law
21  for the Court); *Winet v. Price*, 4 Cal. App.4th 1159, 1165-66 (1992); *Scheenstra v. Cal. Dairies, Inc.*,
    213 Cal.App.4th 370, 390 (2013) (even "where uncontroverted evidence allows for conflicting
22  inferences to be drawn, our Supreme Court treats the interpretation of the written contract as solely a
    judicial function.").]

23

24

25

26

27

28

44.

BladeRoom objects to the previous proposed jury instruction for each of the reasons below.

BladeRoom's Objections to Proposed Jury Instruction No. 30 [Proposed by Emerson]

## BREACH OF CONTRACT —INTERPRETATION OF CONTRACT – EXCLUSIONS TO LIABILITY

1.  This is not a standard instruction.  It was crafted by Emerson to unfairly excerpt and focus the jury on only certain provisions of the contract out of context of the whole. The entire NDA is in evidence, and the jury should not be separately "instructed" on only certain provisions that defendants view as beneficial to their defense theories.

2.  Emerson's proposed instruction is contrary to the law because contracts are to be considered as a whole, not just isolated parts.  *See* Cal. Civ. Code § 1641.  The NDA itself is in evidence and the jury can review all of the provisions.  Emerson's proposed instruction highlighting certain portions of the contract is prejudicial and unnecessary—Emerson's lawyers may highlight certain provisions in their Closing Argument if they wish but this is not appropriate for an instruction.  By highlighting through a jury instruction a specific aspect of the contract that Emerson considers to be important, this instruction invites legal error and places undue weight on the particular provisions identified in the instruction.  It also misrepresents the language of the contract—for example, the last "exclusion" that is included in the instruction selectively quotes Paragraph 12 of the agreement and leaves out critical language necessary to understand that particular provision.  This is highly prejudicial and will almost certainly mislead the juror and invite error.

3.  None of the English or California law cited by Emerson supports the addition of this or any similar instruction.

4.  Plaintiffs object to any instruction on individual contract provisions.  To the extent that the court decides to allow such an instruction over BladeRoom's objection, Plaintiffs request that they be allowed to submit an instruction that will avoid jury

1  | confusion by instructing the jury on provisions of the contract that are particularly
2  | important to BladeRoom's theory of the case.

30692\6662445.1

[Proposed by Emerson]

Proposed Jury Instruction No. 31

**BREACH OF CONTRACT– EXACT PERFORMANCE OF A CONTRACT IS NOT REQUIRED**

Exact performance of a contract is not required. Emerson is not liable for minute and unimportant deviations from exact compliance with the NDA.

[*Authority*: Halsbury's Laws of England/Contract, Vol. 22 (2012) ("In all cases, [] the requirement of exact performance is qualified by the de minimis rule (that is that minute an unimportant deviations from exact compliance will be ignored") (citing *Margaronis Navigation Agency Ltd. v. Henry W. Peabody & Co. of Landon Ltd.* [1965] 2 QB 430, [1964] 3 All ER 333, CA; *Louis Dreyfus et Cie v. Parnaso Cia Naviera SA* [1960] 2 QB 49, [1960] 1 All ER 759, CA.]

47.

BladeRoom objects to the previous proposed jury instruction for each of the reasons below.

BladeRoom's Objections to Proposed Jury Instruction No. 31 [Proposed by Emerson]:

**BREACH OF CONTRACT —EXACT PERFORMANCE OF A CONTRACT IS NOT REQUIRED**

1.      This instruction on "Exact Performance" is unnecessary, incorrect under the circumstances of this case, and likely to lead to juror confusion.  As an initial matter, the breaches Plaintiffs allege—disclosure and use of confidential information—go to the very core of Emerson's obligations under the Agreement.  Such breaches cannot be construed as *de minimis* violations of the contract under English law.  Giving an instruction on *de minimis* deviations from the contract, like the one proposed by Emerson, will lead to confusion and error.  Indeed, even the cases cited by Emerson show that the English courts' application of the *de minimis* exception is exceedingly rare and narrow.  Both of the cases that Emerson cites in support of this instruction dealt with whether vessel charterers loaded enough cargo pursuant to the applicable charterparties.  In *Margaronis*, the Court held that loading 12,588 tons 4 cwts of cargo when the contract called for a cargo load of 12,600 tons was not a *de minimis* breach because the facts clearly indicated that the amount of cargo to be loaded was 12,600 tons, and the margin of error of the equipment used to measure the load was much smaller than the 11 ton 16 cwts difference between what was loaded and what was required.  By contrast, in *Louis Dreyfus*, the Court held that loading 10,069 tons when the contract called for "approximative cargo" totaling 10,400 tons was *de minimis*, as 10,069 tons was "approximately" 10,400.  BladeRoom's factual allegations regarding Emerson's breaches of the NDA are not allegations in which breaches can be measured by degree or approximation, however, which is when the *de minimis* exception might be applied by English courts

2.      Plaintiffs object to any instruction being given on the *de minimis* exception, which does not apply in this case.  If the Court is inclined to provide an instruction on Exact Performance of a Contract is Not Required over BladeRoom's objections, Plaintiffs

48.

1   request that they be allowed to submit an instruction that will avoid jury confusion on

2   the issue of exact performance.

==[Proposed by Emerson]==

Proposed Jury Instruction No. 32

**BREACH OF CONTRACT – SUBSEQUENT CONDUCT**

Written contracts can be modified by the conduct of the parties to the contract after they have agreed to the contract.

[*Authority*: <u>Chitty on Contracts</u>, Ch. 13 (32nd Ed.) (citing *Vivienne Westwood Ltd. v. Conduit Steel Development Ltd.* [2017] EWHC 350 (ch) at [28]).]

50.

1    BladeRoom objects to the previous proposed jury instruction for each of the reasons below.

2          BladeRoom's Objections to Proposed Jury Instruction No. 32 [Proposed by Emerson]

3    **BREACH OF CONTRACT AGAINST EMERSON—SUBSEQUENT CONDUCT**

**1.**    This is not a standard CACI breach of contract instruction, and it is incorrect,
         unnecessary as an addition, and erroneous.

**2.**    This instruction contradicts the actual language of the NDA, which provides that (1)
         no forbearance or failure by any party to exercise or assert any right or entitlement
         under the NDA will be construed as a waiver in the absence of a written agreement;
         and that (2) no waiver of any breach of any term of the NDA will be construed as a
         waiver of any future breach of the same term or as authorizing continuation of a
         particular breach unless "expressly agreed in writing" by Bladeroom.

**3.**    The proposed instruction also grossly oversimplifies the law on modification by
         conduct and fails to instruct on the actual requirements for a modified contract.
         Under English law, an agreement for variation on a contract (the English law term for
         a modification) must possess the characteristics of a valid contract. *See* Halsbury's
         Laws of England/Contract (Volume 22 (2012))/8: Discharge of Contractual
         Promises/(5) Discharge by Subsequent Agreement/(iii) Variation/585.  In other
         words, "to effect a variation the parties must be ad idem [meeting of the minds] in the
         same sense as for the formation of a contract." *Id.* (citing *Woodhouse AC Israel
         Cocoa Ltd SA v Nigerian Produce Marketing Co Ltd* [1972] AC 741, [1972] 2 All ER
         271, HL; *WJ Alan & Co Ltd v El Nasr Export and Import Co* [1972] 2 QB 189 at 217,
         [1972] 2 All ER 127 at 144-145, CA; *Burnett v Westminster Bank Ltd* [1966] 1 QB
         742, [1965] 3 All ER 81.  Therefore, while it is possible to modify a contract under
         English law (by conduct or otherwise) if the terms of the contract otherwise allow, the
         requirements to form a valid modification are the same as the requirements for
         forming a contract in the first instance.  Emerson's proposed instruction not only fails
         to consider the "written agreement" language of the NDA itself, it also fails to include

51.

30692\6662445.1

1    any of the actual legal requirements for modification and instead erroneously suggests

2    that any conduct by any party may result in the valid modification of a contract.  This

3    is not the law.

4    **4.**    Finally, *Vivienne Westwood Ltd. v. Conduit Steel Development Ltd.* [2017] EWHC

5    350 (ch) at [28], the only decision Emerson cites in support of this proposed

6    instruction, does not support giving an instruction on modification by conduct under

7    the circumstances of this case.  In *Vivienne*, the parties ***both*** contended that the

8    conduct of the parties modified a prior agreement.  The parties could not agree,

9    however, on what the terms of the modified agreement were.  To address this issue,

10   the Court looked at the subsequent conduct of the parties in an attempt to determine

11   the scope of the new agreement.  Here, not only is there an express provision in the

12   NDA that any party's failure to act or exercise or assert rights will not alter those

13   rights in the absence of a written agreement, but BladeRoom does not allege that the

14   parties, by their conduct, reached a new agreement which modified the terms of the

15   NDA.  Nor has Emerson ever articulated how the parties' conduct modified the terms

16   of the agreement (or how that would be possible in light of the express written

17   agreement provision in the NDA itself).  *Vivienne* is thus irrelevant to this action, and

18   Emerson's proposed instruction is very likely to lead to error.

19   **5.**    Given the clear terms of the contract itself, no instruction should be given on Breach

20   of Contract - Subsequent Conduct.

52.

[Proposed by Emerson]

Proposed Jury Instruction No. 33

**BREACH OF CONTRACT – AFFIRMATIVE DEFENSE – MITIGATION OF DAMAGES**

If Emerson breached the non-disclosure agreement and the breach caused harm, BladeRoom is not entitled to recover damages for harm that Emerson proves BladeRoom could have avoided with reasonable efforts or expenditures.  You should consider the reasonableness of BladeRoom's efforts in light of the circumstances facing them at the time, including their ability to make the efforts or expenditures without undue risk or hardship.

If BladeRoom made reasonable efforts to avoid harm, then your award should include reasonable amounts that they spent for this purpose.

[*Authority*: *British Westinghouse Electric and Manufacturing Company, Limited v Underground Electric Railways Company of London, Limited* [1912] A.C. 673 (at page 689):
"The first is that, as far as possible, he who has proved a breach of a bargain to supply what he contracted to get is to be placed, as far as money can do it, in as good a situation as if the contract had been performed. The fundamental basis is thus compensation for pecuniary loss naturally flowing from the breach; but this first principle is qualified by a second, which imposes on a plaintiff the duty of taking all reasonable steps to mitigate the loss consequent on the breach, and debars him from claiming any part of the damage which is due to his neglect to take such steps."
*See also Thai Airways International Public Co Ltd v KI Holdings Co Ltd* [2015] EWHC 1250 (Comm) (at paragraphs 31-38) for a recent judicial summary of the principles of mitigation.]

30692\6662445.1

BladeRoom objects to the previous proposed jury instruction for each of the reasons below.

BladeRoom's Objections to Proposed Jury Instruction No. 33 [Proposed by Emerson]:

**BREACH OF CONTRACT—AFFIRMATIVE DEFENSE – MITIGATION OF DAMAGES**

1.  This instruction is unfairly prejudicial to Plaintiffs and likely to lead to juror confusion.  Bladeroom did not discover *Emerson's misconduct* until after it filed suit against Facebook and received discovery from Emerson (a third party at the time) and from Facebook that showed that Emerson had breached the NDA.  As such, Mitigation of Damages cannot be asserted by Emerson as an affirmative defense in this case because the damages that Plaintiffs seek arising from *Emerson's* breaches of its nondisclosure agreement with BladeRoom had already occurred at the time Plaintiffs discovered Emerson's breaches, so there is no mitigation BladeRoom could have done.  "The rule of [mitigation of damages] comes into play after a legal wrong has occurred, but while some damages may still be averted...." *Pool v. City of Oakland*, 42 Cal. 3d 1051, 1066 (1986) (citations and internal quotation marks omitted); *Valle de Oro Bank v. Gamboa*, 26 Cal. App. 4th 1686, 1691 (1994) ("Typically, the rule of mitigation of damages comes into play when the event producing injury or damage has already occurred and it then has become the obligation of the injured or damaged party to avoid *continuing or enhanced damages* through reasonable efforts.") (emphasis added)); *G & G Closed Circuit Events, LLC v. Nguyen*, No. 5:12-CV-03068 EJD, 2013 WL 2558151, at *3 (N.D. Cal. June 10, 2013) ("Nor would a cease and desist letter constitute mitigation of damages for an already-completed unlawful interception. The damage has been done at that point. Mitigation of damages is therefore inapplicable to this litigation.")

2.  Although Plaintiffs request that no instruction on Mitigation of Damages be given, if the Court is inclined to provide an instruction on Mitigation of Damages, Plaintiffs request that the Court reserve its decision on whether to issue such an instruction until the close of evidence to decide if sufficient evidence that Plaintiffs could have

54.

avoided the damages they claim has been submitted to instruct the jury on this affirmative defense.  Plaintiffs further request that any instruction given conform to the standard CACI instruction found on CACI 358, and that the heading and language make clear that the affirmative defense is only available to the contract claims.

[Proposed by Emerson]

Proposed Jury Instruction No. 34

**NO PUNITIVE DAMAGES FOR BREACH OF CONTRACT**

You must not include in your award for breach of contract any damages to punish or make an example of Emerson.  Such damages would be punitive damages, and they cannot be a part of your verdict.  You must award only the damages, if any, that fairly compensate Plaintiffs for their loss.

[*Authority*: Judicial Council of California, Civil Jury Instructions 3924; *see Myers Building Indus., Ltd. v. Interface Tech., Inc.*, 13 Cal. App. 4th 949, 960 (1993) ("An award of punitive damages is not supported by a verdict based on breach of contract, even where the defendant's conduct in breaching the contract was willful, fraudulent, or malicious.").]

30692\6662445.1

BladeRoom objects to the previous proposed jury instruction for each of the reasons below.

BladeRoom's Objections to Proposed Jury Instruction No. 34 [Proposed by Emerson]:

## NO PUNITIVE DAMAGES FOR BREACH OF CONTRACT

1.    This instruction is unnecessary and likely to lead to juror confusion because the Court's instruction on Punitive Damages for Willful And Malicious Misappropriation (*see* CACI 4411), which all parties agree should be given, instructs that if the jury finds trade secret misappropriation that caused BladeRoom harm, it "must decide whether that conduct justifies an award of punitive damages."

2.    Although Plaintiffs request that this instruction not be given, if the Court is inclined to provide an instruction on No Punitive Damages, Plaintiffs request that they be allowed to submit an instruction that will avoid jury confusion on the issue of punitive damages and that will clearly label the instruction with a title that makes clear that it applies only to the contract law claim.

# MISAPPROPRIATION OF TRADE SECRETS INSTRUCTIONS

30692\6662445.1

[Proposed by Plaintiffs]

Proposed Jury Instruction No. 35

**MISAPPROPRIATION OF TRADE SECRETS—INTRODUCTION**

BladeRoom claims that it is the owner of unique designs and methods for constructing large, "warehouse-sized" or "hyperscale" data centers using prefabricated sub-assemblies—namely the chassis, service cassette, and air optimizer sub-assemblies.

BladeRoom claims that these designs and methods of construction, which are described in Court Exhibit 1, are trade secrets and that Emerson misappropriated them.

"Misappropriation" means the improper acquisition, use, or disclosure of the trade secrets.

BladeRoom also claims that Emerson's misappropriation caused BladeRoom harm.

Emerson denies it improperly acquired, used, or disclosed BladeRoom's trade secrets.

Emerson also claims that BladeRoom's claimed designs and methods of construction were readily ascertainable by proper means.

[*Authority*: Judicial Council of California Civil Jury Instructions (CACI) 4400.]

30692\6662445.1

**Emerson's Objections**

Emerson objects to the preceding instruction and instead proposes its own instruction. BladeRoom's proposed instruction lacks precision and does not conform to the case they have presented to the jury.  BladeRoom's claim for misappropriation is not that Emerson misappropriated designs or methods for large data centers using pre-fabricated sub-assemblies, it is that Emerson misappropriated the specific information disclosed to it.  Plaintiffs have chosen to reduce that information to a description that is embodied in  Court Exhibit 1, which the jurors have had in their binders throughout trial.  Accordingly, it is BladeRoom's burden to prove both that the information Emerson received matched the trade secret description they have submitted to the jury, and that the trade secrets described in Trial Exhibit 1 were used by Emerson.  By submitting such vague and general descriptions of the trade secrets at issue in this case, Plaintiffs improperly seek to reformulate this trial into an abstract discussion of whether Emerson used BladeRoom's "methods and designs", instead of the trade secrets as established by the evidence and as Plaintiffs have defined them.  Emerson's version of this instruction incorporates Trial Exhibit 1.  Plaintiffs fail to include a trade secret description even in their version of CACI sec. 4401, which calls for a description of the trade secrets.  Emerson believes that this instruction is an appropriate place to include this description, and that subsequent instructions can refer back to this instruction.

Emerson objects to the preceding instruction on the grounds that it includes the concept of acquisition. There are no damages or harm alleged relating only to acquisition in BladeRoom's interrogatory responses or in the Wagner report.  *See* Wagner Report at ¶¶ 77, 169, 171, 362, 363, 389; BladeRoom's Consolidated Supplemental Response to Emerson Defendants' Interrogatories, July 14, 2017, Interrogatory 10, pp. 181-219; *see, e.g., Spokeo, Inc. v. Robins,* 136 S.Ct 1540, 1548 (2016) ("To establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is "concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'") (citations omitted). Harm is an essential element of a claim for trade secret misappropriation, so this instruction is improper.  Even assuming, *arguendo,* that Plaintiffs have alleged harm, they have not alleged damages, and Plaintiffs are therefore restricted to seeking only injunctive relief.  Injunctive relief is not a jury issue and this instruction is improper for this

60.

1  reason as well.

2        Emerson also objects to this instruction on the grounds that it includes the concept of

3  disclosure.  There is no evidence that Emerson disclosed any of the alleged trade secrets prior to

4  their publication in BladeRoom's patents, patent applications, Data Center Dynamics presentations,

5  or website, nor is there evidence of disclosure prior to the expiration of the NDA on August 17,

6  2013.  Emerson further objects on the grounds that there are no damages flowing from any alleged

7  disclosure, only alleged use in connection with the design of LLA-2.  *See* Wagner Report at ¶¶ 77,

8  169, 171, 362, 363, 389; BladeRoom's Consolidated Supplemental Response to Emerson

9  Defendants' Interrogatories, July 14, 2017, Interrogatory 10, pp. 181-219.

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**[PROPOSED] JURY INSTRUCTIONS**
**CASE NO. 15-CV-01370 EJD**

30692\6662445.1

==[Proposed by Emerson]==

Proposed Jury Instruction No. 35

**MISAPPROPRIATION OF TRADE SECRETS—INTRODUCTION**

"Misappropriation" means the improper use of the trade secrets.  BladeRoom claims that they are either the owner and/or licensee of certain alleged trade secrets.   Specifically, BladeRoom claims that Emerson misappropriated one individual trade secret and three combination trade secrets:

**Individual Trade Secrets**

*Trade Secret 1*:  New construction method for a warehouse-sized data center

**Combination Trade Secrets**

·*Trade Secret 1 in combination with Trade Secrets 2, 4, 5, and 6*

- *Trade Secret 1*:  New Construction Method for a Warehouse-Sized Data Center;
- *Trade Secret 2*:  Multi-purpose "chassis" sub-assembly design;
- *Trade Secret 4*: "Service cassette" sub-assembly design;
- *Trade Secret 5*: Air optimizer sub-assembly design; and
- *Trade Secret 6*: Design allowing for sub-assemblies to be deployed with flexible dimensions and in flexible configurations.

· *Trade Secret 2 in combination with Trade Secrets 4, 6.1, and 6.3*

- *Trade Secret 2*:  Multi-purpose "chassis" sub-assembly design;
- *Trade Secret 4*: "Service cassette" sub-assembly design;
- *Trade Secret 6.1*: The "chassis" sub-assembly, the vertical steel posts, and the "service cassette" sub-assembly are designed to have variable dimensions; and
- *Trade Secret 6.3*: The vertical support posts are designed to be adaptable to meet different structural load requirements and different local building and engineering codes.

· *Trade Secret 1 in combination with Trade Secrets 5, 6.2, and 6.4*

- *Trade Secret 1*:  New Construction Method for a Warehouse-Sized Data Center;
- *Trade Secret 5*: Air optimizer sub-assembly design; and

30692\6662445.1

- *Trade Secret 6.2*: The air-handling sub-assembly is deployable in multiple units and in different configurations; and

- *Trade Secret 6.4*: The cross-sectional area of the corridors and aisles inside the data center varies depending on the selected dimensions of the chassis and service cassette sub-assemblies and the steel support posts.

BladeRoom has the burden of proving these allegations.

BladeRoom also claims that Emerson's misappropriation caused BladeRoom harm and caused Emerson to be unjustly enriched.  BladeRoom has the burden of proving these allegations.

Emerson denies that these alleged trade secrets qualify as trade secrets.  Emerson also claims that the alleged trade secrets were readily ascertainable.  Emerson also denies that it misappropriated any of these alleged trade secrets, thus constituting a complete defense.

[*Authority*: Judicial Council of California Civil Jury Instruction § 4400.]

BladeRoom objects to the previous proposed jury instruction for each of the reasons below and proposes that the Court give BladeRoom's proposed jury instruction instead.

BladeRoom's Objections to Emerson's Proposed Jury Instruction No. 35:

## MISAPPROPRIATION OF TRADE SECRETS—INTRODUCTION

1.      Plaintiffs object to this instruction because the numbered and narrative listing of individual and combination trade secrets that Emerson has included in this proposed instruction does not conform with CACI 4400, does not accurately characterize the trade secrets at issue, and is likely to lead to juror confusion and error.

2.      Emerson's proposed instruction is unnecessary and likely to lead to error because the jury has received a detailed description of the actual trade secrets at issue in this case. By inaccurately summarizing the trade secrets – including focusing on only certain features of the trade secrets and leaving others out—this instruction erroneously and prejudicially portrays the scope of the trade secrets and is highly likely to confuse and mislead the jury and result in error.

3.      BladeRoom also objects to separating out the trade secrets asserted by BladeRoom into "individual" and "combination" trade secrets, as proposed in the instruction. This is misleading and incorrectly instructs as to an underlying fact (whether an asserted trade secret is a combination of information) that is an issue for the jury.  It also adds complexity to an introductory instruction that is not necessary and is offered solely to advance a defense theory of the case.

4.      For each of these reasons, Plaintiffs object to this proposed instruction and respectfully request that the Court instead give BladeRoom's proposed instruction No. 35:  MISAPPROPRIATION OF TRADE SECRETS—INTRODUCTION.

[Proposed by Plaintiffs]

Proposed Jury Instruction No. 36

**MISAPPROPRIATION OF TRADE SECRETS—ESSENTIAL FACTUAL ELEMENTS**

BladeRoom claims that Emerson has misappropriated BladeRoom's trade secret information by either improperly acquiring, using or disclosing BladeRoom's trade secrets.  To succeed on this claim, BladeRoom must prove all of the following:

1.    That BladeRoom owned and/or was a licensee of  one or more of the following: Trade Secret 1, Combination Trade Secret 5, Combination Trade Secret 8, or Combination Trade Secret 9, each of which is described in Court Exhibit 1;

2.    That the information in the asserted Trade Secrets was a trade secret at the time of the misappropriation;

3.    That Emerson improperly acquired, used, or disclosed one or more of the trade secrets;

4.    That BladeRoom was harmed or  Emerson was unjustly enriched; and

5.    That Emerson's acquisition, use, or disclosure was a substantial factor in causing BladeRoom's harm or causing Emerson to be unjustly enriched.


[*Authority*: Judicial Council of California Civil Jury Instructions (CACI) 4401.]

65.

1

**Emerson's Objections**

2        Emerson objects to the preceding instruction and instead proposes its own instruction.

3    BladeRoom's instruction deviates from the CACI instructions in ways that may confuse the jury.

4    CACI section 4401 calls for the instruction to "describe each item claimed to be a trade secret that is

5    subject to the misappropriation claim."  Plaintiffs instead use the vague terms "trade secret

6    information" and "trade secrets."  This misleadingly suggests that Plaintiffs can prevail on their trade

7    secret claim by demonstrating misappropriation of "information", when BladeRoom's claim requires

8    them to prove misappropriation of the specific trade secrets at issue in this case.

9        Emerson objects to the preceding instruction on the grounds that it includes the concept of

10   acquisition. There are no damages or harm alleged relating only to acquisition in BladeRoom's

11   interrogatory responses or in the Wagner report.  *See* Wagner Report at ¶¶ 77, 169, 171, 362, 363,

12   389; BladeRoom's Consolidated Supplemental Response to Emerson Defendants' Interrogatories,

13   July 14, 2017, Interrogatory 10, pp. 181-219; *see, e.g., Spokeo, Inc. v. Robins,* 136 S.Ct 1540, 1548

14   (2016) ("To establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a

15   legally protected interest' that is "concrete and particularized' and 'actual or imminent, not

16   conjectural or hypothetical.'") (citations omitted). Harm is an essential element of a claim for trade

17   secret misappropriation, so this instruction is improper.  Even assuming, *arguendo,* that Plaintiffs

18   have alleged harm, they have not alleged damages, and Plaintiffs are therefore restricted to seeking

19   only injunctive relief.  Injunctive relief is not a jury issue and this instruction is improper for this

20   reason as well.

21       Emerson also objects to this instruction on the grounds that it includes the concept of

22   disclosure.  There is no evidence that Emerson disclosed any of the alleged trade secrets prior to

23   their publication in BladeRoom's patents, patent applications, Data Center Dynamics presentations,

24   or website, nor is there evidence of disclosure prior to the expiration of the NDA on August 17,

25   2013.  Emerson further objects on the grounds that there are no damages flowing from any alleged

26   disclosure, only alleged use in connection with the design of LLA-2.  *See* Wagner Report at ¶¶ 77,

27   169, 171, 362, 363, 389; BladeRoom's Consolidated Supplemental Response to Emerson

28   Defendants' Interrogatories, July 14, 2017, Interrogatory 10, pp. 181-219.

66.

1

[Proposed by Emerson]

2

Proposed Jury Instruction No. 36

3

**MISAPPROPRIATION OF TRADE SECRETS – ESSENTIAL FACTUAL ELEMENTS**

4

5       BladeRoom claims that Emerson misappropriated one individual and three combination trade

6    secrets.  To succeed on this claim, BladeRoom must prove all of the following:

7       1.       That BladeRoom owned and/or was a licensee of the one individual and three

8    combination trade secrets;

9       2.       That these alleged trade secrets were trade secrets at the time of the misappropriation;

10      3.       That Emerson improperly used the alleged trade secrets;

11      4.       That BladeRoom was harmed or Emerson was unjustly enriched; and

12      5.       That Emerson's use was a substantial factor in causing BladeRoom's harm or

13   Emerson's unjust enrichment.

14       Emerson may not be held liable as to any alleged misappropriation of trade secrets unless all

15   of these elements of proof are satisfied as to that alleged trade secret.

16

17   [*Authority*: Judicial Council of California, Civil Jury Instructions 4401.]

18

19

20

21

22

23

24

25

26

27

28

BladeRoom objects to the previous proposed jury instruction for each of the reasons below and proposes that the Court give BladeRoom's proposed jury instruction instead.

BladeRoom's Objections to Emerson's Proposed Jury Instruction No. 36:

**MISAPPROPRIATION OF TRADE SECRETS—ESSENTIAL FACTUAL ELEMENTS**

1. This is not a standard CACI instruction. Emerson has altered the standard instruction to add language that is unnecessary and invites juror confusion. Emerson improperly changes the first line of this instruction from referencing "a trade secret" to "three individual and four combination trade secrets." This incorrectly implies that Plaintiffs must prove the elements for **all** of the individual and combination trade secrets in order to succeed on any part of its claim. This is a misstatement of the law, highly prejudicial to Plaintiffs, and likely to lead to error. The use of the term "three individual and four combination trade secrets" also suggests to the jury a conclusion on a factual issue (which trade secrets are combinations) that is a disputed issue of fact. This is also prejudicial to Plaintiffs and likely to lead to juror confusion and error.

2. Emerson's proposed jury instruction is also incomplete, prejudicial and invites further juror error by leaving out critical language that informs the jury that misappropriation of trade secrets can occur not only by use, but also by improper acquisition or disclosure. Emerson did not obtain summary judgment on acquisition or disclosure, and misappropriation by both improper acquisition and by disclosure remain in the case for determination by the jury. *See* Order re: Motions in Limine, Dkt. 737 at 10:9-19.

3. In addition, the following additional sentence in Emerson's proposed jury instruction is not in CACI 4401: "No Defendant may be held liable as to any alleged misappropriation of trade secret unless all of these elements of proof are satisfied as to that Defendant and as to that alleged trade secret." This additional language is unnecessary and potentially prejudicial to Plaintiffs as the standard CACI instruction already states that "To succeed on this claim, BladeRoom must prove all of the

following." It is also further unnecessary as there is only one defendant (Emerson) remaining in the case.

**4.** Plaintiffs request that the Court give the standard CACI instruction, with no additions or modifications, as proposed by Plaintiffs in Jury Instruction No. 36 [Proposed by Plaintiffs].

69.

[Proposed by Plaintiffs]

Proposed Jury Instruction No. 37

**"TRADE SECRET" DEFINED**

To prove that an asserted Trade Secret, each of which is described in Court Exhibit 1, was a trade secret, BladeRoom must prove all of the following:

1.     That the information was secret;

2.     That the information had actual or potential independent economic value because it was secret; and

3.     That BladeRoom made reasonable efforts to keep the information secret.

[*Authority*: Judicial Council of California Civil Jury Instructions (CACI) 4402.]

70.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Emerson's Objections**

Emerson objects to the preceding instruction on the same grounds as it objects to BladeRoom's "Misappropriation of Trade Secrets–Introduction" instruction, and instead proposes its own instruction.  Emerson's instruction clarifies what "trade secrets" are at issue.  Plaintiffs' instruction is vague and confusing because "confidential information" is also at issue in this case, but is not relevant to the trade secret claim.

[Proposed by Emerson. ]

Proposed Jury Instruction No. 37

**"TRADE SECRET" DEFINED**

To prove that the alleged trade secrets as defined in Instruction No. [x] qualify as trade secrets, BladeRoom must prove all of the following elements for each alleged trade secret:

1.      That, at the time of the alleged misappropriation, these alleged trade secrets, as defined in instruction No. X, were secret;

2.      That, at the time of the alleged misappropriation, these alleged trade secrets had actual or potential independent economic value because they were secret; and

3.      That BladeRoom made reasonable efforts to keep these alleged trade secrets secret.

[*Authority*: Judicial Council of California, Civil Jury Instructions 4402; *see also* Cal. Civ. Proc. Code § 3426.1(d) (defining a trade secret as information that derives independent economic value and that is the subject of reasonable efforts to maintain secrecy).]

30692\6662445.1

BladeRoom objects to the previous proposed jury instruction for each of the reasons below and proposes that the Court give BladeRoom's proposed jury instruction instead.

BladeRoom's Objections to Emerson's Proposed Jury Instruction No. 37:

### "TRADE SECRET" DEFINED

1.  Emerson's modification of the language in CACI 4402 to refer to "alleged trade secrets" and to reference some other "instruction No. X" is confusing, circular and unnecessary.  CACI 4402 uses the language "information," which was also the language originally proposed by Emerson for this instruction.  Because this instruction is intended to define "trade secret," Emerson's circular use of the term "alleged trade secrets" in the definition is confusing and fails to clearly instruct the jury on the elements of the claim.

2.  Describing the trade secret information by reference to other sets of instructions proposed by Emerson which are also objectionable (for all the reasons identified by Plaintiffs including inaccuracy, prejudice, and misstatement of law), as proposed by Emerson in this instruction, is also unhelpful and confusing to the jury, prejudicial and misleading, and also results in incorrectly instructing as to an underlying fact that is an issue for the jury.

3.  Plaintiffs also object to the wording of this proposed instruction on the grounds that it should refer to Plaintiffs as "BladeRoom" as this naming convention is less likely to lead to juror confusion and consistent with CACI.

73.

[Proposed by Parties]

Proposed Jury Instruction No. 38

**SECRECY REQUIREMENT**

The secrecy required to prove that something is a trade secret does not have to be absolute in the sense that no one else in the world possesses the information. It may be disclosed to BladeRoom employees involved in the use of the trade secret as long as they are instructed to keep the information secret. It may also be disclosed to nonemployees if they are obligated to keep the information secret. However, it must not have been generally known to the public or to people who could obtain value from knowing it.

[*Authority*: Judicial Council of California Civil Jury Instructions (CACI) 4403.]

30692\6662445.1

1

[Proposed by Parties]

2

Proposed Jury Instruction No. 39

3

**"INDEPENDENT ECONOMIC VALUE" EXPLAINED**

4

5
6
7

A trade secret has independent economic value if it gives the owner an actual or potential business advantage over others who do not know the information and who could obtain economic value from its disclosure or use.

8
9

In determining whether information had actual or potential independent economic value because it was a secret, you may consider the following:

10
11

1.      The extent to which BladeRoom obtained or could obtain economic value from the information in keeping it secret;

12
13

2.      The extent to which others could obtain economic value from the information if it were not secret;

14
15

3.      The amount of time, money, or labor that BladeRoom expended in developing the information;

16
17

4.      The amount of time, money, or labor that was or would be saved by a competitor using the information.

18

The presence or absence of any one or more of these factors is not necessarily determinative.

19
20

[*Authority*: Judicial Council of California Civil Jury Instructions (CACI) 4412.]

21
22
23
24
25
26
27
28

75.

[Proposed by Parties]

Proposed Jury Instruction No. 40

**REASONABLE EFFORTS TO PROTECT SECRECY**

To establish that its information is a trade secret, BladeRoom must prove that it made reasonable efforts under the circumstances to keep it secret.

"Reasonable efforts" are the efforts that would be made by a reasonable business in the same situation and having the same knowledge and resources as BladeRoom, exercising due care to protect important information of the same kind. This requirement applies separately to each item that BladeRoom claims to be a trade secret.

In determining whether or not BladeRoom made reasonable efforts to keep the information secret, you should consider all of the facts and circumstances. Among the factors you may consider are the following:

1.      Whether documents or computer files containing the information were marked with confidentiality warnings;

2.      Whether BladeRoom instructed its employees to treat the information as confidential;

3.      Whether BladeRoom restricted access to the information to persons who had a business reason to know the information;

4.      Whether BladeRoom kept the information in a restricted or secured area;

5.      Whether BladeRoom required employees or others with access to the information to sign confidentiality or nondisclosure agreements;

6.      Whether BladeRoom took any action to protect the specific information, or whether it relied on general measures taken to protect its business information or assets;

7.      The extent to which any general measures taken by BladeRoom would prevent the unauthorized disclosure of the information;

8.      Whether there were other reasonable measures available to BladeRoom that it did not take.

The presence or absence of any one or more of these factors is not necessarily determinative.

30692\6662445.1

1    [*Authority*: Judicial Council of California Civil Jury Instructions (CACI) 4404.]

==[Proposed by Plaintiffs]==

Proposed Jury Instruction No. 41

**COMBINATIONS OF INFORMATION AS TRADE SECRETS**

Combinations of public or generally known information can be a trade secret. It does not matter if a portion of the trade secret information is generally known, or even that every individual portion of the trade secret information is generally known, as long as the combination of the information is not generally known and has independent economic value.

[*Authority*: *Altavion, Inc. v. Konica Minolta Systems Laboratory, Inc.*, 226 CAl. App. 4th 26, 47-48 (2014) ("[E]ven if some or all of the elements of design were in the public domain and thus unprotectable, the combination was a protectable trade secret if it was secret and had independent economic value."); *see also Micro Int'l Ltd. v. Monolithic Power Sys., Inc.*, 399 F. Supp. 2d 1064, 1073 (N.D. Cal. 2005); *UniRAM Tech., Inc. v. Taiwan Semiconductor Mfg. Co.*, 617 F. Supp. 2d 938, 945–46 (N.D. Cal. 2007); *Leatt Corp. v. Innovative Safety Tech., LLC*, 2010 WL 1526382, at *6 (S.D. Cal. Apr. 15, 2010); *SkinMedica, Inc. v. Histogen Inc.*, 869 F. Supp. 2d 1176, 1196 (S.D. Cal. 2012); *United States v. Nosal*, 844 F.3d 1024, 1042 (9th Cir. 2016); *Verigy US, Inc. v. Mayder*, 2008 WL 564634, at *6 (N.D. Cal. Feb. 29, 2008).]

30692\6662445.1

**Emerson's Objections**

Emerson objects to the preceding instruction and instead proposes its own instruction. BladeRoom's instruction misstates the law.  A combination of trade secrets or components can only be a trade secret where the combination forms a unique, unified process or design.  *See Rivendell Forest Prods., Ltd. v. Georgia-Pacific Corp.*, 28 F.3d 1042, 1045 (10th Cir. 1994) ("a trade secret can exist in a combination of characteristics and components, each of which, by itself, is in the public domain, but the unified process, design and operation of which, in unique combination, affords a competitive advantage and is a protectable secret"); *Texas Advanced Optoelectronic Sols., Inc. v. Renesas Elecs. Am., Inc.*, No. 2016-2121, 2018 WL 2011463,n.4 (Fed. Cir. May 1, 2018); *Imperial Chem. Indus. Ltd. v. Nat'l Distillers & Chem. Corp.*, 342 F.2d 737, 742 (2d Cir. 1965) (same); *3M v. Pribyl*, 259 F.3d 587, 595–96 (7th Cir. 2001) (same); *Integrated Cash Mgm't Servs., Inc. v. Digital Trans., Inc.*, 920 F.2d 171, 174 (2d Cir. 1990) (same); *Harvey Barnett, Inc. v. Shidler*, 338 F.3d 1125, 1130 (10th Cir. 2003) (citing to *Rivendell* and stating that "*Rivendell*'s requirement of analysis in the aggregate is more than a formality. It is a substantive component of trade-secret analysis integral to a court's ultimate conclusion regarding the existence of material facts for trial."); *U.S. v. Nosal*, 844 F.3d 1024, 1042 (9th Cir. 2016) ("It is the secrecy of the claimed trade secret as a whole that is determinative . . . A trade secret can exist in a combination of characteristics and components, each of which, by itself, is in the public domain, but the unified process design and operation of which in unique combination affords a competitive advantage and is a protectable trade secret."); *Altavion, Inc. v. Konica Minolta Sys. Lab. Inc.*, 226 Cal. App. 4th 26, 47-48 (2014) (citing *Rivendell*) ("a trade secret can include a system where the elements are in the public domain, but there has been accomplished an effective, successful and valuable integration of the public domain elements and the trade secret gave the claimant a competitive advantage which is protected from misappropriation.")

30692\6662445.1

1

[Proposed by Emerson.]

2

Proposed Jury Instruction No. 41

3

**COMBINATION TRADE SECRETS**

4

5     A combination of trade secrets or elements can itself be a trade secret where the combination

6   is BladeRoom's unique, unified process or design, known by Plaintiffs and in existence at the time

7   of the alleged misappropriation, that is not generally known and that affords an actual or potential

8   competitive advantage to persons possessing that information.

9     To establish misappropriation of a combination trade secret, BladeRoom must establish that

10  each of the individual trade secrets that make up that combination trade secret was misappropriated.

11  If any one of the individual trade secrets that make up a combination was not misappropriated, then

12  you must find that the combination itself was not misappropriated.

13

14  [*Authority*: *See* Cal. Civ. Proc. Code § 2019.210 (requiring identification of trade secrets for

15  purposes of a misappropriation analysis); *see also Imax Corp. v. Cinema Techs., Inc.*, 152 F.3d 1161,

16  1164-65 (9th Cir. 1998) (finding that a plaintiff must "describe the subject matter of the trade secret

17  with sufficient particularity to separate it from matters of general knowledge in the trade or of

18  special knowledge of those persons . . . skilled in the trade") (internal quotations and citation

19  omitted); *Rivendell Forest Prods., Ltd. v. Georgia-Pacific Corp.*, 28 F.3d 1042, 1045 (10th Cir.

20  1994) ("a trade secret can exist in a combination of characteristics and components, each of which,

21  by itself, is in the public domain, but the unified process, design and operation of which, in unique

22  combination, affords a competitive advantage and is a protectable secret"); *Texas Advanced*

23  *Optoelectronic Sols., Inc. v. Renesas Elecs. Am., Inc.,* No. 2016-2121, 2018 WL 2011463,n.4 (Fed.

24  Cir. May 1, 2018); *Imperial Chem. Indus. Ltd. v. Nat'l Distillers & Chem. Corp.*, 342 F.2d 737, 742

25  (2d Cir. 1965) (same); *3M v. Pribyl*, 259 F.3d 587, 595–96 (7th Cir. 2001) (same); *Integrated Cash*

26  *Mgm't Servs., Inc. v. Digital Trans., Inc.*, 920 F.2d 171, 174 (2d Cir. 1990) (same); *Harvey Barnett,*

27  *Inc. v. Shidler*, 338 F.3d 1125, 1130 (10th Cir. 2003) (citing to Rivendell and stating that

28  "Rivendell's requirement of analysis in the aggregate is more than a formality. It is a substantive

30692\6662445.1

component of trade-secret analysis integral to a court's ultimate conclusion regarding the existence of material facts for trial."); *GSI Tech., Inc. v. United Memories, Inc.*, No. 5:13-CV-01081-PSG, 2016 WL 3035699, at *6 (N.D. Cal. May 26, 2016) (rejecting proposed instruction that use of any substantial portion of the trade secret constitutes misappropriation where parts of the trade secret consist of information that is publicly available); *02 Micro Intern. Ltd. v. Monolithic Power Sys., Inc.*, 399 F. Supp. 2d 1064, 1074 (N.D. Cal. 2005) (requiring proof of misappropriation of each element of a combination trade secret); *Vital State Canada, Ltd. v. DreamPak, LLC*, 303 F. Supp. 2d 516, 529 (D.N.J. 2003) ("This assertion that the trade secret is the combination of the elements is crucial to this motion, since it means that, to prove use of the trade secret, DreamPak must prove use of each and every element in combination."); *Iconics, Inc. v. Massaro*, No. CV 11-11526, 2017 WL 3083162, at *2 (D. Mass. July 19, 2017) (quoting *American Airlines, Inc. v. KLM Royal Dutch Airlines, Inc.*, 114 F.3d 108, 111-12 (8th Cir. 1997)) ("expert's testimony that 'the specific combination of all five elements constitutes a trade secret' meant combination of fewer than five elements would not constitute the trade secret").]

81.

30692\6662445.1

BladeRoom objects to the previous proposed jury instruction for each of the reasons below and proposes that the Court give BladeRoom's proposed jury instruction instead.

BladeRoom's Objections to Emerson's Proposed Jury Instruction No. 41:

### COMBINATION TRADE SECRETS

1.    Plaintiffs object to Emerson's proposed jury instruction on the grounds that it contradicts California law and invites the jury to apply the wrong legal standard. *See* Order Granting in Part and Denying in Part Defendant's Motion for Summary Judgment, Dkt. 493 at 22:15-23.

2.    Emerson's proposed instruction language that "a combination of trade secrets or elements can itself be a trade secret where the combination is a unique, unified process or design that is not generally known and that affords an actual or potential competitive advantage to persons possessing that information" is misleading, inaccurate and incomplete because it fails to instruct the jury on the specific point of difference in the California law on combination—specifically, that *even if some or all of the elements are public, the combination of those elements can still be a trade secret if it is secret and has independent economic value.* The leading California case on combinations makes this well-established distinction clear:  "[E]ven if some or all of the elements of design were in the public domain and thus unprotectable, the combination was a protectable trade secret if it was secret and had independent economic value." *Altavion, Inc. v. Konica Minolta Sys. Lab. Inc.*, 226 Cal. App. 4th 26, 47 (2014); *see also California Int'l Chem. Co. v Sister H Corp.*, 168 F.3d 498 (9th Cir. 1999).  Indeed, the Court has previously recognized that it is an "*uncontroversial proposition* that a combination of *nonsecret* elements is entitled to the same trade secret protection as any discovery." *UniRAM Technology Inc. v. Taiwan Semiconductor Mfg. Co.*, 617 F.Supp.2d 938, 942 (N.D. Cal. 2007) (emphasis added).

3.    Plaintiffs request that the Court give their proposed instruction in Proposed Jury Instruction No. xx COMBINATIONS AS TRADE SECRETS as it accurately reflects the law on combination trade secrets, is consistent with the Court's Order Granting in

82.

1    Part and Denying in Part Defendant's Motion for Summary Judgment, Dkt. 493 at

2    22:15-23, and, in contrast to the incorrect legal instruction submitted by Emerson on

3    Combinations, will not invite juror error.

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**[PROPOSED] JURY INSTRUCTIONS**
**CASE NO. 15-CV-01370 EJD**

[Proposed by Plaintiffs]

Proposed Jury Instruction No. 42

**MISAPPROPRIATION BY USE**

Emerson misappropriated BladeRoom's trade secrets by use if it:

1.      Used them without BladeRoom's consent; and

2.      Did any of the following:

Acquired knowledge of the trade secrets by improper means; or

At the time of use, knew or had reason to know that its knowledge of BladeRoom's trade secrets came from or through Facebook, and that Facebook had previously acquired the trade secrets by improper means; or

At the time of use, knew or had reason to know that its knowledge of BladeRoom's trade secrets was acquired under circumstances creating a legal obligation to limit use of the information; or

At the time of use, knew or had reason to know that its knowledge of BladeRoom's trade secrets came from or through Facebook, and that Facebook had a duty to BladeRoom to limit use of the information.

[*Authority*: Judicial Council of California Civil Jury Instructions (CACI) 4407.]

84.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Emerson's Objections**

Emerson objects to the preceding instruction and instead proposes its own instruction.
Emerson objects to the portions of the instruction that seek to impose liability on Emerson because
of Facebook's alleged improper acquisition and alleged duty to limit use of the information.  There
is no substantial evidence of such improper acquisition or duty to limit use of the information.

85.

30692\6662445.1

Proposed Jury Instruction No. 43

**MISAPPROPRIATION BY ACQUISITION**

Emerson misappropriated BladeRoom's trade secrets by acquisition if they acquired the trade secrets and knew or had reason to know that they had used improper means to acquire them.

[*Authority*: Judicial Council of California Civil Jury Instructions (CACI) 4405.]

1

**<u>Emerson's Objections</u>**

2

Emerson objects to the preceding instruction as there are no damages or harm alleged relating

3

only to acquisition in BladeRoom's interrogatory responses or in the Wagner report. *See* Wagner

4

Report at ¶¶ 77, 169, 171, 362, 363, 389; BladeRoom's Consolidated Supplemental Response to

5

Emerson Defendants' Interrogatories, July 14, 2017, Interrogatory 10, pp. 181-219; *see, e.g., Spokeo,*

6

*Inc. v. Robins,* 136 S.Ct 1540, 1548 (2016) ("To establish injury in fact, a plaintiff must show that he

7

or she suffered 'an invasion of a legally protected interest' that is "concrete and particularized" and

8

'actual or imminent, not conjectural or hypothetical.'") (citations omitted). Harm is an essential

9

element of a claim for trade secret misappropriation, so this instruction is improper. Even assuming,

10

*arguendo,* that Plaintiffs have alleged harm, they have not alleged damages, and Plaintiffs are

11

therefore restricted to seeking only injunctive relief. Injunctive relief is not a jury issue and this

12

instruction is improper for this reason as well.

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

87.

30692\6662445.1

[Proposed by Plaintiffs.]

Proposed Jury Instruction No. 44

**IMPROPER MEANS OF ACQUIRING TRADE SECRET**

Improper means of acquiring a trade secret or knowledge of a trade secret include, but are not limited to, theft, misrepresentation, or breach of a duty to maintain secrecy.

[*Authority*: Judicial Council of California Civil Jury Instructions (CACI) 4408.]

30692\6662445.1

1

**<u>Emerson's Objections</u>**

2

  Emerson objects to this instruction for the same reasons as the instruction on acquisition

3

immediately preceding this instruction.

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

89.

==Proposed by Plaintiffs.==

Proposed Jury Instruction No. 45

**MISAPPROPRIATION BY DISCLOSURE**

Emerson misappropriated BladeRoom's trade secrets by disclosure if it:

1.       Disclosed them without BladeRoom's consent; and

2.       Did any of the following:

Acquired knowledge of the trade secrets by improper means; or

At the time of disclosure, knew or had reason to know that its knowledge of BladeRoom's trade secrets came from or through Facebook, and that Facebook had previously acquired the trade secrets by improper means; or

At the time of disclosure, knew or had reason to know that its knowledge of BladeRoom's trade secrets was acquired under a non-disclosure agreement, which created a duty to keep the information secret; or

At the time of disclosure, knew or had reason to know that its knowledge of BladeRoom's trade secrets came from or through Facebook, and that Facebook had a duty to BladeRoom to keep the information secret.

[*Authority*: Judicial Council of California Civil Jury Instructions (CACI) 4406.]

30692\6662445.1

1

## **<u>Emerson's Objections</u>**

2      Emerson objects to this instruction as there is no evidence that Emerson disclosed any of the

3   alleged trade secrets prior to their publication in BladeRoom's patents, patent applications, Data

4   Center Dynamics presentations, or website, nor is there evidence of disclosure prior to the expiration

5   of the NDA on August 17, 2013.  Emerson further objects on the grounds that there are no damages

6   flowing from any alleged disclosure, only alleged use in connection with the design of LLA-2.  *See*

7   Wagner Report at ¶¶ 77, 169, 171, 362, 363, 389; BladeRoom's Consolidated Supplemental

8   Response to Emerson Defendants' Interrogatories, July 14, 2017, Interrogatory 10, pp. 181-219.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**[Proposed] Jury Instructions**
**Case No. 15-cv-01370 EJD**

30692\6662445.1

1

[Proposed by Emerson]

2

Proposed Jury Instruction No. 46

3

**MISAPPROPRIATION BY USE**

4

5          Misappropriation by use requires actual use.  Emerson did not misappropriate BladeRoom's

6     alleged trade secrets by use unless BladeRoom proves that Emerson:

7          1.     Used the alleged trade secrets without BladeRoom's consent; and

8          2.     At the time of use, knew or had reason to know that their knowledge of BladeRoom's

9     alleged trade secrets were acquired under circumstances creating a legal obligation to limit use of the

10    information.

11

12    [*Authority*: Judicial Council of California, Civil Jury Instructions 4407.]

30692\6662445.1

BladeRoom objects to the previous proposed jury instruction for each of the reasons below and proposes that the Court give BladeRoom's proposed jury instruction instead.

BladeRoom's Objections to Emerson's Proposed Jury Instruction No. 46:

## MISAPPROPRIATION BY USE

1.     Emerson improperly leaves out relevant parts of the suggested language in CACI 4407. CACI 4407 states that "any of the following" actions by defendants could constitute misappropriation by use:

"(1) Acquired knowledge of the trade secrets by improper means; or

(2) At the time of use, knew or had reason to know that its knowledge of [name of plaintiff]'s trade secrets came from or through [name of third party], and that [name of third party] had previously acquired the trade secrets by improper means; or

(3) At the time of use, knew or had reason to know that its knowledge of [name of plaintiff]'s trade secrets was acquired under circumstances creating a legal obligation to limit use of the information; or

(4) At the time of use, knew or had reason to know that its knowledge of [name of plaintiff]'s trade secrets came from or through [name of third party], and that [name of third party] had a duty to [name of plaintiff] to limit use of the information."

Emerson leaves out the language in (1), (2), and (4), although these prongs are relevant to the claims at issue in this case.  Emerson cannot limit its potential grounds for liability for misappropriation by use, by submitting jury instructions that skew the law and the facts at issue in this case.   Emerson's proposed jury instruction misrepresents the law on misappropriation by use, is prejudicial, and invites juror confusion and error.

Emerson leaves out the language in (1), (2), and (4), although these prongs are relevant to the claims at issue in this case.  Emerson cannot limit its potential grounds for liability for misappropriation by use, by submitting jury instructions that skew the law and the facts at issue in this case.  Emerson's proposed jury instruction misrepresents the law on misappropriation by use, is prejudicial, and invites juror confusion and error.

2.     Instead of this instruction, Plaintiffs request that the Court give Jury Instruction No. xx "Misappropriation by Use" [Proposed by Plaintiffs], which contains the full standard instruction provided in CACI 4407, unmodified, and also provide an

93.

additional instruction on use to address the law of substantial derivation, which was at issue in the parties' summary judgment motions, has been resolved by the Court in that context, and is captured in the proposed jury instruction on "Use" Explained [Proposed by Plaintiffs].

94.

1

[Proposed by Plaintiffs.]

2

Proposed Jury Instruction No. 47

3

**"USE" EXPLAINED**

4

5       Misappropriation by use of trade secrets occurs even if Emerson's design differs in some

6   respects from the trade secret.  In the context of trade secret misappropriation, information may be

7   improperly 'used' in that it is unlawfully acquired, disclosed or used for development and then built

8   upon or modified.

9       You may determine that Emerson has misappropriated BladeRoom's trade secrets even if

10  there are differences between BladeRoom's trade secrets and Emerson's design as long as you find

11  that the Emerson design was substantially derived from BladeRoom's trade secrets.

12      Trade secret misappropriation by use can occur in a wide variety of ways, including

13  employing the confidential information in manufacturing, production, research or development,

14  marketing goods that embody the trade secret, or soliciting customers through the use of trade secret

15  information.

16

17  [*Authority*: Order Granting in Part and Denying in Part Defendant's Motion for Summary Judgment,
    Dkt. 493 at 22:15-23; *InfoSpan Inc. v. Emirates NBD Bank PJSC*, 2015 WL 13357646, at *5 (C.D.

18  Cal. May 6, 2015) ("Employing the confidential information in manufacturing, production, research
    or development, marketing goods that embody the trade secret, or soliciting customers through the

19  use of trade secret information, all constitute use"); *PMC, Inc. v. Kadisha*, 78 Cal. App. 4th 1368,
    1383 (2000) (same); *Speech Tech Assoc. v. Adaptive Commc'n Sys. Inc.*, 1994 WL 449032, at *10

20  (N.D. Cal. Aug. 16, 1994) (incidental differences between the trade secrets and the defendants'
    product do not absolve defendants from liability for misappropriation of trade secrets); *SkinMedica,*

21  *Inc. v. Histogen Inc.*, 869 F. Supp. 2d 1176, 1179 (S.D. Cal. 2012) ("In the context of trade secret
    misappropriation, information may be improperly 'used' in that it is unlawfully acquired and then

22  built upon or modified before being disclosed or benefit derived").]

23

24

25

26

27

28

95.

30692\6662445.1

1

**Emerson's Objections**

2        Emerson objects to the preceding instruction and instead proposes its own instruction.

3   Emerson objects to this instruction because it misstates the law.  The introductory sentence provides

4   that "[m]isappropriation  by use . . . *occurs* even if Emerson's design differs in some respects from

5   the trade secret" without any qualifying language.  This instructs the jury to find use if Emerson's

6   design differs in some respect from the alleged trade secrets.  That is not law, which requires

7   Plaintiffs to demonstrate use.  *See* CACI § 4407.  In addition, BladeRoom's instruction fails to

8   disclose an important qualification – a Defendant cannot be shown to "use" a trade secret if all it has

9   "used" are publicly-available portions of that trade secret.  *See GSI Tech., Inc. v. United Memories,*

10  *Inc.,* No. 5:13-CV-01081-PSG, 2016 WL 3035699, at *6 (N.D. Cal. May 26, 2016).  That which is

11  public cannot be a trade secret.  CACI § 4402.  BladeRoom's instruction, especially when combined

12  with their "Combination" instruction, would permit the jury to find misappropriation by use where

13  Emerson used only publicly-available information.  Although a combination trade secret can

14  incorporate publicly-known elements, the combination itself must have independent economic value.

15  If only certain publicly-known elements are shown to be used, the use of the *combination* cannot be

16  shown.

17        Moreover, the relevant case law repeatedly refers to the "differences" between a trade secret

18  and a substantially-derived accused product as "incidental" or "minor." *See, e.g.*, *Speech Tech Assoc.*

19  *v. Adaptive Commc'n Sys. Inc.*, 1994 WL 449032, at *10 (N.D. Cal. Aug. 16, 1994); *UniRAM Tech.,*

20  *Inc. v. Taiwan Semiconductor Mfg. Co.*, 617 F. Supp. 2d 938, 945 (N.D. Cal. 2007) (declining to

21  grant summary judgment where the "deviations" between the trade secret and the accused product

22  were "not material.").  BladeRoom's reference to "differences" is not so-qualified.  The instruction

23  is also vague, as it provides the jury little guidance in interpreting the concept of substantial

24  derivation.  Moreover, BladeRoom's instruction, and in particular the final paragraph of the

25  instruction, does not make clear that, under the law of substantial derivation, any finding of use is

26  conditioned on a finding of substantial derivation.  Finally, Emerson objects to the final paragraph of

27  the instruction as superfluous.

28

**[PROPOSED] JURY INSTRUCTIONS**
**CASE NO. 15-CV-01370 EJD**

30692\6662445.1

1

[Proposed by Emerson]

2

Proposed Jury Instruction No. 47

3

**"USE" EXPLAINED**

4

5       To prove that Emerson "used" an alleged trade secret, BladeRoom must prove that Emerson

6   manufactured, produced, or marketed a product that contained either the alleged trade secret or a

7   design that Emerson substantially derived from researching the alleged trade secret.  A design is

8   substantially derived from an alleged trade secret when the design is based on the alleged trade

9   secret to a significant extent.  A design is not substantially derived from an alleged trade secret when

10  that design is based on publicly available information, information received from other sources, or

11  information known prior to access to the alleged trade secrets.

12

13  [*Authority*: *Callaway Golf Co. v. Dunlop Slazenger Grp. Americas, Inc.*, 318 F. Supp. 2d 205, 214

14  (D. Del. 2004) (proving misappropriation by use requires a "substantial identity" between the trade

15  secret and the accused product); *Plains Cotton Co-Op Ass'n of Lubbock, Texas v. Goodpasture*

16  *Computer Serv., Inc.*, 807 F.2d 1256, 1263 (5th Cir. 1987) ( where the purported trade secrets are a

17  "matter of design" the "issue of misuse boils down to evidence of copying.  If no copying occurred

18  on any level," the plaintiff cannot demonstrate misuse); *see Brookhaven Typesetting*

19  *Servs., Inc. v. Adobe Sys., Inc.*, No. C-01-20813, 2007 WL 2429653, at *11 (N.D. Cal. Aug. 24,

20  2007) (granting summary judgment where plaintiff failed to offer evidence "directly refut[ing]"

21  findings by the defendant's expert that plaintiff's trade secrets did not appear in defendant's

22  product); *UniRam Tech., Inc. v. Taiwan Semiconductor Mfg. Co.*, 617 F. Supp. 2d 938, 945 (N.D.

23  Cal. 2007) (rejecting summary judgment on issue of misappropriation because differences between

24  accused product and the trade secret were "not material"); *Maxtech Consumer Prod., Ltd. v. Robert*

25  *Bosch Tool Corp.*, No. 15 C 5951, 2017 WL 2573033, at *16 (N.D. Ill. May 18, 2017) (granting

26  summary judgment where there was a "significant difference" between the trade secret and

27  defendant's product); *American Can Co. v. Mansukhani*, 742 F.2d 314, 328-29 (7th Cir. 1984) (a

28  defendant has not used a trade secret unless the accused product is "substantially derived" from the

trade secret); *GSI Tech., Inc. v. United Memories, Inc.*, No. 5:13-CV-01081-PSG, 2016 WL

3035699, at *6 (N.D. Cal. May 26, 2016) (claim for misappropriation cannot be based on use of

publicly-available information); Restatement (Third) of Unfair Competition § 40;

https://en.oxforddictionaries.com/definition/substantially]

BladeRoom objects to the previous proposed jury instruction for each of the reasons below.

BladeRoom's Objections to Emerson's Proposed Jury Instruction No. 47:

### "USE" EXPLAINED

1.     BladeRoom objects to Emerson's proposed jury instruction because it is an inaccurate description of the law and would confuse the jury into applying the wrong legal standard. Emerson's proposed jury instruction incorrectly limits misappropriation by use to just manufacturing, producing, or marketing a product that contained the trade secret. California law recognizes many different types of misappropriation by use, not just the ones enumerated by Emerson. For example, courts analyzing this issue under CUTSA have found that misappropriation by use includes using a trade secret as a substantial influence on a product's design, for internal experimentation, for research and development, for marketing, or for soliciting customers. *See SkinMedica, Inc. v. Histogen, Inc.*, 869 F.Supp.2d 1176, 1179 (S.D. Cal. 2012); *Think Village-Kiwi, LLC v. Adobe Sys., Inc.*, No. C08-04166 SI, 2009 WL 3837270, at *3 (N.D. Cal. Nov. 16, 2009); *InfoSpan, Inc. v. Emirates NBD Bank PJSC*, No. SACV 111062 JVS(ANX), 2015 WL 13357646, at *5 (C.D. Cal. May 6, 2015); *O2 Micro Int'l. Ltd. v. Monolithic Power Sys., Inc.* 399 F.Supp.2d 1064, 1072 (N.D. Cal. 2005), *amended* 420 F.Supp.2d 1070 (N.D. Cal. 2006), *aff'd*, 221 F. App'x 996 (Fed. Cir. 2007). Similarly, Emerson wrongly limits the substantial derivation standard used for determining misappropriation of use *in all instances* to only instances where a design is substantially derived from researching the alleged the trade secret. As demonstrated by the cases cited above, use and substantial derivation are not so limited.

2.     Emerson also fabricates its own substantially derived standard by defining it as "when the design is based on the alleged trade secret to a significant extent." Emerson does not rely on any CUTSA authority to support this definition. In California, substantial derivation is not so limited. Substantial derivation includes instances where trade

30692\6662445.1

secrets have been acquired and selectively used, or "built upon or modified before being disclosed or benefit derived." *SkinMedica*, 869 F.Supp. 2d at 1197; *see also InfoSpan,* 2015 WL 13357646, at *5 ("[T]he Bank cannot avoid liability for misappropriation by allegedly taking a bundle of trade secrets and not using the entire bundle, but then selectively choosing which ones it would use.").  Indeed, in *SkinMedica*, the Court rejected the argument that the defendant's product was not substantially derived from the plaintiff's trade secrets even when defendant alleged it did not use 5 out of the 8 claimed elements.  869 F.Supp. 2d at 1179.  "A party may not use another's trade secret even with independent improvements or modifications so long as the product or process is substantially derived from the trade secret … If the law were not flexible enough to reach such modifications, trade secret protection would be quite hollow." *American Can Co. v Mansukhani*, 742 F.2d 314, 328-29 (7th Cir. 1984) (citations omitted); *see also Speech Tech Assocs. v. Adaptive Commc'n Sys.*, No. C-88-2392-VRW, 1994 WL 449032, at *10 (N.D. Cal. Aug. 16, 1994).

**3.**     Plaintiffs request that the Court give Jury Instruction No. xx "Means of Use"[Proposed by Plaintiffs] as it accurately reflects the law on trade secret misappropriation by use and is thus less likely to result in juror error than the proposed instruction submitted by Emerson which is not supported by case law and in fact misstates trade secret law in California.

[Proposed by Plaintiffs]

Proposed Jury Instruction No. 48

**AFFIRMATIVE DEFENSE TO MISAPPROPRIATION—INFORMATION WAS READILY ASCERTAINABLE BY PROPER MEANS**

Emerson did not misappropriate BladeRoom's trade secrets if Emerson proves that each claimed trade secret was readily ascertainable by proper means at the time of the alleged acquisition, use, or disclosure.

There is no fixed standard for determining what is "readily ascertainable by proper means." In general, information is readily ascertainable if it can be obtained, discovered, developed, or compiled without significant difficulty, effort, or expense.  For example, information is readily ascertainable if it is readily available in trade journals, reference books, or published materials.  On the other hand, the more difficult information is to obtain, and the more time and resources that must be expended in gathering it, the less likely it is that the information is readily ascertainable by proper means.

[*Authority*: Judicial Council of California Civil Jury Instructions (CACI) 4420.]

30692\6662445.1

1

<u>**Emerson's Objections**</u>

2

Emerson objects to the preceding instruction and instead proposes its own instruction.

3

BladeRoom's instruction states that misappropriation can occur as to a given trade secret unless

4

Emerson proves that each trade secret was readily ascertainable.  But any trade secret that is readily

5

ascertainable cannot be the basis for a claim of misappropriation.  Emerson objects to the reference

6

to the terms "acquisition" and disclosure for the reasons articulated above.  Emerson's alternative

7

instruction proves examples for context to aid the jury.

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**[PROPOSED] JURY INSTRUCTIONS**
**CASE NO. 15-CV-01370 EJD**

30692\6662445.1

[Proposed by Emerson]

Proposed Jury Instruction No. 48

**AFFIRMATIVE DEFENSE – INFORMATION WAS READILY**

**ASCERTAINABLE BY PROPER MEANS**

Emerson did not misappropriate BladeRoom's alleged trade secrets if Emerson proves that the allegedly trade secret information was readily ascertainable by proper means at the time of the alleged use.

There is no fixed standard for determining what is "readily ascertainable by proper means." In general, information is readily ascertainable if it can be obtained, discovered, developed, or compiled without significant difficulty, effort, or expense.  Information is readily ascertainable if it is generally known to or readily ascertainable by business competitors or others in the industry. Thus, for example, information is readily ascertainable if it is available in trade journals, accessible via trade organizations or conferences, or published in written or online materials,  like, for example, patents, including information available on any website.  On the other hand, the more difficult information is to obtain, and the more time and resources that must be expended in gathering it, the less likely it is that the information is readily ascertainable by proper means.

[*Authority*: Judicial Council of California, Civil Jury Instructions 4420.]

30692\6662445.1

1    BladeRoom objects to the previous proposed jury instruction for each of the reasons below and
2    proposes that the Court give BladeRoom's proposed jury instruction instead.

3    BladeRoom's Objections to Emerson's Proposed Jury Instruction No. 48:

## AFFIRMATIVE DEFENSE—INFORMATION WAS READILY ASCERTAINABLE BY PROPER MEANS

**1.**     This is not a standard CACI instruction.  Emerson has improperly added language to this instruction that is not present in CACI 4420, while failing to provide authority to support its inclusion of additional language.  The following language included by Emerson does not appear in the CACI 4420 instruction: "Information is readily ascertainable if it is generally known to or readily ascertainable by business competitors or others in the industry" and "information is readily ascertainable if "it is available in trade journals, accessible via trade organizations or conferences, or published in written or online materials, including information available on any website."  This additional language is unnecessary and simply serves to present a defense argument in the jury instructions.

**2.**     Emerson's instruction also fails to accurately and fairly reflect the law on this affirmative defense.  In particular, the instruction misstates the law that "information available on any website" amounts to "public disclosure" after which Plaintiffs cannot recover damages.  "The secrecy requirement is generally treated as a relative concept and requires a fact-intensive analysis." *DVD Copy Control Ass'n Inc. v. Bunner*, 116 Cal. App. 4th 241, 251 (2004).  "It is important to point out that we do not assume that the alleged trade secrets contained in DeCSS became part of the public domain simply by having been published on the Internet." *Id.* at 253 (2004).  Moreover, "A defendant's unjust enrichment is typically measured by the defendant's profits *flowing from the misappropriation*." *Ajaxo Inc. v. E*Trade Fin. Corp.*, 187 Cal. App. 4th 1295, 1305 (2010) (emphasis added).  Damages may "flow from the misappropriation" of a trade secret after that trade secret is publicly disclosed, and Emerson's cited case law is not to the contrary.

30692\6662445.1

3.      This instruction is further misleading and invites juror confusion because it does not

properly instruct the jury on how to evaluate this affirmative defense in a case such as

this one where combinations as trade secrets are being asserted.  Even if a portion of

the trade secret information is readily ascertainable by proper means, that information

can still be a trade secret as long as the combination of the information is not

generally known and has independent economic value. *See, e.g., Altavion, Inc. v.*

*Konica Minolta Systems Laboratory, Inc.*, 226 CAl. App. 4th 26, 47-48 (2014)

("[E]ven if some or all of the elements of design were in the public domain and thus

unprotectable, the combination was a protectable trade secret if it was secret and had

independent economic value."); *see also Micro Int'l Ltd. v. Monolithic Power Sys.,*

*Inc.*, 399 F. Supp. 2d 1064, 1073 (N.D. Cal. 2005); *UniRAM Tech., Inc. v. Taiwan*

*Semiconductor Mfg. Co.*, 617 F. Supp. 2d 938, 945–46 (N.D. Cal. 2007); *Leatt Corp.*

*v. Innovative Safety Tech., LLC*, 2010 WL 1526382, at *6 (S.D. Cal. Apr. 15, 2010);

*SkinMedica, Inc. v. Histogen Inc.*, 869 F. Supp. 2d 1176, 1196 (S.D. Cal. 2012);

*United States v. Nosal*, 844 F.3d 1024, 1042 (9th Cir. 2016); *Verigy US, Inc. v.*

*Mayder*, 2008 WL 564634, at *6 (N.D. Cal. Feb. 29, 2008).]

4.      Plaintiffs request that the Court give the standard instruction provided in CACI 4420,

with no additions or modifications.

[Proposed by Plaintiffs]

Proposed Jury Instruction No. 49

**REMEDIES FOR MISAPPROPRIATION OF TRADE SECRET**

If BladeRoom proves that Emerson misappropriated any of its trade secrets, then BladeRoom is entitled to recover damages if the misappropriation caused BladeRoom to suffer actual loss or caused Emerson to be unjustly enriched.

[*Authority*: Judicial Council of California Civil Jury Instructions (CACI) 4409.]

30692\6662445.1

1

**Emerson's Objections**

2          Emerson objects to the preceding instruction and instead proposes its own instruction.

3   BladeRoom's instruction omits half of the relevant CACI, which concerns reasonable royalties.  It

4   also misstates the law because it would allow the jury to award damages, or unjust enrichment, if

5   any one trade secret has been misappropriated.  Plaintiffs have presented no theory that would enable

6   the jury to apportion damages among the trade secrets, and accordingly no theory that would enable

7   the jury to calculate the value of any subset of the alleged trade secret.  *See O2 Micro Int'l Ltd. v.*

8   *Monolithic Power Sys., Inc.*, 399 F. Supp. 2d 1064 (N.D. Cal. 2005) (granting Rule 50 motion on

9   ground that jury had insufficient evidence to apportion damages among the trade secrets); *Children's*

10  *Broadcasting Corp. v. Walt Disney Co.*, 245 F.3d 1008, 1018 (8th Cir. 2001), aff'd, 357 F.3d 860

11  (8th Cir. 2001) (excluding opinion, noting that "here expert improperly concluded that 'any

12  misappropriation of any trade secret caused the same amount of damage'" and "[t]he assertion that

13  any or all of the alleged wrongful acts would have caused the same outcome is dubious"); *Storage*

14  *Tech. Corp. v. Cisco Sys.*, Inc., 395 F.3d 921, 926-27 (8th Cir. 2005) (exclusion of expert was

15  appropriate because damages calculation was too speculative where expert failed to apportion

16  damages to the trade secrets); *Vermont Microsystems, Inc. v. Autodesk, Inc.*, 88 F.3d 142, 152 (2nd

17  Cir. 1996) (rejecting damages award that included damages beyond what could be attributed to the

18  alleged trade secret); *KW Plastics v. U.S. Can Co.*, 131 F.Supp. 2d 1289, 1295 (M.D. Ala. 2001)

19  (excluding damages expert opinion because expert did "not attempt to determine the value of the

20  specific trade secrets used."); *Alcatel USA, Inc. v. Cisco Systems, Inc.*, 239 F.Supp.2d 660, 670-71

21  (E.D. Tex. 2002) (excluding expert who failed to "present evidence of apportionment").

22  BladeRoom's instruction also misstates the law because it omits the qualification that Plaintiffs may

23  only recover damages or unjust enrichment, but not both.

24

25

26

27

28

**[PROPOSED] JURY INSTRUCTIONS
CASE NO. 15-CV-01370 EJD**

[Proposed by Emerson]

Proposed Jury Instruction No. 49

**REMEDIES FOR MISAPPROPRIATION OF TRADE SECRET**

If BladeRoom proves that Emerson misappropriated their trade secrets, then BladeRoom is entitled to recover damages if the misappropriation caused BladeRoom to suffer an actual loss or Emerson to be unjustly enriched.  BladeRoom may not recover both lost profits and unjust enrichment for misappropriation of trade secrets.

If Emerson's misappropriation did not cause BladeRoom to suffer an actual loss or Emerson to be unjustly enriched, BladeRoom may still be entitled to a reasonable royalty for no longer than the period of time the use could have been prohibited.  The Court, however, will calculate the reasonable royalty.

[*Authority*:  Judicial Council of California Civil Jury Instruction § 4409; Cal. Civ. Proc. Code § 3426.3(b) ("If neither damages nor unjust enrichment caused by misappropriation are provable, the court may order payment of a reasonable royalty for no longer than the period of time the use could have been prohibited."); Wagner Dep., 144:5-145:4]

30692\6662445.1

BladeRoom objects to the previous proposed jury instruction for each of the reasons below and proposes that the Court give BladeRoom's proposed jury instruction instead.

BladeRoom's Objections to Emerson's Proposed Jury Instruction No. 49:

## REMEDIES FOR MISAPPROPRIATION OF TRADE SECRETS

1.    This is not a standard CACI instruction, and Plaintiffs object to Emerson's proposed instruction because it incorrectly states the law.  California's Uniform Trade Secret statute provides that a plaintiff may recover both actual loss and unjust enrichment, to the extent the unjust enrichment is not taken into account in computing actual loss. Emerson's statement that both actual loss and unjust enrichment are not recoverable is not part of the standard CACI instruction and is incorrect on the law.

2.    Plaintiffs also object to Emerson's insertion of the second paragraph not included in the required language of the CACI instruction.  It is unnecessary and confusing to add this language, as the jury will not be making any determination about reasonable royalties in this case and need not be instructed on reasonable royalties as a remedy.

3.    Plaintiffs requests that the standard CACI instruction, without modification or alteration as proposed by Plaintiffs, be given to the jury.

[Proposed by Emerson]

Proposed Jury Instruction No. 50

**LIMITATIONS ON REMEDIES FOR MISAPPROPRIATION OF TRADE SECRETS**

Once a trade secret has been publicly disclosed, it is no longer a trade secret. Therefore, BladeRoom cannot recover damages for harm that occurs after the trade secret has been publicly disclosed. Some ways a company can publicly disclose a trade secret is by placing the trade secret in a patent or a patent application, placing the trade secret on the internet, or including the trade secret in presentations where the audience is not bound by confidentiality obligations. Once the trade secret is published, placed on the internet, presented to individuals not bound by confidentiality obligations, or similarly disclosed, the trade secret is publicly disclosed.

BladeRoom may not recover any damages for harm that occurred after the earlier of (1) the date you find that the trade secret(s) were publicly disclosed or (2) August 17, 2013, when the NDA between Emerson and BladeRoom terminated.

Specifically, the following documents were in the public domain as of the dates indicated below, and if you find that any of these documents reveal any trade secret, BladeRoom may not recover any damages for alleged misappropriation of that trade secret that occurred after the date indicated:

1) UK Patent Application GB2467808A: (published August 18, 2010);

2) International Publication No. WO 2011/148175 A9 (published December 1, 2011);

3) International Publication No. WO 2013/021182 A1 (published February 14, 2013);

4) BladeRoom Website (published 2009);

5) Data Center Dynamics Presentation "99% free cooling case studies: The World's Most Energy Efficient Modular Data Centre Reveals its Energy Efficient Modular Data Centre Reveals its Secrets" (December 1, 2011);

110.

6)  Data Center Dynamics Presentation "Challenging preconceptions: Free air cooling of 50kW racks whilst achieving a real PUE of 1.1" (November 15, 2012); Data Center Dynamics Presentation 2013 (November 21, 2013).

[*Authority*: Judicial Council of California Civil Jury Instruction § 4403; the NDA; *Spring Design v. Barnesandnoble.com LLC*, 2010 WL 5422556, at \*\*4-6 (N.D. Cal. Dec. 27, 2010); *Forcier v. Microsoft Corp.*, 123 F. Supp. 2d 520 (N.D. Cal. 2000); *Stutz Motor Car of America, Inc. v. Reebok, Intern., Ltd.*, 909 F. Supp. 1353, 1359-60 (C.D. Cal. 1995).]

30692\6662445.1

BladeRoom objects to the previous proposed jury instruction for each of the reasons below.

BladeRoom's Objections to Emerson's Proposed Jury Instruction No. 50:

**LIMITATIONS ON REMEDIES FOR MISAPPROPRIATION OF TRADE SECRETS**

1.      No version of this proposed instruction appears in the standard CACI trade secret instructions.  It invites legal error, is unnecessary as an addition to the standard set of CACI instructions, and likely to cause juror confusion.   The jury instruction itself is argumentative in nature and assumes facts that should be determined by the jury. Emerson's instruction improperly presents disputed facts as having already been determined by the court as a matter of law—for example, by stating that specific documents "were in the public domain."  Many of the dates that Emerson claims these documents entered the public domain are either controverted by the record and evidence presented at trial or misleading.

2.      In addition, the instruction improperly instructs the jury that any document in the public domain that potentially disclosed any portion of a trade secret means that BladeRoom may not recover any damages for any misappropriation of any trade secret.  This is legally erroneous, invites error, and is prejudicial.

3.      Based on the instructions proposed by both parties, the jury will have proposed instructions on the elements of trade secret misappropriation, what constitutes a trade secret, and the secrecy requirement.  An instruction such as the one proposed here by Emerson is unnecessary and will only serve to prejudice the jury and to invite legal error.

4.      Emerson's citation to "NDAs" in support of this instruction is not persuasive, as the trade secret statute, not the contracts between the parties, governs the scope of the remedies available on a claim for misappropriation of trade secrets.

5.      This instruction also fails to accurately and fairly reflect the law on public disclosure and damages.  In particular, it is incorrect under California law to instruct the jury that "BladeRoom cannot recover damages from harm that occur after the trade secret

30692\6662445.1

1    has been publicly disclosed" or that "placing the trade secret on the internet" amounts

2    to "public disclosure" after which BladeRoom cannot recover damages.  The same is

3    true for the portion of the instruction that purports to instruct the jury that BladeRoom

4    may not recover any damages from harm that occurred after "August 17, 2013, when

5    the NDA between Emerson and BladeRoom terminated."  "The secrecy requirement

6    is generally treated as a relative concept and requires a fact-intensive analysis." *DVD*

7    *Copy Control Ass'n Inc. v. Bunner*, 116 Cal. App. 4th 241, 251 (2004).  "It is

8    important to point out that we do not assume that the alleged trade secrets contained

9    in DeCSS became part of the public domain simply by having been published on the

10    Internet." *Id.* at 253 (2004).

11    **6.**    Importantly, this instruction is legally erroneous because a "defendant's unjust

12    enrichment is typically measured by the defendant's profits *flowing from the*

13    *misappropriation*."  *Ajaxo Inc. v. E\*Trade Fin. Corp.*, 187 Cal. App. 4th 1295, 1305

14    (2010) (emphasis added).  Damages may continue to "flow from the

15    misappropriation" of a trade secret even if that trade secret is later publicly disclosed,

16    as this Court had found in its order on the Emerson Defendants' third motion *in*

17    *limine* to exclude evidence of and references to any Emerson projects started, or

18    presentations made, after the expiration of Emerson's non-disclosure agreement.  *See*

19    Order re: Motions In Limine, Dkt. 723 at 12-13 (Mar. 25, 2018) ("This argument,

20    however, is unpersuasive because it fails to explain exactly how the temporal

21    limitation in the non-disclosure agreement "extinguished" liability stemming from an

22    alleged misappropriation or beach that occurred during the agreement's operative

23    period.") (*citing Sikes v. McGraw-Edison Co.*, 665 F.2d 731, 737 (5th Cir. 1982).

24    Emerson's cited case law is not to the contrary.  Even Emerson's self-serving title for

25    the instruction is improper, is unfairly balanced, and suggests a defense theory on the

26    law and facts.

27    **7.**    This instruction is also unnecessary because the instructions on damages already

28    instruct the jury on how to determine damages.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**8.**     Plaintiffs respectfully object to this instruction and request that no instruction should

be given on Limitation on Remedies for Misappropriation of Trade Secrets.  If the

Court is inclined to provide any such non-standard instruction over BladeRoom's

objection, Plaintiffs request that they be allowed to submit an instruction that

accurately and fairly reflects the governing law on the issue.

114.

[Proposed by Plaintiffs]

Proposed Jury Instruction No. 51

**PUNITIVE DAMAGES FOR WILLFUL AND MALICIOUS MISAPPROPRIATION**

If you decide that Emerson's misappropriation caused BladeRoom's harm, you must decide whether that conduct justifies an award of punitive damages. The purposes of punitive damages are to punish a wrongdoer for the conduct that harmed BladeRoom and to discourage similar conduct in the future.

In order to recover punitive damages, BladeRoom must prove by clear and convincing evidence that Emerson acted willfully and maliciously. You must determine whether Emerson acted willfully and maliciously, but you will not be asked to determine the amount of any punitive damages. I will calculate the amount later.

"Willfully" means that Emerson acted with a purpose or willingness to commit the act or engage in the conduct in question, and the conduct was not reasonable under the circumstances at the time and was not undertaken in good faith.

"Maliciously" means that Emerson acted with an intent to cause injury, or that Emerson's conduct was despicable and was done with a willful and knowing disregard for the rights of others.

"Despicable conduct" is conduct so vile, base, or wretched that it would be looked down on and despised by ordinary decent people. Emerson acted with knowing disregard if it was aware of the probable consequences of its conduct and deliberately failed to avoid those consequences.

[*Authority*: Judicial Council of California Civil Jury Instructions (CACI) 4411.]

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Emerson's Objections**

Emerson objects to the preceding instruction and instead proposes its own instruction. BladeRoom's use of the term "unlawful" is confusing; the instruction should be revised to conform to the relevant CACI.

[Proposed by Emerson]

Proposed Jury Instruction No. 51

**PUNITIVE DAMAGES FOR WILLFUL AND MALICIOUS MISAPPROPRIATION**

If you decide that Emerson misappropriated BladeRoom's trade secrets, and that the misappropriation caused BladeRoom harm, you must decide whether that conduct justifies an award of punitive damages. The purposes of punitive damages are to punish a wrongdoer for the conduct that harmed BladeRoom and to discourage similar conduct in the future.

In order to recover punitive damages, BladeRoom must prove by clear and convincing evidence that Emerson acted willfully and maliciously. You must determine whether Emerson acted willfully and maliciously, but you will not be asked to determine the amount of any punitive damages.  If ultimately determined to be appropriate, I will calculate the amount.

"Willfully" means that Emerson acted with a purpose or willingness to commit the act or engage in the conduct in question, and the conduct was not reasonable under the circumstances at the time and was not undertaken in good faith.

"Maliciously" means that Emerson acted with an intent to cause injury, or that Emerson's conduct was despicable and was done with a willful and knowing disregard for the rights of others. "Despicable conduct" is conduct so vile, base, or wretched that it would be looked down on and despised by ordinary decent people. Emerson acted with knowing disregard if they were aware of the probable consequences of their conduct and deliberately failed to avoid those consequences.

[*Authority*:  Judicial Council of California Civil Jury Instruction § 4411.]

30692\6662445.1

BladeRoom objects to the previous proposed jury instruction for each of the reasons below and proposes that the Court give BladeRoom's proposed jury instruction instead.

BladeRoom's Objections to Emerson's Proposed Jury Instruction No. 51:

**PUNITIVE DAMAGES FOR WILLFUL AND MALICIOUS MISAPPROPRIATION**

**1.**     Plaintiffs object to this instruction and propose that the Court instead give Jury Instruction No. xx PUNITIVE DAMAGES FOR WILLFUL AND MALICIOUS MISAPPROPRIATION [Proposed by Plaintiffs], which contains the same standard CACI language but identifies the parties by name as directed by the CACI instruction.

1
2
3
4
5
# CONSPIRACY INSTRUCTION
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

119.

30692\6662445.1

[Proposed by Emerson]

Proposed Jury Instruction No. 52

## CONSPIRACY—ESSENTIAL FACTUAL ELEMENTS[2]

BladeRoom claims that  Facebook and Emerson were part of a conspiracy to misappropriate the alleged trade secrets.  A conspiracy is an agreement by two or more persons to commit a wrongful act. Such an agreement may be made orally or in writing or may be implied by the conduct of the parties.

If you find that Facebook's misappropriation of trade secrets harmed BladeRoom, then you must determine whether Emerson is also responsible for the harm.  Emerson is responsible if BladeRoom proves both of the following:

1. That Emerson was aware that Facebook planned to improperly use BladeRoom's trade secret information; and

2. That Emerson agreed with Facebook and intended that the improper use be committed.


Mere knowledge of a wrongful act without cooperation or an agreement to cooperate is insufficient to make Emerson responsible for the harm caused by the other.  A conspiracy may be inferred from circumstances, including the nature of the acts done, the relationships between the parties, and the interests of the alleged coconspirators. BladeRoom is not required to prove that anyone at Emerson personally committed a wrongful act or knew all the details of the agreement or the identities of all the other participants.

[**Authority**: Judicial Council of California, Civil Jury Instructions 3600.]

---

[2] Emerson's position is that BladeRoom's conspiracy theory is unsupported by the evidence. (*Choate v. County of Orange*, supra, 86 Cal.App.4th 312, 334 (2000) (citation omitted).  As BladeRoom hasn't proved conspiracy, no instruction on conspiracy should be given because Plaintiffs should not be able to proceed with this claim.  However, should the Court decide otherwise, Emerson's conspiracy instruction should be given.

30692\6662445.1

BladeRoom objects to the previous proposed jury instruction for each of the reasons below.

BladeRoom's Objections to Emerson's Proposed Jury Instruction No. 52:

### CONSPIRACY—ESSENTIAL FACTUAL ELEMENTS

Emerson's proposed instruction is incomplete and inaccurate as it fails to include language referencing improper acquisition and disclosure.  For the reasons stated previously, this is improper because both claims of misappropriation by improper acquisition and misappropriation by disclosure remain in this case.

121.

1
2
3
4
5

# UNFAIR COMPETITION INSTRUCTION

6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

122.

[Proposed by Plaintiffs.]

Proposed Jury Instruction No. 53

**UNFAIR COMPETITION**

BladeRoom also claims that Emerson violated California's Unfair Competition Law, which prohibits business practices that are unlawful, fraudulent or unfair.  A practice may be considered "unfair" even if it is not "unlawful" or "fraudulent" and vice versa.  The remedy available for a violation of the Unfair Competition Law is injunctive relief, but you will only be asked to decide whether a business practice by Emerson was "unfair."  You will not be asked to determine any injunctive relief.  I will do that later.

[*Authority*: Cal. Bus. & Prof. Code § 17200; *Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*, 20 Cal. 4th 163, 180 (1992).]

30692\6662445.1

1

**Emerson's Objections**

2          Emerson objects to this instruction on the ground that claims under California's Unfair

3   Competition Law are equitable and carry no right to a jury trial. *Hodge v. Superior Court*, 145 Cal.

4   App. 4th 278, 285 (2006); *Cargill Inc. v. Progressive Dairy Solutions, Inc.*, 362 F. App'x 731, 733-

5   34 (9th Cir. 2010); *Gerawan Farming, Inc. v. Rehrig Pac. Co.*, 1:11-CV-1273 LJO BAM, 2013 WL

6   1982797, at *9 n.4 (E.D. Cal. May 13, 2013) ("there is no right to a jury under the UCL"); *Soriano v.*

7   *Countrywide Home Loans, Inc.*, Case No. 09-CV-2415 LHK, 2011 WL 2175603, at *7 (N.D. Cal.

8   June 2, 2011); *Smith v. Chase Mortgage Credit Grp.*, 653 F. Supp. 2d 1035, 1045 (E.D. Cal. 2009)

9   ("The UCL sounds in equity and therefore there is no right to a jury determination as to whether a

10  defendant's conduct was unfair under the statute; the court must make this factual determination.");

11  *Okura & Co., Inc. v. Careau Group*, 783 F. Supp. 482, 490 n.1 (C.D. Cal. 1991) (claims brought

12  under the UCL are "equitable remedies for which [plaintiffs] would not be entitled to [a] jury trial . .

13  . ."). Moreover, a UCL is particularly ill-suited to resolution by jury because it concerns the vague

14  question of whether Emerson's business practices were "fair" without offering the jury any guidance

15  to make that determination.

16

17

18

19

20

21

22

23

24

25

26

27

28

[PROPOSED] JURY INSTRUCTIONS
CASE NO. 15-CV-01370 EJD

30692\6662445.1

# CAUSATION INSTRUCTIONS

125.

[Proposed by Plaintiffs]

Proposed Jury Instruction No. 54

**CAUSATION: SUBSTANTIAL FACTOR**

A substantial factor in causing harm is a factor that a reasonable person would consider to have contributed to the harm.  It must be more than a remote or trivial factor.  It does not have to be the only cause of harm.

[*Authority*: Judicial Council of California Civil Jury Instructions (CACI) 430.]

30692\6662445.1

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Emerson's Objections**

Emerson objects to the preceding instruction and instead proposes its own instruction. BladeRoom's instruction omits language from the CACI that tracks with applicable law, which holds that conduct can only be a substantial factor in causing harm if that harm would not have occurred but for the conduct. *Viner v. Sweet*, 30 Cal.4th 1232, 1239-40 (2003). Further, BladeRoom's instruction is misleading. The instruction regarding breach of contract provides for damages when the alleged breach is a "substantial factor" in causing those damages. BladeRoom's breach of contract claim, however, is governed by English law, and English courts only award damages when the breach is a "dominant factor" in causing those damages. *See Galoo v Bright Grahame Murray* [1994] 1 W.L.R. 1360, 1374–1375; *Cook v S.* [1966] 1 W.L.R. 635, 642; *Quinn v Burch Bros (Builders)* [1966] 2 Q.B. 370

[PROPOSED] JURY INSTRUCTIONS
CASE NO. 15-CV-01370 EJD

30692\6662445.1

==[Proposed by Emerson]==

Proposed Jury Instruction No. 54

**CAUSATION: DOMINANT OR SUBSTANTIAL FACTOR**

As stated in Instruction No. [x] and [x], to be able to recover damages for their claim that Emerson misappropriated their alleged trade secrets, BladeRoom must prove that Emerson use of those alleged trade secrets was a substantial factor in causing BladeRoom's harm or Emerson's unjust enrichment. For the alleged use to be a substantial factor in causing BladeRoom's harm or Emerson's unjust enrichment, the use must be a "but for" cause of the harm or unjust enrichment. That is, the alleged harm or would not have happened but for the alleged use.

As stated in Instruction No. [x], to be able to recover damages for their claim that Emerson breached its contract with BladeRoom, BladeRoom must prove that Emerson's breach was the dominant factor in causing BladeRoom's harm in losing the Lulea 2 data center contract.

A dominant factor in causing harm is a factor that a reasonable person would consider to have contributed to the harm. It must be more than a remote or trivial factor. Conduct is not the dominant factor in  causing harm if the same harm would have occurred without that conduct.  In addition, conduct is not the dominant factor if BladeRoom has suffered harm through their own act or omission following the alleged breach or if BladeRoom has suffered harm through the voluntary act of a third person or company following the alleged breach.

[**Authority**: *Viner v. Sweet*, 30 Cal.4th 1232(2003)*Galoo v Bright Grahame Murray* [1994] 1 W.L.R. 1360, 1374–1375; Cook v S. [1966] 1 W.L.R. 635, 642;  *Quinn v Burch Bros (Builders)* [1966] 2 Q.B. 370; Judicial Council of California, Civil Jury Instructions 430.]

BladeRoom objects to the previous proposed jury instruction for each of the reasons below.

BladeRoom's Objections to Emerson's Proposed Jury Instruction No. 54:

## CAUSATION: DOMINANT OR SUBSTANTIAL FACTOR

1.     Although Emerson cites to a CACI instruction in support of this proposed instruction, this is not a standard CACI misappropriation of trade secrets or breach of contract instruction, and it is unnecessary as an addition and likely to lead to juror confusion.

2.     The instruction Emerson proposes is taken from a CACI instruction for negligence actions.  But the Directions for Use for CACI 303. Breach of Contract--Essential Factual Elements states:

> Element 6 states the test for causation in a breach of contract action: whether the breach was a substantial factor in causing the damages. (*US Ecology, Inc. v. State of California* (2005) 129 Cal.App.4th 887, 909 [28 Cal.Rptr.3d 894].) In the context of breach of contract, it has been said that the term "substantial factor" has no precise definition, but is something that is more than a slight, trivial, negligible, or theoretical factor in producing a particular result. (*Haley v. Casa Del Rey Homeowners Assn.* (2007) 153 Cal.App.4th 863, 871.872 [63 Cal.Rptr.3d 514]; see CACI No. 430, Causation—Substantial Factor, applicable to negligence actions.

3.     Emerson's proposed instruction on Dominant or Substantial Factor also adds additional language that is defense-oriented, unnecessary and not included or required by the actual CACI Substantial Factor instruction or supported by English law.  There is no salient difference between the CACI substantial factor test and the dominant factor test that Emerson intends to include in its proposed causation instruction, and the inclusion of both in the same instruction is likely to lead to juror confusion.  The changes that Emerson makes to the standard CACI instruction are not justified under either the case law in support of the CACI substantial factor test or the English law that Emerson cites for the dominant factor test.

4.     Emerson's proposed instruction misstates the law on causation.  "Determining whether a defendant's misconduct was the cause in fact of a plaintiff's injury involves essentially the same inquiry in both contract and tort cases." *Tribeca Cos., LLC v. First Am. Title Ins. Co.*, 239 Cal. App. 4th 1088, 1103 (2015).  The test for both

breach of contract and trade secret cases is "whether the breach was a substantial factor in causing the damages." *Id*. Emerson's instruction selectively pulls from both English and California law in an inconsistent manner that has resulted in a lengthy instruction that is likely to mislead the jury and invites confusion and prejudice.

**5.** The instruction also misstates the law of misappropriation of trade secrets by suggesting that Plaintiffs may be entitled to their damages or Defendants' unjust enrichment only if Defendants "used" the trade secrets. But the law of trade secrets allows recovery of their damages or Defendants' unjust enrichment for Defendants' misappropriation of the trade secrets by use, acquisition by improper means, or disclosure without BladeRoom's consent. *See* CACI 4401 element 3.

**6.** The instruction also misstates the law of breach of contract with respect to nondisclosure agreements by suggesting that only BladeRoom's damages are recoverable as a remedy for such breach. But the law also allows recovery of unjust enrichment in the specific case of a breach of a nondisclosure agreement. *See* A*jaxo Inc. v. E\*Trade Grp., Inc.*, 135 Cal. App. 4th 21, 56–57 (2005); (instructing the jury on unjust enrichment as form of damages for both trade secret misappropriation and breach of a nondisclosure agreement; also noting that the express terms of the NDA supported this conclusion by providing for "equitable relief"). English law also recognizes this exception. *See Attorney General v Blake* [2001] 1 AC 268 ("When, exceptionally, a just response to a breach of contract so requires, the court should be able to grant the discretionary remedy of requiring a defendant to account to the plaintiff for the benefits he has received from his breach of contract…If confidential information is wrongfully divulged in breach of a non-disclosure agreement, it would be nothing short of sophistry to say that an account of profits may be ordered in respect of the equitable wrong but not in respect of the breach of contract which governs the relationship between the parties."); *Peter Pan Manufacturing Corpn. v. Corsets Silhouette Ltd* [1964] 1 WLR 96 (see page 105). The language of the NDA between Bladeroom and Emerson also reinforces the availability of the unjust

30692\6662445.1

1   enrichment remedy in this specific case, as the parties expressly contracted for

2   additional remedies including "equitable relief" – the same language used by the

3   parties in the nondisclosure agreement at issue in *Ajaxo*.  <u>*See*</u> Trial Exh. 2, at

4   paragraph 11 (acknowledging that "due to the character of the Information to be made

5   available hereunder" the parties agree that the non-breaching party will be entitled to

6   seek additional remedies for breach including "equitable relief").

**7.**   If the Court is inclined to provide a separate instruction on Causation: Substantial

Factor, Plaintiffs request that the Court use only the standard CACI language as

follows:  "A substantial factor in causing harm is a factor that a reasonable person

would consider to have contributed to the harm. It must be more than a remote or

trivial factor. It does not have to be the only cause of the harm."

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

==[Proposed by Emerson]==

Proposed Jury Instruction No. 55

## PURCHASE OF CONTRACTOR'S SERVICES

A purchaser can choose whichever contractor it wants for any reason or no reason at all, so long as it does not use unlawful means in the selection.

[*Authority*: Generally, a private owner can accept any bid, even though it is not the lowest in price, or it can reject all of the bids without liability.  Miller and Starr, § 31:24.Procurement of private works contracts, 9 Cal. Real Est. § 31:24 (4th ed.); Civil Code Section 1586.  *See also Della Penna v. Toyota Motor Sales, U.S.A., Inc*., 11 Cal.4th 376, 392 (1995) (holding that, to maximize free competition, the law will not protect prospective economic relationships unless defendant used unlawful means to disrupt the prospective relationship); *Guz v. Bechtel* (where contract is at will, party may terminate it for any reason as long as it does not act on an unlawful basis; irrelevant whether reason was foolish or incorrect).]

BladeRoom objects to the previous proposed jury instruction for each of the reasons below.

BladeRoom's Objections to Emerson's Proposed Jury Instruction No. 55:

### PURCHASE OF CONTRACTOR'S SERVICES

1.     No version of Emerson's instruction on Purchase of Contractor's Services appears in either the CACI or Model Ninth Circuit standard jury instructions.  This instruction has been created entirely by Emerson in an effort to improperly advance its theory of the case through the jury instructions.  This instruction is not appropriate to include in the jury instructions and would almost certainly invite both legal error and prejudice.  None of the cases cited support that this language should be given as an instruction to the jury.

2.     Given the standard instructions already provided for breach of contract and trade secret misappropriation, this instruction is entirely unnecessary and is likely to lead to juror confusion.  The instruction mischaracterizes the issues involved in this case, and its inclusion in the causation section of the instructions is misleading and prejudicial.

3.     Plaintiffs respectfully object to this instruction and request that no instruction should be given on Purchase of Contractor's Services.  If the Court is inclined to provide any such non-standard instruction over BladeRoom's objection, Plaintiffs request that they be allowed to submit an instruction that accurately and fairly reflects the governing law on the issue.

# DAMAGES INSTRUCTIONS

[Proposed by Plaintiffs]

Proposed Jury Instruction No. 56

**INTRODUCTION TO DAMAGES FOR MISAPPROPRIATION AND BREACH OF CONTRACT**

If BladeRoom proves that Emerson misappropriated any of its trade secrets or breached its Confidentiality Agreement, then BladeRoom is entitled to recovered damages if the misappropriation or breach caused BladeRoom to suffer actual loss or caused Emerson to be unjustly enriched.

BladeRoom claims damages for (1) Emerson's alleged breach of the Confidentiality Agreement between BladeRoom and Emerson; and (2) Emerson's misappropriation of trade secrets.

For breach of contract, BladeRoom must prove that when the contract was made, both parties knew or could reasonably have foreseen that the harm was likely to occur in the ordinary course of events as result of the breach of the contract.

For misappropriation of trade secrets, the amount of damages must include an award for each item of harm that was caused by Emerson's wrongful conduct, even if the particular harm could not have been anticipated.

BladeRoom does not have to prove the exact amount of damages for either claim. You must not speculate or guess in awarding damages.

BladeRoom claims damages for its lost profits and for unjust enrichment obtained by Emerson.

[*Authority*: Judicial Council of California Civil Jury Instructions (CACI) 350, 3900, and 4409; *Ajaxo, Inc. v. E\*Trade Financial Corp.*, 135 Cal. App. 4th 21, 56-57 (2005).]

**Emerson's Objections**

Emerson objects to the preceding instruction and instead proposes its own instructions. Further, BladeRoom's proposed instruction misstates the law, as Plaintiffs are not entitled to damages for unjust enrichment for breach of contract, and are entitled to either lost profits or unjust enrichment for misappropriation, but not both.  Further, pursuant to a recent Federal Circuit case, unjust enrichment is an issue for the Court to decide, and not the jury.  *See Texas Advanced Optoelectronic Sols., Inc. v. Renesas Elecs. Am., Inc.,* No. 2016-2121, 2018 WL 2011463, *10-*15 (Fed. Cir. May 1, 2018).

Unjust enrichment is not recoverable under English law on a breach of contract claim except in "exceptional circumstances", and "exceptional circumstances" only exist where the normal contractual remedy of expectation damages are inadequate  *AG v. Blake,* ("An account of profits will be appropriate only in exceptional circumstances.  Normally the remedies of damages, specific performance and injunction, coupled with the characterization of some contractual obligations as fiduciary, will provide an adequate response to a breach of contract. It will be only in exceptional cases, where those remedies are inadequate, that any question of accounting for profits will arise.").  *Blake* was an exceptional case awarding unjust enrichment, but the factual context of the case demonstrates that it addressed a controversy far different from this one.  *Blake* was not a commercial case, but rather involved a suit by the UK government against Blake, a former British intelligence agent who had signed an agreement with British intelligence promising not to divulge state secrets. Key to the court's ruling is the fact that an agreement not to divulge state secrets is particularly grave, and that Blake had an intimate relationship with the UK government as an officer in the employ of the UK intelligence service that was "akin to a fiduciary obligation."  Also key to the court's ruling was the fact that the nondisclosure obligations imposed by the contract were also imposed by UK criminal law.  Finally, because expectation damages would have acquired assessing the harm to the UK government in connection with the disclosure of state secrets, it was virtually impossible to value the UK government's expectation damages.  Emerson is aware of only one commercial case awarding unjust enrichment on a breach of contract claim, and that case involved completely different factual scenario than the one at issue here.  Chitty on Contracts ("an account of

136.

1  profits has been awarded only in one case at first instance", in the matter of *Esso Petroleum Co Ltd v*

2  *Niad Ltd.* [2001] All E.R. (D) 324 (Nov)., wherein the defendant gas station breached an agreement

3  with other gas stations to refrain from raising its prices

4      As stated above, per a recent Federal Circuit case, there is no constitutional right to a jury on

5  unjust enrichment.  *See Texas Advanced Optoelectronic Sols., Inc. v. Renesas Elecs. Am., Inc.,* No.

6  2016-2121, 2018 WL 2011463, *10-*15 (Fed. Cir. May 1, 2018).  Emerson objects to any

7  instruction on unjust enrichment, but if one is given, Plaintiff can only recover lost profits or unjust

8  enrichment.  See, e.g. Restatement (Third) of Unfair Competition § 45(1) (plaintiff can recover

9  either lost profits or unjust enrichment, whichever is greater); Wagner Dep. at 144:5 – 145:4.

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**[PROPOSED] JURY INSTRUCTIONS**
**CASE NO. 15-CV-01370 EJD**

30692\6662445.1

[Proposed by Plaintiffs]

Proposed Jury Instruction No. 57

**LOST PROFIT (ECONOMIC DAMAGE)**

To recover damages for lost profits, BladeRoom must prove it is reasonably certain it would have earned profit but for Emerson's conduct.

To decide the amount of damages for lost profits you must determine the gross amount BladeRoom would have received but for Emerson's conduct and then subtract from that amount the expenses, including the values of the labor, materials, royalties, incremental operating expenses, and transportation costs, BladeRoom would have had if Emerson's conduct had not occurred.

You do not have to calculate the amount of the lost profits with mathematical precision, but there must be a reasonable basis for computing the loss.

[*Authority*: Judicial Council of California Civil Jury Instructions (CACI) 352; Judicial Council of California Civil Jury Instructions (CACI) 3903N.]

138.

30692\6662445.1

1

**<u>Emerson's Objections</u>**

2    Emerson objects to the preceding instruction and instead proposes its own instruction.  This

3  instruction should include interest on capital as one of the expenses to be deducted, per CACI 352

4  and 3903N, as there has been trial testimony relating to loans Plaintiffs may have to take out.

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

[Proposed by Plaintiffs]

2

Proposed Jury Instruction No. 58

3

**UNJUST ENRICHMENT**

4

5
6
7

In addition to any lost profit damages awarded, BladeRoom may also recover the amount of any unjust benefit that Emerson obtained because of the breach of contract or misappropriation. This is called "unjust enrichment."

8
9
10
11

BladeRoom may recover for any unjust enrichment caused by the breach or misappropriation that is not taken into account in computing damages for actual loss. The amount of unjust enrichment need not be precisely measured, but there must be some reasonable basis for the computation.

12
13
14

Emerson was unjustly enriched if its breach of its Confidentiality Agreement with BladeRoom or its misappropriation of trade secrets caused Emerson to receive a benefit that it otherwise would not have achieved.

15
16
17

To decide the amount of any unjust enrichment, first determine the value of  Emerson's benefit that would not have been achieved except for its breach of its Confidentiality Agreement with BladeRoom or misappropriation of trade secrets.

18
19
20
21
22

Then, subtract from that amount Emerson's reasonable expenses, including the value of Emerson's labor, materials, rents, interest on invested capital, etc.  BladeRoom may recover damages for the actual loss caused by misappropriation or breach.  BladeRoom may also recover for the unjust enrichment caused by misappropriation that is not taken into account in computing damages for actual loss.

23
24
25
26
27

In making your determination whether to award BladeRoom all or a portion of the value of the benefits that Emerson received as a result of its breach of its Confidentiality Agreement with BladeRoom or its misappropriation of trade secrets, the burden is on Emerson to show what portion, if any, of such benefits that is not attributable to the breach and/or misappropriation of trade secrets, and any expenses that should be deducted from the value of the benefit(s)  Emerson received.

28

[*Authority*: Judicial Council of California Civil Jury Instructions (CACI) 4410; *Micro Lithography v. Inko Industries Inc.*, 20 USPQ 2d 1347 (Cal. App. 6th Dist. 1991); Restatement (Third) of Unfair Competition § 45, comment f (1995); *Ajaxo, Inc. v. E\*Trade Financial Corp.*, 135 Cal. App. 4th 21, 56-57 (2005); Cal. Civ. Code § 3274.3(a) ("A complainant may recover damages for the actual loss caused by misappropriation.  A complainant also may recover for the unjust enrichment caused by misappropriation that is not taken into account in computing damages for actual loss.").]

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### **Emerson's Objections**

Emerson objects to the preceding instruction because a recent Federal Circuit case found that there is no constitutional right to a jury on unjust enrichment. *See Texas Advanced Optoelectronic Sols., Inc. v. Renesas Elecs. Am., Inc.,* No. 2016-2121, 2018 WL 2011463, *10-*15 (Fed. Cir. May 1, 2018). Emerson objects to any instruction on unjust enrichment, but if one is given, Emerson's version should be given.

142.

30692\6662445.1

==[Proposed by Emerson]==

Proposed Jury Instruction No. 59

**DAMAGES—PROOF**

It is the duty of the Court to instruct you about the measure of damages.  By instructing you on damages, the Court does not mean to suggest for which party your verdict should be rendered.

If you find for BladeRoom on its claim for misappropriation of trade secrets or its claim for breach of contract, you must determine BladeRoom's damages.  BladeRoom has the burden of proving damages by a preponderance of the evidence.  Damages means the amount of money that will reasonably and fairly compensate BladeRoom for any injury you find was caused by Emerson.

It is for you to determine what damages, if any, have been proved.

Your award must be based upon evidence and not upon speculation, guesswork or conjecture.

[*Authority*: Ninth Circuit Model Civil Jury Instruction § 5.1.]

143.

BladeRoom objects to the previous proposed jury instruction for each of the reasons below.

BladeRoom's Objections to Emerson's Proposed Jury Instruction No. 59:

### DAMAGES—PROOF

1. The instruction is likely to lead to juror confusion. This is a modified version of Ninth Circuit Model Civil Jury Instruction § 5.1. The modifications inaccurately suggest that Plaintiffs are only entitled to their damages, and not their damages *and* Emerson's unjust enrichment for misappropriation of trade secrets and breach of its nondisclosure agreement with Plaintiffs. This is incorrect under the law. *See* Cal. Civ. Code § 3426.3(a); *Ajaxo Inc. v. E*Trade Grp., Inc.*, 135 Cal. App. 4th 21, 56–57 (2005) (instructing the jury on unjust enrichment as form of damages for both trade secret misappropriation and breach of a nondisclosure agreement; also noting that the express terms of the NDA supported this conclusion by providing for "equitable relief"); *Attorney General v Blake* [2001] 1 AC 268 ("When, exceptionally, a just response to a breach of contract so requires, the court should be able to grant the discretionary remedy of requiring a defendant to account to the plaintiff for the benefits he has received from his breach of contract…If confidential information is wrongfully divulged in breach of a non-disclosure agreement, it would be nothing short of sophistry to say that an account of profits may be ordered in respect of the equitable wrong but not in respect of the breach of contract which governs the relationship between the parties."); *Peter Pan Manufacturing Corpn. v. Corsets Silhouette Ltd* [1964] 1 WLR 96 (see page 105); *see also* Trial Exh. 2 (Bladeroom/Emerson NDA), at paragraph 11 (acknowledging that "due to the character of the Information to be made available hereunder" the parties agree that the non-breaching party will be entitled to seek additional remedies for breach including "equitable relief").

2. This instruction is a procedural instruction and, if an instruction on Damages Proof is given, it should be given in the language provided in the model instruction and as part

144.

1    of the procedural instructions, not together with substantive instructions.  Although

2    Plaintiffs believe that no additional, instruction is needed on Damages—Proof, if the

3    Court is inclined to provide an additional instruction on Damages—Proof, Plaintiffs

4    request that the Court give only the model instruction and that this instruction be

5    given to the jury with all of the other procedural instructions, rather than following

6    the substantive damages instructions.

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

[PROPOSED] JURY INSTRUCTIONS
CASE NO. 15-CV-01370 EJD

30692\6662445.1

==[Proposed by Emerson.]==

Proposed Jury Instruction No. 60

**BREACH OF CONTRACT – INTRODUCTION TO CONTRACT DAMAGES**

If you decide that BladeRoom has proved their claim against Emerson for breach of contract, you must also decide how much money will reasonably compensate BladeRoom for the harm caused by the breach.  This compensation is called "damages."  The purpose of such damages is to put BladeRoom in as good a position as they would have been in if Emerson had performed as promised.

To recover damages for harm, BladeRoom must prove that when the contract was made, the parties to the contract knew or could reasonably have foreseen that the harm was likely to occur in the ordinary course of events as a result of the breach of the contract.  You may not award BladeRoom any damages for any harm occurring as a result of any acts by Emerson that occurred after August 17, 2013.

BladeRoom also must prove the amount of their damages according to the following instructions.  They do not have to prove the exact amount of damages.  You must not speculate or guess in awarding damages.

BladeRoom claims breach of contract damages for: Lost profits

[**Authority**: Judicial Council of California Civil Jury Instruction § 350; NDA; *Parsons v. Bristol Development Co.,* 62 Cal.2d 861, 865 (1965) (interpretation of a contract is a question of law for the Court); *Winet v. Price,* 4 Cal. App.4th 1159, 1165-66 (1992); *Scheenstra v. Cal. Dairies, Inc.,* 213 Cal.App.4th 370, 390 (2013) (even "where uncontroverted evidence allows for conflicting inferences to be drawn, our Supreme Court treats the interpretation of the written contract as solely a judicial function.").]

30692\6662445.1

1    BladeRoom objects to the previous proposed jury instruction for each of the reasons below.

2    BladeRoom's Objections to Proposed Jury Instruction No. 60:

3    **BREACH OF CONTRACT—INTRODUCTION TO CONTRACT DAMAGES**

4

5    **1.**    Plaintiffs objects to Emerson's proposed instruction because it is incomplete,

6    incorrect on the law, and confusing in introducing only damages for contract law and

7    not damages for trade secret misappropriation.  Providing an introduction to contract

8    damages without also providing an introduction to misappropriation damages

9    suggests that the jury should only be considering contract damages.  The damages

10   remedies of lost profits and unjust enrichment are available for both misappropriation

11   of trade secrets and for breach of contract in the specific instance of a breach of a

12   nondisclosure agreement.  *See* Cal. Civ. Code § 3426.3(a); *see also  Ajaxo, Inc. v.

13   E\*Trade Financial Corp.*, 135 Cal. App. 4th 21, 56-57 (2005) (instructing the jury on

14   unjust enrichment as form of damages for both trade secret misappropriation and

15   breach of a nondisclosure agreement, and also noting that the NDA supported this

16   conclusion by expressly providing for "equitable relief").  English law also

17   recognizes this exception.  *See Attorney General v Blake* [2001] 1 AC 268 ("When,

18   exceptionally, a just response to a breach of contract so requires, the court should be

19   able to grant the discretionary remedy of requiring a defendant to account to the

20   plaintiff for the benefits he has received from his breach of contract…If confidential

21   information is wrongfully divulged in breach of a non-disclosure agreement, it would

22   be nothing short of sophistry to say that an account of profits may be ordered in

23   respect of the equitable wrong but not in respect of the breach of contract which

24   governs the relationship between the parties."); *Peter Pan Manufacturing Corpn. v.

25   Corsets Silhouette Ltd* [1964] 1 WLR 96 (see page 105).   The NDA between

26   Bladeroom and Emerson further supports this conclusion, as it contains the same

27   "equitable relief" language as found in the nondisclosure agreement in *Ajaxo*.  *See*

28   Trial Exh. 2 (Bladeroom/Emerson NDA), at paragraph 11 (acknowledging that "due

147.

1    to the character of the Information to be made available hereunder" the parties agree

2    that the non-breaching party will be entitled to seek additional remedies for breach

3    including "equitable relief").  Plaintiff further objects to Emerson's proposed version

4    of this instruction because it is incorrect on the law for the contract claim and likely to

5    lead to juror confusion by stating that the jury may not award Plaintiffs any damages

6    for any harm occurring as a result of any breach of contract that occurred after August

7    17, 2013.

8    **2.**    Emerson's proposed instruction also misstates BladeRoom's position on what

9    remedies they seek for Emerson's breach of its nondisclosure agreement with

10   Plaintiffs and the law of breach of contract with respect to nondisclosure agreements

11   by stating that Plaintiffs are only seeking lost profits.  The law of both California and

12   England is the same and also allows recovery of Defendants' unjust enrichment for

13   breach of a nondisclosure agreement.  *Ajaxo Inc. v. E*Trade Grp., Inc.*, 135 Cal. App.

14   4th 21, 56–57 (2005); *Attorney General v Blake* [2001] 1 AC 268 ("When,

15   exceptionally, a just response to a breach of contract so requires, the court should be

16   able to grant the discretionary remedy of requiring a defendant to account to the

17   plaintiff for the benefits he has received from his breach of contract…If confidential

18   information is wrongfully divulged in breach of a non-disclosure agreement, it would

19   be nothing short of sophistry to say that an account of profits may be ordered in

20   respect of the equitable wrong but not in respect of the breach of contract which

21   governs the relationship between the parties."); *Peter Pan Manufacturing Corpn. v.*

22   *Corsets Silhouette Ltd* [1964] 1 WLR 96 (see page 105).  The NDA between

23   Bladeroom and Emerson also contains the same "equitable relief" language that the

24   Court in *Ajaxo* found supported instructing the jury on the "restitutionary damages"

25   remedy of unjust enrichment for a breach of a nondisclosure agreement.  *See* Trial

26   Exh. 2, at paragraph 11 (acknowledging that "due to the character of the Information

27   to be made available hereunder" the parties agree that the non-breaching party will be

28   entitled to seek additional remedies for breach including "equitable relief").

148.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**3.** Moreover, because the liability instructions for both trade secret misappropriation and breach of contract come before this proposed instruction, the specific identification by number of *only* "1. lost profits" as to Emerson is almost certain to lead the jurors to erroneously understand that Plaintiffs are not claiming, or entitled to, unjust enrichment as to Emerson ***at all***, despite the fact that there is no dispute that the trade secret misappropriation claims are governed by California law and unjust enrichment is sought by BladeRoom and ***expressly available against Emerson*** under the California trade secret statute.

**4.** For all of these reasons, Plaintiffs object and request that the Court instead give the one introductory instruction on damages contained in the proposed jury instruction on INTRODUCTION TO DAMAGES – MISAPPROPRIATION AND BREACH OF CONTRACT [Proposed by Plaintiffs].

149.

1

[Proposed by Emerson]

2

Proposed Jury Instruction No. 61

3

**LOST PROFITS (ECONOMIC DAMAGE)**

4

5       To recover damages for lost profits, BladeRoom must prove it is reasonably certain they

6  would have earned profits but for Emerson's conduct.

7       To decide the amount of damages for lost profits, you must determine the gross amount

8  BladeRoom would have received but for Emerson's conduct and then subtract from that amount the

9  expenses, including the value of labor, materials, rents, expenses, and interests on loans in the

10  business, that BladeRoom would have had if Emerson's conduct had not occurred.

11       The amount of the lost profit need not be calculated with mathematical precision, but there

12  must be a reasonable basis for computing the loss.

13

14  [*Authority*: Judicial Council of California, Civil Jury Instructions 3903N; *see Greenwich S.F., LLC*
15  *v. Wong*, 190 Cal. App. 4th 739 (2010) ("Not only must [lost profit] damages be pled with
    particularity, but they must also be proven to be certain both as to their occurrence and their extent,
16  albeit not with mathematical precision." (internal quotations and citations omitted); *see also Sargon*
    *Enterprises, Inc. v. Univ. S. Cal.*, 55 Cal. 4th 747, 773-74 (2012).]

17

18

19

20

21

22

23

24

25

26

27

28

30692\6662445.1

BladeRoom objects to the previous proposed jury instruction for each of the reasons below.

BladeRoom's Objections to Emerson's Proposed Jury Instruction No. 61:

**LOST PROFITS (ECONOMIC DAMAGE)**

1.      Emerson's proposed instruction fails to instruct the jury properly on the types of expenses that are relevant to a lost profits calculation.  Emerson has not adapted this instruction, as suggested by CACI 352 and CACI 3903N, to include case-specific examples of the types of expenses that may be considered.  BladeRoom's proposed instruction on this issue is more helpful to the jury and less likely to lead to juror confusion.

2.      Plaintiffs also object to the ordering of this instruction as following Emerson's proposed instruction on "Breach Of Contract—Introduction To Contract Damages" as it misleadingly suggests that lost profits are only available for breach of contract.

3.      Plaintiffs object to this instruction and request that the Court instead give its proposed jury instruction on Lost Profits (Economic Damage) [Proposed by Plaintiffs], to follow after BladeRoom's proposed introductory instruction on damages.

[Proposed by Emerson]

Proposed Jury Instruction No. 62

### LOSS OF PROFITS – NO PROFITS EARNED

To recover damages for lost profits, BladeRoom must prove that it is reasonably certain they would have earned profits but for Facebook's breach of the contract.

To decide the amount of damages for lost profits, you must determine the gross, or total, amount BladeRoom would have received if the contract had been performed and then subtract from that amount the costs, including the value of labor, materials, rents, expenses, interests on loans in the business that BladeRoom would have had if the contract had been performed.

You do not have to calculate the amount of the lost profits with mathematical precision, but there must be a reasonable basis for computing the loss.

[*Authority*: Judicial Council of California, Civil Jury Instructions 352; *see* Cal. Civ. Proc. Code § 3301 ("No damages can be recovered for a breach of contract which are not clearly ascertainable in both their nature and origin."); *see also Sargon Enterprises, Inc. v. Univ. S. Cal.*, 55 Cal. 4th 747, 773-74 (2012); *GHK Associates v. Mayer Group*, 224 Cal. App. 3d 856, 873-74 (1990).]

30692\6662445.1

BladeRoom objects to the previous proposed jury instruction for each of the reasons below.

BladeRoom's Objections to Emerson's Proposed Jury Instruction No. 62:

## LOSS OF PROFITS – NO PROFITS EARNED

1.   Emerson's proposed instruction erroneously states that "Plaintiffs must prove that it is reasonably certain they would have earned profits but for Facebook's breach of the contract" although Facebook is no longer in the case and Emerson is the only defendant remaining.

2.   Plaintiffs further object to this instruction on additional grounds explained in more detail in the objections to previous instructions: this instruction inaccurately suggests that lost profits are only available as damages for breach of contract, when lost profits are also recoverable as a damages for misappropriation of trade secrets under the California trade secrets statute.  In addition, it is also duplicative of Emerson's proposed jury instruction on LOST PROFITS (ECONOMIC DAMAGE) and BladeRoom's legally correct proposed instruction on Lost Profits.  The same instruction should not be given multiple times.

[Proposed by Emerson.]

Proposed Jury Instruction No. 63

### UNJUST ENRICHMENT

Emerson is unjustly enriched if its misappropriation of BladeRoom's alleged trade secrets caused Emerson to receive a benefit that it otherwise would not have achieved.

To decide the amount of any unjust enrichment, first determine the value of Emerson's benefit that would not have been achieved except for the misappropriation.  Then subtract from that amount Emerson's reasonable expenses, including the value of labor, materials, rents, expenses, and interests invested in capital expenditure (including to the extent Emerson had internal expertise developed over time on data centers, both before and after the alleged misappropriation).  In calculating the amount of any unjust enrichment, do not take into account any amount that you included in determining any amount of damages for BladeRoom's actual loss.

[*Authority*: Judicial Council of California, Civil Jury Instructions 4410; *see Ajaxo Inc. v. E*Trade Financial Corp.*, 187 Cal. App. 4th 1295, 1305 (2010) (noting unjust enrichment in the context of misappropriation of a trade secret is synonymous with restitution).]

30692\6662445.1

BladeRoom objects to the previous proposed jury instruction for each of the reasons below and proposes that the Court give Proposed Jury Instruction No. 58 [Proposed by Plaintiffs] instead.

BladeRoom's Objections to Emerson's Proposed Jury Instruction No. 63:

## UNJUST ENRICHMENT

1. This instruction fails to instruct the jury that unjust enrichment is an available remedy not only for Emerson's misappropriation of BladeRoom's trade secrets, but also for Emerson's breach of its nondisclosure agreements with Plaintiffs. *Ajaxo Inc. v. E*Trade Grp., Inc.*, 135 Cal. App. 4th 21, 56–57 (2005) (instructing jury on damages for unjust enrichment for a breach of a nondisclosure agreement); *see also Attorney General v Blake* [2001] 1 AC 268 ("When, exceptionally, a just response to a breach of contract so requires, the court should be able to grant the discretionary remedy of requiring a defendant to account to the plaintiff for the benefits he has received from his breach of contract…If confidential information is wrongfully divulged in breach of a non-disclosure agreement, it would be nothing short of sophistry to say that an account of profits may be ordered in respect of the equitable wrong but not in respect of the breach of contract which governs the relationship between the parties."); *see also Peter Pan Manufacturing Corpn. v. Corsets Silhouette Ltd* [1964] 1 WLR 96 (allowing recovery for an accounting of the defendants' profits for a breach of confidence).  The NDA further supports this conclusion, as the parties expressly contracted in the NDA to allow the non-breaching party to obtain equitable relief in the event of a breach, *See* Trial Exh. 2, at paragraph 11 (acknowledging that "due to the character of the Information to be made available hereunder" the parties agree that the non-breaching party will be entitled to seek additional remedies for breach including "equitable relief").

2. Emerson's assertion that there is no constitutional right to a jury on unjust enrichment and its attempted reliance on the Federal Circuit's recent decision with respect to a trade secret claim under Texas common law in *Texas Advanced Optoelectronic Sols., Inc. v. Renesas Elecs. Am., Inc.,* No. 2016-2121, 2018 WL 2011463, *10-*15 (Fed.

155.

30692\6662445.1

Cir. May 1, 2018) is wrong.  Under California's statutory trade secret act, a plaintiff asserting claims for misappropriation of trade secrets  is entitled to obtain an award of damages for unjust enrichment.  C.C.P. §3426.3(a).   It is for the jury to determine whether damages for unjust enrichment should be awarded.  *Ajaxo Inc. v E\*Trade Financial Corp.* (2010) 187 Cal. App. 4th 1295, 1305.  *See also*, CACI  No. 4409, Directions For Use ("If unjust enrichment is alleged, give CACI No. 4410, *Unjust Enrichment*") and CACI No. 4410 Directions For Use ("Give this instruction with CACI No. 4409, *Remedies For Misappropriation of Trade Secrets*, if unjust enrichment is alleged and supported by the evidence.").  The *Texas Advanced Optoelectronic Sols., Inc. v. Renesas Elecs. Am., Inc.* decision cited by Emerson has no application in this case as it was addressing a claim brought under Texas common law.  The claims for misappropriation of trade secrets being asserted by BladeRoom in this case are brought pursuant to the statutory cause of action provided by the California Uniform Trade Secret Act, which was enacted by the California legislature in 1984, and expressly provides for the recovery of unjust enrichment damages.  C.C.P. §3426, *et seq.*  The rights and remedies for a CUTSA statutory cause of action are governed by the statute itself; no Seventh Amendment right is at issue.  As such, the *Texas Advanced Optoelectronic* court's analysis regarding whether there was a Seventh Amendment right to a jury trial on a common law claim under Texas state law for disgorgement of profits has no application here.

**3.**    The instruction also incorrectly identifies the following as a "reasonable expense" that can be deducted from unjust enrichment, when it is not: "(including to the extent Emerson had internal expertise developed over time on data centers, both before and after the alleged misappropriation)."

**4.**    This also fails to instruct (and in fact inaccurately suggests to the contrary) that it is Defendants' burden to prove deductible expenses and any portion of their unjust enrichment that is attributable to anything other than BladeRoom's trade secrets or confidential information.  *Micro Lithography v. Inko Industries Inc.*, 20 USPQ 2d

1  1347, 1352 (Cal. App. 6th Dist. 1991); Restatement (Third) of Unfair Competition §

2  45, comment f (1995).

3  **5.**   Plaintiffs object to this instruction and request that the Court instead give

4  BladeRoom's proposed instruction No. 58 on Unjust Enrichment, which accurately

5  states the law.

157.

[Proposed by Emerson]

Proposed Jury Instruction No. 64

## APPORTIONMENT

Damages for misappropriation of trade secrets must be tied to each specific trade secret and to each specific combination of trade secrets.  If you determine that Emerson misappropriated BladeRoom's alleged trade secrets, and you must further determine whether the misappropriation caused BladeRoom to lose profits (or Emerson to be unjustly enriched). If you determine that the misappropriation caused BladeRoom to lose profits (or Emerson to be unjustly enriched), you must then decide how much lost profit (or unjust enrichment) is attributable to, or resulted form, the misappropriation of each trade secret.  BladeRoom bears the burden of proving the amount of lost profits (or unjust enrichment) from any misappropriation of each specific alleged trade secret of specific combination of trade secrets.  You cannot award damages to BladeRoom on its claim for misappropriation of trade secrets if they are unable to prove the amount of lost profits they suffered, or the amount of unjust enrichment Emerson received, separately for each trade secret.

*[Authority*: *O2 Micro Int'l Ltd. v. Monolithic Power Sys., Inc.*, 399 F. Supp. 2d 1064 (N.D. Cal. 2005) (granting Rule 50 motion on ground that jury had insufficient evidence to apportion damages among the trade secrets); *Children's Broadcasting Corp. v. Walt Disney Co.*, 245 F.3d 1008, 1018 (8th Cir. 2001), aff'd, 357 F.3d 860 (8th Cir. 2001) (excluding opinion, noting that "here expert improperly concluded that 'any misappropriation of any trade secret caused the same amount of damage'" and "[t]he assertion that any or all of the alleged wrongful acts would have caused the same outcome is dubious"); *Storage Tech. Corp. v. Cisco Sys., Inc.*, 395 F.3d 921, 926-27 (8th Cir. 2005) (exclusion of expert was appropriate because damages calculation was too speculative where expert failed to apportion damages to the trade secrets); *Vermont Microsystems, Inc. v. Autodesk, Inc.*, 88 F.3d 142, 152 (2nd Cir. 1996) (rejecting damages award that included damages beyond what could be attributed to the alleged trade secret); *KW Plastics v. U.S. Can Co.*, 131 F.Supp. 2d 1289, 1295 (M.D. Ala. 2001) (excluding damages expert opinion because expert did "not attempt to determine the value of the specific trade secrets used."); *Alcatel USA, Inc. v. Cisco Systems, Inc.*, 239 F.Supp.2d 660, 670-71 (E.D. Tex. 2002) (excluding expert who failed to "present evidence of apportionment").]

30692\6662445.1

1    BladeRoom objects to the previous proposed jury instruction for each of the reasons below.

2        BladeRoom's Objections to Emerson's Proposed Jury Instruction No. 64:

3                                    **APPORTIONMENT**

4    **1.**    This is not a standard CACI trade secret instruction and should not be added to the

5            standard instructions provided to the jury on causation and damages.  It was crafted

6            by Emerson to advance a defense theory, and it is erroneous, unnecessary, prejudicial,

7            and likely to lead to juror confusion.

8    **2.**    This instruction was not given to a jury in any of the cases cited in support, fails to

9            accurately and fairly reflect the law, and is inconsistent with the Court's ruling on the

10           Daubert motions.  In particular, the instruction inaccurately states that "damages must

11           be tied to each specific trade secret and specific combination trade secret," that the

12           jury may not award BladeRoom's entire amount of damages if only a single trade

13           secret is misappropriated, and that Plaintiffs may not recover damages unless they

14           prove the amount of lost profits or unjust enrichment "separately for each trade

15           secret."  None of these requirements exist under the law.  Although Plaintiffs bear the

16           burden of proving causation, Plaintiffs may recover their entire amount of damages if

17           any of the asserted trade secrets is found by the jury to be misappropriated and if the

18           evidence supports a finding that that misappropriation caused the damages Plaintiffs

19           seeks.  *See*, *e.g., ATS Prod. Inc. v. Ghiorso*, No. C10-4880 BZ, 2012 WL 253315, at

20           *1 (N.D. Cal. Jan. 26, 2012) (denying motion for judgment as matter of law where

21           jury found most, though not all trade secrets misappropriated, despite defendants'

22           argument that "the damages award is speculative because there was no testimony

23           regarding how to apportion damages on a trade secret-by-trade secret basis.");

24           *CardiAQ Valve Techs., Inc. v. Neovasc Inc.*, 708 F. App'x 654, 666, 667 n.7 (Fed.

25           Cir. 2017) (affirming jury verdict based on expert testimony that any one of multiple

26           separate trade secrets was worth the entire amount of damages calculated); *Iofina,*

27           *Inc. v. Igor Khalev*, No. CIV-14-1328-M, 2016 WL 6242930, at *3 (W.D. Okla. Oct.

28           25, 2016) (denying defendants' motion to exclude testimony of plaintiff's damages

159.

30692\6662445.1

1    expert that "the damages are the same if one trade secret is misappropriated or if all

2    trade secrets are misappropriated"); *W.L. Gore & Assocs., Inc. v. GI Dynamics, Inc.*,

3    872 F. Supp. 2d 883, 892 (D. Ariz. 2012) (jury could decide damages or unjust

4    enrichment even though plaintiff's damages expert "report does not break out the

5    particular value of the secrets on a secret-by-secret basis"); *Ice Corp. v. Hamilton*

6    *Sundstrand Corp.*, 615 F. Supp. 2d 1256, 1264 (D. Kan. 2009) ("Plaintiff's lost profits

7    are an appropriate measure of damages for the misappropriation in this case whether

8    one, two, or all three of the trade secrets were misappropriated."); ; *Quintel Tech. Ltd.*

9    *v. Huawei Techs. USA, Inc.*, No. 4:15-CV-307, 2018 WL 626355, at *7 (E.D. Tex.

10   Jan. 30, 2018) ("The Court finds that [plaintiff's damages expert] failure to apportion

11   is not fatal to his opinion since such a determination is for the jury.").

3.   The required test for causation in California is the "substantial factor" test and that

test is what the jury is instructed on.  Thus, the jury's role is to determine whether the

misappropriation of any one or more of BladeRoom's trade secrets was a substantial

factor in causing the damages and/or unjust enrichment BladeRoom seeks.  The Court

can review the finding by the jury for sufficiency of the evidence following any

verdict, consistent with the Court's ruling on the Daubert motions, but any instruction

to the jury on "allocation" is confusing and unnecessary and, especially if given in the

form Emerson proposes, erroneous under the law.

4.   Although Plaintiffs believe that no instruction should be given on Apportionment, if

the Court is inclined to provide such an instruction, Plaintiffs request that they be

allowed to submit an instruction that accurately and fairly reflects the governing law

on the issue.

160.

30692\6662445.1

[Proposed by Emerson]

Proposed Jury Instruction No. 65

**PRESENT CASH VALUE OF FUTURE DAMAGES**

To recover for future harm, BladeRoom must prove that the harm is reasonably certain to occur and must prove the amount of those future damages. The amount of damages for future harm must be reduced to present cash value. This is necessary because money received now will, through investment, grow to a larger amount in the future. Emerson must prove the amount by which future damages should be reduced to present value.

To find present cash value, you must determine the amount of money that, if reasonably invested today, will provide BladeRoom with the amount of its future damages. You may consider expert testimony in determining the present cash value of future damages.

[*Authority*: Judicial Council of California, Civil Jury Instructions 359.]

30692\6662445.1

BladeRoom objects to the previous proposed jury instruction for each of the reasons below.

BladeRoom's Objections to Emerson's Proposed Jury Instruction No. 65:

**PRESENT CASH VALUE OF FUTURE DAMAGES**

This is a procedural instruction under California law. Procedural instructions in federal court are given according to the Ninth Circuit Model Civil Jury Instructions.

30692\6662445.1

==[Proposed by Emerson]==

Proposed Jury Instruction No. 66

**ARGUMENTS OF COUNSEL NOT EVIDENCE OF DAMAGES**

The arguments of the attorneys are not evidence of damages.  Your award must be based on your reasoned judgment applied to the testimony of the witnesses and the other evidence that has been admitted during trial.

[*Authority*: Judicial Council of California Civil Jury Instruction § 3925.]

30692\6662445.1

BladeRoom objects to the previous proposed jury instruction for each of the reasons below.

BladeRoom's Objections to Emerson's Proposed Jury Instruction No. 66:

**ARGUMENTS OF COUNSEL NOT EVIDENCE OF DAMAGES**

This is a procedural instruction under California law.  Procedural instructions in federal court are given according to the Ninth Circuit Model Civil Jury Instructions.  This instruction is unnecessary and potentially confusing as it duplicates the procedural instruction in Ninth Circuit Model Civil Jury Instruction §1.10—What Is Not Evidence, which all parties have jointly proposed (this instruction states that arguments and statements by lawyers are not evidence).  This additional instruction on arguments of counsel is unnecessary.  Plaintiffs object to this instruction in its entirety, but if the Court is inclined to give it, Plaintiffs request that the instruction be given in order at the same time as all of the other procedural instruction, not with the substantive damages instructions, in order to avoid prejudice to Plaintiffs.

[Proposed by Emerson]

Proposed Jury Instruction No. 67

**DAMAGES ON MULTIPLE LEGAL THEORIES**

BladeRoom seeks damages from Emerson under more than one legal theory.  However, each item of damages may be awarded only once, regardless of the number of legal theories alleged.

You will be asked to decide whether Emerson is liable to BladeRoom under the following legal theories:

　　　1.　　　Misappropriation of trade secrets; and

　　　2.　　　Breach of contract as to Emerson:


The following items of damages are recoverable only once against Emerson under all of the above legal theories:

　　　1.　　　Lost profits


[*Authority*: Judicial Council of California, Civil Jury Instructions 3934; *see Roby v. McKesson Corp.*, 47 Cal. 4th 686, 702, 219 P.3d 749, 758 (2009), *as modified* (Feb. 10, 2010) (finding that it is necessary to identify items of damages with specificity, as double or duplicative recovery for the same damage items is prohibited)]

165.

BladeRoom objects to the previous proposed jury instruction for each of the reasons below.

BladeRoom's Objections to Emerson's Proposed Jury Instruction No. 67:

**DAMAGES ON MULTIPLE LEGAL THEORIES**

1.   This is a procedural instruction under California law.  Procedural instructions in federal court are given according to the Ninth Circuit Model Civil Jury Instructions.

2.   The instruction is also very likely to confuse jurors because it suggests that the jury may award *only* lost profits, when both lost profits and unjust enrichment are available remedies.

3.   This instruction is also unnecessary.  The substantive instructions already proposed by the parties on damages for trade secret misappropriation and breach of contract specifically inform the jury how to determine any amounts to award.  Moreover, because the verdict form separately requests amounts to be awarded for breach of contract and for trade secret misappropriation, the Court will have the ability to evaluate the jury's verdict for any improper duplication between the claims.

4.   Plaintiffs object to this instruction in its entirety.  If the Court is inclined to give this instruction over BladeRoom's objections, Plaintiffs request that they be allowed to submit an instruction that accurately and fairly reflects the different lost profits and unjust enrichment amounts the jury may award against Emerson and that any such instruction be provided at the same time as all of the other procedural instructions, not with the substantive damages instructions, in order to avoid prejudice to Plaintiffs.

[PROPOSED] JURY INSTRUCTIONS
CASE NO. 15-CV-01370 EJD

[Proposed by Parties]

Proposed Jury Instruction No. 68

**PREJUDGMENT INTEREST**

If you decide that BladeRoom is entitled to recover damages for past economic loss in one or more of the categories of damages that they claim, then you must decide whether they should also receive prejudgment interest on each item of loss in those categories. Prejudgment interest is the amount of interest the law provides to a plaintiff to compensate for the loss of the ability to use the funds. If prejudgment interest is awarded, it is computed from the date on which each loss was incurred until the date on which you sign your verdict.

Whether BladeRoom should receive an award of prejudgment interest on all, some, or none of any past economic damages that you may award is within your discretion. If you award these damages to BladeRoom, you will be asked to address prejudgment interest in the total award on your verdict form.

[*Authority*: Judicial Council of California Civil Jury Instructions (CACI) 3935; Civ. Code, § 3288.]

167.

30692\6662445.1

1    Dated:  May 2, 2018                         FARELLA BRAUN + MARTEL LLP

2
                                                 */s/ Stephanie P. Skaff*
3                                                By:      Stephanie P. Skaff

4                                                 Stephanie P. Skaff (183119)
                                                    sskaff@fbm.com
5                                                Jeffrey M. Fisher (155284)
                                                    jfisher@fbm.com
6                                                Eugene Y. Mar (227071)
                                                    emar@fbm.com
7                                                Alex Reese (280530)
                                                    areese@fbm.com
8                                                Julia F. Kropp (298363)
                                                    jkropp@fbm.com
9                                                FARELLA BRAUN + MARTEL LLP
                                                 235 Montgomery Street, 17th Floor
10                                               San Francisco, CA  94104
                                                 Telephone:  (415) 954-4400
11                                               Facsimile:  (415) 954-4480

12                                               Attorneys for Plaintiffs
                                                 BLADEROOM GROUP LIMITED AND
13                                               BRIPCO (UK) LIMITED

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

                                          168.
                                                       [PROPOSED] JURY INSTRUCTIONS
                                                       CASE NO. 15-CV-01370 EJD

1   Dated:  May 2, 2018                          PROCOPIO, CORY, HARGREAVES &
                                                 SAVITCH LLP
2

3                                                */s/ Mindy M. Morton*
                                                 By:     Mindy M. Morton
4

5                                                Robert H. Sloss (87757)
                                                   robert.sloss@procopio.com
6                                                Melinda M. Morton (209373)
                                                   mindy.morton@procopio.com
7                                                Soohyun Park (276447)
                                                   stacy.park@procopio.com
8                                                PROCOPIO, CORY, HARGREAVES &
                                                 SAVITCH LLP
9                                                1117 California Ave., 2nd Fl.
                                                 Palo Alto, CA 94304
10                                               Telephone: (650) 645-9000
                                                 Facsimile: (650) 687-8320
11

12                                               Attorneys for Defendants
                                                 EMERSON ELECTRIC CO.,
13                                               EMERSON NETWORK POWER
                                                 SOLUTIONS, INC., and LIEBERT
14                                               CORPORATION

15

16

17

18

19

20

21

22

23

24

25

26

27

28

[PROPOSED] JURY INSTRUCTIONS
CASE NO.  15-CV-01370 EJD

30692\6662445.1