United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| BLADEROOM GROUP LIMITED, et al.,<br><br>    Plaintiffs,<br><br>v.<br><br>EMERSON ELECTRIC CO., et al.,<br><br>    Defendants. | Case No. 5:15-cv-01370-EJD<br><br>**ORDER RE: MOTIONS IN LIMINE FILED MAY 8, 2018**<br><br>Re: Dkt. Nos. 834, 835 |

Presently before the court are two motions in limine filed by Plaintiffs. Dkt. Nos. 834, 835. In the first, Plaintiffs move for an order precluding Emerson from referencing or relying on Trial Exhibit 2707 in its Closing Argument. Because Emerson stated at the hearing it will not do so, the court will deny that motion as moot.

In the second, Plaintiffs move to prohibit Emerson from arguing that Section 3(a) of the Confidentiality Agreement can be invoked to retroactively excuse a breach of contract. They also move to prohibit Emerson from arguing that Section 12 of the Confidentiality Agreement allowed Emerson to use Plaintiffs' confidential information after termination of the contract without risking a breach. This motion will be granted for the reasons explained below.

**I.    THE CONFIDENTIALITY AGREEMENT**

Section 3 of the Confidentiality Agreement provides:

> The confidentiality obligations and undertakings set out in this agreement do not apply to:
>
> (a) Information which now is in, or hereafter comes into, the public domain, otherwise than by reason of a breach of this agreement by you or, as if they were parties to this agreement directly, by any of your Designated Persons . . . .

Case No.: 5:15-cv-01370-EJD
ORDER RE: MOTIONS IN LIMINE FILED MAY 8, 2018
1

Section 12 of the Confidentiality Agreement provides:

> The parties acknowledge and agree that their respective obligations under this agreement shall be continuing and, in particular, they shall survive the termination of any discussions or negotiations between you and the Company regarding the Transaction, provided that this agreement shall terminate on the date 2 years from the date hereof.

The Confidentiality Agreement's opening paragraph assists in defining what is meant by the term "Transaction" in Section 12. That paragraph provides:

> In connection with your interest concerning a possible transaction involving the acquisition of all of the share capital of BladeRoom Holdings Limited . . . and subject to your agreement to enter into this agreement, the Company and/or its shareholders and/or its agents may provide your and/or the Designated Persons . . . with certain information with a view to you considering entering into such a transaction with the Company and/or its shareholders (the "Transaction").

## II. LEGAL STANDARD

The second motion in limine presents an issue of contract interpretation under English law. As the court has noted in connection with its rulings on jury instructions, and as the relevant authorities establish, the law of interpretation under English law tracks that of California.

In the United Kingdom, "[t]he word 'construction' refers to the process by which a court determines the meaning and legal effect of a contract." Chitty on Contracts § 12.041 (21st ed. 1955). "The object of all construction of the terms of a written agreement is to discover therefrom and from the available factual background the meaning of the agreement." Id. at § 12.042. The agreement must be interpreted objectively: "the question is not what one or other of the parties meant or understood by the words used but rather what a reasonable person in the position of the parties would have understood the words to mean." Id. at § 12.043.

Ascertaining what a reasonable person would understand is usually accomplished by construing the words of the agreement "as they stand;" that is, "the meaning of the document or of a particular part of it is to be sought *in the document itself*." Id. (emphasis preserved). But the English courts do not "approach the task of construction with too nice a concentration upon individual words." Id. at § 12.044. "The courts will, in principle, "look at all the circumstances

Case No.: 5:15-cv-01370-EJD
ORDER RE: MOTIONS IN LIMINE FILED MAY 8, 2018

2

surrounding the making of the contract and available to the parties," otherwise known as the "factual matrix." Id. at § 12.043. "[A]n examination of all the factual circumstances that might point to an interpretation which differs from the one which the words themselves convey may lead to an unnecessary protection of the judicial process." Id. at § 12-050.

Like the procedure in California, contract construction in the United Kingdom starts with ordinary and natural meaning of the words. Id. at § 12-051. This rule gives way, however, "where that meaning would involve an absurdity or would create some inconsistency with the rest of the instrument," or where construing the words in their ordinary sense "would lead to a very unreasonable result." Id. at § 12-055. "The more unreasonable the result, the more unlikely it is that the parties can have intended it, and if they do intend it the more necessary it is that they shall make their intention abundantly clear." Id. at § 12-063.

In addition, the words of an agreement are not interpreted in isolation. Rather, "[e]very contract is to be construed with reference to its object and the whole of its terms, and accordingly, the whole context must be considered in endeavouring to interpret it." Id.

### III. DISCUSSION

#### A. Section 3(a)

Plaintiffs argue that Section 3(a) of the Confidentiality Agreement cannot be constructed to retroactively forgive breaches of contract. In other words, Plaintiffs argue the language referencing information "which now is in, or hereafter comes into, the public domain" must be interpreted prospectively, such that the public disclosure of confidential information subsequent to an accrued breach does not suddenly excuse that breach.

For its part, Emerson stated during argument that it does not necessarily disagree with that construction. Applying the rules outlined above, the court concurs the language of Section 3(a) does not support retroactive forgiveness. Indeed, the court identified at the hearing on this motion why such an interpretation is absurd if taken to its logical limit: it would allow a breaching party to use Section 3(a) as a way to dismiss or vacate breach of contract actions or judgments already in existence at the time confidential information is subsequently put into the public domain. That is

Case No.: 5:15-cv-01370-EJD
ORDER RE: MOTIONS IN LIMINE FILED MAY 8, 2018
3

certainly a "very unreasonable result."

Plaintiff's motion will therefore be granted as to Section 3(a), and Emerson will be prohibited from arguing that Section 3(a) of the Confidentiality Agreement can retroactively excuse any breaches of contract.

### B. Section 12

The parties have provided different interpretations of Section 12. Emerson contends the language providing the agreement "shall terminate on the date 2 years from the date hereof" is absolute and applies to all of the parties' obligations. Specifically, Emerson argues it could permissibly disclose or use any confidential information it obtained from Plaintiffs during the lifespan of the agreement after 2 years without risking liability for breach of contract.

Under Plaintiffs' interpretation, the termination language only applies to the provisions of the agreement specifying what information is confidential; that is, information disclosed during the 2-year lifespan of the agreement is deemed confidential and subject to a continuing obligation against use disclosure or use, but any information disclosed by Plaintiffs after 2 years is not subject to this restriction.

Plaintiffs' interpretation is the one that comports with the English rules of contract construction for several reasons. First, the purpose and context of the Confidentiality Agreement support Plaintiffs' construction. As the agreement's first paragraph provides, its purpose is to allow the exchange of confidential information in connection with a possible acquisition or business transaction. The purpose is not to provide a technology transfer after 2 years, which is in essence what Emerson's interpretation would create. That would be an uncontemplated windfall that is not reflected in any other provision of the agreement.

Second, a reasonable person in the position of the parties would not have understood the words to mean what Emerson advocates. Again, the purpose of the contract is to protect information, not provide for its release after 2 years, and a reasonable businessperson in either party's position would not have contemplated Emerson's construction at the time of formation. There is no evidence in the trial record that the parties intended to give Emerson carte blanche use

Case No.: 5:15-cv-01370-EJD
ORDER RE: MOTIONS IN LIMINE FILED MAY 8, 2018

4

1  of Plaintiffs' confidential information after 2 years. To the contrary, the only evidence in the
2  record from one of the agreement's signatories shows that, he at least intended any information
3  exchanged would remain confidential. And the inferences Emerson draws from other evidence,
4  such as contemplated patent applications, are unpersuasive. The court cannot accept that a
5  reasonable businessperson would contract for the release of confidential information based on the
6  speculative possibility that patents might issue in the future.

Third, Emerson's construction would lead to an absurd result, and would "create some inconsistency with the rest of the instrument" for these same reasons.

Thus, Plaintiffs' motion will also be granted as to Section 12. Emerson will be prohibited from arguing that Section 12 of the Confidentiality Agreement allowed Emerson to use Plaintiffs' confidential information after the 2-year termination of the contract without risking a breach.

## IV. ORDER

Plaintiffs' first motion in limine filed on May 8, 2018 (Dkt. No. 834) is DENIED AS MOOT. Plaintiffs' second motion in limine filed on May 8, 2018, is GRANTED. Emerson is prohibited from:

(1) arguing that Section 3(a) of the Confidentiality Agreement can retroactively excuse any breaches of contract; and

(2) arguing that Section 12 of the Confidentiality Agreement allowed Emerson to use Plaintiffs' confidential information after the 2-year termination of the contract without risking a breach.

**IT IS SO ORDERED.**

Dated: May 8, 2018

EDWARD J. DAVILA
United States District Judge

Case No.: 5:15-cv-01370-EJD
ORDER RE: MOTIONS IN LIMINE FILED MAY 8, 2018
5