United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| BLADEROOM GROUP LIMITED, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>EMERSON ELECTRIC CO, et al.,<br><br>Defendants. | Case No. 5:15-cv-01370-EJD<br><br>**ORDER DENYING DEFENDANT'S MOTION TO COMPEL PRODUCTION OF SETTLEMENT AGREEMENT**<br><br>Re: Dkt. No. 891 |

## I. INTRODUCTION

This action for misappropriation of trade secrets and breach of contract was tried to a jury. When the trial commenced, all parties named in the complaint were involved: specifically, Plaintiffs BladeRoom Group Ltd. and Bripco (UK) Ltd. (collectively, "BladeRoom") on the one hand, and Defendants Facebook, Inc., Emerson Electric Co., Emerson Network Power Solutions, Inc. and Liebert Corporation (collectively, "Emerson") on the other. But when the trial ended, the only remaining defendant was Emerson because BladeRoom and Facebook entered into a confidential settlement before the case went to verdict. Dkt. No. 771. The jury ultimately awarded BladeRoom $10 million in lost profits damages and $20 million in unjust enrichment damages for both of its claims against Emerson.

Believing there exists an opportunity to offset Facebook's settlement payment against the jury's damages verdict, Emerson now moves to compel production of the confidential agreement between Facebook and BladeRoom. Dkt. No. 891. BladeRoom and Facebook oppose the motion. Having carefully considered the parties' positions in conjunction with the trial record, the court concludes an offset of damages is impossible under these circumstances. Accordingly, Emerson's

Case No.: 5:15-cv-01370-EJD
ORDER DENYING DEFENDANT'S MOTION TO COMPEL SETTLEMENT AGREEMENT
1

motion will be denied for the reasons explained below.

## II. LEGAL STANDARD

"[F]ederal courts sitting in diversity apply state substantive law and federal procedural law." Cty. of Orange v. U.S. Dist. Ct. (In re Cty. of Orange), 784 F.3d 520, 523-24 (9th Cir. 2015). "The task of a federal court in a diversity action is to approximate state law as closely as possible in order to make sure that the vindication of the state right is without discrimination because of the federal forum." Gee v. Tenneco, Inc., 615 F.2d 857, 861 (9th Cir. 1980).

The state law relevant to this motion is California Civil Code § 877, which provides in relevant part:

> Where a release, dismissal with or without prejudice, or a covenant not to sue or not to enforce judgment is given in good faith before verdict or judgment to one or more of a number of tortfeasors claimed to be liable for the same tort, or to one or more other co-obligors mutually subject to contribution rights, it shall have the following effect:
>
> (a) It shall not discharge any other such party from liability unless its terms so provide, but it shall reduce the claims against the others in the amount stipulated by the release, the dismissal or the covenant, or in the amount of the consideration paid for it, whichever is the greater. . . .

Civil Code § 877 "is designed to provide for equitable sharing of damages, and assure that 'a plaintiff will not be enriched unjustly by a double recovery, collecting part of his total claim from one joint tortfeasor and all of his claim from another.'" Cty. of San Bernardino v. Walsh, 158 Cal. App. 4th 533, 544 (2008) (quoting Reed v. Wilson, 73 Cal. App. 4th 439, 444 (1999)). To accomplish this purpose, a settlement agreement between a plaintiff and one defendant can be discoverable by a non-settling defendant. See, e.g., Harrison v. Bankers Standard Ins. Co., No. 13cv1682 BAS (JLB), 2015 WL 3617108 (S.D. Cal. June 9, 2015).

## III. DISCUSSION

Emerson's position for this motion is a narrow one. As stated in its reply, "[t]he only issue raised by Emerson's Motion is whether the Court should compel [BladeRoom] to produce their settlement agreement with Facebook." To Emerson, the resolution is simple: the court need only

Case No.: 5:15-cv-01370-EJD
ORDER DENYING DEFENDANT'S MOTION TO COMPEL SETTLEMENT AGREEMENT
2

look to one statute, Civil Code § 877, and one rule, Federal Rule of Civil Procedure 26(b)(1), the latter of which permits discovery of any nonprivileged matter that is relevant to any party's claim and proportional to the needs of the case.

But the issue is not a standard discovery matter, and the court is not convinced that examining only the moment and ignoring the future is the proper approach. California law, on which Emerson's request is based, "neither does nor requires idle acts." Cal. Civ. Code § 3532.[1] Moreover, federal courts do not compel parties to produce information when doing so can neither contribute to a resolution nor result in a benefit outweighing the burden of production. Fed. R. Civ. P. 26(b)(1).

Because ordering BladeRoom to disclose its confidential settlement agreement with Facebook is an idle act which cannot result in an offset, and because disclosure would significantly burden the confidentiality of the settlement between BladeRoom and Facebook, the court will not compel production of the agreement.

### A.     The Scope of § 877

More specific observations about § 877 are important to resolving this motion.

First, as the party moving for relief, it is Emerson's burden to prove the entitlement to an offset, or at this stage, that an offset is possible. Textron Fin. Corp. v. Nat'l Union Fire Ins. Co of Pittsburgh, 118 Cal. App. 4th 1061, 1077 (2004)

Second, the plain language of § 877 reveals its provisions apply only to joint tortfeasors and to "one or more other co-obligors" on the same contract. The statute does not generally operate to offset damages in cases involving multiple wrongdoers. See Balfour Beatty Infrastructure, Inc. v. PB&A, Inc., No. 16-cv-01152-WHO, 2017 WL 1739101, at *8 (N.D. Cal. May 4, 2017). "Where a plaintiff brings claims only for breach of contract and the defendant is not a co-obligor, section 877 does not apply." Id.

Third, the court finds based on the nature of the unjust enrichment remedy in the context of

---

[1] Federal law is in accord. See Ohio v. Roberts, 448 U.S. 56, 74 (1980) ("The law does not require the doing of a futile act.").

Case No.: 5:15-cv-01370-EJD
ORDER DENYING DEFENDANT'S MOTION TO COMPEL SETTLEMENT AGREEMENT
3

trade secret misappropriation that § 877 cannot apply to restitutionary damages when the amounts awarded against separate defendants are based on the individualized benefits realized by those defendants. See BladeRoom Grp. Ltd. v. Facebook, Inc., No. 5:15-cv-01370-EJD, 2018 WL 1611835, at *2 (N.D. Cal. Apr. 3, 2018) ("The prevailing plaintiff in an action for the misappropriation of trade secrets may recover for the 'actual loss caused by misappropriation,' and may also recover 'for the unjust enrichment caused by misappropriation that is not taken into account in computing damages for actual loss.'"). Because the measure of unjust enrichment is specific to each defendant, based on "the defendant's profits on sales attributable to the use of the trade secret" (Restatement (Third) of Unfair Competition § 45 cmt. f (1995)), there can be no offset of one defendant's profits with those of another defendant.

**B. Authority Governing Disclosure of Confidential Settlement Agreements**

The "strong public policy favoring settlement of disputed claims" is also important to note because that policy overlays Emerson's request. Thomasian v. Wells Fargo Bank, N.A., No. 03:12-cv-01435-HU, 2013 WL 4498667, at *2 (D. Or. Aug. 22, 2013); accord Fed. R. Civ. P. 408 advisory committee's note (explaining the "more consistently impressive ground" for the evidentiary rule barring the use of offers of compromise and settlement negotiations "is promotion of the public policy favoring the compromise and settlement of disputes"); Advanced Cardiovascular Sys. Inc. v. Medtronic, Inc., 265 F.3d 1294, 1308 (Fed. Cir. 2001) ("[W]e are mindful . . . of the policy in favor protecting settlement negotiations from being admitted as evidence, this serving to encourage settlements."). Indeed, "[t]he law . . . favors settlement of litigation which reduces the burden on courts and counsel and mitigates the antagonism and hostility that protracted litigation leading to judgment may cause." 3 Michael H. Graham, Handbook of Federal Evidence § 408:1 n.6 (7th ed. 2012).

The "strong public policy" is not served to its fullest extent if confidential settlements are subject to the same unqualified standard which governs civil discovery. Thus, while the scope of pretrial discovery is admittedly broad (Shoen v. Shoen, 5 F.3d 1289, 1292 (9th Cir. 1993)), courts have found it less so when examining the potential disclosure of confidential terms because such

Case No.: 5:15-cv-01370-EJD
ORDER DENYING DEFENDANT'S MOTION TO COMPEL SETTLEMENT AGREEMENT
4

agreements should not be "lightly abrogated." Thomasian, 2013 WL 4498667, at *2 (quoting Flynn v. Portland Gen. Elec. Corp., No. 88-455-FR, 1989 WL 112802, at *2 (D. Or. Sept. 21, 1989); see also Phillips ex rel. Estates of Byrd v. Gen. Motors Corp., 307 F.3d 1206, 1212 (9th Cir. 2002) (recognizing that "courts have granted protective orders to protect confidential settlement agreements"); see also Kalinauskas v. Wong, 151 F.R.D. 363, 365 (D. Nev. 1993) ("Confidential settlements benefit society and the parties involved by resolving disputes relatively quickly, with slight judicial intervention, and presumably result in greater satisfaction to the parties. Sound judicial policy fosters and protects this form of alternative dispute resolution . . . . The secrecy of a settlement agreement and the contractual rights of the parties thereunder deserve court protection."); see also FireClean LLC v. Tuohy, No. CV-16-00604-TUC-JAS, 2018 WL 1811712, at *11 (D. Ariz. Apr. 17, 2018) ("[T]he Court notes that there are strong public policy and judicial reasons that support keeping settlement agreements confidential."); see also Abbott Diabetes Care Inc. v. Roche Diagnostics Corp., No. C05-03117 MJJ, 2007 WL 4166030, at *4 (N.D. Cal. Nov. 19, 2007) (noting the "federal policy of encouraging settlements by safeguarding the confidentiality of settlement agreements"). To that end, some courts require a "particularized showing of a likelihood that admissible evidence will be generated by the dissemination of the terms of a settlement agreement." Abbot Diabetes Care, 2007 WL 4166030, at *2 (citing Doe v. Methacton Sch. Dist., 164 F.R.D. 175, 1756 (E.D. Pa. 1995); Morse/Diesel, Inc. v. Fidelity and Deposit Co. of Maryland, 122 F.R.D. 447, 451 (S.D.N.Y. 1988)).

Here, it is particularly appropriate to require that Emerson show something more than broad relevance before obtaining the confidential settlement agreement between BladeRoom and Facebook. As noted, Emerson's request invokes the aforementioned federal policy promoting the settlement of litigation by preserving confidential resolutions. Moreover, the fact this request is framed as a discovery matter and appears post-verdict cannot be overlooked. Thus, in addition to overcoming the policy promoting settlement, Emerson must also convince the court there is a viable need for additional discovery at this late stage of the litigation. See California ex rel. California Dep't of Toxic Substances Control v. Campbell, 138 F.3d 772, 779 (9th Cir. 1998)

Case No.: 5:15-cv-01370-EJD
ORDER DENYING DEFENDANT'S MOTION TO COMPEL SETTLEMENT AGREEMENT
5

("District courts have wide latitude in controlling discovery . . . ."); see also Sheridan v. Reinke, 611 Fed. Appx. 381, 384 (9th Cir. 2015) (applying a "good cause" standard to motions to reopen discovery).

### C. Emerson Has Not Justified Disclosure of the Confidential Settlement Agreement

Applying the authorities recited above to this case, it becomes apparent why Emerson has not, and indeed cannot, identify a legitimate need for the agreement between BladeRoom and Facebook which would justify ordering discovery and overcome the "strong public policy" in favor of informal resolution and against the disclosure of settlement terms.

Only one of the two claims adjudicated by the jury could possibly qualify for an offset: the tort claim for misappropriation of trade secrets. Even assuming Facebook's settlement agreement with BladeRoom assigned monetary amounts to particular claims, Emerson cannot offset any payment made by Facebook to BladeRoom for breach of contract because Facebook and Emerson were not co-obligors on the same contract. Second Am. Compl., Dkt. No. 107, at ¶¶ 35, 38. To the contrary, BladeRoom alleged that Facebook and Emerson breached their *separate* non-disclosure agreements. Thus, by the statute's explicit terms, § 877 does not apply to the breach of contract claims asserted in this action. Cal. Civ. Code § 877; Balfour Beatty Infrastructure, 2017 WL 1739101, at *8 (N.D. Cal. May 4, 2017).

Moreover, only one category of damages could possibly qualify for an offset: the amount awarded to BladeRoom for lost profits. For reasons already explained, Emerson could not offset against the jury's unjust enrichment award any amount Facebook paid to BladeRoom for its own unjust enrichment because the jury's measure of those damages was based on Emerson's profits, not on BladeRoom's loss. See Restatement (Third) of Unfair Competition § 45 cmt. f (1995). Put differently, BladeRoom is not overcompensated by receiving two unjust enrichment awards because Facebook and Emerson separately benefitted from their improper uses of BladeRoom's trade secrets, and therefore must make separate disgorgements of profit. As a consequence, there is no chance of a double recovery as to unjust enrichment damages and no need to apply § 877. See Vesey v. United States, 626 F.2d 627, 633 (9th Cir. 1980) ("[T]he fundamental purpose of §

Case No.: 5:15-cv-01370-EJD
ORDER DENYING DEFENDANT'S MOTION TO COMPEL SETTLEMENT AGREEMENT

877 of the California Code is to preclude a double recovery arising out of the same wrong.").

Once the claim for breach of contract and the damages for unjust enrichment are removed from consideration, the only path to a § 877 offset involves lost profits awarded to BladeRoom for misappropriation of trade secrets. But there is simply no way for Emerson to get on that path. The jury's damages verdict, though differentiated between lost profits and unjust enrichment, is not apportioned between the two claims for which it found Emerson liable; that is, there is no way for the parties or the court to know how much was awarded for breach of contract and how much was awarded for misappropriation of trade secrets. In turn, there is simply no way to calculate an offset that applies only to the amount of lost profits awarded as tort damages. That number could be any amount between zero and $10 million, and only the jury knows the number.

Even if the settlement agreement was ordered disclosed, and even if it provided some way to apportion any payment Facebook made to BladeRoom, Emerson could never meet its burden to prove the entitlement to an offset against the damages verdict as a matter of fact. Since Emerson has not shown that a § 877 offset is realistic rather than theoretical, its interest in the agreement between Facebook and BladeRoom is outweighed by the public policy protecting confidential settlement terms. The court will not order an idle act, and the motion to compel must therefore be denied.

## IV. ORDER

Emerson's Motion to Compel Production of Settlement Agreement (Dkt. No. 891) is DENIED.

**IT IS SO ORDERED.**

Dated: November 26, 2018

EDWARD J. DAVILA
United States District Judge

Case No.: 5:15-cv-01370-EJD
ORDER DENYING DEFENDANT'S MOTION TO COMPEL SETTLEMENT AGREEMENT
7