UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| BLADEROOM GROUP LIMITED, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>EMERSON ELECTRIC CO, et al.,<br><br>Defendants. | Case No. 5:15-cv-01370-EJD<br><br>**ORDER DENYING MOTION FOR JUDGMENT ON UNFAIR COMPETITION CLAIM; FINDINGS OF FACT AND CONCLUSIONS OF LAW**<br><br>Re: Dkt. No. 896 |

A jury returned a verdict in favor of Plaintiffs BladeRoom Group Ltd. and Bripco (UK) Ltd. (collectively, "BladeRoom") on claims against Defendants Emerson Electric Co., Emerson Network Power Solutions, Inc. and Liebert Corporation (collectively, "Emerson") for misappropriation of trade secrets and breach of contract. BladeRoom now moves the court for judgment in its favor on the remaining claim under California's Unfair Competition Law ("UCL"), Business and Profession Code § 17200 et seq. Dkt. No. 896.

Federal jurisdiction arises pursuant to 28 U.S.C. § 1332. Having carefully considered the trial evidence in conjunction with the parties' pleadings, the court has determined that BladeRoom did not prove a UCL violation by a preponderance of the evidence. Accordingly, BladeRoom's motion for judgment will be denied consistent with the findings of fact and conclusions of law established below.

## I.    FINDINGS OF FACT

1.     There is no dispute that Plaintiffs BladeRoom Group, Ltd. and Bripco (UK) Ltd. are companies organized under the laws of England with registered offices located in Cheltenham,

United States District Court
Northern District of California

England. Second Am. Compl. ("SAC"), Dkt. No. 107, at ¶¶ 4-5; Answers, Dkt. Nos. 231-233, at ¶¶ 4-5.

2.      There is no dispute that Defendant Emerson Electric Co. is a company organized under the laws of Missouri with a principal place of business at St. Louis, Missouri.  SAC, at ¶ 7; Answers, at ¶ 7.

3.      There is no dispute that Defendant Emerson Network Power Solutions, Inc. is a company organized under the laws of Delaware with a principal place of business at Columbus, Ohio.  SAC, at ¶ 8; Answers, at ¶ 8.

4.      There is no dispute that Defendant Liebert Corporation is a company organized under the laws of Delaware with a principal place of business at Columbus, Ohio.  SAC, at ¶ 9; Answers, at ¶ 9.

5.      Emerson Network Power Solutions, Inc. and Liebert Corporation are 100% owned by Vertiv Group Corporation.  Dkt. No. 186.

6.      BladeRoom and Emerson are competitors in the field of modular data center design and construction.  Trial Tr., at 622:12-19; 1764:22-1765:6; 2439:4-2440:22; 3355:24-3356:16; Trial Ex. 823; Trial Ex. 1084.

7.      BladeRoom and Emerson were the only two companies that competed to design and construct Facebook's data center project known as "Lulea 2."  Trial Tr., at 1677:2-1678:7; 1858:7-10.

8.      In July, 2012, BladeRoom submitted a proposal to Facebook to design and build a data hall for Lulea 2.  Trial Tr., at 617:10-15; 1888:19-1889:2; Trial Ex. 753.

9.      Facebook ultimately selected Emerson over BladeRoom to design and construct Lulea 2.  Trial Tr., at 1858:11-14; Trial Ex. 1735.

10.     Emerson proposed designs and methods of construction for Lulea 2 to Facebook during a meeting on October 30, 2012.  Trial Tr., at 2086:14-2087:4; Trial Ex. 904.

11.     The October 30th design was the basis for, and was actually incorporated into, the

construction of Lulea 2. Trial Tr., at 2086:9-2152:2.

12. A jury found that BladeRoom proved by a preponderance of the evidence that the designs and methods described in Court Exhibit 2 and designated therein as Trade Secret 1 and Combination Trade Secret 8 qualified as trade secrets. Dkt. No. 867. The court likewise finds based on the evidence admitted at trial.

13. Components of Emerson's October 30th design for Lulea 2 were substantially derived from the designs and methods described in Court Exhibit 2 and designated therein as Trade Secret 1 and Combination Trade Secret 8. Trial Tr., at 2090:8-2116:10.

14. A jury found that BladeRoom proved by a preponderance of the evidence that Emerson improperly disclosed or used the designs and methods described in Court Exhibit 2 and designated therein as Trade Secret 1 and Combination Trade Secret 8. Dkt. No. 867. The court likewise finds based on the evidence admitted at trial.

15. A jury found that Emerson's misappropriation of the designs and methods described in Court Exhibit 2 and designated therein as Trade Secret 1 and Combination Trade Secret 8 was a substantial factor in causing BladeRoom harm and causing Emerson to be unjustly enriched. Dkt. No. 867. The court likewise finds based on the evidence admitted at trial.

16. Liebert filed provisional U.S. Patent Application No. 61/886,402 on October 3, 2013. Mar Decl., Dkt. No. 894, at Ex. 5.

17. Liebert's U.S. Patent No. 9,572,288 issued on February 14, 2017, and claims priority to the '402 provisional application. Trial Ex. 1260.

18. The '288 patent covers some of the same components described in Emerson's October 30th design for Lulea 2. Trial Tr., at 2127:3-6.

19. Many of the figures in the '288 patent are the same as figures used in Emerson's October 30th design for Lulea 2. Compare Trial Ex. 904 with Trial Ex. 1260.

20. There is no evidence that Emerson has ever sought to enforce the '288 patent.

21. There is no evidence regarding whether, and to what extent, the '288 patent gives

Emerson a share of a particular market.

22. In its 2014 Annual Report, Emerson featured photos of the Lulea 2 project and claimed that, in collaboration with Facebook, it had created "the new 'rapid deployment data center'" approach for Lulea 2, which it described as a "new-to-the-world data center approach." Mar Decl., at Ex. 6.

23. Emerson referenced the design and construction of Lulea 2 in marketing materials and on its website. Trial Tr., at 1721:17-1732:2; Dkt. 831, pp. 39-40 at 99:23-121:03, 125:7-160:22; Trial Exs. 823, 1084; Mar Decl., at Ex. 1.

24. Emerson hosted Microsoft for a tour of Lulea 2 as part of its efforts to win Microsoft as a modular data center customer. Trial Ex. 980.

25. Emerson hosted a large technology company and a large telecommunications company on tours of Lulea 2 in an attempt to gain their data center business. Trial Tr., at 2146:23-2147:7.

26. Emerson proposed to use versions of the designs and methods used to construct Lulea 2 to other prospective customers. Trial Tr., at 2146:7-22.

27. In March, 2014, BladeRoom received an email from a "super important" client suggesting that Facebook's "new way of building a data center" was similar to BladeRoom's designs and method. Trial Tr., at 614:19-615:2; Trial Ex. 32.

28. Due to the similarities between Facebook's "new way of building a data center" and BladeRoom's designs and method, there was a "question mark" over whether BladeRoom had created its own technology. Trial Tr., at 622:7-11.

29. Google and Microsoft were interested in BladeRoom's data center product, but each company stopped communicating with BladeRoom after the "question mark over the technology has taken place." Trial Tr., at 622:12-19.

30. BladeRoom originally alleged claims under the UCL's unlawful and unfair "prongs." Dkt. No. 106-4, at ¶¶ 149-157.

31.    The court previously determined that BladeRoom's UCL claim under the unlawful prong was preempted by the California Uniform Trade Secrets Act.  Dkt. No. 494.

32.    BladeRoom moves for judgment against Emerson on the UCL claim under the unfair prong.  Dkt. No. 896.

33.    BladeRoom argued at the hearing on July 18, 2018, that "BladeRoom's UCL claim (and the competitive harm alleged) is premised on 'non-preempted' unfair conduct."  Pls.' Presentation for Post-Trial Motions Hearing, at p. 3.[1]

34.    BladeRoom argued at the July 18th hearing that "Emerson is harming Consumers at the market for the technology by wrongfully "passing off" this invention as its own."  Id.

35.    At the July 18th hearing, BladeRoom identified two ways that Emerson "passes" off the invention as its own: (1) "To potential customers through marketing and sales presentations," and (2) "To the patent office and to the public through its unlawfully-obtained patent."  Id.

36.    BladeRoom argued at the July 18th hearing that these instances of "non-preempted" unfair conduct are "the gravamen" of the UCL claim.  Id.

## II.    CONCLUSIONS OF LAW

37.    An "unauthorized use need not extend to every aspect or feature of the trade secret; use of any substantial portion of the secret is sufficient to subject the actor to liability" for misappropriation.  Restatement (Third) of Unfair Competition § 40 cmt. c (1995).

38.    "[T]he actor need not use the trade secret in its original form" to be liable for misappropriation of trade secrets.  Id.

39.    "[A]n actor is liable for using the trade secret with independently created improvements or modifications if the result is substantially derived from the trade secret."  Id.; accord Mangren Res. & Dev. Corp. v. Nat'l Chem. Co., Inc., 87 F.3d 937, 944 (7th Cir. 1996).

40.    A patent provides its owner with "the right to exclude others from making, using,

---

[1] The court has attached Page 3 of BladeRoom's presentation as Ex. 1.

offering for sale, or selling the invention throughout the United States." 35 U.S.C. § 154(a)(1)

41.     The UCL broadly prohibits business practices that are unlawful, unfair, or fraudulent.  Cal. Bus. & Prof. Code § 17200; Kwikset v. Super. Ct., 51 Cal. 4th 310, 320 (2011).

42.     The UCL's "purpose 'is to protect both consumers and competitors by promoting fair competition in commercial markets for goods and services,'" and its language is framed broadly in service of that purpose.  Kwikset, 51 Cal. 4th at 320 (quoting Kasky v. Nike, Inc., 27 Cal. 4th 939, 949 (2002)).

43.     To have standing under the UCL, a plaintiff must have "lost money or property as a result of the unfair competition."  Cal. Bus. & Prof. Code § 17204.

44.     "There are innumerable ways in which economic injury from unfair competition may be shown."  Kwikset, 51 Cal. 4th at 323.

45.     Injunctive relief and restitution are possible remedies for UCL violations.  See Korea Supply Co. v. Lockheed Martin Corp., 29 Cal.4th 1134, 1146 (2003).

46.     "Although the unfair competition law's scope is sweeping, it is not unlimited." Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co., 20 Cal. 4th 163, 182 (1999).  "Courts may not simply impose their own notions of the day as to what is fair or unfair."  Id.

47.     "There is authority that the test to determine whether a business practice is unfair differs depending on whether the plaintiff in a UCL case is a competitor of the defendant or a consumer."  Drum v. San Fernando Valley Bar Ass'n, 182 Cal. App. 4th 247, (2010).

48.     "When a plaintiff who claims to have suffered injury from a direct competitor's 'unfair' act or practice invokes section 17200, the word 'unfair' in that section means conduct that threatens an incipient violation of an antitrust law, or violates the policy or spirit of one of those laws because its effects are comparable to or the same as a violation of the law, or otherwise significantly threatens or harms competition."  Cel-Tech, 20 Cal. 4th at 187.

49.     Under the UCL's unfair prong, and as equally applicable in antitrust, "[i]njury to a *competitor* is not equivalent to injury to *competition* . . . ."  Id. at 186 (emphasis added).

50.     "[I]njuries which result from increased competition . . . are not encompassed by the antitrust laws."  Am. Ad Mgmt., Inc. v. Gen. Tel. Co. of Cal., 190 F.3d 1051, 1057 (9th Cir. 199).

51.     Neither Spring Design, Inc. v. Barnesandnoble.com, LLC, No. C 09-05185 JW, 2010 WL 5422556 (N.D. Cal. Dec. 27, 2010), nor Allegan, Inc. v. Athena Cosmetics, Inc., 640 F.3d 1377 (Fed. Cir. 2011), hold that misleading consumers about the inventor or owner of technology is a violation of the antitrust laws.

52.     A UCL claim must be proven by a preponderance of the evidence.  See Herman & MacLean v. Huddleston, 459 U.S. 375, 387 (1983); see also People v. First Federal Credit Corp., 104 Cal. App. 4th 721, 732 (2002).

53.     A claim is preempted by the California Uniform Trade Secrets Act ("CUTSA") if it is based on the "same nucleus of facts" as the misappropriation of trade secrets claim for relief. K.C. Multimedia, Inc. v. Bank of America Tech. & Operations, Inc., 171 Cal. App. 4th 939, 954 (2009) (quoting Digital Envoy, Inc. v. Google, Inc., 370 F. Supp. 2d 1025, 1035 (N.D. Cal. 2005)).

54.     CUTSA preemption "is not triggered where the facts in an independent claim are similar to, but distinct from, those underlying the misappropriation claim."  Gabriel Techs. Corp. v. Qualcomm Inc., No. 08cv1992-MMA(POR), 2009 WL 3326631, at *11 (S.D. Cal. Sept. 3, 2009).

55.     BladeRoom has standing under the UCL because it claims to have lost business opportunities as a result of Emerson's "passing off," which placed a "question mark" over the ownership of BladeRoom's technology.

56.     BladeRoom's UCL claim under the unfair prong is not preempted because the "gravamen" of the claim is based on conduct distinct from that underlying its claim for trade secret misappropriation.

57.     BladeRoom did not prove that Emerson violated the UCL's unfair prong, because the fact that components of Emerson's October 30th design for Lulea 2 were substantially derived

from the designs and methods underlying BladeRoom's trade secrets constitutes an injury to BladeRoom's business interests as a competitor, not an injury to competition or an incipient violation of antitrust law.

58.     BladeRoom did not prove that Emerson violated the UCL's unfair prong, because the fact that Emerson misappropriated BladeRoom's trade secrets through disclosure or use constitutes an injury to BladeRoom's business interests as a competitor, not an injury to competition or an incipient violation of antitrust law.

59.     BladeRoom did not prove that Emerson violated the UCL's unfair prong, because the fact that Emerson "passed off" as its own the designs and methods it used to construct Lulea 2 constitutes an injury to BladeRoom's business interests as a competitor, not an injury to competition or an incipient violation of antitrust law.

60.     BladeRoom did not prove that Emerson violated the UCL's unfair prong, because there is no evidence that Liebert's ownership of the '288 patent constitutes an injury to competition or an incipient violation of antitrust law in the absence of corresponding evidence that Liebert exercised its right to exclude others from the technology disclosed in the '288 patent.

61.     BladeRoom has not satisfied its burden to prove a violation of the UCL's unfair prong by a preponderance of the evidence.

## III.   ORDER

BladeRoom's Motion for Judgment on Unfair Competition Claim (Dkt. No. 896) is DENIED.


        **IT IS SO ORDERED.**

Dated:  November 29, 2018

_____
EDWARD J. DAVILA
United States District Judge