UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| BLADEROOM GROUP LIMITED, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>EMERSON ELECTRIC CO, et al.,<br><br>Defendants. | Case No. 5:15-cv-01370-EJD<br><br>ORDER DENYING BLADEROOM'S MOTION FOR INJUNCTIVE RELIEF<br><br>Docket No. 894 |

I. INTRODUCTION

A jury returned a verdict in favor of Plaintiffs BladeRoom Group Ltd. and Bripco (UK) Ltd. (collectively, "BladeRoom") on claims against Defendants Emerson Electric Co., Emerson Network Power Solutions, Inc. and Liebert Corporation (collectively, "Emerson") for misappropriation of trade secrets and breach of contract, and awarded BladeRoom damages of $30,000,000. BladeRoom now moves for a permanent injunction pursuant to the California Uniform Trade Secrets Act ("CUTSA"), California Civil Code §§ 3422 and 3426.2.[1] Dkt. No. 894.

Having reviewed the parties' pleadings and revisited once again the trial record, the court has determined that BladeRoom did not sustain its burden to identify an irreparable injury for which damages available at law are inadequate. Accordingly, and for reasons that will be explained, the court will not issue a permanent injunction in BladeRoom's favor.

---

[1] BladeRoom also sought an injunction under the Unfair Competition Law ("UCL"), California Business and Professions Code § 17203. That request is DENIED, as the court has since declined to enter a judgment for BladeRoom under the UCL. Dkt. No. 949.

Case No.: 5:15-cv-01370-EJD
ORDER DENYING BLADEROOM'S MOTION FOR INJUNCTIVE RELIEF
1

## II. LEGAL STANDARD

The CUTSA specifies that actual misappropriation of a trade secret may be enjoined. Cal. Civ. Code § 3426.2. To that end, Civil Code § 3422 permits a "final injunction . . . to prevent the breach of an obligation existing in favor of the applicant" under four circumstances. Two of those circumstances are implicated by this case: (1) "[w]here pecuniary compensation would not afford adequate relief; and (2) "[w]here it would be extremely difficult to ascertain the amount of compensation which would afford adequate relief." Cal. Civ. Code § 3422. These statutory grounds "embody the requirement that to obtain an injunction a plaintiff ordinarily must show that the defendant's wrongful acts threaten to cause irreparable injury, meaning injury that cannot adequately be compensated in damages." *Sygenta Crop Protection, Inc. v. Helliker*, 138 Cal. App. 4th 1135, 1167 (2006); *accord Art Movers, Inc. v. Ni West, Inc.*, 3 Cal. App. 4th 640, 646 (1992) ("A permanent injunction is an equitable remedy for certain torts or wrongful acts of a defendant where a damage remedy is inadequate.").

In addition to showing irreparable injury and the inadequacy of monetary damages, the party moving for a permanent injunction must prove the other "well-established" elements traditionally associated with injunctive relief. *See Whyte v. Schlage Lock Co.*, 101 Cal. App. 4th 1443, 1449 (2002) ("Injunctions in the area of trade secrets are governed by the same principles applicable to injunctions in general."); *see also eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006) ("According to well-established principles of equity, a plaintiff seeking a permanent injunction must satisfy a four-factor test before a court may grant such relief."). Those elements are "that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted," and "that the public interest would not be disserved by a permanent injunction." *Id*.

The party seeking an injunction "has the general burden of establishing the elements necessary" to obtain relief. *Klein v. City of San Clemente*, 584 F.3d 1196, 1201 (9th Cir. 2009). Ultimately, "[t]he decision to grant or deny permanent injunctive relief is an act of equitable discretion by the district court . . . ." *eBay, Inc.*, 547 U.S. at 391. However, that discretion is less

Case No.: 5:15-cv-01370-EJD
ORDER DENYING BLADEROOM'S MOTION FOR INJUNCTIVE RELIEF
2

broad at the permanent stage than at the preliminary stage, because "[a] permanent injunction is very different from a pendente lite injunction." *Art Movers, Inc.*, 3 Cal. App. 4th at 646. "Like any judgment, a permanent injunction, notwithstanding its discretionary component, must be sufficiently supported by the evidence of record." *DVD Copy Control Ass'n, Inc. v. Kaleidescape, Inc.*, 176 Cal. App. 4th 697, 721 (2009). "If the evidence is insufficient to justify issuance of a permanent injunction, the trial court simply had no discretion to exercise." *Id*. (*quoting Dawson v. East Side Union High Sch. Dist.*, 28 Cal. App. 4th 998, 1041 (1994)).

III. DISCUSSION

BladeRoom seeks a permanent injunction against Emerson and Vertiv Co. comprised of four general mandates: (1) orders enjoining the them from using and selling particular aspects and combinations of BladeRoom's trade secrets; (2) an order requiring them to publish corrective advertising; (3) and order requiring them to reassign a patent to BladeRoom; and (4) an order requiring them to certify that all documents referencing BladeRoom or its technology have been destroyed. Whether this injunction should issue depends principally on whether BladeRoom has satisfied its burden to establish an irreparable injury incapable of being compensated by monetary damages.[2] BladeRoom has not done so. In fact, the evidence admitted at trial supports the opposite conclusion.

A. Irreparable Injury and Inadequacy of Monetary Damages under CUTSA

In the context of a permanent injunction to protect trade secrets, the first two elements of the four-factor test for injunctive relief are interrelated and appropriately examined together. *Sygenta Crop Protection, Inc.*, 138 Cal. App. 4th at 1167. Indeed, "[i]rreparable harm may be established where there is the fact of an injury, such as that arising from a breach of contract, but where there is an inability to ascertain the amount of damage." *DVD Copy Control Ass'n, Inc.*,

---

[2] BladeRoom repeatedly references the jury's finding under California Civil Code § 3426.3(c) that Emerson's misappropriation was willful and malicious. The statute provides the remedy available for that finding, which notably is not an injunction. The court, therefore, has not considered that finding for the purpose of the instant analysis because "punitive injunctions are ordinarily inappropriate in trade secret actions." Restatement (Third) of Unfair Competition § 44 cmt. c (1995).

Case No.: 5:15-cv-01370-EJD
ORDER DENYING BLADEROOM'S MOTION FOR INJUNCTIVE RELIEF
3

176 Cal. App. 4th at 722. "In other words, to say that the harm is irreparable is simply another way of saying that pecuniary compensation would not afford adequate relief or that it would be extremely difficult to ascertain the amount that would afford appropriate relief." *Id*.

Conversely, "equitable remedies are usually unavailable where the remedy at law is adequate, as where damages are quantifiable," because such remedies are extraordinary in nature. *Id*. at 726. "The usual remedy in tort actions is an award of damages, and the equitable remedy of an injunction was traditionally available only when the remedy of damages was inadequate." Restatement (Third) of Unfair Competition § 44 cmt. b (1995).

"With the merger of law and equity, courts are generally free to select the remedy or combination of remedies that most effectively protects the interests threatened by the defendant's misconduct." *Id*.

B. BladeRoom has not Shown that Damages are Inadequate

To determine whether there exists in this case an irreparable harm incapable of being compensated with damages, it is important to recognize the particular interest BladeRoom believes is threatened by Emerson's conduct. In its motion, BladeRoom contends that as a result of the misappropriation of its trade secrets by Emerson, "harmful competition will continue into the foreseeable future." Dkt. No. 894, at 8:18. BladeRoom recounts, by way of past conduct, trial evidence showing Emerson used the misappropriated technology to divert Facebook's data center business away from BladeRoom, and then used it again to obtain additional data center contracts from other large companies, such as Wal-Mart. *Id*. at 7:15-8:16. BladeRoom argues based on that evidence that without an injunction, "Emerson and BladeRoom will continue to directly compete for data center business from the same limited number of large technology and co-location customers . . . ." *Id*. at 8:18-20.

In response, Emerson points out that if "harmful competition" is the interest at issue, BladeRoom quantified its injury from that competition before the jury. Having reviewed the trial record, the court agrees. During his testimony, BladeRoom's damages expert, Michael Wagner, expressed the amount of "profits [BladeRoom] would have earned if it had built the Lulea 2

Case No.: 5:15-cv-01370-EJD
ORDER DENYING BLADEROOM'S MOTION FOR INJUNCTIVE RELIEF
4

1   project" for Facebook.  Tr., Dkt. No. 872, at 3083:11-16.  He then quantified "lost additional sales

2   between 2016 and 2020."  *Id*. at 3083:18-20.  Wagner opined that if BladeRoom had performed

3   the Facebook contract, "they would have profiled this experience to other Hyperscale customers

4   and other customers that they have and it would help them win future business," and would have

5   experienced a "marquee client effect."  *Id*. at 3083:23-3084:1; 3091:1-18.  He considered a

6   number of variables in the model he created for this calculation, including projected growth rates

7   for BladeRoom and Emerson, geographic differences in profit earnings, Emerson's projected

8   growth rate, yearly operational costs, a discount rate, and a currency conversion rate to calculate

9   total lost profits of $88,479,914 from 2016 through 2020.  *Id*. at 3093:2-3105:24.  Adding that to

10  damages for the loss of the Facebook contract, Wagner calculated total lost profits, including "lost

11  opportunities" over time, as $106,936,921.  *Id*. at 3106:2.  Given this testimony, it is apparent

12  BladeRoom believed at trial that its losses from future competition could be compensated with

13  monetary damages.

14      BladeRoom's attempt to downplay the testimony of its own damages expert is

15  unpersuasive.  In essence, BladeRoom argues it should be awarded injunctive relief in addition to

16  damages because the jury did not award it more damages.  Dkt. No. 932, at 4:1-12.  That position,

17  however, is not the equivalent of successfully demonstrating it was not possible to compensate

18  BladeRoom for difficult-to-quantify future losses.  *See DVD Copy Control Ass'n, Inc.*, 176 Cal.

19  App. 4th at 726.  Nor can it be reconciled with the purpose of injunctive relief under these

20  circumstances.  *Sygenta Crop Protection, Inc.*, 138 Cal. App. 4th at 1167.  Simply put, the trial

21  evidence shows that BladeRoom's injury from future competition could be reduced to an amount

22  of money, and a permanent injunction cannot be ordered merely because the requesting party did

23  not receive the full extent of the legal relief it sought.  The jury awarded BladeRoom the damages

24  it found would fairly compensate BladeRoom for loss due to competition through 2020, and an

25  injunction "would be redundant of the legal relief which the jury has already awarded."  *Whiteside

26  Biomechanics, Inc. v. Sofamor Danek Grp., Inc.*, 88 F. Supp. 2d 1009, 1020 (E.D. Mo. 2000).

27      For these reasons, the court concludes that BladeRoom has not met its burden to establish

28  Case No.: 5:15-cv-01370-EJD
ORDER DENYING BLADEROOM'S MOTION FOR INJUNCTIVE RELIEF
5

United States District Court
Northern District of California

an irreparable injury for which monetary damages are inadequate. *See Klein*, 584 F.3d at 1201. The court, therefore, will not issue a permanent injunction in its favor. *See DVD Copy Control Ass'n, Inc.*, 176 Cal. App. 4th at 721.

IV. ORDER

BladeRoom's Motion for Injunctive Relief (Dkt. No. 894) is DENIED.

**IT IS SO ORDERED.**

Dated: March 11, 2019

_____
EDWARD J. DAVILA
United States District Judge

Case No.: 5:15-cv-01370-EJD
ORDER DENYING BLADEROOM'S MOTION FOR INJUNCTIVE RELIEF
6