UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| BLADEROOM GROUP LIMITED, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>EMERSON ELECTRIC CO, et al.,<br><br>Defendants. | Case No. 5:15-cv-01370-EJD<br><br>**ORDER GRANTING REQUEST FOR EXEMPLARY DAMAGES, FEES, COSTS AND PREJUDGMENT INTEREST**<br><br>Docket No. 892 |

This order is the last in a series of rulings addressing post-verdict motions in this action for trade secret misappropriation and breach of contract between Plaintiffs BladeRoom Group Ltd. and Bripco (UK) Ltd. (collectively, "BladeRoom") and Defendants Emerson Electric Co., Emerson Network Power Solutions, Inc. and Liebert Corporation (collectively, "Emerson"). Three of BladeRoom's requests will be addressed, including exemplary damages, attorney's fees and costs, and prejudgment interest. And for the reasons explained below, each request will be granted.

**I. DISCUSSION**

**A. Exemplary Damages**

**1. Governing Authority**

Under the California Uniform Trade Secrets Act ("CUTSA"), a party who prevails on a claim for trade secret misappropriation may recover damages "for the actual loss caused by misappropriation," and for the "unjust enrichment caused by misappropriation that is not taken into account in computing damages for actual loss." Cal. Civ. Code § 3426.3(a). CUTSA also

provides for an award of exemplary damages "in an amount not exceeding twice" any damages award "[i]f willful and malicious misappropriation exists." Cal. Civ. Code § 3426.3(c). "Though the existence of willful and malicious misappropriation is ordinarily considered a fact that a jury must find by clear and convincing evidence, the court calculates the amount of exemplary damages." *Mattel, Inc. v. MGA Entm't.*, Inc., 801 F. Supp. 2d 950, 952 (C.D. Cal. 2011).

To determine whether exemplary damages should be awarded under § 3426.3(c), courts are traditionally guided by three factors: "(1) the nature of the misconduct; (2) amount of compensatory damages; and (3) the defendant's financial condition." *O2 Micro Int'l Ltd. v. Monolithic Power Sys., Inc.*, 399 F. Supp. 2d 1064, 1079 (N.D. Cal. 2005) (citing *Neal v. Farmers Ins. Exch.*, 21 Cal. 3d 910, 928 (Cal. 1978); *Adams v. Murakami*, 54 Cal. 3d 105, 111 (Cal. 1991)); *Mattel, Inc.*, 801 F. Supp. 2d at 953. Whatever the amount of the award, it "must be tailored to 'further a State's legitimate interests in punishing unlawful conduct and deterring its repetition." *Mattel, Inc.*, 801 F. Supp. 2d at 953 (quoting *BMW of N. Am., Inv. v. Gore*, 517 U.S. 559, 568 (1996)). To that end, any exemplary damages "must reasonably correspond with the reprehensibility of the misconduct, the harm or potential harm suffered by the plaintiff, and civil penalties authorized or imposed in comparable cases." *Id*.

### 2. Application

The jury's finding, by clear and convincing evidence, that Emerson's misappropriation of trade secrets was willful and malicious authorizes BladeRoom's request for exemplary damages under § 3426.3(c). Dkt. No. 867. The court therefore examines the relevant factors.

Taking up the third factor first, BladeRoom has submitted Emerson's Form 10-Q for the quarter ending on March 31, 2018. Dkt. No. 892, at Ex. A. That report shows Emerson had $2.444 billion of cash and equivalents and a total of $8.5 billion in shareholders' equity. Emerson does not dispute this portrayal of its financial condition, nor does it argue against the ability to pay the maximum amount of additional damages permitted under § 3426.3(c). The court therefore finds the third factor presents no impediment to an award of exemplary damages. To the contrary,

Case No.: 5:15-cv-01370-EJD
ORDER GRANTING REQUEST FOR EXEMPLARY DAMAGES, FEES, COSTS AND PREJUDGMENT INTEREST

2

Emerson's "high net worth suggests that a high award of exemplary damages is necessary to deter future misconduct . . . ." *Mattel, Inc.*, 801 F. Supp. 2d at 956.

As to the second factor, the California Supreme Court has indicated that compensatory damages are a "relevant yardstick" for exemplary damages. *Neal*, 21 Cal. 3d at 928. "[I]n general, even an act of considerable reprehensibility will not be seen to justify a proportionally high amount of punitive damages if the actual harm suffered thereby is small." *Id*. at 928 n.13. Here, the jury awarded compensatory damages of $30 million which is noticeably less than BladeRoom requested.

Turning to the nature of the misconduct, the court is mindful that "[t]he largest exemplary awards are reserved for the most reprehensible acts." *Mattel, Inc.*, 801 F. Supp. 2d at 953. "To determine if, and to what extent, misconduct is reprehensible, courts must consider whether: (1) the misconduct caused physical harm; (2) the misconduct disregarded the health or safety of others; (3) the misconduct targeted a financially vulnerable party; (4) the misconduct was repeated; and (5) the harm resulted from intentional malice, trickery, or deceit, or mere accident." *Id*. at 953-54. "[C]ases involving 'affirmative acts of misconduct' marked not just by malice, but a breach of basic commercial ethics and fraud" can support a large award of exemplary damages, even if only economic loss was involved. *Id*. at 954.

Here, the nature of Emerson's misconduct favors an award of exemplary damages, though not in the full amount permitted under CUTSA. This court is intimately familiar with the evidence, having presided over a 21-day jury trial and having since undertaken several additional reviews of the record in conjunction with several post-verdict motions. While the trial evidence was extensive, the conduct relevant to exemplary damages can be condensed down to the following statement: after Facebook expressed to Emerson the desire for a data center consistent with BladeRoom's technology, employees from Emerson (and Facebook) lured BladeRoom into revealing its trade secrets under the guise of a possible data center contract or corporate acquisition, and then used the information it obtained to surreptitiously design and build

Case No.: 5:15-cv-01370-EJD
ORDER GRANTING REQUEST FOR EXEMPLARY DAMAGES, FEES, COSTS AND
PREJUDGMENT INTEREST

3

Facebook's data center at Lulea 2. Contrary to what Emerson argues now, the evidence does not support a series of minor errors in judgment or mistakes which can be remedied with an apology, and Emerson fails to grapple with the broader effects of its misconduct. From a commercial ethics perspective, the misconduct certainly falls within the category of reprehensible; it undermines the confidence market participants can place in confidentiality agreements and causes those who possess trade secrets to seriously question the motivations of those who superficially appear to be interested in legitimate acquisition. The consumer loses as a result, as innovation and competition are stifled while trade secrets are kept buried in the proverbial vault.

Given its effects on the marketplace, society has a genuine interest in deterring similar misconduct. That need for deterrence is not at its strongest in this case, however, because Emerson's offenses have been exposed to all other participants in the data center market, and indeed to all other participants in other markets in which Emerson has a stake. *See Mattel, Inc.*, 801 F. Supp. 2d at 955. These participants "are likely to cast a wary eye" toward Emerson in all future dealings. *Id*.

In light of these considerations, the court awards BladeRoom $30 million in exemplary damages—an amount equal to the compensatory damages awarded by the jury.[1]

### B. Attorney's Fees and Costs

The court may award reasonable attorney's fees and costs to the prevailing party when "willful and malicious misappropriation exists." Cal. Civ. Code § 3426.4. An award of fees and costs is equitable "in cases against well-funded defendants that commit acts of misappropriation that undermine legitimate competition and innovation." *Mattell, Inc.*, 801 F. Supp. 2d at 956. As explained above, the court has found that Emerson, a well-funded defendant, engaged in conduct undermining legitimate competition and innovation. Emerson's arguments to the contrary, as well

---

[1] The court recognizes Emerson's argument that exemplary damages cannot be awarded because compensatory damages were not apportioned between the breach of contract and the misappropriation of trade secret claims, but rejects it. The trial evidence shows that either claim for which the jury found liability could support the amount of compensatory damages it awarded.

Case No.: 5:15-cv-01370-EJD
ORDER GRANTING REQUEST FOR EXEMPLARY DAMAGES, FEES, COSTS AND PREJUDGMENT INTEREST

4

as those against a fees and costs award in this case, are unpersuasive.

The court therefore finds that BladeRoom should receive an award of reasonable attorney's fees and costs under § 3426.4, which issue will be the subject of additional briefing to determine the appropriate amount.

### C. Prejudgment Interest

"In an action for the breach of an obligation not arising from contract, and in every case of oppression, fraud, or malice, interest may be given, in the discretion of the jury." Cal. Civ. Code § 3288. Here, the parties have stipulated the court would decide the issue of prejudgment interest in this case. Tr., Dkt. No. 878, at 4082:13-23.

The purpose of prejudgment interest under § 3288 is to "compensate a party for loss of use" of money or property. *Michelson v. Hamada*, 29 Cal. App. 4th 1566, 1586 (Cal. Ct. App. 1994). "When, by virtue of the fraud or breach of fiduciary duty of the defendant, a plaintiff is deprived of the use of his money or property and is obliged to resort to litigation to recover it, the inclusion of interest in the award is necessary in order to make the plaintiff whole." *Id*. (quoting *Nordahl v. Dep't of Real Estate*, 48 Cal. App. 3d 657, 665 (Cal. Ct. App. 1975)). Stated differently, prejudgment interest is awarded "to provide just compensation to the injured party for loss of use of the award during the prejudgment period—in other words, to make the plaintiff whole as of the date of the injury." *Lakin v. Watkins Associated Indus*., 6 Cal. 4th 644, 663 (Cal. 1993).

Here, the court finds that awarding BladeRoom prejudgment interest is appropriate, as doing so will make BladeRoom "whole as of the date of the injury." The court also finds that prejudgment interest should be calculated commencing October 30, 2012, because it was by that date that BladeRoom was notified it had lost the opportunity to obtain Facebook's data center contract. That is both the date of BladeRoom's injury as well as the date of its loss.[2]

---

[2] As BladeRoom points out, prejudgment interest can also be awarded for the breach of a contract under California Civil Code § 3287(b). Because that section permits interest only from the date the action was filed, the court has exercised its discretion to award interest under § 3288 in an

Case No.: 5:15-cv-01370-EJD
ORDER GRANTING REQUEST FOR EXEMPLARY DAMAGES, FEES, COSTS AND PREJUDGMENT INTEREST
5

## II. ORDER

Based on the foregoing:

1. BladeRoom's request for exemplary damages pursuant to California Civil Code § 3426.3(c) is GRANTED in the total amount of $30 million.

2. BladeRoom's request for attorney's fees and costs pursuant to California Civil Code § 3426.4 is GRANTED in an amount to be determined. No later than April 22, 2019, BladeRoom and Emerson shall file a stipulation and proposed order addressing further briefing on the reasonable amount of attorney's fees and costs that should be awarded to BladeRoom.

3. BladeRoom's request for prejudgment interest pursuant to California Civil Code § 3288 is GRANTED commencing October 30, 2012, on a compound basis at an annual rate of 7%.

**IT IS SO ORDERED.**

Dated: March 11, 2019

EDWARD J. DAVILA
United States District Judge

---

effort to make BladeRoom whole.
Case No.: 5:15-cv-01370-EJD
ORDER GRANTING REQUEST FOR EXEMPLARY DAMAGES, FEES, COSTS AND PREJUDGMENT INTEREST

6